Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Pro Hac Vice Paperwork Forthcoming*

Attorneys for Plaintiffs
RUSSELL FOUTS and TAN MIGUEL TOLENTINO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL FOUTS and TAN MIGUEL TOLENTINO )<br><br>)<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>XAVIER BECERRA, in his )<br>Official Capacity as the Attorney General )<br>of the State of California, )<br>)<br>)<br>)<br>)<br>)<br>Defendant. )<br>——————————————— ) | Civil Action No. **'19CV1662 LAB KSC** |

COMPLAINT OF PLAINTIFFS FOR DEPRIVATION OF CIVIL RIGHTS

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COME NOW the Plaintiffs, RUSSELL FOUTS and TAN MIGUEL TOLENTINO, ("Plaintiffs"), by and through their undersigned counsel, and complain of the Defendant as follows:

## I.   PARTIES

1.      Plaintiff Russell Fouts is an adult male resident of the State of California and resides in San Diego County and is a citizen of the United States.

2.      Plaintiff Tan Miguel Tolentino is an adult male resident of the State of California and resides in San Diego County and is a citizen of the United States.

3.      Defendant Xavier Becerra is the Attorney General of California. He is the chief law enforcement officer of California. Defendant Becerra is charged by Article V, Section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. Defendant Becerra also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of their respective officers. Defendant Becerra's duties also include informing the public, local prosecutors, and law enforcement regarding the meaning of the laws of California, including restrictions complained of herein. He is sued in his official capacity.

## II.   JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

5.      Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III.   STATEMENT OF FACTS

6.      The State of California bans the manufacture, import into the state, keep for sale, or sale, loan, and possession of billies pursuant to Cal. Penal Code § 22210 outside of a handful of exceptions that are not relevant to the litigants.

7.    The term billy and baton are synonymous with one another. ("Petitioner accordingly had notice that his baton could be considered a billy.") *See Robertson v. Harris*, 2015 U.S. Dist. LEXIS 90068, *39, 2015 WL 4196521.

8.    The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

9.    The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 1027 (2016).

10.    Arms are "'weapons of offence, or armour of defence.' 1 Dictionary of the English Language 107 (4th ed.)" They are anything that a man [or woman] wears for his defense, or takes into his hands, or uses in wrath to cast at or strike another.' 1 A New and Complete Law Dictionary (1771)." *District of Columbia v. Heller*, 554 U.S. at 581.

11.    The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. *Heller,* 554 U.S. at 582; *Caetano*, slip op. at 1 (per curiam).

12.    Under the Second Amendment, Defendant retains the ability presumptively to regulate the manner of carrying arms and may prohibit certain arms in narrowly defined sensitive places, prohibit the carrying of arms that are not within the scope of Second Amendment's protection such as dangerous and unusual arms, and disqualify specific, particularly dangerous individuals from carrying arms. *See Heller,* 554 U.S. at 627.

13.    Given the decision in *Heller*, Defendant may not completely ban the keeping and bearing of arms for self-defense that are not dangerous and unusual, deny individuals the right to carry arms in non-sensitive places, deprive individuals of the right to keep or carry arms in an arbitrary and

-3-

capricious manner, or impose regulations on the right to keep and carry arms that are inconsistent with the Second Amendment.  *See Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016); *Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015); *Palmer v. District of Columbia,* 59 F.Supp.3d 173 (2014).

14.    Many other jurisdictions have already found complete bans on the ownership of arms other than firearms are unconstitutional post-*Heller*.

15.    Bans on electric arms have been struck across the nation. *See People v. Yanna*, 824 N.W.2d 241, 243 (Mich. Ct. App. 2012) (striking down a Michigan statute criminalizing possession of electronic weapons), *Second Amendment Society v. Porrino*, No. 3:16-cv-04906-DEA (D.N.J. Nov. 16, 2016) Doc. No. 30 (consent decree where the Court found New Jersey's complete ban on electric arms is unconstitutional), ("Pursuant to the holdings in *Heller, McDonald and Caetano*, N.J. Stat. Ann . § 2C:39- 3(h), to the extent this statute outright prohibits, under criminal penalty, individuals from possessing electronic arms, is *declared* unconstitutional in that it violates the Second Amendment to the United States Constitution and shall not be enforced"); *See, Crystal Wright v. District of Columbia*, No. 1:16-cv-01556-JEB (D.D.C. Sept. 26, 2016) Doc. No. 18 (stipulating to a stay of a motion for preliminary injunction pending new legislation and agreeing not to enforce ban against plaintiffs); *Ford v. City of New Orleans*, No. 2:16-cv16433-MVL-KWR (E.D. La. Dec. 14, 2016) Doc. Nos. 17, 19-20 (stipulating that the city will not enforce the ban against plaintiff and consenting to a stay of litigation pending enactment of legislation that decriminalized possession of stun guns); *Hulbert v. Pantelides*, No. 1:16-cv-04121-JFM (D. Md. March 3, 2017) Doc. No. 16 (letter from the City of Annapolis informing the court that the City Council passed an emergency ordinance eliminating all restrictions on ownership and possession of electronic weapons for personal defense); *Ramirez v. Commonwealth* No. SJC-12340, 2018 Mass. LEXIS 237 (Apr. 17, 2018) (striking Mass. ban on stun guns).[1] *See Avitabile v. Beach*, 2019 U.S. Dist. LEXIS 47506, __ F. Supp. 3d __, 2019

---

[1] Since *Caetano*, electronic arms bans in Philadelphia, Pennsylvania; Tacoma, Washington and Westminster, Maryland were also rescinded. https://www.phillymag.com/news/2017/10/24/stun-guns-legal-philadelphia/ (last visited 8/1/2019);

WL 1302858, striking New York State's ban on electric arms. *See People v. Walker*, 2019 Ill. LEXIS 329, 2019 WL 1307950 striking Illinois's ban on taser ownership and carry.

16.     In *Maloney v. Singas*, 351 F. Supp. 3d 222 (S.D.N.Y. 2018), the United States District Court for the Southern District of New York struck the State of New York's ban on nunchucks as a violation of the Second Amendment.  It found nunchucks are protected by the Second Amendment because they are bearable arms that are typically used for lawful purposes.  It then struck New York's ban because the State did not have an important government interest in banning these protected arms.

17.     In upholding a criminal conviction for possession of a switchblade, the New Mexico Court of Appeals found that knives are protected by the Second Amendment and upheld that specific ban applying intermediate scrutiny. *See State v. Murillo*, 347 P.3d 284 (2015).

18.     In *City of Seattle v. Evans*, 366 P.3d 906 (2015), the Washington Supreme Court evaluated the conviction for carrying a paring knife (a type of kitchen knife).  The Court found that paring knives are not protected by the Second Amendment because paring knives are not designed to be used for self-defense. "We hold that the right to bear arms protects instruments that are designed as weapons traditionally or commonly used by law-abiding citizens for the lawful purpose of self-defense. In considering whether a weapon is an arm, we look to the historical origins and use of that weapon, noting that a weapon does not need to be designed for military use to be traditionally or commonly used for self-defense. We will also consider the weapon's purpose and intended function." *City of Seattle* at 913. Then the Court went on to strongly suggest that knives designed for self-defense such as "bowie knives and swords", having been commonly used for self-defense may be considered arms. *See City of Seattle* at 906.

---

http://www.carrollcountytimes.com/news/westminster/ph-cc-westminster-stun-gun-ban-discussion-20170523-story.html (last visited 8/1/2019); http://www.thenewstribune.com/news/politics-government/article158619749.html (last visited 8/1/2019).

COMPLAINT OF PLAINTIFFS FOR DEPRIVATION OF CIVIL RIGHTS

19.     In *State v. Deciccio*, 105 A.3d 165 (Conn. 2014), the Connecticut Supreme Court overturned the conviction for transport of a dirk knife and a baton (also known as a billy) as a violation of the litigants Second Amendment rights.  In doing so the Court found that dirk knives and batons are protected by the Second Amendment because they are weapons with traditional military utility that are "typically possessed by law-abiding citizens for lawful purposes"; *Id*. at 625; and not "dangerous and unusual weapons." (Internal quotation marks omitted.) *Id*., 627. It then applied intermediate scrutiny and held the conviction unconstitutional.

20.     The California Appeals Court has found that knives are protected by the Second Amendment. In *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012), the court held "the dirk or dagger concealed carrying restriction does not entirely prohibit the carrying of a sharp instrument for self-defense; rather, it limits the manner of exercising that right by proscribing concealed carrying of a dirk or dagger unless the bearer uses a visible knife sheath or non-switchblade folding or pocketknife. Because the statute regulates but does not completely ban the carrying of a sharp instrument, we subject it to intermediate scrutiny." *Id*. at 1374. Here, since California completely bans billies, *Mitchell* supports the position that California's ban on billies is unconstitutional.

21.     In *State v. Montalvo*, 162 A.3d 270 (2017), the New Jersey Supreme Court overturned the conviction for possession of a machete. In doing so, the Court found that machete-type knives are protected by the Second Amendment and that a conviction for their possession in the home was unconstitutional.

22.     In *State v. Herrmann*, 2015 WI App 97, the Wisconsin Court of Appeals overturned appellant's the conviction for possession of a switchblade was unconstitutional. In doing so, the court found that switchblades are protected by the Second Amendment and that Wisconsin's complete ban on their possession was unconstitutional.

23.     In *State v. Delgado*, 692 P.2d 610 (1984), the Oregon Supreme Court found that Oregon's ban on the possession of switchblades violated the Oregon Constitution's right to arms.

24.     Many other state courts have likewise concluded that the right to keep and bear arms found within their state constitutions extends beyond handguns. *See State v Griffin*, 2011 WL 2083893, *7 n62, 2011 Del Super LEXIS 193, *26 n62 (Del Super Ct, May 16, 2011) (holding that the "right to keep and bear arms" under the Delaware Constitution extends to knives, and concluding that the Second Amendment right does the same); *City of Akron v Rasdan*, 663 NE2d 947 (Ohio Ct. App., 1995) (concluding that the "right to keep and bear arms" under the Ohio Constitution extends to knives*); State v Blocker*, 630 P2d 824 (1981) (same as to billy clubs), citing *State v Kessler,* 614 P2d 94 (1980); *also Barnett v State*, 695 P2d 991 (Ct App, 1985) (same as to blackjacks).

25.     Plaintiffs are bringing an as-applied and facial challenge to the applicable California laws which prevent them from owning billies for purposes of lawful self-defense.

26.     Plaintiffs seek an injunction preventing enforcement of the applicable California laws as applied to themselves and for declaratory relief.

27.     Additionally, Plaintiffs seek an injunction preventing enforcement of the applicable California laws as to all other law-abiding citizens.

### a.  Billies are Protected by the Second Amendment

28.     In *Heller,* the Court ruled that the "Second Amendment extends prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of founding." *Heller*, 128 S. Ct. at 2817. In order to strike down the ban on handguns it ruled a complete ban on a protected arm cannot withstand any level of scrutiny. *Id*.

29.     Thus, while "dangerous and unusual weapons" may likely be regulated, "the sorts of weapons protected [a]re those 'in common use at this time.'" *Id*. at 627

30.     In *United States v. Henry*, 688 F. 3d 637 (9th Cir. 2012), the Ninth Circuit held that machine guns are not protected by the Second Amendment because they are dangerous and unusual. "A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. *See* George C. Wilson, Visible Violence, 12 NAT'L J. 886, 887

-7-

(2003)." Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns. A machine gun is "unusual" because private possession of all new machine guns, as well as all existing machine guns that were not lawfully possessed before the enactment of § 922(o), has been unlawful since 1986. Outside of a few government-related uses, machine guns largely exist on the black market." *Id*. at 640.[2]

31.     However, unlike machineguns which have been artificially limited in ownership by § 922(o), billies are arms in common use for lawful self-defense.

32.     Billies are arms in common use for lawful self-defense.

33.     Police officers commonly possess them as a form of nonlethal defense.

34.     "Furthermore, the widespread use of the baton by the police, who currently perform functions that were historically the province of the militia; *see*, e.g., D. Kopel, "The Second Amendment in the Nineteenth Century," 1998 BYU L. Rev. 1359, 1534 demonstrates the weapon's traditional military utility.". *State v. Deciccio*, 315 Conn. 79, 133, 105 A.3d 165, 200, 2014 Conn. LEXIS 447, *87.

35.     A baton or billy is a roughly cylindrical club made of wood, rubber, plastic or metal. It is carried as a compliance tool and defensive weapon

36.     Billies are bearable arms.

37.     Billies are in common use for purposes of lawful self-defense.

38.     An attack from a billy has less potential to inflict injury than one from a firearm if all other variables are equal.

39.     An attack from a billy is less capable of inflicting injury than one from a knife if all other variables are equal.

40.     Billies are less dangerous than handguns.

---

[2] Plaintiffs expressly reserve the right to challenge the accuracy of the Ninth Circuit's interpretation of *Heller's* dangerous and unusual language at the appropriate time.

-8-

41.     Billies are less dangerous than knives designed for self-defense.

42.     Billies are not dangerous and unusual and are lawfully owned and legal in a supermajority of States.

43.     The Oregon Supreme Court's right to arms analysis "mirrors the model employed by the United States Supreme Court in District of Columbia v. Heller, supra, 554 U.S. 624-25". *See State v. Deciccio*, 315 Conn. 79, 117, 105 A.3d 165, 191, 2014 Conn. LEXIS 447, *63.

44.     In *State v. Kessler*, 289 Ore. 359, 614 P.2d 94, 1980 Ore. LEXIS 1031 the Oregon Supreme Court found:

> The club is considered the first personal weapon fashioned by humans. O. Hogg, Clubs to Cannon 19 (1968). The club is still used today as a personal weapon, commonly carried by the police. ORS 166.510 prohibits posession of a "billy;" however, ORS 166.520 states that peace officers are not prohibited from carrying or possessing a weapon commonly known as a "blackjack" or "billy." The statute in this case, ORS 166.510, prohibits the mere possession of a club. The defendant concedes that the legislature could prohibit carrying a club in a public place in a concealed manner, but the defendant maintains that the legislature cannot prohibit all persons from possessing a club in the home. The defendant argued that a person may prefer to keep in his home a billy club rather than a firearm to defend against intruders.

> Our historical analysis of Article I, section 27, indicates that the drafters intended "arms" to include the hand-carried weapons commonly used by individuals for personal defense. The club is an effective, hand-carried weapon which cannot logically be excluded from this term. We hold that the defendant's possession of a billy club in his home is protected by Article I, section 27, of the Oregon Constitution.

45.     In *State v. Blocker*, 291 Ore. 255, 630 P.2d 824, 1981 Ore. LEXIS 915 the Oregon Supreme Court extended this ruling to find private citizens have a right to possess billy clubs outside the home.

46.     In *State v. Deciccio*, 315 Conn. 79, 117, 105 A.3d 165, 191, 2014 Conn. LEXIS 447, the Connecticut Supreme Court found that billies are protected by the Second Amendment and a complete ban on their possession is unconstitutional ("For these reasons, we are persuaded that the police baton that the defendant had in his vehicle is the kind of weapon traditionally used by the state for public safety purposes and is neither so dangerous nor so unusual as to fall outside the purview of

-9-

the second amendment's right to keep and bear arms"). *State v. Deciccio*, 315 Conn. 79, 133-134, 105 A.3d 165, 200-201, 2014 Conn. LEXIS 447, *89-92.

### b.  Plaintiff Russell Fouts

47.    Plaintiff Fouts desires to purchase the same type of baton/billy policemen are usually issued[3] and an expandable baton[4] for self-defense and other lawful purposes in his home, business, whilst traveling between these locations and in all other locations.  See Declaration of Russel Fouts attached as Exhibit "A".

48.    Prior to living in California, Plaintiff Fouts owned a billy legally

49.    Plaintiff Fouts is employed as a project manager for a security contractor in San Diego.

50.    Plaintiff Fouts is an honorably discharged United States Marine

51.    Plaintiff Fouts has never been convicted of a crime that would disqualify him from firearms ownership under either California or federal law.

52.    Plaintiff Fouts has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under California or federal law.

53.    Plaintiff Fouts does not take illegal drugs or abuse alcohol.

54.    Plaintiff Fouts desires to purchase a billy. However, Plaintiff fears prosecution for possessing it.

55.    While living in Oregon, Plaintiff Fouts was licensed by the State of Oregon: Department of Public Safety Standards and Training to use non-firearm weapons including billies in a security role as a private security contractor.

56.    In that capacity, Plaintiff Fouts carried a billy for purposes of self-defense and in order to perform his job functions.

---

[3] A type of standard billy is found here: https://www.budk.com/Law-Enforcement-Billy-Club-Police-Baton-30742

[4] A type of expandable billy/baton is found here: https://www.budk.com/Expandable-Baton-26-Inch-22397

-10-

57.    Plaintiff Fouts is licensed to concealed carry a handgun in the State of Oregon (CHL license).

58.    But for California law, Plaintiff Fouts would acquire, possess, carry and where appropriate use a billy to protect himself, his home, his family and business.

**c.    Plaintiff Tan Miguel Tolentino**

59.    Plaintiff Tolentino desires to purchase the same type of baton/billy policemen are usually issued and an expandable baton for self-defense and other lawful purposes in his home, business, whilst traveling between these locations and in all other locations.  See Declaration of Tan Miguel Tolentino attached as Exhibit "B".

60.    Plaintiff Tolentino is an honorably discharged Airman.

61.    Plaintiff Tolentino served as an 81152 Law Enforcement Specialist in the United States Air Force.

62.    Plaintiff Tolentino received extensive billy training in the Air Force

63.    Plaintiff Tolentino carried a billy in the performance of his job duties in the Air Force.

64.    Plaintiff Tolentino studied Arnis and Kali under Narrison Babao Jr.

65.    Arnis and Kali are Filipino martial forms which focus on stick fighting.

66.    Plaintiff Tolentino is a Filipino American.

67.    Plaintiff Tolentino currently lives and works in the San Diego area.

68.    Plaintiff Tolentino is employed as an information technology specialist.

69.    Plaintiff Tolentino wishes to purchase a standard issue policeman billy/baton and an expandable baton for lawful self-defense and does not solely due to California law.

70.    Plaintiff Tolentino has never been convicted of a crime that would disqualify him from firearms ownership under either California or federal law.

71.    Plaintiff Tolentino does not take illegal drugs or abuse alcohol.

72.    Plaintiff Tolentino legally owns firearms.

-11-

73.   Plaintiff Tolentino has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under California or federal law.

74.   Plaintiff Tolentino desires to purchase a billy. However, Plaintiff fears prosecution for possessing it and has therefore refrained from purchasing one.

75.   But for California law, Plaintiff Tolentino would acquire, possess, carry and where appropriate use a billy to protect himself, his home, his family and business.

**FIRST CAUSE OF ACTION**
**U.S. CONST., AMEND. II & VIIII,**

76.   Plaintiffs repeat and re-plead the preceding paragraphs, inclusive, and incorporates the same herein by reference.

77.   Defendant prohibits Plaintiffs from acquiring, possessing, carrying and using a defensive arm in common use, i.e., billies. As such it violates Plaintiffs' Second Amendment rights.

78.   Defendant's laws, customs, practices and policies generally banning the acquisition, possession, carrying and use of billies violates the Second Amendment to the United States Constitution, facially and as applied against the Plaintiffs in this action, damaging Plaintiffs in violation of 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against such laws, customs, policies, and practices.

**SECOND CAUSE OF ACTION**
**DECLARATORY JUDGMENT**

79.   Plaintiffs repeat and re-plead the preceding paragraphs, inclusive, and incorporate the same herein by reference.

80.   The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

-12-

81.    Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future.

82.    There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

83.    This Court possesses an independent basis for jurisdiction over the parties.

84.    A judgment declaring that the State of California's ban on the ownership of billies violates the Second Amendment will serve a useful purpose in clarifying and settling the legal relations at issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

85.    Defendant's laws, customs, practices and policies generally banning the acquisition, possession, carrying and use of billies violates the Second Amendment to the United States Constitution, facially and as applied against the Plaintiffs in this action, damaging Plaintiffs in violation of 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983. Plaintiffs are therefore entitled to a declaration declaring such laws, customs, policies, and practices unconstitutional.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

1.    An order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing California Penal Code Section 22210 and any other relevant California law which bans the acquisition, possession, carrying or use of billies as applied to Plaintiffs and additionally against other similarly situated law abiding persons;

2.    An order declaring that California Penal Code Section 22210 and any other relevant California law unconstitutional and violative of the Second Amendment to the United States Constitution as applied to Plaintiffs and to all other law-abiding citizens;

-13-

COMPLAINT OF PLAINTIFFS FOR DEPRIVATION OF CIVIL RIGHTS

3.   Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

4.   Such other Declaratory relief consistent with the injunction as appropriate; and

5.   Such other further relief as the Court deems just and appropriate.

Dated:  September 1, 2019.

Respectfully submitted,


/s/ Alan Beck
Counsel for Plaintiffs

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
California Bar No. 276646
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Pro Hac Vice Paperwork Forthcoming*

-14-

COMPLAINT OF PLAINTIFFS FOR DEPRIVATION OF CIVIL RIGHTS