1 | ALAN ALEXANDER BECK
2 | LAW OFFICE OF ALAN BECK
  | 2692 HARCOURT DRIVE
3 | SAN DIEGO, CA 92123
  | (619) 905-9105
4 | STATE BAR NO. 276646
5 | ALAN.ALEXANDER.BECK@GMAIL.COM
  | ATTORNEYS FOR PLAINTIFFS
6 | RUSSELL FOUTS AND
7 | TAN MIGUEL TOLENTINO

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. BOX 4008
MADISON, MS 39130
(601) 852-3440
STEPHEN@SDSLAW.US
MS BAR NO. 102784
*ADMITTED PRO HAC VICE

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**RUSSELL FOUTS and TAN MIGUEL TOLENTINO,**

Plaintiffs,

v.

**XAVIER BECERRA, in his official capacity as the Attorney General of the State of California,**

Defendant.

19-cv-01662-BEN-JLB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Judge:          Hon. Roger T. Benitez
Courtroom:    5A
Hearing Date: October 19, 2020
Hearing Time: 10:30 AM

1

## **TABLE OF CONTENTS**

2

I.      Introduction ............................................................................. 1

II.     Standard of Review ................................................................. 2

III.    Plaintiffs and Their Expert .................................................... 2

    A.      Plaintiff Russell Fouts ................................................... 2

    B.      Plaintiff Tan Miguel Tolentino ..................................... 3

    C.      Plaintiffs' Expert Rebuttal Report and Declaration of Leofuldo Tablanza, II .................................................... 4

IV.     California's Bans Batons and it Implicates the Second Amendment ............................................................................ 4

    A.      Batons Are Arms ............................................................ 5

    B.      Batons Are Not Dangerous and Unusual Arms ............ 6

    C.      The Law at Issue is Not Longstanding ....................... 12

V.      Applying the Appropriate Level of Scrutiny ...................... 17

    A.      A Categorical Approach Should Apply ...................... 17

    B.      Strict Scrutiny Should Apply ...................................... 17

    C.      Even if Intermediate Scrutiny Applies, the Law is Unconstitutional .......................................................... 20

VI.     There is not a Reasonable Fit to the Ban and Public Safety ............. 23

VII.    Conclusion ........................................................................... 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Ass'n of N.J. Rifle & Pistol Clubs v. AG N.J.*, 910 F.3d 106, (3d Cir. 2018)............7

*Avagyan v. Holder*, 646 F.3d 672 (9th Cir. 2011)....................................................15

*Avitabile v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019) ......................................12

*Bannon v. U.S.*, 156 U.S. 464 (1895) ......................................................................14

*Bd. of Tr. of the State Univ. of New York v. Fox*, 492 U.S. 469, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989) ..........................................................................................25

*Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252 (9th Cir. 1999)....................2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)...2

*City of Akron v Rasdan*, 663 NE2d 947 (Ohio Ct. App., 1995) ..............................12

*City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002) .........................21

*District of Columbia v Heller*, 554 US 570; 128 S Ct 2783; 171 L Ed 2d 637 (2008) ...........................................................................................................*passim*

*Duncan v. Becerra*, 366 F. Supp. 3d 1131 (S.D. Cal. 2019)............................24, 25

*Duncan v. Becerra*, No. 19-55376, 2020 U.S. App. LEXIS 25836 (9th Cir. Aug. 14, 2020)..................................................................................................*passim*

*Fasset v. Smith*, 23 N.Y. 257(1891) ........................................................................14

*Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015)...........................7

*Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) .................................15, 16

*Grace v. District of Columbia,* 187 F. Supp. 3d 124 (D.D.C. 2016) .......................22

*Heller v. District of Columbia* (*Heller II*), 399 U.S. App. D.C. 314, 670 F.3d 1244, (2011) ...............................................................................................................18, 22

*Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015) *(Heller III)* ............22

*Jackson v. City of S.F.*, 746 F.3d 953 (9th Cir. 2014) .....................13, 17, 18, 19, 21

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) ............................................21

*Maloney v. Singas*, 351 F. Supp. 3d 222 (S.D.N.Y. 2018)......................................12

*McDonald v. City of Chi.*, 561 U.S. 742, 130 S. Ct. 3020 (2010) ............................ 22

*Minority Television Project, Inc. v. F.C.C.*, 736 F.3d 1192 (9th Cir. 2013) ............ 25

*New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015) . 7, 8, 10

*NRA v. BATF*, 700 F.3d 185 (5th Cir. 2012) ............................................................ 14

*People v. Mercer*, 42 Cal. App. 4th Supp. 1 (1995) .................................................. 17

*People v. Webb,* 2019 IL 122951 ............................................................................... 17

*People v. Yanna*, 824 N.W.2d 241 (Mich. Ct. App. 2012) ....................................... 17

*Ramirez v. Commonwealth*, 479 Mass. 331, 94 N.E.3d 809 (2018) (Apr. 17, 2018)
    ...................................................................................................................................... 17

*Robertson v. Harris*, 2015 U.S. Dist. LEXIS 90068, 2015 WL 4196521 ................. 2

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) .................................................... 20

*State v Griffin*, 2011 WL 2083893, 2011 Del Super LEXIS 193, (Del Super Ct,
    May 16, 2011) ............................................................................................................ 12

*State v. Blocker*, 291 Ore. 255, 630 P.2d 824, 1981 Ore. LEXIS 915 .................... 11

*State v. Deciccio*, 105 A.3d 165 (Conn. 2014) ................................... 9, 10, 11, 12, 16

*State v. Delgado*, 692 P.2d 610 (1984) .................................................................... 12

*State v. Herrmann*, 2015 WI App 97 ........................................................................ 12

*State v. Kessler*, 289 Ore. 359, 614 P.2d 94, 1980 Ore. LEXIS 1031 ..................... 11

*State v. Montalvo*, 162 A.3d 270 (2017) .................................................................. 12

*Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707 (1981) ........ 19

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ...................... 13, 15, 16, 18

*United States v. Henry*, 688 F.3d 637 (9th Cir. 2012) ................................................. 6

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ...................................... 18

*United States v. Miller,* 307 U.S. 174, 59 S. Ct. 816 (1939) ..................................... 9

*Valle Del Sol Inc. v. Whiting*, 709 F.3d 808 (9th Cir. 2013) .................................... 20

*Wrenn v. District of Columbia*, 431 U.S. App. D.C. 62, 864 F.3d 650, 659 (2017).
    ...................................................................................................................................... 13

## STATUTES

California Penal Code § 22210 ................................................................................. 4, 5

D.C. Code § 22-4514 ............................................................................................... 6

ORS 166.510 ........................................................................................................... 11

R.I. Gen. Laws § 11-47-2(a)(1) .............................................................................. 6

Stats. 1917, ch. 145, § 2 .......................................................................................... 12

## OTHER AUTHORITIES

2 The Writings of Samuel Adams 119 (1904) .......................................................... 1

*Black's Law Dictionary* 451 (9th ed. 2009) ............................................................. 6

COMMENT: SECOND AMENDMENT DECISION RULES, NON-LETHAL
    WEAPONS, AND SELF-DEFENSE, 97 Marq. L. Rev. 853, 862 (Spring 2014) . 7

D. Kopel, 'The Second Amendment in the Nineteenth Century,' 1998 BYU L. Rev.
    1359 ................................................................................................................. 9

Robert Dowlut, The Right to Arms: Does the Constitution or the Predilection of
    Judges Reign? 36 OKLA. L.REV. 65, 96 (1983) .................................................. 14

Stephen P. Halbrook, The Founders' Second Amendment 25 (2008) ....................... 1

Symposium: The Second Amendment and the Right to Bear Arms After *D.C. V.
    Heller*: Implementing the Right to Keep and Bear Arms for Self-Defense: An
    Analytical Framework and a Research Agenda, 56 UCLA L. Rev. 1443, 1480 .... 8

## RULES

Fed. R. Civ. P. 56(a) ............................................................................................... 2

## TREATISES

William Lawrence Clark, William Lawrence Marshal New York, Fred B Rothman
    & Co., A Treatise on the Law of Crime (1905) ................................................... 14

## I. INTRODUCTION

Plaintiffs wish to own policeman batons for purposes of self-defense and all other lawful purposes. These are the arms that most police officers in California are issued to engage in less than lethal force. In fact, both Plaintiffs have received formal training in their use: Plaintiff Tolentino in the Air Force and Plaintiff Fouts while working in security. They were trained in their use because batons are an effective means of self-defense. They are commonly possessed arms and the State has no government interest in banning their possession, especially in the home. Important in this matter is to establish the scope of Plaintiffs' challenge. Plaintiffs are challenging the California's prohibition on billies. Billies/batons are modern day clubs which at the time of the Founding, were considered constitutionally protected arms:

> In the press, Samuel Adams argued that the slain Mr. Attucks "was leaning upon his stick when he fell, which certainly was not a threatening posture: It may be supposed that he had as good right, by the law of the land, to carry a stick for his own and his neighbor's defence, in a time of danger, as the Soldier who shot him had, to be arm'd with musquet and ball, for the defence of himself and his friend the Centinel."

– Stephen P. Halbrook, The Founders' Second Amendment 25 (2008), quoting 2 The Writings of Samuel Adams 119 (1904).

This Court should find California's ban on billies unconstitutional for all the reasons laid out below.[1]

_____

[1] Plaintiffs use the terms billy and baton interchangeably. ("Petitioner accordingly
(continued…)

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment
(19-cv-01662-BEN-JLB)

## II. STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

## III. PLAINTIFFS AND THEIR EXPERT

### A. Plaintiff Russell Fouts

Plaintiff Fouts desires to purchase the same type of baton/billy policemen are usually issued and an expandable baton for self-defense and other lawful purposes in his home, business, whilst traveling between these locations and in all other locations. *See* Declaration of Russell Fouts, Exhibit "A". Fouts has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under California or federal law. Fouts does not take illegal drugs or abuse alcohol. Fouts wants to purchase a billy, but fears prosecution for possessing it. While living in Oregon, Fouts was licensed by the State of Oregon: Department of Public Safety Standards and Training to use non-firearm weapons, including billies, in a security role as a private security contractor. In that capacity, Fouts carried a billy for purposes of self-defense and to perform his job functions. But for California law,

---

had notice that his baton could be considered a billy.") *See Robertson v. Harris*, 2015 U.S. Dist. LEXIS 90068, *39, 2015 WL 4196521.

Plaintiff Fouts would acquire, possess, carry, and where appropriate use a billy to protect himself, his home, his family, and business.

### B.   Plaintiff Tan Miguel Tolentino

Plaintiff Tolentino desires to purchase the same type of baton/billy policemen are usually issued and an expandable baton for self-defense and other lawful purposes in his home, business, whilst traveling between these locations and in all other lawful locations.  *See* Declaration of Tan Miguel Tolentino, Exhibit "B". Tolentino is an honorably discharged Airman and served as an 81152 Law Enforcement Specialist in the United States Air Force.  Plaintiff received extensive billy training in the Air Force and carried a billy in the performance of his job duties in the Air Force.

Tolentino studied Arnis and Kali under Narrison Babao, Jr. Arnis and Kali are Filipino martial art forms which focus on stick fighting.  Tolentino is a Filipino American and currently lives and works in the San Diego area.  Tolentino wishes to purchase a standard issue policeman billy/baton and an expandable baton for lawful self-defense and does not solely due to California law. Tolentino has never been convicted of a crime that would disqualify him from firearms ownership under either California or Federal law. Tolentino does not take illegal drugs or abuse alcohol. Plaintiff Tolentino legally owns firearms. Tolentino has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under California or federal law. Tolentino desires to purchase a billy, but fears prosecution for possessing it and has therefore refrained from purchasing one.  But for California

law, Tolentino would acquire, possess, carry, and where appropriate use a billy to protect himself, his home, his family, and business.

### C. Plaintiffs' Expert Rebuttal Report and Declaration of Leofuldo Tablanza, II

Plaintiffs submitted an Expert Rebuttal Report and Declaration by Leofuldo Tablanza, II ("Tablanza"). *See* Exhibit "C". Tablanza is a Military Police Combat Veteran and former Marine. He is trained in a variety of weapons, including the baton, and served as a Non-Lethal Weapons Instructor. He has deployed to Japan, Guantanamo Bay, Egypt, Iraq and even to assist in the Hurricane Katrina response. Tablanza states that "[a] civilian could use the ASP [collapsible baton] for self-defense, just as well as they could with any household item." He also states that in Oregon, where he lives, a "civilian can possess a firearm and ASP without any training." He further opines that "[t]here is no reason that civilians need to be certified to carry an ASP." *Id*.

## IV. CALIFORNIA'S BANS BATONS AND IT IMPLICATES THE SECOND AMENDMENT

California Penal Code § 22210 states as follows:

> … any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any leaded cane, or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot, is punishable by imprisonment in a county jail not exceeding one year …

Section 22210 does not provide any relevant exceptions which allow Plaintiffs to possess a billy, even in their own home, and operates as a complete ban on billies. As stated above, Plaintiffs <u>do not</u> challenge the other prohibitions on weapons

included in § 22210, except for the ban on billies.

> To determine whether the law burdens protected conduct, this court appears to ask four questions. First, as a threshold matter, we determine whether the law regulates "arms" for purposes of the Second Amendment. [citation omitted]. Second, we ask whether the law regulates an arm that is *both* dangerous *and* unusual. [citation omitted]. If the regulated arm is both dangerous and unusual, then the regulation does not burden protected conduct and the inquiry ends. Third, we assess whether the regulation is longstanding and thus presumptively lawful. [citation omitted]. And fourth, we inquire whether there is any persuasive historical evidence in the record showing that the regulation affects rights that fall outside the scope of the Second Amendment. [citation omitted]. If either of these latter questions is found in the affirmative, the law does not burden protected conduct and the inquiry ends.

*Duncan v. Becerra*, No. 19-55376, 2020 U.S. App. LEXIS 25836, 19-20 (9th Cir. Aug. 14, 2020).

### A.   Batons Are Arms

"[A]rms" refer to "weapons of offence, or armour of defence," or "anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another," *District of Columbia v Heller*, 554 US 570; 128 S Ct 2783; 171 L Ed 2d 637, 647 (2008) (quotation marks and citations omitted). Batons fit with in that definition because they are designed to be borne by a single person to be used to attack or defend himself against others.[2] Batons are commonly issued to California's police officers as part of their standard gear.  They are "arms" because they are

---

[2] *See* Exhibit "F", Fouts' Interrogatory Response No. 2, p.5 "Billies are a hand wielded tool…"; Response No. 3. p.6 "Billies/batons are hand-wielded personal defense weapons.  They are deployed and controlled with a hand which is then used in close quarters."

bearable weapons.   Thus, the next question is whether they are dangerous *and*
unusual.

## B.   Batons Are Not Dangerous and Unusual Arms

Batons are not "dangerous and unusual" weapons.  In *United States v Henry*,
the Ninth Circuit held:

> An object is "dangerous" when it is "likely to cause serious bodily
> harm." *Black's Law Dictionary* 451 (9th ed. 2009) … A machine gun is
> "unusual" because private possession of all new machine guns, as well
> as all existing machine guns that were not lawfully possessed before the
> enactment of § 922(o), has been unlawful since 1986. Outside of a few
> government-related uses, machine guns largely exist on the black
> market.

*United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) "A weapon may not be
banned unless it is *both* dangerous *and* unusual."  *Duncan*, 2020 U.S. App. LEXIS
25836 at *22 (citation omitted).  Thus, if it can be demonstrated that an arm is either
usual or not dangerous it receives Second Amendment protection. As shown below,
batons are neither dangerous nor unusual.

Arms such as batons are typically owned for lawful purposes and receive
constitutional protection. Batons are widely owned in almost every state in the Union.
Batons are legal to own in the home in at least 46 states plus the District of Columbia.[3]

---

[3] Batons remain illegal in California, Colorado, and New York.  The District of
Columbia bans blackjacks, but not batons.  *See* D.C. Code § 22-4514.  Rhode Island
arguably allows possession in the home, but due to the vagueness of the law, it is
identified separately (*see* R.I. Gen. Laws § 11-47-2(a)(1), *but see* subsection (b)
which allows the sale of the weapons listed in subsection (a) with "written
authorization of the minor's parent or legal guardian".

Batons are a subset of clubs and are themselves typically used for lawful purposes. Like the large capacity magazines in *Duncan*, they are protected. And the record demonstrates that they are possessed for self-defense. *See generally*, Reports of Fichtner and Tablanza, Exs. "D" & "C". While the record does not provide numerical data, the widespread legality and lawful typical use of batons are sufficient to establish they are in common use.[4,5] This is especially true here where numerical data simply does not exist because unlike firearms[6] and magazines, there is no single

----

[4] "Commonality is determined largely by statistics. But a pure statistical inquiry may hide as much as it reveals.  In the Second Amendment context, protected arms may not be numerically common by virtue of an unchallenged, unconstitutional regulation. Our colleagues in the Third and Seventh Circuits agree. *See* [*Ass'n of N.J. Rifle & Pistol Clubs v. AG N.J.*, 910 F.3d 106, 116 n. 15 (3d Cir. 2018)] (common use alone 'is not dispositive' because of an unconstitutional regulation restricting the quantity of protected arms in circulation); *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015) ('[I]t would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned. A law's existence can't be the source of its own constitutional validity.'). Thus, '[w]hile common use is an objective and largely statistical inquiry, typical possession requires us to look into both broad patterns of use and the subjective motives of gun owners.' *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 256 (2d Cir. 2015) ("*NYSRPA*") (internal alterations and quotation marks omitted)." *Duncan v. Becerra*, No. 19-55376, 2020 U.S. App. LEXIS 25836, at *23 (9th Cir. Aug. 14, 2020).

[5] *See also* COMMENT: SECOND AMENDMENT DECISION RULES, NON-LETHAL WEAPONS, AND SELF-DEFENSE, 97 Marq. L. Rev. 853, 862 (Spring 2014): "The most common and easy-to-use weapons for self-defense purposes are batons. With the exception of some projectiles, blunt force objects are some of the oldest and most predominantly used non-lethal weapons because they can be easily manipulated and are inexpensive."

[6] Firearm sales are aggregated by the National Shooting Sports Foundation (NSSF). For example, *see* https://www.nssf.org/nssf-releases-firearms-production-figures/.

trade group that keeps track of baton sales.[7]

Moreover, *Heller* holds that once an item is established as an arm, it creates a rebuttal presumption that the arm receives Second Amendment protection: "[t]he Supreme Court held that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, *even those that were not in existence at the time of the founding.*'" *Duncan,* 2020 U.S. App. LEXIS 25836, *22 (citation omitted). Thus, in *NYSRPA I,* the Second Circuit struck a ban on a pump-action rifle because the state focused exclusively on semiautomatic weapons and "the presumption that the Amendment applies remain[ed] unrebutted." 804 F.3d at 257.There is no dispute that batons are bearable arms because they can be held by a person to attack another person. Thus, the burden is on the government to show that they are not usual protected arms. Defendant has never attempted to rebut that presumption.  This Court should find that batons are not unusual arms.

More evidence that batons are usual arms is the fact "peace offices employed by the California Department of Justice are generally issued the ASP expandable baton … [and] peace officers employed by other California law enforcement agencies may be issued different police batons…" *See* Defendant's Responses to

---

[7] *See also* Symposium: The Second Amendment and the Right to Bear Arms After *D.C. V. Heller*: Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda, 56 UCLA L. Rev. 1443, 1480 ("… we're even more in the dark about the prevalence of nearly all weapons other than guns, such as fighting knives and billy clubs.").

Interrogatories, No. 6, p. 11; Exhibit "E". Historically, policing was a militia function. "Furthermore, the widespread use of the baton by the police, who currently perform functions that were historically the province of the militia; see, e.g., D. Kopel, 'The Second Amendment in the Nineteenth Century,' 1998 BYU L. Rev. 1359, 1534 demonstrates the weapon's traditional military utility." *State v. Deciccio,* 315 Conn. 79, 133, 105 A.3d 165, 200, 2014 Conn. LEXIS 447, *87. The Constitution as originally adopted granted to Congress the power – "[t]o provide for calling forth the Militia to **execute the Laws of the Union**, suppress Insurrections and repel Invasions." *United States v. Miller,* 307 U.S. 174, 178 59 S. Ct. 816 (1939) (emphasis added).   Batons are "'[a]rms' within the meaning of the second amendment because they are weapons with traditional military utility that are typically possessed by law-abiding citizens for lawful purposes, and they are neither especially dangerous nor unusual." *State v. Deciccio*, 315 Conn. 79, 129, 105 A.3d 165, 198 (2014).

Even if this Court were to find that batons are unusual, they still receive Second Amendment protection because an arm must be dangerous <u>and</u> unusual to lose its Second Amendment protection. "A weapon may not be banned unless it is *both* dangerous *and* unusual." *Duncan*, 2020 U.S. App. LEXIS 25836, *22. And within the context of the dangerous and unusual analysis, batons are not "dangerous". That is because *Heller* established that handguns are not dangerous enough to be considered "dangerous" for this analysis.  And the State has conceded that batons are

"generally less lethal than firearms…"  *See* Report of Fichtner, Exhibit "D", ¶ 22. *See also* Exhibit "G", Tolentino Interrogatory Response No. 2 (considers Billies non-lethal); Response No. 6 (considers Billies non-lethal self-defense tool); *See also* Exhibit "F", Fouts' Interrogatory Response No. 2 ("… I think of billies/batons as non-lethal or less-than-lethal."

Because batons are less dangerous than handguns which the *Heller* court found to be the "quintessential self-defense weapon", they are not dangerous and unusual. *See Heller,* 554 U.S. at 629.  Batons cannot therefore be legally "dangerous" and lose Second Amendment protection.  Handguns are both concealable in the pocket and are much more dangerous than any type of baton.

As the Second Circuit observed, *Heller* holds there is a presumption that arms are constitutionally protected, and the burden is on the government to rebut that presumption. "*Heller* emphasizes that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms.' *Heller*, 554 U.S. at 582. In other words, it identifies a presumption in favor of Second Amendment protection, which the State bears the initial burden of rebutting." *See New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257 (2d Cir. 2015). The State has not done so here.

The Connecticut Supreme Court has already found that batons are protected by the Second Amendment. In *State v. Deciccio*, 315 Conn. 79, 117, 105 A.3d 165, 191, 2014 Conn. LEXIS 447, the court found that billies are protected by the Second Amendment and a complete ban on their possession is unconstitutional ("For these

reasons, we are persuaded that the police baton that the defendant had in his vehicle is the kind of weapon traditionally used by the state for public safety purposes and is neither so dangerous nor so unusual as to fall outside the purview of the second amendment's right to keep and bear arms"). *State v. Deciccio,* 315 Conn. 79, 133-134, 105 A.3d 165, 200-201, 2014 Conn. LEXIS 447, *89-92.

The Oregon Supreme Court's right to arms analysis "mirrors the model employed by the United States Supreme Court in *District of Columbia v. Heller*, supra, 554 U.S. 624-25". *See State v. Deciccio*, 315 Conn. 79, 117, 105 A.3d 165, 191, 2014 Conn. LEXIS 447, *63.  In *State v. Kessler*, 289 Ore. 359, 614 P.2d 94, 1980 Ore. LEXIS 1031, the Oregon Supreme Court found:

> The club is considered the first personal weapon fashioned by humans. O. Hogg, Clubs to Cannon 19 (1968). The club is still used today as a personal weapon, commonly carried by the police. ORS 166.510 prohibits possession of a "billy;" … The statute in this case, ORS 166.510, prohibits the mere possession of a club. The defendant concedes that the legislature could prohibit carrying a club in a public place in a concealed manner, but the defendant maintains that the legislature cannot prohibit all persons from possessing a club in the home. The defendant argued that a person may prefer to keep in his home a billy club rather than a firearm to defend against intruders. Our historical analysis of Article I, section 27, indicates that the drafters intended "arms" to include the hand-carried weapons commonly used by individuals for personal defense. The club is an effective, hand-carried weapon which cannot logically be excluded from this term. We hold that the defendant's possession of a billy club in his home is protected by Article I, section 27, of the Oregon Constitution.

In *State v. Blocker*, 291 Ore. 255, 630 P.2d 824, 1981 Ore. LEXIS 915, the Oregon Supreme Court extended this ruling to find private citizens have a right to possess

billy clubs outside the home.

Federal courts have used a similar analysis to find other self-defense arms are protected by the Second Amendment. In *Maloney v. Singas*, 351 F. Supp. 3d 222 (S.D.N.Y. 2018), the United States District Court for the Southern District of New York struck the State of New York's ban on nunchucks as a violation of the Second Amendment because they are bearable arms typically used for lawful purposes. A federal court in the Northern District of New York used a similar analysis to strike New York State's ban on electric arms. *See Avitabile v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019).[8]

### C.   The Law at Issue is Not Longstanding

California's ban on billies began in 1917. Stats. 1917, ch. 145, § 2.  A law from the early 20th century is not longstanding. Longstanding laws refer to laws from the

---

[8] Knives designed for self-defense are also weapons protected by the Second Amendment. *See State v. Herrmann*, 873 N.W.2d 257 (Wis. Ct. App. 2015) (finding switchblades are protected by the Second Amendment and that Wisconsin's complete ban on their possession was unconstitutional); *State v. DeCiccio*, 105 A.3d 165 (Conn. 2014) (dirks and batons protected by the Second Amendment as "typically possessed by law-abiding citizens for lawful purposes" and not "dangerous and unusual weapons"); *State v. Montalvo*, 162 A.3d 270 (2017) (in-the-home possession of machete-type knives protected by the Second Amendment); *State v Griffin*, 2011 Del Super LEXIS 193, *26 n62 (Del Super Ct, May 16, 2011) (reversed and remanded on other grounds by *Griffin v. State*, 47 A.3d 487, 2012 Del. LEXIS 319 (Del., June 18, 2012) (the "right to keep and bear arms" under the Delaware Constitution extends to knives, and concluding that the Second Amendment right does the same); *City of Akron v Rasdan*, 663 NE2d 947 (Ohio Ct. App., 1995) (concluding that the "right to keep and bear arms" under the Ohio Constitution extends to knives); *State v. Delgado*, 692 P.2d 610 (1984) (ban on the possession of switchblades violated the Oregon Constitution's right to arms).

ratification of the Second Amendment and arguably the Fourteenth Amendment.[9]

> In our circuit, we have looked for evidence showing whether the challenged law traces its lineage to founding-era or Reconstruction-era regulations. In *Chovan*, for example, we expressed strong doubts that bans on firearm possession for violent offenders were sufficiently longstanding because the first known restriction was not enacted until 1938. … In *Jackson*, we reviewed regulations on handgun storage and sales of certain ammunition, keying our analysis to analogues in founding-era and Reconstruction-era fire safety laws.

*See Duncan v. Becerra*, 2020 U.S. App. LEXIS 25836, *30.

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, 554 U.S. at 634-35.  Thus, "the Supreme Court has taught in *Heller I* that legal regulations of possession or carrying that are 'longstanding'…reflect limits to the preexisting right protected by the Amendment." *Wrenn v. District of Columbia*, 431 U.S. App. D.C. 62, 864 F.3d 650, 659 (2017).  That means we look to the "historical background of the Second Amendment." *Heller*, 554 U.S. at 592. Some have argued that *Heller's* citation to prohibitions on "felons and the mentally ill" refer to the modern iteration of these laws. However, *Heller* cites to prohibitions on "felons and the mentally ill" as examples of longstanding prohibitions because colonial and early English societies prohibited them from owning firearms. *Id* at 626.

At common law, there were there were three classes of crime: treason, felony,

---

[9] Plaintiffs do not concede that laws from the ratification of the 14th Amendment are longstanding.

and misdemeanor. Felonies were those offenses which occasioned forfeiture of the lands and goods of the offender and to which might be added death or other punishment according to the degree of guilt. 4. Bl. Comm. 94; *Fasset v. Smith*, 23 N.Y. 257(1891); *Bannon v. U.S*., 156 U.S. 464 (1895). The felonies were murder, manslaughter, rape, sodomy, robbery, larceny, arson, burglary, and arguably mayhem. *See* William Lawrence Clark, William Lawrence Marshal New York, Fred B Rothman & Co., A Treatise on the Law of Crime (1905) at 12. All other crimes, excepting treason, were misdemeanors.

"[A]t the time of the founding, 'the right to arms was inextricably and multifariously linked to that of civic virtu (i.e., the virtuous citizenry),' and that '[o]ne implication of this emphasis on the virtuous citizen is that the right to arms does not preclude laws disarming the unvirtuous citizens (i.e., criminals) or those who, like children or the mentally imbalanced, are deemed incapable of virtue.'" *NRA v. BATF*, 700 F.3d 185, 201 (5th Cir. 2012) (citation omitted). Historically, the State disarmed non-virtuous citizens and those like children or the mentally unbalanced, who were deemed incapable of virtue. *See, e.g.* Robert Dowlut, The Right to Arms: Does the Constitution or the Predilection of Judges Reign? 36 OKLA. L.REV. 65, 96 (1983) ("Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded infants, idiots, lunatics, and felons [from possessing firearms]."). *Heller* cites to these colonial prohibitions on felons and the mentally ill as part of its historical analysis to explain the scope of the Second Amendment right

1    in 1791.

2        While it is true that dicta from *Fyock* suggests that "early twentieth century

3

4    regulations might nevertheless demonstrate a history of longstanding regulation if

5    their historical prevalence and significance is properly developed in the record", this

6
     dicta is not binding on this court. *Fyock v. City of Sunnyvale*, 779 F.3d 991, 997 (9th
7

8    Cir. 2015).  "When an opinion issues for the Court, it is not only the result but also

9    those portions of the opinion necessary to that result by which we are bound."

10
     *Seminole Tribe v. Fla*., 517 U.S. 44, 67.  Here, *Fyock's* dicta about longstanding
11

12   regulation was not necessary to its result. In *Fyock,* the court found that the magazine

13   law at issue was not longstanding, high capacity magazines are protected by the

14
     Second Amendment and then applied intermediate scrutiny to uphold the ban. *Fyock*,
15

16   779 F.3d at 1001. "The limited nature of that opinion [*Fyock*] is self-evident; in its

17   eight pages, it referenced the abuse of discretion standard twelve times, and it

18
     repeatedly emphasized the narrow scope of the ruling." *Duncan v. Becerra*, 2020
19

20   U.S. App. LEXIS 25836, *61. More to the point, *United States v. Chovan*, 735 F.3d

21   1127 (9th Cir. 2013) predates *Fyock,* and when a panel contradicts each other,

22
     generally the earlier panel opinion must be the controlling precedent because the later
23

24   panel cannot overrule the prior panel. See *Avagyan v. Holder*, 646 F.3d 672, 677 (9th

25   Cir. 2011) ("A three-judge panel cannot reconsider or overrule circuit precedent

26
     unless 'an intervening Supreme Court decision undermines an existing precedent of
27

28   the Ninth Circuit, and both cases are closely on point.'").

In *Chovan*, rejecting the argument that a law from the early 20th century was longstanding was necessary to the holding that a law from 1938 was not longstanding:

> First, it is not clear that such prohibitions are so longstanding. The first federal firearm restrictions regarding violent offenders were not passed until 1938, as part of the Federal Firearms Act…. Because of "the lack of historical evidence in the record before us, we are certainly not able to say that the Second Amendment, as historically understood, did not apply to persons convicted of domestic violence misdemeanors. We must assume, therefore, that [Chovan]'s Second Amendment rights are intact and that he is entitled to some measure of Second Amendment protection to keep and possess firearms in his home for self-defense."

*United States v. Chovan*, 735 F.3d 1127, 1137 (9th Cir. 2013) (citation omitted).

Even if this Court finds *Fyock*'s stray comment persuasive, the record does not demonstrate that bans on a policeman's baton have historical prevalence.  While the State may cite to bans on saps and blackjacks to attempt to demonstrate a history of prohibition, those laws dealt with entirely different types of weapons that were believed to be used primarily by criminals for crime.  But, "… police batons simply are not the same as blackjacks…"  *State v. Deciccio*, 315 Conn. 79, 131, 105 A.3d 165, 199 (2014).  Moreover, those laws primarily dealt with bans on carry not possession.

For the above reasons, this Court should find that the policeman's baton is within the scope of the Second Amendment right. Thus, the remaining issue is what level of scrutiny to apply to a ban on possession even inside the home. This Court should apply strict scrutiny because a ban on possession, even inside the home,

strikes at the core of the Second Amendment right.

## V. APPLYING THE APPROPRIATE LEVEL OF SCRUTINY

### A.    A Categorical Approach Should Apply

"A law that imposes such a severe restriction on the core right of self-defense that it 'amounts to a destruction of the [Second Amendment] right,' is unconstitutional under any level of scrutiny. *Heller*, 554 U.S. at 629." *Jackson v. City of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014). Here, California's ban on billies is analogous to the handgun ban at issue in *Heller*. The State has interpreted the billy ban to apply to any bludgeon. "The concomitant circumstances may well proclaim the danger of even the innocent-appearing utensil. The Legislature thus decrees as criminal the possession of ordinarily harmless objects when the circumstances of possession demonstrate an immediate atmosphere of danger. Accordingly the statute would encompass the possession of a table leg, in one sense an obviously useful item, when it is detached from the table and carried at night in a `tough' neighborhood" *People v. Mercer*, 42 Cal. App. 4th Supp. 1, 5-6 (1995).

A ban on all clubs that can be used as a billy constitutes a class-wide ban on arms for self defense just like the handgun ban in *Heller*. Several state courts have followed *Heller*'s guidance and struck electric gun bans without the need to apply levels of scrutiny. *See People v. Yanna*, 824 N.W.2d 241, 246 (Mich. Ct. App. 2012); *Ramirez v. Commonwealth*, 479 Mass. 331, 94 N.E.3d 809 (2018) (Apr. 17, 2018); *People v. Webb,* 2019 IL 122951. This Court should follow *Heller* and the aforementioned state courts and apply a categorical approach to strike California's ban.

### B.    Strict Scrutiny Should Apply

If this Court does not apply a categorical approach it should apply strict scrutiny. This Circuit employs a two-step test to determine what level of scrutiny to apply to a Second Amendment challenge.

A law that imposes such a severe restriction on the core right of self-defense that it "amounts to a destruction of the [Second Amendment] right," is unconstitutional under any level of scrutiny. *Heller*, 554 U.S. at 629 (internal quotations omitted). By contrast, if a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, we may apply intermediate scrutiny. *See, e.g., Chovan*, 735 F.3d at 1138-39; *cf. Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1257, 399 U.S. App. D.C. 314 (D.C. Cir. 2011) ("[A] regulation that imposes a substantial burden upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify.").

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014).

"[W]e have consistently stated that a law that bans possession of a commonly used arm for self-defense — with no meaningful exception for law-abiding citizens — likely imposes a substantial burden on the Second Amendment." *Duncan,* 2020 U.S. App. LEXIS 25836 at *49. This position finds support in other Ninth Circuit precedent.  In reviewing a ban on the sale, but not possession, of hollow points in *Jackson v. City & County of San Francisco,* the Ninth Circuit stated:

A ban on the sale of certain types of ammunition does not prevent the use of handguns or other weapons in self-defense. The regulation in this case limits only the manner in which a person may exercise Second Amendment rights by making it more difficult to purchase certain types of ammunition. This is akin to a content-neutral time, place, and manner restriction, such as a regulation which prevents a person from owning a firearm with an obliterated serial number while not barring the possession of an otherwise lawful firearm. *See* [*United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010).] Further, section 613.10(g) leaves open alternative channels for self-defense in the home. Jackson may either use fully-jacketed bullets for self-defense or obtain hollow-point bullets outside of San Francisco's jurisdiction. Because section 613.10(g) neither regulates conduct at the core of the Second Amendment right nor burdens that right severely, we review it under

18

1    intermediate scrutiny.

2  *Jackson*, 746 F.3d at 968.

3
4        Here, California's baton ban is more analogous to a content-based speech

5  restriction than the one at issue in *Jackson* because it is a ban on possession, even in

6  the home.   Thus, it causes a substantial burden to Plaintiffs' Second Amendment

7  rights and strict scrutiny applies, and the State of California must demonstrate a

8  compelling government interest to banning these arms that is narrowly tailored to

9
10  achieve that interest.  *See Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450

11  U.S. 707, 718 (1981) ("The state may justify an inroad on religious liberty by

12  showing that it is the least restrictive means of achieving some compelling state

13  interest.").

14
15        Recently, the Ninth Circuit in *Duncan* applied strict scrutiny and held that

16  California's ban on Large Capacity Magazines violated the Second Amendment. It

17  did so despite magazines which hold ten rounds or less are still available and legal.

18  "Section 32310 strikes at the core right of law-abiding citizens to defend hearth and

19
20  home, and the burden imposed on the core right is substantial. As this court has held,

21  where a burden on the core right is substantial, strict scrutiny is appropriate."

22  *Duncan,* 2020 U.S. App. LEXIS 25836 at *34. California similarly bans batons

23
24  "within the home where protections are 'at their zenith.'" *Id.* at 35.  California's ban

25  imposes a substantial burden on Plaintiffs' Second Amendment right to use protected

26
27
28

arms for self-defense.[10]  Applying *Duncan*, strict scrutiny applies.

Like the magazine ban at issue in *Duncan,* the challenged law in this matter bans possession of a protected type of arm (batons). Thus, Circuit precedent supports applying strict scrutiny.  However, as shown below even if this Court applies intermediate scrutiny, California's baton ban is unconstitutional.

### C.   Even if Intermediate Scrutiny Applies, the Law is Unconstitutional

Even if intermediate scrutiny applies, California's ban on batons still fails. Intermediate scrutiny requires that "(1) the government's stated objective . . . be significant, substantial, or important; and (2) there . . . be a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester v. Harris*, 843 F.3d 816, 821-22 (9th Cir. 2016) (quotation omitted). Under the second prong "intermediate scrutiny does not require the least restrictive means of furthering a given end." *Id*. at 827 (quotation omitted). Even a dragnet captures *some* people engaged in criminal activity. The question is not whether there are some nonfalse positives, but whether a law's encroachment on constitutional rights is "more extensive than necessary" to serve the government's interest. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 816 (9th Cir. 2013).

Here, the State cannot have an important government interest in banning policemen batons when handguns are allowed.  While public safety is always a

---

[10] *See* Exhibit "F", Fouts' Responses to Defendant's Interrogatories, No. 9, p. 8 (… "a very basic and easily deployable option of a Billie is not afforded under the law without special permitting/licensing."  *See also* Exhibit "G", Tolentino's Responses to Defendant's Interrogatories No. 9, p.7 ("… I am restricted in what tools I have available to defend myself.")

government interest, the government cannot invoke public safety without a specific rationale.  Here, the State would at least need to show a ban on batons would reduce violent crime and injury. It has not done so, and it cannot do so because batons are no deadlier than baseball bats which are legal to possess.  But even if the purpose was just to keep them out of the hands of criminals, then California could theoretically ban criminals from having them instead of a flat-out ban on everyone, even the law-abiding.  A tailored solution would serve to not punish the law-abiding citizen while at the same time insuring the often repeated "public safety" interest is satisfied.

In any event, for a law to be substantially related to a government interest, the government must demonstrate that the "restriction will in fact alleviate" its concerns. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001). California cannot meet that burden by relying on "mere speculation or conjecture." *Id*.  Instead, it must offer evidence demonstrating that the restriction it seeks to impose will in fact further its stated interests. *See City of Los Angeles v. Alameda Books*, *Inc*., 535 U.S. 425, 437 (2002). The State cannot "get away with shoddy data or reasoning." *Id*. at 438. Here, the State fell well short of meeting its burden. *See, e.g.*, *Jackson*, 746 F.3d at 966 (whether the challenged restriction is "substantially related to the important government interest of reducing firearm-related deaths and injuries").

While the State no doubt has an important interest in promoting public safety and preventing crime, that does not mean that the State necessarily has an important

interest in banning an arm that is typically used for lawful purposes that is less deadly

than the handguns at issue in *Heller* and *McDonald*. *See McDonald v. City of Chi.*,

561 U.S. 742, 783, 130 S. Ct. 3020 (2010) (rejecting the notion that governments

may "enact any gun control law that they deem to be reasonable."). After all, "it

would be hard to persuasively say that the government has an interest sufficiently

weighty to justify a regulation that infringes constitutionally guaranteed Second

Amendment rights if the Federal Government and the states have not traditionally

imposed—and even now do not commonly impose—such a regulation." *Heller v.*

*District of Columbia* (*Heller II*), 399 U.S. App. D.C. 314, 670 F.3d 1244, 1294 (2011)

(Kavanaugh, J., dissenting).

Courts have applied similar reasoning in the Second Amendment context. For

instance, in *Heller v. District of Columbia,* 801 F.3d 264, 280 (D.C. Cir. 2015)

*(Heller III)*, the D.C. Circuit struck down the District of Columbia's prohibition on

registering more than one pistol per month. The District defended that ban as

designed to "promote public safety by limiting the number of guns in circulation,"

based on its theory "that more guns lead to more gun theft, more gun accidents, more

gun suicides, and more gun crimes." *Id.* But the court rejected that simplistic

syllogism, explaining that "taken to its logical conclusion, that reasoning would

justify a total ban on firearms kept in the home," and so it simply cannot be right. *Id.*;

*see also  Grace v. District of Columbia,* 187 F. Supp. 3d 124, 148 (D.D.C. 2016)

(reasoning that "it is not a permissible strategy to reduce the alleged negative effects

of a constitutionally protected right by simply reducing the number of people exercising the right" (quotation marks omitted)). In other words, the government may not adopt a law with the design and direct effect of limiting the quantity of conduct protected by the Second Amendment.

Here, the State does not present evidence that its ban on batons promotes public safety by banning batons in the home, because assuming a ban on carrying them outside the home is justified, it does not follow that it promotes *public* safety to ban them in the home.  For the forgoing reasons, the State does not have an important government interest in banning batons.

## VI.   THERE IS NOT A REASONABLE FIT TO THE BAN AND PUBLIC SAFETY

Assuming *arguendo* that batons are used by criminals, that does not mean that there is a reasonable fit between public safety and banning possession of batons for law abiding citizens even in the home.  If that was all that was needed, then *Heller* would have been decided the other way.  "Handguns also appear to be a very popular weapon among criminals." *District of Columbia v. Heller*, 554 U.S. 570, 698 (Breyer Dissenting). However, the *Heller* majority rejected the dissents' position that because criminals may misuse handguns that this was a sufficient rationale to ban handguns under any level of heightened scrutiny.  Addressing the State's suggestions about needing training and that batons should only be for law enforcement (*see generally* Report of Fichtner, ¶¶ 33-35, Exhibit "D"), the statute is very nearly the definition of a law does not have a "fit between the legislature's ends and the means chosen to

accomplish those ends." *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1170 (S.D. Cal. 2019) (citations omitted).  The State could theoretically ban possession of batons by people with a criminal record or by minors. But instead, it bans possession by all citizens, including law-abiding citizens, such as the Plaintiffs in this case.

The State's rationale is even less strong than the one rejected by the *Heller* majority. In *Heller*, the Court was confronted with a ban on handguns which was "tailored to the urban crime problem in that it is local in scope and thus affects only a geographic area both limited in size and entirely urban; the law concerns handguns, which are specially linked to urban gun deaths and injuries, and which are the overwhelmingly favorite weapon of armed criminals". *District of Columbia v. Heller*, 554 U.S. 570, 681-682, 128 S. Ct. (Breyer Dissenting).  The Supreme Court rejected both the District of Colombia's arguments and the dissent's arguments and held that "a complete prohibition of [handgun] use is invalid". *District of Columbia v. Heller*, 554 U.S. 570, 629.

In *Heller*, it was argued that it was permissible to ban handguns because citizens could own long arms in the District.  The State appears to do the same here. The State's expert witness stated that "[r]estricting civilian access to police batons and billies will not materially affect their ability to defend themselves."  *See* Exhibit "D", ¶ 34.  The Supreme Court in *Heller* found "[i]t is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (*i.e.*, long guns) is allowed." *Id.*

The State has not shown that its ban is "narrowly tailored to achieve the compelling state interests it purports to serve" and "… the means chosen by the state are not substantially related to serving those interests."  *Duncan*, 2020 U.S. App. LEXIS 25836 at 65. "As the Supreme Court succinctly noted in a commercial speech case, narrow tailoring requires 'a fit between the legislature's ends and the means chosen to accomplish those ends.'" *Minority Television Project, Inc. v. F.C.C.*, 736 F.3d 1192, 1204 (9th Cir. 2013) (quoting *Bd. of Tr. of the State Univ. of New York v. Fox*, 492 U.S. 469, 480, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989))." *See Duncan*, 366 F. Supp. 3d at 1170. The State has not demonstrated a valid government public safety interest in banning batons, and even if there was one, a complete ban is not a reasonable fit to fulfill that interest.

## VII. CONCLUSION

This Court should deny Defendants' Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

Dated: September 11th, 2020

/s/ Alan Alexander Beck
Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
State Bar No. 276646
Alan.alexander.beck@gmail.com
Attorneys for Plaintiffs
RUSSELL FOUTS and
TAN MIGUEL TOLENTINO

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice