ALAN ALEXANDER BECK
LAW OFFICE OF ALAN BECK
2692 HARCOURT DRIVE
SAN DIEGO, CA  92123
(619) 905-9105
STATE BAR NO. 276646
ALAN.ALEXANDER.BECK@GMAIL.COM
ATTORNEYS FOR PLAINTIFFS
RUSSELL FOUTS AND
TAN MIGUEL TOLENTINO

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. BOX 4008
MADISON, MS  39130
(601) 852-3440
STEPHEN@SDSLAW.US
MS BAR NO. 102784
 *ADMITTED PRO HAC VICE

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL FOUTS and TAN MIGUEL TOLENTINO,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**XAVIER BECERRA, in his official capacity as the Attorney General of the State of California,**<br><br>Defendant. | 19-cv-01662-BEN-JLB<br><br><br>**DECLARATION OF STEPHEN D. STAMBOULIEH IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; EXHIBITS A-G**<br><br>Judge:        Hon. Roger T. Benitez<br>Courtroom:   5A<br>Hearing Date: October 19, 2020<br>Hearing Time: 10:30 AM |

**DECLARATION OF STEPHEN D. STAMBOULIEH**

1.  I am an attorney with the law firm of Stamboulieh Law, PLLC, counsel for Plaintiffs in the above-captioned action.  I am admitted *pro hac vice* in this matter.

2.  I am authorized and competent to testify to the matters contained in this declaration, and unless otherwise indicated, I make this declaration based upon personal knowledge.

1

3. I am an attorney licensed to practice in all state and federal courts in Mississippi; the Northern District of Texas; Southern District of Texas; Washington, D.C. District Court; Second, Third, Fourth, Fifth, Sixth, Ninth & District of Columbia Circuit Courts of Appeals; United States Court of Federal Claims; Northern District of New York; and the United States Supreme Court. I am a member in good standing of all the aforementioned courts.

4. A true and correct copy of the Declaration of Russell Fouts is attached hereto as Exhibit "A".

5. A true and correct copy of the Declaration of Tan Miguel Tolentino is attached hereto as Exhibit "B".

6. A true and correct copy of the Plaintiffs' Expert Rebuttal Report and Declaration of Leofuldo Tablanza II is attached hereto as Exhibit "C".

7. A true and correct copy of the Defendant's Expert Report and Declaration of Brian Fichtner is attached hereto as Exhibit "D".

8. A true and correct copy of the Defendant's Response to Plaintiffs' First Set of Interrogatories, Interrogatory No. 6. is attached hereto as Exhibit "E".

9. A true and correct copy of Plaintiff Fouts' Responses to Defendant's First Set of Interrogatories is attached hereto as Exhibit "F".

10. A true and correct copy of Plaintiff Tolentino's Responses to Defendant's First Set of Interrogatories is attached hereto as Exhibit "G".

Declaration of Stephen D. Stamboulieh
(19-cv-01662-BEN-JLB)

1   I declare under penalty of perjury that the foregoing is true and correct.  Executed

2   within the United States on September 11, 2020.

3

4

5   _____

6   **STEPHEN D. STAMBOULIEH**

7   Declarant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Stephen D. Stamboulieh
(19-cv-01662-BEN-JLB)

# EXHIBITS

## TABLE OF CONTENTS

| EXHIBIT | DESCRIPTION | PAGES |
|---------|-------------|-------|
| A | Declaration of Russell Fouts | 001-003 |
| B | Declaration of Tan Miguel Tolentino | 004-006 |
| C | Expert Rebuttal Report and Dec. of Leofuldo Tablanza II | 007-014 |
| D | Expert Report and Dec. of Brian Fichtner | 015-025 |
| E | Defendant's Response to Plaintiffs' Int. No. 6. | 026-029 |
| F | Pl. Fouts' Responses to Def.'s Interrogatories | 030-044 |
| G | Pl. Tolentino's Responses to Def.'s Interrogatories | 045-058 |

1  ALAN ALEXANDER BECK
2  LAW OFFICE OF ALAN BECK
   2692 HARCOURT DRIVE
3  SAN DIEGO, CA  92123
   (619) 905-9105
4  STATE BAR NO. 276646
5  ALAN.ALEXANDER.BECK@GMAIL.COM
   ATTORNEYS FOR PLAINTIFFS
6  RUSSELL FOUTS AND
7  TAN MIGUEL TOLENTINO

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. BOX 4008
MADISON, MS  39130
(601) 852-3440
STEPHEN@SDSLAW.US
MS BAR NO. 102784
 *ADMITTED PRO HAC VICE

8
9                  IN THE UNITED STATES DISTRICT COURT
10              FOR THE SOUTHERN DISTRICT OF CALIFORNIA
11
12

13  **RUSSELL FOUTS and TAN**
    **MIGUEL TOLENTINO,**
14
                          Plaintiffs,
15
         **v.**
16
17  **XAVIER BECERRA, in his official**
    **capacity as the Attorney General of**
18  **the State of California,**
19
                          Defendant.
20

19-cv-01662-BEN-JLB

**DECLARATION OF RUSSELL**
**FOUTS**

Judge:         Hon. Roger T. Benitez
Courtroom:     5A
Action Filed:  September 1, 2019
Hearing:       TBA

21
22
23
24
25
26
27
28

                          Exhibit "A"

                    Declaration of Russell Fouts
                       (19-cv-01662-BEN-JLB)

**001**

1

2

3

## <u>DECLARATION OF RUSSELL FOUTS</u>

**COMES NOW**, Russell Fouts, and states as follows:

1.  I am an adult male resident of the State of California and reside in San Diego County and am competent to testify as to matters set forth in this declaration.

2.  I desire to purchase the same type of baton/billy that policemen are usually issued and an expandable baton for self-defense and other lawful purposes for use in my home, business, while traveling between these locations and in all other lawful locations.

3.  While I want to purchase a standard issue policeman baton/billy and an expandable baton for lawful self-defense, I do not solely due to California law banning them.

4.  When I lived in Oregon, I was licensed by the State of Oregon, Department of Public Safety Standards and Training to use non-firearm weapons, including billies, in a security role as a private security contractor.

5.  In that capacity, I carried a billy for the purpose of self-defense and to perform my job functions.

6.  I have never been convicted of a crime that would disqualify me from firearms ownership under either California or Federal law.

7.  I do not take illegal drugs nor abuse alcohol.

8.  I have never been diagnosed with a mental disorder that would disqualify me from firearms ownership under either California or Federal law.

9.  I would purchase a billy/baton, but fear prosecution for possessing it and therefore have refrained from purchasing one.

10. But for California's law banning possession of a billy/baton, I would acquire, possess, carry, and where appropriate use a billy to protect myself, my home, my family and my business.

**FURTHER, DECLARANT SAYETH NAUGHT**.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on September __10__, 2020 in San Diego, California.

_____
Russell Fouts

1  ALAN ALEXANDER BECK
2  LAW OFFICE OF ALAN BECK
   2692 HARCOURT DRIVE
3  SAN DIEGO, CA 92123
   (619) 905-9105
4  STATE BAR NO. 276646
5  ALAN.ALEXANDER.BECK@GMAIL.COM
   ATTORNEYS FOR PLAINTIFFS
6  RUSSELL FOUTS AND
7  TAN MIGUEL TOLENTINO

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. BOX 4008
MADISON, MS 39130
(601) 852-3440
STEPHEN@SDSLAW.US
MS BAR NO. 102784
 *ADMITTED PRO HAC VICE

8

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| 13  **RUSSELL FOUTS and TAN MIGUEL TOLENTINO,** | 19-cv-01662-BEN-JLB |
| 14 | |
| 15                        Plaintiffs, | **DECLARATION OF TAN MIGUEL TOLENTINO** |
| 16        **v.** | Judge:       Hon. Roger T. Benitez |
| 17  **XAVIER BECERRA, in his official capacity as the Attorney General of** | Courtroom:  5A |
| 18  **the State of California,** | Action Filed: September 1, 2019<br>Hearing:      TBA |
| 19                        Defendant. | |

20

21

22

23

24

25

26

27                        Exhibit "B"

28

Declaration of Tan Miguel Tolentino
(19-cv-01662-BEN-JLB)

**004**

## <u>DECLARATION OF TAN MIGUEL TOLENTINO</u>

**COMES NOW**, Tan Miguel Tolentino, and states as follows:

1.  I am an adult male resident of the State of California and reside in San Diego County and am competent to testify as to matters set forth in this declaration.

2.  I desire to purchase the same type of baton/billy that policemen are usually issued and an expandable baton for self-defense and other lawful purposes for use in my home, business, while traveling between these locations and in all other lawful locations.

3.  I am an honorably discharged Airman and served as an 81152 Law Enforcement Specialist in the United States Air Force.

4.  I received extensive billy training in the Air Force and carried a billy in the performance of my job duties in the Air Force.

5.  I studied Arnis and Kali under Narrison Baboa, Jr.

6.  Arnis and Kali are Filipino martial art forms which focus on stick fighting.

7.  I am a Filipino American and currently live and work in the San Diego area.

8.  While I want to purchase a standard issue policeman baton/billy and an expandable baton for lawful self-defense, I do not solely due to California law banning them.

9.  I have never been convicted of a crime that would disqualify me from firearms ownership under either California or Federal law.

10. I do not take illegal drugs nor abuse alcohol.

11. I legally own firearms.

12. I have never been diagnosed with a mental disorder that would disqualify me from firearms ownership under either California or Federal law.

13. I would purchase a billy/baton, but fear prosecution for possessing it and therefore have refrained from purchasing one.

14.But for California's law banning possession of a billy/baton, I would acquire, possess, carry, and where appropriate use a billy to protect myself, my home, my family and my business.

**FURTHER, DECLARANT SAYETH NAUGHT**.

I certify under penalty of perjury that the foregoing is true and correct. Executed on September 8th, 2020 in San Diego, California.

*Tan M. Tolentino*
_____

Tan Miguel Tolentino

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
State Bar No. 276646
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted *Pro Hac Vice*

Attorneys for Plaintiffs
RUSSELL FOUTS and
TAN MIGUEL TOLENTINO

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL FOUTS and TAN MIGUEL TOLENTINO,<br><br>                 Plaintiffs,<br>          vs.<br><br>XAVIER BECERRA, in his Official Capacity as the Attorney General of the State of California,<br><br>                 Defendant. | Case No.: 3:19-cv-01662-BEN-JLB<br><br>EXPERT REBUTTAL REPORT AND DECLARATION OF LEOFULDO TABLANZA II<br><br>Judge: Hon. Roger T. Benitez<br>Action Filed: August 15, 2019 |

Exhibit "C"

Expert Rebuttal Report and Declaration of Leofuldo Tablanza II – 3:19-cv-01662-BEN-JLB

p.1

## **BACKGROUND AND QUALIFICATIONS**

1.      My name is Leofuldo Tablanza II.

2.      My background and experience is as follows:

3.      I am a serviced-connected disabled Military Police Combat Veteran of the United States Military.

4.      I studied law enforcement at Chemeketa Community College before joining the Marine Corps.

5.      While in the Marine Corps, I learned basic military training and basic law enforcement and corrections duties. As well as combat fighting skills and the use of military weapons.

6.      In September of 1997, I joined the Marine Corps and attended boot camp at MCRD Recruit Training in Sand Diego, California. Followed up by Marine Combat training in Camp Pendleton, California. Also, went to school for Military Police in FT. McClellan, Alabama. While I trained at my Military Occupational Specialty School (MOS), I learned how to use: OC spray, UFC fighting skills, basic military police standards, rules of engagement, use of force, defensive tactics, the use of firearms, and the use of the baton.

7.      After my MOS schooling, I was sent to FT, Leonardwood, Missouri to attend NON-Lethal Individual Weapons Instructor school. There I was an instructor and certifier in use of non-lethal weapons including OC spray, hand to hand combat, knife

---

defense, ASP training and the deployment of bean bags and foam baton during riot control.

8.      My first duty station was MCAS New River North Carolina. There is where I conducted basic military police duties such as: basic patrolling of the base, work the entry gate, law enforcement and protection duties, working in the D.A.R.E program and work with military dogs.

9.      In September 2000, I received orders to Okinawa, Japan where I conducted basic military police duties as well keep good public relations with the Japanese people. This is where I ended my tour as a United States Marine.

10.      Right after the 9/11, I joined the Oregon Army National Guard while I was on terminal leave with the Marine Corps. My MOS was Military Police. I continued as a Non-lethal Individual Weapons Instructor.

11.      May 2002 – February 2003 I was stationed at South Camp, Sinai, Egypt where I performed Military police duties.

12.      Upon returning from Egypt, I was stationed with 1186th MP (military police) Company. This is where I ensured the building was safe by doing security checks (inside and outside of the building, checking I.D. badges and searching vehicles, etc.), supervised guard while they performed their tasks, as well as scheduling.

---

13.   In May 2004 I was stationed in Guantanamo Bay, Cuba. Here, I conducted investigations, searched persons and cells for illegal paraphernalia, provided security and ensured safety of the detainees.

14.   May 2005 – June 2005, when I returned home from Guantanamo Bay, I returned to 1186th company as a Sergeant of the Guard.

15.   From June to August 2005, I was a Security and Operations Clerk. I still performed building security checks, but I also monitored major events in the state of Oregon and across the world.

16.   In August of 2005 to September 2005, I was deployed to Katrina. Here I performed police duties. I made sure no criminal activity was happening. If so, this is where we would arrest the criminals. We used buses and military vehicles to conducted house to house searches, we picked up any stragglers and their safety and also searched for any deceased. We assisted the U.S. Marshal's to conduct searches of banks for security purposes.

17.   In 2007 I was deployed to Iraq, Operation Iraqi Freedom. I conducted convoy security for military personnel and TCN (Third Country Nationals) that brought in supplies to other bases. I also did route recon for insurgence and bomb detecting. I was ammo sergeant and rear emergency vehicle.

18.   I have no publications in the past ten years.

19.   I have not testified in the previous four years in any deposition or trial.

---

Expert Rebuttal Report and Declaration of Leofuldo Tablanza II – 3:19-cv-01662-BEN-JLB

20.   I am being paid $150.00 per hour for this report and $150.00 per hour for testimony in this case.  My total compensation for this report is $600.00.

## OPINION

In 1970's, 80's and 90's, the police departments used a PR-24, which is basically just a stick with a handle on it. Before that, the police departments used a Billy club, which was basically just a stick with NO handle. In the late 1990's and early 2000's, they were starting to transition from the PR-24 to the Armament Systems and Procedures (ASP). An ASP is a collapsible metal baton which falls under the non-lethal weapons category. The police use the ASP as a tool for rules of engagement (stepping stool for use of force).

In Oregon, where I am from, civilians are not required to be "trained" to use a firearm, but according to Mr. Fichtner, he would like you to be trained on an ASP, which does not make any sense to me. While I do not know California law, here in Oregon a civilian can possess a firearm and ASP without any training. In paragraph 22, Mr. Fichtner says the ASP is more likely to be dangerous for "lawful self-defense". Which theoretically means that in the hands of peace officers, who have been trained, it becomes a lethal weapon.

## CONCLUSION

I have provided pictures of the billy club, PR-24, and the ASP:

Expert Rebuttal Report and Declaration of Leofuldo Tablanza II – 3:19-cv-01662-BEN-JLB





**Billy Club**                              **PR-24 Baton**



**Armament Systems and Procedures (ASP)**

A civilian could use the ASP for self-defense, just as well as they could with any household item. While Mr. Fichtner has some valid points, like police officers using it as a tool before resorting to lethal force, using it to deescalate a situation, or using for compliance holds, an ASP is no more or any less deadly than a bat, knife or stick. In my opinion, there is no reason that civilians need to be certified to carry an ASP. It is possibly taking away one of the tools that they will be able to defend themselves with.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 15, 2020 in Salem, Oregon.

Leofuldo Tablanza II

## <u>DECLARATION OF SERVICE BY ELECTRONIC MAIL</u>

Case Name: Russell Fouts, et al. vs            Case No. 19-cv-01662-BEN-JLB
          <u>Xavier Becerra</u>                                               _____

I declare:

I am a licensed attorney in good standing in the State of Mississippi and admitted *pro hac vice* in this matter. I am 18 years of age or older and not a party to this matter.

On April 17, 2020, I served the attached Expert Rebuttal Report and Declaration of Leofuldo Tablanza II by electronic mail to the following counsel of record:

        John D. Echeverria
        Deputy Attorney General
        300 South Spring Street, Suite 1702
        Los Angeles, CA 90013
        John.Echeverria@doj.ca.gov
        Attorney for Defendant

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 17, 2020 in Canton, Madison County, Mississippi.

Dated: April 17, 2020.

                                    */s/ Stephen D. Stamboulieh*
                                    STEPHEN D. STAMBOULIEH
                                    Stephen@sdslaw.us
                                    *Attorneys for Plaintiffs*

**014**

XAVIER BECERRA
Attorney General of California
State Bar No. 118517
MARK R. BECKINGTON
Supervising Deputy Attorney General
State Bar No. 126009
JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102
  Telephone:  (415) 510-3479
  Fax:  (415) 703-1234
  E-mail:  John.Echeverria@doj.ca.gov
*Attorneys for Defendant Xavier Becerra, in*
*his official capacity as Attorney General of*
*the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL FOUTS and TAN MIGUEL TOLENTINO,**<br><br>Plaintiffs,<br><br>v.<br><br>**XAVIER BECERRA, in his official capacity as the Attorney General of the State of California,**<br><br>Defendant. | 19-cv-01662-BEN-JLB<br><br>**EXPERT REPORT AND DECLARATION OF BRIAN FICHTNER**<br><br>Judge:        Hon. Roger T. Benitez<br>Action Filed: August 15, 2019 |

Exhibit "D"

## BACKGROUND AND QUALIFICATIONS

1.      I am a Special Agent Supervisor for the California Department of Justice.

2.      I possess a Bachelor of Science degree in Criminal Justice from the California State University of Sacramento with a minor in Psychology.

3.      Before working for the California Department of Justice (DOJ), I was a deputy probation officer/assistant with the Sacramento County Probation Department for over 7 years.

4.      In December of 1998, I was hired by the California Department of Justice.  Upon being hired with the California Department of Justice, I attended a 464-hour Specialized Investigator Basic Course (SIBC) in Sacramento, CA.  The SIBC covered a range of topics, including, but not limited to, the powers of arrest, use of force, defensive tactics, the use of firearms, and the use and deployment of the expandable baton.

5.      My first assignment as a Special Agent with the DOJ was with the Bureau of Narcotic Enforcement (BNE) in San Diego.  I conducted complex investigations targeting major drug traffickers involved in the manufacture and trafficking of illegal narcotics.

6.      In 2001, I transferred from BNE to DOJ's Advanced Training Center in Sacramento.  I joined DOJ's Firearms Tactical Training Unit that was responsible for instructing new agents during the SIBC in the use of firearms, weaponless defense, and the expandable baton.

7.      In 2004, I returned to BNE as a Special Agent in the Sacramento Regional Office to conduct narcotic investigations.  While assigned to BNE, I continued to teach new agents at the SIBC presented by DOJ.

8.      In 2012, I transferred from BNE to the Bureau of Investigation (BI) as a Special Agent.  I was assigned to the eCrime unit where I investigated crimes of fraud, theft, and human trafficking that were committed with the aid of computers

1  and/or electronic devices.  During this assignment, I continued to instruct agents in

2  the use of firearms, tactics, and the expandable baton.

3      9.    In 2017, I transferred from BI to the Bureau of Gambling Control

4  (BGC) in Sacramento.  I was responsible for making sure that legal gambling

5  establishments in California were complying with state gambling laws and

6  regulations.  I conducted investigations targeting criminal organizations operating

7  illegal gambling sites and narcotic trafficking.

8      10.   Throughout my law enforcement career with DOJ, I have been

9  involved in the execution of no less than 200 search warrants and the arrest and/or

10  detention of no less than 200 individuals.  During all field-enforcement operations,

11  I carried a standard compliment of equipment that included the expandable baton.

12      11.   I am currently assigned to the DOJ's Advanced Training Center and

13  hold the position as the department's Firearm's Officer.  I am a certified instructor

14  with the California Peace Officer Standards and Training (POST) in the use of

15  firearms, Weaponless Defense Tactics, and the "ASP" expandable baton, which I

16  discuss below.  I have been instructing DOJ special agents on these topics for over

17  15 years.

18      12.   Throughout my tenure at the DOJ, I have undergone continuing

19  training in the escalation and de-escalation of force, the use of firearms, defensive

20  tactics, and the expandable baton, as presented through the Perishable Skills

21  Program required by POST.  In the last year, I have attended over 70 hours of

22  training involving the use of firearms, defensive tactics, use of force, and the

23  deployment of the expandable baton.

**OPINIONS**

**I.    BACKGROUND ON BILLIES AND POLICE BATONS**

26      13.   California Penal Code 22210 generally prohibits the manufacture,

27  importation, sale, giving, lending, and possession of "any instrument or weapon of

28

2

the kind commonly known as a billy."  A billy is a cylindrical stick or club made of wood, rubber, plastic, or metal that can be used as a compliance tool or bludgeon.

14.     A police baton qualifies as a billy under California Penal Code section 22210.  *See* Cal. Att'y Gen. Op. 81-805 at 2.  Under California Penal Code section 22295(a), peace officers may be authorized to carry police batons that civilians are otherwise not allowed to possess.  A police baton is a versatile, intermediate-force, compliance tool that has been used by law enforcement officers since the 19th Century and still serves important law enforcement purposes today.  Different types of batons can serve different law-enforcement functions, such effecting arrest or crowd control.

15.     There are several different types of police batons used by law enforcement agencies within the State of California.  The Los Angeles Police Department, for example, has been known to allow their officers to carry the Monadnock PR-24, a generally fixed-length baton with a side handle.  Below is an example of a fixed-length PR-24 baton:



16.     The California DOJ, on the other hand, issues to its agents an expandable baton manufactured by Armament Systems and Procurement Inc. (ASP).  My principal experience and training has been with the ASP baton.  The ASP is available in a variety of models based on length and weight and there are a variety of accessories available for the ASP to suit different law-enforcement needs,

for example, a cap that makes it easier to shatter glass.  *See* ASP, Batons, https://www.asp-usa.com/collections/batons.  Other companies also manufacture and sell similar expandable batons to law enforcement agencies.  Below is an example an expandable baton in both its collapsed and expanded states:



17.    Expandable versions of the PR-24 are available, but those models retain a side-handle and are generally bulkier than the ASP.

18.    Primarily, DOJ agents work in plainclothes attire and do not conduct regular patrol functions as that of a police officer or deputy sheriff.  The expandable baton issued to DOJ agents is an ideal intermediate-force option for agents in plainclothes assignments.  It is compact, discrete, and inconspicuous.  When in uniform, the expandable baton can also be conveniently carried and easily accessed.

19.    When the expandable baton is held in the hand in the closed position, it can be unassuming and not perceived as threatening.  Holding the expandable baton in the closed position lessens the chance of being perceived as aggressive.  This would not always be the case with the PR-24 as it is a much more visible.  When held in the hand in the closed position, the baton can also add weight and stability to the fist for hand-to-hand combat, if necessary.

20.    Additionally, the expandable baton gives the officer an advantage to deploy the baton quickly if needed without instigating the aggression by its mere

4

presence.  An officer can display the baton in a closed position and then expand the baton to an open position if compliance is not immediately obtained.  The mere act of deploying the baton to its full length can be intimidating in and of itself, and this display may give the subject pause about confronting the officer or resisting the officer's instructions.  Of course, the sight of the PR-24, as well as many other batons, may also give a subject pause or diffuse aggressive behavior, but there is less ability to conceal the presence of the baton or modulate the officer's interaction with the subject depending on the circumstances.

21.    Despite their differences, the expandable baton is generally similar to other police batons and billies in terms of their function and use as compliance tools.

## II.    THE TRAINING OF LAW ENFORCEMENT PERSONNEL IN THE SAFE AND EFFECTIVE USE OF BATONS

22.    While the use of a baton is an intermediate-force option, a baton can be lethal.  That is why it is important that anyone who is armed with a baton be properly trained in the safe and effective use of batons.  In the wrong hands, a baton can be used by a criminal to intimidate others or cause physical harm or property damage.  A baton is also likely to be more dangerous when used for lawful self-defense if it is wielded by an individual who has not received proper training.  While batons are generally less lethal than firearms, they are capable of causing serious injury or even death if improperly deployed or if used with lethal intent.

23.    Because batons have the capacity to cause serious bodily injury or even death, and can be subject to misuse, California law enforcement agencies, including the DOJ, train peace officers on the safe and effective use of batons.

24.    Generally, DOJ agents are required to complete the Regular Basic Course or the SIBC certified by the POST Commission as their entry-level training. *See* 11 C.C.R. § 1005(a).  The Regular Basic Course involves a minimum requirement of 664 hours of instruction, and the SIBC involves a minimum

5

1   requirement of 591 hours.  Both courses cover a range of topics, including use of

2   force, handling disputes, and effecting arrest.  *See* POST, Regular Basic Course,

3   https://post.ca.gov/regular-basic-course and SIBC https://post.ca.gov/specialized-

4   investigators-basic-course.  DOJ agents may also be required to complete POST-

5   certified Continuing Professional Training "to maintain, update, expand, and/or

6   enhance an individual's knowledge and/or skills."  11 C.C.R. § 1005(d).  In

7   addition, certain peace officers are required to complete POST-certified Perishable

8   Skills and Communications training, consisting of a minimum of 12 hours in each

9   two-year period concerning certain topics, including arrest and control and tactical

10  firearms.  *See* POST, Perishable Skills Program, https://post.ca.gov/perishable-

11  skills-program.  Peace officers must also complete a minimum of two hours of

12  communications training in each two-year period.  *See id.*

13      25.    DOJ's training program far exceeds the POST minimum requirement.

14  For example, during a two-year period between 2018-2020, DOJ agents were

15  required by the DOJ to attend over 60 hours of training that included the use of

16  firearms, defensive tactics, and the expandable baton.

17      26.    As part of the DOJ's POST-certified arrest-and-control training, DOJ

18  agents are instructed on the safe and effective use of the ASP baton.  This training

19  involves instruction on the mechanical operation of the ASP, various deployment

20  considerations, the tactical use of the ASP for various law-enforcement purposes,

21  including inducing compliance and effecting arrest, and the areas of the human

22  body to avoid to prevent serious injury or death.  This training is important to

23  ensure that peace officers use batons in a safe and effective manner when

24  performing their duties.  This baton-training is provided in addition to the other

25  POST-certified training that California peace officers are required to complete, such

26  as use-of-force and the handling of disputes.

27

28

### III. THE USE OF BATONS BY LAW ENFORCEMENT PERSONNEL

27.     The baton is just one of several force options available to a peace officer in a confrontation when making an arrest.  Each situation will dictate the level of force necessary.  The level of force can range from the mere presence of the officer, to the use of verbal directives and hand signals, to compliance holds and physical restraint, and to the deployment of weapons, including electronic impulse devices (EIDs), such as the Taser, or firearms.  The ultimate goal is to effect an arrest without the use of excessive, and especially lethal, force.

28.     There are many factors to consider when determining the level of force to be used.  It is reasonable to consider the age, size, fitness, and skill level of the subject.  It is also reasonable to consider whether the officer is outnumbered, the subject's proximity to a weapon, and the officer's physical condition due to injury or exhaustion that may expose them to imminent danger.  When using force, peace officers constantly evaluate the appropriate level of force required as the situation evolves.  Agents are trained to escalate or de-escalate their level of force as necessary.

29.     Although the baton can be used as a tool during compliance holds, and as a directional motivator when applied to sensitive areas of the body, the baton can also be an effective intermediary option before escalating to lethal force.  If the situation escalates to the point that necessitates deploying the baton as an impact weapon, agents are trained to deploy the baton to areas of the body that pose the most threat to the officer, such as the subject's arms and legs.  Agents are trained to avoid strikes to the head, neck, spine, sternum, and groin for concerns of inflicting serious or fatal injuries.

30.     Peace officers are trained in baton-use to ensure that they are aware of the dangers posed by batons and their potentially lethal effects.  They are trained to know the specific locations on the body that should be avoided to reduce the risk of severe injury or death.  They are trained to handle disputes and to deploy a baton in

7

a way to obtain compliance from a subject and diffuse or resolve a confrontation in a way that minimizes the risk to themselves, the subject, and others.

31.     Unlike civilians, law enforcement personnel are often required to place themselves in dangerous situations to subdue criminals and to protect the public. An officer must enter every confrontation with the goal of controlling the subject. To successfully do this, the officer needs the necessary tools to give him or her the advantage—commonly referred to as a "force multiplier"—so the subjects are less able to resist arrest and endanger themselves, peace officers, and the public.

32.     If a subject is armed with a baton or other type of billy, law enforcement personnel may need to use higher levels of force than would otherwise be necessary.  At the same time, restricting civilian access to batons will not materially impair the ability of law-abiding civilians to engage effectively in lawful self-defense.  Law-abiding civilians continue to have access to the full range of all lawful lethal and intermediate-force options that can be used effectively for self-defense.

## IV. CONCLUSION

33.     While a baton (and any weapon) can be used for self-defense, it is a specialized law-enforcement tool designed to obtain compliance by others and serves specific and important law-enforcement functions.

34.     Baton training is essential to ensure that an individual wielding a baton uses it safely and effectively, including minimizing the likelihood of inflicting serious or fatal injuries.  It is important that law enforcement personnel can use batons to deescalate a confrontation without resorting to greater levels of force than would otherwise be necessary.  Allowing untrained civilians to possess batons and other billies would increase the risk of serious injury or death, even when possessed with lawful intentions.  Restricting civilian access to police batons and billies will not materially affect their ability to defend themselves.

35.     In my opinion, batons should be reserved for trained law enforcement personnel and other trained professionals who need batons to perform their official duties.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 20, 2020 at Sacramento, California.

Brian Fichtner

9

## <u>DECLARATION OF SERVICE BY ELECTRONIC MAIL</u>

Case Name:   **Russell Fouts et al. v. Xavier Becerra**
Case No.:    **19-cv-01662-BEN-JLB**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.

On <u>March 20, 2020</u>, I served the attached **EXPERT REPORT AND DECLARATION OF BRIAN FICHTNER** by electronic mail to the addresses provided below:

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
stephen@sdslaw.us

*Attorneys for Plaintiffs*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on March 20, 2020, at San Francisco, California.

| John D. Echeverria | s/ John D. Echeverria |
|:---:|:---:|
| Declarant | Signature |

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant incorporates by reference the General Objections stated above as if fully set forth herein.  Defendant further objects to this interrogatory on the ground that that it is premature and seeks expert disclosures outside of the framework provided by paragraph 4 of the Court's Scheduling Order (Dkt. 16).  Defendant also objects that the interrogatory calls for information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and any other applicable protection.

Subject to and without waiving any of the foregoing objections, Defendant responds to this interrogatory as follows:  Defendant will make any required disclosures regarding expert witnesses in accordance with the Court's Scheduling Order and Federal Rule of Civil Procedure 26(a)(2)(B).

**INTERROGATORY NO. 6:**

Describe in detail and with specificity how those authorized to carry billies/batons are trained and certified.

**RESPONSE TO INTERROGATORY NO. 6:**

Defendant incorporates by reference the General Objections stated above as if fully set forth herein.  Defendant further objects to the terms "authorized," "carry," "trained," and "certified" as vague and ambiguous.  Defendant also objects to this interrogatory on the ground that it is unlimited with respect to time and geographic scope and is therefore vague, overbroad, and unduly burdensome.  Defendant's response to this interrogatory is limited to the training and certification of peace officers employed by the California Department of Justice and security guards authorized to carry and use a wooden club or baton under California Penal Code section 22295.  Defendant further objects to the interrogatory to the extent that it seeks expert materials, including information or facts that expert witnesses may locate or rely on, outside of the framework for expert disclosures.  Defendant's

Exhibit "E"

9

1    investigation into this case is ongoing, and it may reveal additional information

2    responsive to this interrogatory in the future.

3         Subject to and without waiving any of the foregoing objections, Defendant

4    responds as follows:

5         California Penal code section 16590(m) designates a billy, prohibited by

6    section 22210, as a "generally prohibited weapon."  A police baton is an

7    "instrument or weapon of the kind" or class commonly known as a billy club and

8    thus falls within the scope of California Penal Code section 22210.  *See* Cal. Att'y

9    Gen. Op. 81-805 at 2.  Police officers, special police officers, peace officers, and

10   law enforcement officers may be authorized to carry a wooden club or baton that

11   would otherwise be prohibited under section 22210.  Cal. Penal Code § 22295(a).

12        Generally, peace officers employed by the California Department of Justice

13   are required to complete the Regular Basic Course certified by the Commission on

14   Peace Officer Standards and Training ("POST") as their entry-level training.  *See*

15   11 C.C.R. § 1005(a).  The Regular Basic Course involves a minimum requirement

16   of 664 hours of instruction on a range of topics, including the use of force, handling

17   disputes, and effecting arrest.  *See* POST, Regular Basic Course,

18   https://post.ca.gov/regular-basic-course.  Peace officers employed by the California

19   Department of Justice may also be required to complete POST-certified Continuing

20   Professional Training "to maintain, update, expand, and/or enhance an individual's

21   knowledge and/or skills."  11 C.C.R. § 1005(d).  In addition, certain peace officers

22   are required to complete POST-certified Perishable Skills and Communications

23   training, consisting of a minimum of 12 hours in each two-year period concerning

24   certain topics, including arrest and control and tactical firearms.  *See* POST,

25   Perishable Skills Program, https://post.ca.gov/perishable-skills-program.  Peace

26   officers must also complete a minimum of two hours of communications training in

27   each two-year period.  *See id.*

28

1       With respect to police batons, peace officers employed by the California

2   Department of Justice are generally issued the ASP expandable baton,

3   manufactured and sold by ASP, Inc.; peace officers employed by other California

4   law enforcement agencies may be issued different police batons, such as the PR-24

5   baton.  As part of the Department of Justice's POST-certified arrest-and-control

6   training, which is part of the Perishable Skills Program, peace officers employed by

7   the California Department of Justice are instructed on the safe and effective use of

8   the ASP baton.  This training involves instruction on the mechanical operation of

9   the ASP, various deployment considerations, the tactical use of the ASP for various

10  law enforcement purposes, including inducing compliance or effecting arrest, and

11  the areas of the human body to avoid to prevent serious injury or death.

12      Under California Penal Code section 22295(b), uniformed securities guards,

13  regularly employed and compensated by a person engaged in any lawful business,

14  while actually employed and engaged in protecting and preserving property or life

15  within the scope of employment, may be authorized to carry and use a club or

16  baton.  Any such uniformed security guard must, prior to being authorized to carry

17  or use a club or baton, complete a course of instruction certified by the Department

18  of Consumer Affairs in the carrying and use of a club or baton.  Cal. Penal Code

19  § 22295(b).  The training institution that administers this course of instruction may

20  be either public or private.  *Id.*  The Department of Consumer Affairs, in

21  cooperation with POST, develops the standards for any such course.  *Id.*  The

22  course of training on the carrying and usage of batons, which is required for a

23  uniformed security guard to obtain a baton permit, is delineated in the Department

24  of Consumer Affairs, Bureau of Security and Investigative Services' "Baton

25  Training Manual," which shall include the following topics:  moral and legal

26  aspects of baton usage, use of force, baton familiarization and uses, first aid for

27  baton injuries, and fundamentals of baton handling, including stances and grips,

28  target areas, defensive techniques, control techniques, and arrest techniques.  Cal.

11

1   Bus. & Prof. Code, § 7585.9(a).  The Department of Consumer Affairs is part of the

2   California Business, Consumer Services and Housing Agency, which is not part of

3   the California Department of Justice.  Dept. of Consumer Affairs, About Us,

4   https://www.dca.ca.gov/publications/dca_booklet.pdf.

5   **INTERROGATORY NO. 7:**

6       Describe in detail and with specificity the training requirements for those

7   authorized to carry handguns in the line of duty and how it differs from training on

8   billies/batons.

9   **RESPONSE TO INTERROGATORY NO. 7:**

10       Defendant incorporates by reference the General Objections stated above as if

11   fully set forth herein.  Defendant also objects to this interrogatory on the ground

12   that the terms "carry," "in the line of duty," "training requirements," and "differs"

13   are vague and ambiguous.  Defendant further objects that this interrogatory is not

14   reasonably calculated to lead to the discovery of admissible evidence relevant to

15   any party's claim or defense and proportional to the needs of the case.  Defendant

16   also objects to this interrogatory on the ground that it is unlimited with respect to

17   time and geographic scope and is therefore vague, overbroad, and unduly

18   burdensome.  Defendant's response to this interrogatory is limited to the training

19   and certification of peace officers employed by the California Department of

20   Justice.  Defendant further objects to the interrogatory to the extent that it seeks

21   expert materials, including information or facts that expert witnesses may locate or

22   rely on, outside of the framework for expert disclosures.  Defendant's investigation

23   into this case is ongoing, and it may reveal additional information responsive to this

24   interrogatory in the future.

25       Subject to and without waiving any of the foregoing objections, Defendant

26   responds to this interrogatory as follows:  Defendant incorporates by reference the

27   response to Interrogatory Number 6, *supra*, for a description of the training of peace

28   officers employed by the California Department of Justice, including training on the

ALAN ALEXANDER BECK
LAW OFFICE OF ALAN BECK
2692 HARCOURT DRIVE
SAN DIEGO, CA 92123
(619) 905-9105
STATE BAR NO. 276646
ALAN.ALEXANDER.BECK@GMAIL.COM
ATTORNEYS FOR PLAINTIFFS
RUSSELL FOUTS AND
TAN MIGUEL TOLENTINO

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. BOX 4008
MADISON, MS 39130
(601) 852-3440
STEPHEN@SDSLAW.US
MS BAR NO. 102784
 *ADMITTED PRO HAC VICE

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL FOUTS and TAN MIGUEL TOLENTINO,**<br><br>                              Plaintiffs,<br><br>       **v.**<br><br>**XAVIER BECERRA, in his official capacity as the Attorney General of the State of California,**<br><br>                              Defendant. | 19-cv-01662-BEN-JLB<br><br>**PLAINTIFF FOUTS' RESPONSES TO FIRST SET OF DEFENDANT'S INTERROGATORIES**<br><br>Judge:          Hon. Roger T. Benitez<br>Courtroom:   5A<br>Action Filed:  September 1, 2019 |

Propounding Party:  Defendant

Responding Party:   Plaintiff Russell Fouts

Set No.                One

Exhibit "F"

---

1   Plaintiff Russell Fouts responds and objects to Defendant's First Set of

2   Interrogatories as follows:

3   **GENERAL STATEMENT AND OBJECTIONS**

4   Plaintiff has not yet completed discovery in this action.  All of the responses

5   contained herein are based solely upon information and documents that are

6   presently available to and specifically known by Plaintiff, and disclose only those

7   contentions that presently occur to Plaintiff Fouts.  Plaintiff Fouts is not a lawyer

8   and is giving these answers based upon his knowledge.

9   Plaintiff expressly reserves the right to assert any and all objections as to the

10   admissibility of such responses into evidence in this action, or in any other

11   proceeding, on any and all grounds including, but not limited to, competency,

12   relevancy, materiality, and privilege.  Plaintiff makes the responses and objections

13   herein without in any way implying that the interrogatories and responses to the

14   interrogatories are relevant or material to the subject matter of this action.

15   Any objection or response to an interrogatory shall not be construed as an

16   acknowledgment that Plaintiff performed any of the acts described in the

17   interrogatory or definitions applicable to the interrogatory, or that Plaintiff

18   acquiesces in the characterization of the conduct or activities contained in the

19   interrogatory or definitions applicable to the interrogatory.

20   The following responses are given without prejudice to the right to produce

21   evidence or witnesses that Plaintiff may later discover.  Plaintiff reserves the right

22   to supplement, clarify, revise, or correct any or all of the responses and objections

23   herein, and to assert additional objections or privileges, in one or more subsequent

24   supplemental response(s).

25

26

27

28

1.Plaintiff objects to each instruction, definition, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.Plaintiff objects to the interrogatories to the extent that any particular interrogatory is overbroad, vague, ambiguous, unintelligible, unduly burdensome, or not relevant to any party's claim or defense and proportional to the needs of the case.

3.Plaintiff objects to the interrogatories to the extent that any particular interrogatory requires the production of information available to Defendant through the subpoena process or his own records.

4.Plaintiff objects to the interrogatories to the extent that any individual interrogatory calls for information subject to a claim of privilege, including, without limitation, the attorney-client privilege, the governmental deliberative process privilege, the law enforcement investigatory privilege, the official information privilege, the attorney work-product doctrine, and other applicable privileges and protections.

5.The fact that Plaintiff may not specifically object to any individual interrogatory on the ground that it seeks information subject to the attorney-client privilege, the attorney work-product doctrine, or any other privilege or protection shall not be deemed a waiver of the protection of non-disclosure afforded by the applicable privileges or doctrines.  Any disclosure by Plaintiff of such information is inadvertent and shall not constitute a waiver of any applicable privilege or protection.

6.Plaintiff objects to the interrogatories to the extent that any individual interrogatory assumes the truth of facts either in dispute or not yet in evidence.

7.Plaintiff objects to the interrogatories insofar as any individual interrogatory calls for speculation or legal conclusions.

8.To the extent that any individual interrogatory purports to impose on Plaintiff the burden of providing information which is not in Plaintiff's possession, custody, or control, or is already in Defendant's possession, custody or control, or is not reasonably available to Plaintiff after a diligent search and reasonable inquiry, Plaintiff objects on the grounds that the interrogatories are overbroad, unduly burdensome, oppressive, and the burden, expense and/or intrusiveness of the discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence.

9. The foregoing objections apply to each and every response contained herein and are incorporated by reference to the extent applicable in the specific responses set forth below as though fully set forth therein.  The failure to mention one of the foregoing objections in the specific response set forth below shall not be deemed a waiver of such objection.

10.    Plaintiff will make reasonable efforts to respond to each interrogatory, to the extent that no objection is made, as Plaintiff understands and interprets the interrogatory.  If Defendant's interpretation of any individual interrogatory differs from that of Plaintiff, Plaintiff reserves the right to supplement his objections and responses.

1

## **INTERROGATORIES**

2

**INTERROGATORY NO. 1:**

3    DESCRIBE in full and complete detail all harms or injuries that YOU contend

4  YOU have suffered as a result of California Penal Code section 22210's restrictions

5  on BILLIES.

6    **RESPONSE:** Plaintiff objects to this request to the extent it is overbroad as it

7  request "all harms or injuries", which "harms and injuries" are ongoing as

8  Plaintiff's Second Amendment rights are being violated by not being able to own a

9  billy/baton in California.  Without waiving the foregoing objection, Plaintiff states

10  as follows: With a limitation to the available tools for self-defense and personal

11  security, should the need arise, I am put at a distinct disadvantage if deterrence and

12  defense against an assailant(s) happens because I cannot have a baton/billy to

13  defend myself if a situation arises in which a baton/billy would be the best tool to

14  use for defense.

15  **INTERROGATORY NO. 2:**

16    Do YOU consider BILLIES to be lethal, non-lethal, or less-than-lethal?

17  Please EXPLAIN YOUR answer.

18    **RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal

19  conclusion as Plaintiff is not a lawyer.  Without waiving the foregoing objection,

20  Plaintiff states as follows: Billies are a hand wielded tool, which can be extremely

21  effective in self-defense & deterrence in an altercation. Any weapon including

22  hands, feet, body parts can be lethal, less-than-lethal, or non-lethal, that is a fact. A

23  hand can be used to slap or strike and leave pain, possible damaged tissue, or could

24  kill someone, this is already a documented fact in numerous cases. In this instance

25  and intended use of self-defense, I think of billies/batons as non-lethal or less-than-

26  lethal.

27  **INTERROGATORY NO. 3:**

28

Plaintiff Russell Fouts' Responses to Defendant's First Set of Interrogatories(19-cv-01662-BEN-JLB)

1       What category of arms or weapons do YOU consider BILLIES to be a part of?

2   Please EXPLAIN YOUR answer.

3       **RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal

4   conclusion as Plaintiff is not a lawyer.  Without waiving the foregoing objection,

5   Plaintiff states as follows: Billies/batons are hand-wielded personal defense

6   weapons. They are deployed and controlled with a hand which is then used in close

7   quarters.

8   **INTERROGATORY NO. 4:**

9       STATE ALL FACTS supporting YOUR contention, as averred in in

10  paragraph 14 of the COMPLAINT, that California Penal Code section 22210 is a

11  "complete ban[] on the ownership of arms other than firearms."

12      **RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal

13  conclusion as Plaintiff is not a lawyer.  Plaintiff further objects to this request as

14  paragraph 14 does not make the contention that the referred to penal code section is

15  a "complete ban[] on the ownership of arms other than firearms."

16  **INTERROGATORY NO. 5:**

17      Do YOU contend that stun guns and other "electric arms" discussed in

18  paragraph 15 of the COMPLAINT are more similar to handguns or to BILLIES, or

19  equally similar to both?  Please EXPLAIN YOUR answer.

20      **RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal

21  conclusion as Plaintiff is not a lawyer.  Without waiving the foregoing objection,

22  Plaintiff states as follows: Electric Arms, like a Taser, is more similar to a firearm

23  as it is deployed at distance and also like a firearm it has a limited amount of uses

24  (ammo or cartridges) to deploy before they become a non-weaponized object.

25  **INTERROGATORY NO. 6:**

26      Do YOU consider BILLIES to be dangerous?  Please EXPLAIN YOUR

27  answer.

28

1    **RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal

2    conclusion as Plaintiff is not a lawyer.  Without waiving the foregoing objection,

3    Plaintiff states as follows: I consider anything that can be used as a weapon

4    dangerous, it is the manner of how it is used, the intent, inherent risks, likelihood of

5    malfunction or loss of control. A hammer can be dangerous if used improperly,

6    unsafely, or maliciously. The object used is not the issue, as old as recorded time if

7    Abel had a rock, Cain may have backed away or at the very least, Abel had the God

8    given right to defend himself from the attacker intending to do him harm.

9    **INTERROGATORY NO. 7:**

10    STATE ALL FACTS supporting your contention, as averred in the

11    COMPLAINT, that BILLIES are arms in common use for lawful self-defense.

12    **RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal

13    conclusion as Plaintiff is not a lawyer.  Without waiving the foregoing objection,

14    Plaintiff states as follows: A person can display the baton in a closed position and

15    then expand the baton to an open position in a confrontation or if needed to defend

16    another person from an attack that you can retreat from safely. The mere act of

17    deploying the baton to its full length can be intimidating in and of itself, and this

18    display may give the attacker(s) pause about continuing the confrontation or the

19    attack. Sticks, clubs and billies have always been used as a ready-made defensive

20    weapon in an improvised situation.

21    **INTERROGATORY NO. 8:**

22    Please provide an estimate of the number of BILLIES that are "lawfully

23    owned" in the United States, as averred in paragraph 42 of the COMPLAINT.

24    Please STATE ALL FACTS supporting such an estimate.

25

26

27

28

1  **RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal

2  conclusion as Plaintiff is not a lawyer.  Plaintiff further objects to this request as it

3  is vague and ambiguous because it does not define if it is asking if the ownership is

4  civilian, military or law enforcement.  Further, Plaintiff objects to this request as it

5  is unduly burdensome for him to establish an estimate of the number of lawfully

6  owned billies/batons in the United States and also, that this information may also be

7  available to Defendant through other means that are not unduly burdensome to

8  Plaintiff. Without waiving the foregoing objection, Plaintiff states as follows:  I

9  have no way of knowing this number or a true estimate.

10 **INTERROGATORY NO. 9:**

11     Do YOU contend that YOU are unable to engage in lawful self-defense

12 without a BILLY?

13     **RESPONSE:** Lawful self-defense is not the issue or contention, the issue is

14 when requiring a force multiplier that is less than lethal, a very basic and easily

15 deployable option of a Billie is not afforded under the law without special

16 permit/licensing.

17 **INTERROGATORY NO. 10:**

18     Do YOU contend that individuals need training to use BILLIES safely and

19 effectively for self-defense?

20     **RESPONSE:** No, this issue is not about using a Billie in an apprehension or

21 control manner, it is to defend oneself or another from an attack and harm. Self-

22 defense is a God given right and protected by the constitution. A reasonable person

23 can determine what level of response is needed to defend themselves or another

24 from a threat or attack.

25 **INTERROGATORY NO. 11:**

26     Please DESCRIBE any and all training that YOU have received in the use of

27 BILLIES.

28

1    **RESPONSE**: Oregon DPSST (Department of Public Safety Standards &

2    Training) course in Oregon for unarmed and expandable baton certification over 2

3    days, while acting as private security from 2001-2003.

4    **INTERROGATORY NO. 12:**

5    Please DESCRIBE any and all circumstances of which YOU have knowledge

6    in which an individual was injured by a BILLY.

7    **RESPONSE:** Plaintiff objects to this request as vague and ambiguous as the

8    term "injured" is not defined and thus susceptible to multiple different

9    interpretations.  Without waiving the foregoing objection, Plaintiff responds as

10   follows: I have no personal knowledge of anyone who was injured by an

11   expandable baton.

12   **INTERROGATORY NO. 13:**

13   Please DESCRIBE any and all crimes, whether or not they resulted in a

14   conviction, of which YOU have knowledge that involved the use of a BILLY.

15   **RESPONSE:** Plaintiff objects to this request as vague and ambiguous as the

16   term "crimes" is not defined and thus susceptible to multiple different

17   interpretations.  Without waiving the foregoing objection, Plaintiff responds as

18   follows: I do not have any personal knowledge of anyone convicted of a crime

19   involving a Billie.

20   **INTERROGATORY NO. 14:**

21   Have YOU ever applied for a permit to possess a BILLY in the State of

22   California?

23   **RESPONSE:** No.

24   **INTERROGATORY NO. 15:**

25   If YOUR response to Interrogatory No. 14 was yes, please STATE ALL

26   FACTS CONCERNING any such applications, including whether the application

27   was granted or denied.

28   **RESPONSE:** Not applicable.

9

**INTERROGATORY NO. 16:**

Please DESCRIBE the characteristics of the BILLY that was legally owned by YOU, as alleged in paragraph 48 of the COMPLAINT.

**RESPONSE:** It was a 16" expandable baton with a foam handle.

**INTERROGATORY NO. 17:**

Have YOU ever completed a course of instruction in the carrying and use of BILLIES?

**RESPONSE:** Yes.

**INTERROGATORY NO. 18:**

If YOUR response to Interrogatory No. 17 was yes, please STATE ALL FACTS CONCERNING the instruction, including, but not limited to, the date or dates of instruction and the topics addressed in the instruction.

**RESPONSE:** I am not sure of the exact date, but it was in 2001. The instructor was Lee Tablanza and he was an instructor for the Oregon National Guard at the time and former Marine (Military police). It was a DPSST unarmed weapons training & hand to hand course. This included the expandable baton, use of verbal communications, commands, single person hand to hand apprehension/restraint, multiple person H-2-H apprehension/restraint, but excluded OC spray & Taser deployment.

**INTERROGATORY NO. 19:**

Please DESCRIBE any and all weapons that YOU possess lawfully for self-defense.

**RESPONSE:** Plaintiff objects to this request to list the weapons he lawfully possesses at it is an invasion of his privacy and is irrelevant to the instant case what weapons he currently lawfully possesses.  Without waiving the foregoing objections, Plaintiff states as follows: I own long guns, a Compound Bow, and knives.

Plaintiff Russell Fouts' Responses to Defendant's First Set of Interrogatories(19-cv-01662-BEN-JLB)

**INTERROGATORY NO. 20:**

Do YOU consider BILLIES to be necessary to study and practice martial arts, including Amis and Kali, as referenced in paragraph 65 of the COMPLAINT? Please EXPLAIN your answer.

**RESPONSE:** This is wholly dependent on the type of martial arts and function the art is meant to provide. Baton, short staff, billie - these are all essential tools to train and learn to defend against in large samples of martial arts including kali, silat, karate, Kung Fu, Krav Maga, amongst many others. Martial arts and other armed/un-armed hand to hand self-defense systems are meant to provide a means of familiarization with realistic-like scenarios and techniques against attacks by armed & un-armed attacker(s). Without these tools you cannot train effectively or with a realism needed.

**INTERROGATORY NO. 21:**

STATE ALL FACTS supporting your contention, as averred in paragraph 35 of the COMPLAINT, that a BILLY "is a roughly cylindrical club made of wood, rubber, plastic or metal" and that "[i]t is carried as a compliance tool and defensive weapon."

**RESPONSE:**  I think this is common knowledge, but it is also supported by the state's expert "opinion" in paragraph 20 of his report where he states:

> *Additionally, the expandable baton gives the officer an advantage to deploy the baton quickly if needed without instigating the aggression by its mere presence. An officer can display the baton in a closed position and then expand the baton to an open position if compliance is not immediately obtained. The mere act of deploying the baton to its full length can be intimidating in and of itself, and this display may give the subject pause about confronting the officer or resisting the officer's instructions. Of course, the sight of the PR-24, as well as many other batons, may also give a subject pause or diffuse aggressive behavior, but there is less ability to conceal the presence of the baton or modulate the officer's interaction with the subject depending on the circumstances.*

11

1   The above can also hold true for a non-law enforcement personnel, the presence of

2   a defensive weapon and the ability to use it can deescalate a situation long enough

3   for someone to escape the area.

4   **INTERROGATORY NO. 22:**

5        Do YOU contend that California Penal Code section 22210's restrictions on

6   BILLIES are not longstanding?  Please EXPLAIN your answer.

7        **RESPONSE:** Plaintiff objects to this request as it requests a legal opinion and

8   Plaintiff is not a lawyer and not qualified to provide legal opinions.

9   AS TO OBJECTIONS:

10  */s/ Alan Alexander Beck*                      */s/ Stephen D. Stamboulieh*
    Alan Alexander Beck                            Stephen D. Stamboulieh
11  Law Office of Alan Beck                        Stamboulieh Law, PLLC
    2692 Harcourt Drive                            P.O. Box 4008
12  San Diego, CA  92123                           Madison, MS  39130
    (619) 905-9105                                 (601) 852-3440
13  State Bar No. 276646                           stephen@sdslaw.us
    Alan.alexander.beck@gmail.com                  MS Bar No. 102784
14  Attorneys for Plaintiffs                       *Admitted Pro Hac Vice
    RUSSELL FOUTS and
15  TAN MIGUEL TOLENTINO

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION OF INTERROGATORY RESPONSES**

I, Russell Fouts believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April _15, 2020, in Poway, California.


_____
Russell Fouts

## DECLARATION OF SERVICE BY ELECTRONIC MAIL

Case Name: Russell Fouts, et al. vs              Case No. 19-cv-01662-BEN-JLB
    Xavier Becerra_____             _____

I declare:

I am a licensed attorney in good standing in the State of Mississippi and admitted *pro hac vice* in this matter. I am 18 years of age or older and not a party to this matter.

On April 20, 2020, I served the attached Plaintiff Russell Fouts' Responses to Defendant's First Set of Interrogatories by electronic mail to the following counsel of record:

   John D. Echeverria
   Deputy Attorney General
   300 South Spring Street, Suite 1702
   Los Angeles, CA 90013
   John.Echeverria@doj.ca.gov
   Attorney for Defendant

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 20, 2020 in Canton, Madison County, Mississippi.

Dated: April 20, 2020.

        */s/ Stephen D. Stamboulieh*
        STEPHEN D. STAMBOULIEH
        Stephen@sdslaw.us
        *Attorneys for Plaintiffs*

**044**

1
2
3
4
5
6
7

ALAN ALEXANDER BECK
LAW OFFICE OF ALAN BECK
2692 HARCOURT DRIVE
SAN DIEGO, CA 92123
(619) 905-9105
STATE BAR NO. 276646
ALAN.ALEXANDER.BECK@GMAIL.COM
ATTORNEYS FOR PLAINTIFFS
RUSSELL FOUTS AND
TAN MIGUEL TOLENTINO

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. BOX 4008
MADISON, MS 39130
(601) 852-3440
STEPHEN@SDSLAW.US
MS BAR NO. 102784
 *ADMITTED PRO HAC VICE

8

9                    IN THE UNITED STATES DISTRICT COURT

10             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

12

13
14

**RUSSELL FOUTS and TAN
MIGUEL TOLENTINO,**

15                                        Plaintiffs,

16            **v.**

17

18

19

20

**XAVIER BECERRA, in his official
capacity as the Attorney General of
the State of California,**

                                        Defendant.

19-cv-01662-BEN-JLB

**PLAINTIFF TOLENTINO'S
RESPONSES TO FIRST SET OF
DEFENDANT'S
INTERROGATORIES**

Judge:        Hon. Roger T. Benitez
Courtroom:   5A
Action Filed: September 1, 2019

21

22            Propounding Party:  Defendant

23            Responding Party:   Plaintiff Tan Miguel Tolentino

24            Set No.             One

25

26

27

28                                  Exhibit "G"

---

Plaintiff Tan Miguel Tolentino's Responses to Defendant's First Set of Interrogatories (19-cv-
01662-BEN-JLB)

**045**

1   Plaintiff Tan Miguel Tolentino responds and objects to Defendant's First Set

2   of Interrogatories as follows:

3   **GENERAL STATEMENT AND OBJECTIONS**

4   Plaintiff has not yet completed discovery in this action.  All of the responses

5   contained herein are based solely upon information and documents that are

6   presently available to and specifically known by Plaintiff, and disclose only those

7   contentions that presently occur to Plaintiff Tolentino.  Plaintiff Tolentino is not a

8   lawyer and is giving these answers based upon his knowledge.

9   Plaintiff expressly reserves the right to assert any and all objections as to the

10  admissibility of such responses into evidence in this action, or in any other

11  proceeding, on any and all grounds including, but not limited to, competency,

12  relevancy, materiality, and privilege.  Plaintiff makes the responses and objections

13  herein without in any way implying that the interrogatories and responses to the

14  interrogatories are relevant or material to the subject matter of this action.

15  Any objection or response to an interrogatory shall not be construed as an

16  acknowledgment that Plaintiff performed any of the acts described in the

17  interrogatory or definitions applicable to the interrogatory, or that Plaintiff

18  acquiesces in the characterization of the conduct or activities contained in the

19  interrogatory or definitions applicable to the interrogatory.

20  The following responses are given without prejudice to the right to produce

21  evidence or witnesses that Plaintiff may later discover.  Plaintiff reserves the right

22  to supplement, clarify, revise, or correct any or all of the responses and objections

23  herein, and to assert additional objections or privileges, in one or more subsequent

24  supplemental response(s).

25

26

27

28

1

1.Plaintiff objects to each instruction, definition, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.Plaintiff objects to the interrogatories to the extent that any particular interrogatory is overbroad, vague, ambiguous, unintelligible, unduly burdensome, or not relevant to any party's claim or defense and proportional to the needs of the case.

3.Plaintiff objects to the interrogatories to the extent that any particular interrogatory requires the production of information available to Defendant through the subpoena process or his own records.

4.Plaintiff objects to the interrogatories to the extent that any individual interrogatory calls for information subject to a claim of privilege, including, without limitation, the attorney-client privilege, the governmental deliberative process privilege, the law enforcement investigatory privilege, the official information privilege, the attorney work-product doctrine, and other applicable privileges and protections.

5. The fact that Plaintiff may not specifically object to any individual interrogatory on the ground that it seeks information subject to the attorney-client privilege, the attorney work-product doctrine, or any other privilege or protection shall not be deemed a waiver of the protection of non-disclosure afforded by the applicable privileges or doctrines.  Any disclosure by Plaintiff of such information is inadvertent and shall not constitute a waiver of any applicable privilege or protection.

6. Plaintiff objects to the interrogatories to the extent that any individual interrogatory assumes the truth of facts either in dispute or not yet in evidence.

7. Plaintiff objects to the interrogatories insofar as any individual interrogatory calls for speculation or legal conclusions.

8. To the extent that any individual interrogatory purports to impose on Plaintiff the burden of providing information which is not in Plaintiff's possession, custody, or control, or is already in Defendant's possession, custody or control, or is not reasonably available to Plaintiff after a diligent search and reasonable inquiry, Plaintiff objects on the grounds that the interrogatories are overbroad, unduly burdensome, oppressive, and the burden, expense and/or intrusiveness of the discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence.

9. The foregoing objections apply to each and every response contained herein and are incorporated by reference to the extent applicable in the specific responses set forth below as though fully set forth therein.  The failure to mention one of the foregoing objections in the specific response set forth below shall not be deemed a waiver of such objection.

10.     Plaintiff will make reasonable efforts to respond to each interrogatory, to the extent that no objection is made, as Plaintiff understands and interprets the interrogatory.  If Defendant's interpretation of any individual interrogatory differs from that of Plaintiff, Plaintiff reserves the right to supplement his objections and responses.

1

## **<u>INTERROGATORIES</u>**

2

**INTERROGATORY NO. 1:**

3    DESCRIBE in full and complete detail all harms or injuries that YOU contend

4  YOU have suffered as a result of California Penal Code section 22210's restrictions

5  on BILLIES.

6    **RESPONSE:** Plaintiff objects to this request to the extent it is overbroad as it

7  request "all harms or injuries", which "harms and injuries" are ongoing as

8  Plaintiff's Second Amendment rights are being violated by not being able to own a

9  billy/baton in California.  Without waiving the foregoing objection, Plaintiff states

10  as follows: It is a violation of my Second Amendment rights not to be able to own a

11  billy in California.  Because of this hinderance, I am unable to have a useful tool to

12  defend myself should a situation to use non-lethal force arise.

13

**INTERROGATORY NO. 2:**

14    Do YOU consider BILLIES to be lethal, non-lethal, or less-than-lethal?

15  Please EXPLAIN YOUR answer.

16    **RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal

17  conclusion as Plaintiff is not a lawyer.  Without waiving the foregoing objection,

18  Plaintiff states as follows: Non-lethal.  They are a useful tool for crowd control,

19  escort, and compliance when used in self defense.

20

**INTERROGATORY NO. 3:**

21    What category of arms or weapons do YOU consider BILLIES to be a part of?

22  Please EXPLAIN YOUR answer.

23    **RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal

24  conclusion as Plaintiff is not a lawyer.  Without waiving the foregoing objection,

25  Plaintiff states as follows: A defensive tool that can be used either as a deterrent, or

26  to subdue an attacker by using striking, or restraint, control and come-a-long

27  techniques.

28

**INTERROGATORY NO. 4:**

STATE ALL FACTS supporting YOUR contention, as averred in in paragraph 14 of the COMPLAINT, that California Penal Code section 22210 is a "complete ban[] on the ownership of arms other than firearms."

**RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal conclusion as Plaintiff is not a lawyer.  Plaintiff further objects to this request as paragraph 14 does not make the contention that the referred to penal code section is a "complete ban[] on the ownership of arms other than firearms."  Without waiving the foregoing objections, Plaintiff states as follows: A baton is neither dangerous or unusual, and is a tool used by both military and law enforcement and are usually possessed by law-abiding citizens for self-defense purposes.

**INTERROGATORY NO. 5:**

Do YOU contend that stun guns and other "electric arms" discussed in paragraph 15 of the COMPLAINT are more similar to handguns or to BILLIES, or equally similar to both?  Please EXPLAIN YOUR answer.

**RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal conclusion as Plaintiff is not a lawyer.  Without waiving the foregoing objection, Plaintiff states as follows: Within the context of use of force, they are similar to billies in that they are less-lethal tools to gain control of a situation.

**INTERROGATORY NO. 6:**

Do YOU consider BILLIES to be dangerous?  Please EXPLAIN YOUR answer.

**RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal conclusion as Plaintiff is not a lawyer.  Without waiving the foregoing objection, Plaintiff states as follows: No, they are a non-lethal self defense tool.

**INTERROGATORY NO. 7:**

STATE ALL FACTS supporting your contention, as averred in the COMPLAINT, that BILLIES are arms in common use for lawful self-defense.

6

**RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal conclusion as Plaintiff is not a lawyer.  Without waiving the foregoing objection, Plaintiff states as follows: Billies are more useful for self-defense as compared to guns, knives and other edged weapons, being easy use and deploy.  It can be used defensively for blocking, and offensively for striking or jabbing. It can also be used for joint manipulation, as in the application of an arm-lock.

**INTERROGATORY NO. 8:**

Please provide an estimate of the number of BILLIES that are "lawfully owned" in the United States, as averred in paragraph 42 of the COMPLAINT. Please STATE ALL FACTS supporting such an estimate.

**RESPONSE:** Plaintiff objects to this request to the extent it calls for a legal conclusion as Plaintiff is not a lawyer.  Plaintiff further objects to this request as it is vague and ambiguous because it does not define if it is asking if the ownership is civilian, military or law enforcement.  Further, Plaintiff objects to this request as it is unduly burdensome for him to establish an estimate of the number of lawfully owned billies/batons in the United States and also, that this information may also be available to Defendant through other means that are not unduly burdensome to Plaintiff. Without waiving the foregoing objection, Plaintiff states as follows:  I have no way of knowing as such information is not compiled for public review.

**INTERROGATORY NO. 9:**

Do YOU contend that YOU are unable to engage in lawful self-defense without a BILLY?

**RESPONSE:** Self-defense is not the issue, the issue is I am restricted in what tools I have available to defend myself.

**INTERROGATORY NO. 10:**

Do YOU contend that individuals need training to use BILLIES safely and effectively for self-defense?

7

1    **RESPONSE:** Individuals should have the right to defend themselves with

2    whatever tools are necessary, and be proficient in being able to use them.

3    **INTERROGATORY NO. 11:**

4    Please DESCRIBE any and all training that YOU have received in the use of

5    BILLIES.

6    **RESPONSE**: I trained in the Filipino martial arts of Kali, and Eskrima, which

7    uses rattan sticks between 26 and 30 inches in length.  I received extensive baton

8    training at the United States Air Force Security Police academy, as well as yearly

9    expandable baton training with my assigned units.

10    **INTERROGATORY NO. 12:**

11    Please DESCRIBE any and all circumstances of which YOU have knowledge

12    in which an individual was injured by a BILLY.

13    **RESPONSE:** Plaintiff objects to this request as vague and ambiguous as the

14    term "injured" is not defined and thus susceptible to multiple different

15    interpretations.  Without waiving the foregoing objection, Plaintiff responds as

16    follows: I have no personal knowledge of anyone injured by a billy.

17    **INTERROGATORY NO. 13:**

18    Please DESCRIBE any and all crimes, whether or not they resulted in a

19    conviction, of which YOU have knowledge that involved the use of a BILLY.

20    **RESPONSE:** Plaintiff objects to this request as vague and ambiguous as the

21    term "crimes" is not defined and thus susceptible to multiple different

22    interpretations.  Without waiving the foregoing objection, Plaintiff responds as

23    follows: I do not have personal knowledge of anyone convicted of criminal use of a

24    billy.

25    **INTERROGATORY NO. 14:**

26    Have YOU ever applied for a permit to possess a BILLY in the State of

27    California?

28    **RESPONSE:** No.

8

1  **INTERROGATORY NO. 15:**

2      If YOUR response to Interrogatory No. 14 was yes, please STATE ALL

3  FACTS CONCERNING any such applications, including whether the application

4  was granted or denied.

5      **RESPONSE:** Not applicable.

6  **INTERROGATORY NO. 16:**

7      Have YOU ever completed a course of instruction in the carrying and use of

8  BILLIES?

9      **RESPONSE:** Yes.

10  **INTERROGATORY NO. 17:**

11      If YOUR response to Interrogatory No. 16 was yes, please STATE ALL

12  FACTS CONCERNING the instruction, including, but not limited to, the date or

13  dates of instruction and the topics addressed in the instruction.

14      **RESPONSE:** July 1988, I received training in use of baton at the USAF

15  Security Police Academy.

16      1989-1992, I received yearly training in the use of expandable baton as a

17  member of the 4392nd Security Police Group and the 30th Security Forces

18  Squadron.

19      2005-2007, I was a student of Guro Narrison Babao, instructor in Filipino

20  Martial arts (Kali/Eskrima).

21      2015-2019, I took yearly seminar training with Guro Willie Laureano,

22  instructor in Filipino Martial arts (Kali/Eskrima).

23  **INTERROGATORY NO. 18:**

24      Please DESCRIBE the training received by PLAINTIFF TOLENTINO in the

25  use of BILLIES as alleged in paragraph 62 of the COMPLAINT, including, but not

26  limited to, the frequency and duration of the training and the topics addressed in the

27  training.

28

9

**RESPONSE:** July 1988, USAF Security Police Academy.  Training included PART (Physical Apprehension and Restraining Techniques), use of baton for individual and multiple assailants, as well as riot control (how to deploy and move in formation).

1989-1992. As a member of the 4392nd Security Police Group and the 30th Security Forces Squadron, received training in the expandable baton (how to strike and how to use it as a leverage device).

2005-2007, As a student of Guro Narrison Babao, I learned single/double stick/bladed weapon offensive and defensive techniques.

2015-2019, I took yearly seminar training with Guro Willie Laureano.  Topics of training were single stick and bladed weapon offensive and defensive techniques.

**INTERROGATORY NO. 19:**

Please DESCRIBE any and all weapons that YOU possess lawfully for self-defense.

**RESPONSE:** Plaintiff objects to this request to list the weapons he lawfully possesses at it is an invasion of his privacy and is irrelevant to the instant case what weapons he currently lawfully possesses.  Without waiving the foregoing objections, Plaintiff states as follows: I own shotguns, handguns, and folding knives.

**INTERROGATORY NO. 16:**

Do YOU consider BILLIES to be necessary to study and practice martial arts, including Amis [sic] and Kali, as referenced in paragraph 65 of the COMPLAINT? Please EXPLAIN your answer.

**RESPONSE:** Billies are necessary in practicing for real world scenarios in quite a few martial arts.  In Arnis and Kali (including Eskrima), training revolves primarily around the wielding of one, or multiple batons.

**INTERROGATORY NO. 17:**

STATE ALL FACTS supporting your contention, as averred in paragraph 35 of the COMPLAINT, that a BILLY "is a roughly cylindrical club made of wood, rubber, plastic or metal" and that "[i]t is carried as a compliance tool and defensive weapon."

**RESPONSE:**  I have used wooden clubs, expandable metal batons, rattan sticks, padded iron rebar, and plastic rods as billies in both training and as non-lethal defensive tools.

**INTERROGATORY NO. 18:**

Do YOU contend that California Penal Code section 22210's restrictions on BILLIES are not longstanding?  Please EXPLAIN your answer.

**RESPONSE:** Plaintiff objects to this request as it requests a legal opinion and Plaintiff is not a lawyer and not qualified to provide legal opinions.

AS TO OBJECTIONS:

*/s/ Alan Alexander Beck*
Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
State Bar No. 276646
Alan.alexander.beck@gmail.com
Attorneys for Plaintiffs
RUSSELL FOUTS and
TAN MIGUEL TOLENTINO

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice

## **VERIFICATION OF INTERROGATORY RESPONSES**

I, Tan Miguel Tolentino believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 24th, 2020, in San Diego, California.


_Tan Miguel Tolentino_
Tan Miguel Tolentino

## DECLARATION OF SERVICE BY ELECTRONIC MAIL

Case Name: Russell Fouts, et al. vs                Case No. 19-cv-01662-BEN-JLB
             Xavier Becerra_____

I declare:

I am a licensed attorney in good standing in the State of Mississippi and admitted *pro hac vice* in this matter. I am 18 years of age or older and not a party to this matter.

On April 29, 2020, I served the attached Plaintiff Tan Miguel Tolentino's Responses to Defendant's First Set of Interrogatories by electronic mail to the following counsel of record:

      John D. Echeverria
      Deputy Attorney General
      300 South Spring Street, Suite 1702
      Los Angeles, CA 90013
      John.Echeverria@doj.ca.gov
      Attorney for Defendant

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 29, 2020 in Canton, Madison County, Mississippi.

Dated: April 29, 2020.

                      */s/ Stephen D. Stamboulieh*
                      STEPHEN D. STAMBOULIEH
                      Stephen@sdslaw.us
                      *Attorneys for Plaintiffs*