XAVIER BECERRA
Attorney General of California
State Bar No. 118517
MARK R. BECKINGTON
Supervising Deputy Attorney General
State Bar No. 126009
JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3479
  Fax:  (415) 703-1234
  E-mail:  John.Echeverria@doj.ca.gov
*Attorneys for Defendant Xavier Becerra, in*
*his official capacity as Attorney General of*
*the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL FOUTS et al.,**<br><br>Plaintiff,<br><br>v.<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of the State of California,**<br><br>Defendant. | 3:19-cv-01662-BEN-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          October 19, 2020<br>Time:          10:30 a.m.<br>Courtroom:  5A<br>Judge:         Hon. Roger T. Benitez<br>Action Filed: September 1, 2019 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................2

    I.    California's Longstanding Prohibition on Billies ................................2

    II.    Procedural History ..............................................................................5

LEGAL STANDARD ...........................................................................................5

ARGUMENT........................................................................................................6

    I.    The Second Amendment Legal Framework ......................................6

    II.    California's Restrictions on Billy Clubs Do Not Burden Conduct Protected by the Second Amendment....................................................7

        A.    Billy Clubs Are Dangerous and Unusual Weapons, and Are Not in Common Use for Lawful Purposes........................7

        B.    California's 100-Year-Old Billy-Club Restrictions Are Longstanding Regulations that Are Presumptively Constitutional...........................................................................11

    III.    Even If California's Billy-Club Restrictions Burden Conduct Protected by the Second Amendment, They Are Subject to, and Satisfy, Intermediate Scrutiny ............................................................13

        A.    Billy-Club Possession Restrictions Are Subject to Intermediate Scrutiny Because They Do Not Severely Burden the Core Second Amendment Right...........................13

        B.    California's Billy-Club Restrictions Withstand Intermediate Scrutiny..................................................................14

            1.    Section 22210 Promotes Important Government Interests ......................................................................14

            2.    Section 22210 Is Reasonably Fitted to the State's Important Public-Safety Interests ...................................15

CONCLUSION ..................................................................................................19

i

1

# TABLE OF AUTHORITIES

2

__Page__

3

*Bauer v. Becerra*
    858 F.3d 1216 (9th Cir. 2017)...........................................................................13

*Brodheim v. Rowland*
    993 F.2d 716 (9th Cir. 1993)................................................................................8

*Daggett v. Comm'n on Governmental Ethics & Election Practices*
    172 F.3d 104 (1st Cir. 1999) ...............................................................................6

*Daggett v. Comm'n on Governmental Ethics & Election Practices*
    205 F.3d 445 (1st Cir. 2000) ...............................................................................5

*District of Columbia v. Heller*
    554 U.S. 570 (2008)..................................................................................*passim*

*Duncan v. Becerra*
    __ F.3d __ (9th Cir. Aug. 14, 2020) .............................................................9, 14

*Fyock v. Sunnyvale*
    779 F.3d 991 (9th Cir. 2015)..................................................................7, 11, 15

*Jackson v. City & Cty. of San Francisco*
    746 F.3d 953 (9th Cir. 2014)..............................................................13, 15, 19

*Kachalsky v. Cty. of Westchester*
    701 F.3d 81 (2d Cir. 2012)..................................................................................15

*Pena v. Lindley*
    898 F.3d 969 (9th Cir. 2018)..................................................................6, 15, 16

*People v. Baugh*
    20 Cal. App. 5th 438 (2018).......................................................................3, 4, 8

*People v. Davis*
    214 Cal. App. 4th 1322 (2013)................................................................*passim*

*People v. Grubb*
    63 Cal. 2d 614 (1965) ...........................................................................3, 4, 8, 15

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Memorandum of Points and Authorities in Support of Motion
for Summary Judgment (3:19-cv-01662-BEN-JLB)

1

2

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

3

4

*People v. King*
   38 Cal. 4th 617 (2006) ...................................................................3, 12

5

6

*People v. Mercer*
   42 Cal. App. 4th Supp. 1 (1995)....................................................3, 4

7

8

*Puente Ariz. v. Arpaio*
   821 F.3d 1098 (9th Cir. 2016)...........................................................19

9

10

*Silvester v. Harris*
   843 F.3d 816 (9th Cir. 2016).....................................................*passim*

11

*State v. DeCiccio*
   315 Conn. 79 (Conn. 2014).................................................................10

12

13

*United States v. Chovan*
   735 F.3d 1127 (9th Cir. 2013)............................................................15

14

15

*United States v. Phillips*
   827 F.3d 1171 (9th Cir. 2016)............................................................11

16

17

*United States v. Skoien*
   614 F.3d 638 (7th Cir. 2010)..............................................................11

18

19

*United States v. Solerno*
   481 U.S. 739 (1987)............................................................................19

20

S<small>TATUTES</small>

21

California Business & Professions Code
   § 7585.9(a).........................................................................................18

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES
### (continued)

Page

California Penal Code
    § 12020............................................................................3, 8, 12
    § 12020(a)(1)....................................................................12
    § 16590(m) .......................................................................4
    § 18010(b) ........................................................................4
    § 22210.......................................................................*passim*
    § 22215.............................................................................5
    § 22290.............................................................................4
    § 22295.............................................................................5
    § 22295(a)........................................................................4
    § 22295(b)...................................................................5, 18
    § 22295(c).........................................................................5
    § 22295(g) ........................................................................5

Nevada Rev. Stat. 202.350(1)(a) ...........................................12

Nevada Stats. 1925, Chapter 47 (1925) ................................12

New York Penal Law § 265.01 .............................................12

New York Stats. 1866, Chapter 716, §§ 1, 2 (1866) ..............12

New York Stats. 1909, Chapter 93 (1909)............................12

CONSTITUTIONAL PROVISIONS

United States Constitution, Second Amendment ..............................*passim*

COURT RULES

Federal Rules of Civil Procedure
    Rule 56 .............................................................................5
    Rule 56(a) ........................................................................5

OTHER AUTHORITIES

11 C.C.R. § 1005(a) ...............................................................17

iv

**INTRODUCTION**

Since 1917—for more than one hundred years—California has restricted the civilian acquisition and possession of billies, also referred to as "billy clubs," "police batons," or "night sticks."[1]  *See* Cal. Penal Code § 22210.  A billy is a cylindrical stick or club made of wood, rubber, plastic, or metal that can be used as an intermediate-force compliance tool or weapon.  In enacting California's billy-club restrictions, the Legislature determined that billies were "common to the criminal's arsenal" and were "instruments which are ordinarily used for criminal and unlawful purposes."  *People v. Davis*, 214 Cal. App. 4th 1322, 1331 (2013) (quoting *People v. Grubb*, 63 Cal. 2d 614, 620 (1965), *superseded on other grounds by statute*).  While billies are generally considered to be less-than-lethal weapons, they can still cause serious bodily injury or even death, especially when wielded by someone untrained in the safe and effective use of batons.

Plaintiffs—individuals who wish to possess billies—contend that California Penal Code section 22210 is unconstitutional, both facially and as-applied to them, under the Second Amendment to the United States Constitution.  Plaintiffs' claim fails as a matter of law.  Under the Ninth Circuit's two-step framework for adjudicating Second Amendment claims, section 22210 does not burden conduct protected by the Second Amendment at the first step.  There is no evidence to suggest that billies, unlike the handguns considered in *District of Columbia v. Heller*, 554 U.S. 570 (2008), are in common use for lawful purposes like self-defense, such as the number of billy clubs in lawful possession, the purposes for which individuals may acquire and possess billy clubs, or any purported history or tradition of baton possession in the United States.  To the contrary, billy clubs are "dangerous and unusual" weapons not protected by the Second Amendment,

---

[1] For purposes of this memorandum, Defendant uses the terms "billy," "billy club," and "baton" interchangeably.  Plaintiffs agree that the term billy and baton are synonymous.  *See* Compl. ¶ 7.

1

consistent with the determination of the California Court of Appeal.  *See Davis*, 214
Cal. App. 4th at 1333 (concluding that "a billy falls outside the protection of the
Second Amendment" at step one).  California's billy-club restrictions do not burden
conduct protected by the Second Amendment at step one for an additional,
independent reason:  having been enacted over 100 years ago in 1917, they are
"longstanding prohibitions" falling outside the scope of the Second Amendment.

Even if it were assumed that restricting civilian access to billy clubs burdens
conduct protected by the Second Amendment, any burden on the core right to
armed defense of hearth and home is not "severe," warranting application of
intermediate, and not strict, scrutiny at step two.  *See Davis*, 214 Cal. App. 4th at
1332 ("We note, as well, the restriction contained in Section [22210] does not
deprive persons of their ability to defend themselves or their homes, because there
are alternative means to do so." (citation omitted)).  Under intermediate scrutiny,
restricting baton possession to trained law enforcement and security personnel is
reasonably fitted to the State's important public-safety interests, including reducing
the criminal or negligent use of batons, especially by untrained individuals, and
ensuring that law enforcement has an effective intermediate-force compliance tool
to prevent unnecessary escalations of force in the performance their official duties,
which would be undermined if civilians are able to possess the same tool.

Under both steps of the Court's Second Amendment inquiry, California Penal
Code section 22210 is constitutional.  Accordingly, Defendant is entitled to
judgment as a matter of law.

## BACKGROUND

### I.  CALIFORNIA'S LONGSTANDING PROHIBITION ON BILLIES

A billy is a cylindrical stick or club made of wood, rubber, plastic, or metal
that can be used as a compliance tool or bludgeon.  Expert Report & Decl. of Brian
Fichtner ("Fichtner Decl.") ¶ 13;[2] *see also* Compl. ¶ 35; *People v. Mercer*, 42 Cal.

---

[2] A true and correct copy of Mr. Fichtner's declaration is attached as

2

App. 4th Supp. 1, 5 (1995) ("Webster's New World Dictionary defines a 'billy' as 'a club or heavy stick; truncheon, esp. one carried by a policeman.'" (citation omitted)).  The billy club became a signature tool of early police officers in the United Kingdom and the United States.  Echeverria Decl., Ex. 3 at 2-5.  California has prohibited the civilian possession of billies for over a century.

In 1917, California enacted its first prohibition on the manufacture, sale, giving, or possession of "any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, [or] a dirk or a dagger."  Def.'s Req. for Judicial Notice ("RJN"), Ex. 1 at 2 (Stats. 1917, ch. 145 §§ 1-2); *see also People v. King*, 38 Cal. 4th 617, 624 (2006) (citing Stats. 1917, ch. 145, § 1).  The California Supreme Court has described the legislative intent behind these restrictions as seeking "to condemn weapons common to the criminal's arsenal," "to outlaw instruments which are ordinarily used for criminal and unlawful purposes," and to "check[] the possession of objects subject to dangerous use."  *Grubb*, 63 Cal. 2d at 620 (citation omitted).  The Legislature reenacted the restrictions in 1923, *see* RJN, Ex. 2 at 4, 10 (Stats. 1923, ch. 339, §§ 1, 17); *see also King*, 38 Cal. 4th at 624 (citing Stats. 1923, ch. 339, § 1), and in 1953, codified the restrictions as part of the Dangerous Weapons' Control Law at former California Penal Code section 12020, *King*, 38 Cal. 4th at 623-24.  In 2010, the provisions were recodified without substantive change at California Penal Code section 22210.  *People v. Baugh*, 20 Cal. App. 5th 438, 443 n.2 (2018) (citing *People v. Brown*, 227 Cal. App. 4th 451, 454 n.1 (2014)).

California Penal Code section 22210 provides that "any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any leaded cane, or *any instrument or weapon of the kind commonly known as a billy*,

---

Exhibit 1 to the Declaration of John D. Echeverria ("Echeverria Decl." or "Echeverria Declaration").

3

blackjack, sandbag, sandclub, sap, or slungshot" is guilty of a misdemeanor or a felony. Cal. Penal Code § 22210 (emphasis added). In addition to objects specifically manufactured as billies or batons, *see, e.g.*, Fichtner Decl. ¶¶ 15-16 (depicting examples of batons), "ordinarily harmless objects" can qualify as a billies under section 22210 "when the circumstances of possession demonstrate an immediate atmosphere of danger," such as an "altered baseball bat, taped at the smaller end, heavier at the unbroken end, carried about in the car." *Grubb*, 63 Cal. 2d at 621; *see also Mercer*, 42 Cal. App. 4th Supp. at 6 (determining that collapsible baton is a billy because the object met various definitions of "billy" and, "even assuming arguendo that [the object] was not initially meant to be a weapon, the attendant circumstances indicate that the item was to be used as a weapon at the time of arrest"); *Baugh*, 20 Cal. App. 5th at 448 (noting that California "courts have concluded that the defendant must know that the [ordinarily harmless] object is a weapon or may be used as a weapon, or must possess the object 'as a weapon'" to violate section 22210 (citation omitted)). California Penal Code section 16590(m) designates a billy as a "generally prohibited weapon." A billy is also designated a "nuisance," subject to confiscation and summary destruction by law enforcement under California Penal Code section 18010(b). Cal. Penal Code § 22290.

A police baton qualifies as an "instrument or weapon of the kind commonly known as a billy" and thus falls within the scope of California Penal Code section 22210. *See Mercer*, 42 Cal. App. 4th Supp. at 6; RJN, Ex. 7 (Cal. Att'y Gen. Op. 81-805 (1982)) at 2; *see also* Fichtner Decl. ¶ 14. Police officers, special police officers, peace officers, and law enforcement officers may be authorized to carry a wooden club or baton that would otherwise be prohibited under section 22210. Cal. Penal Code § 22295(a). Uniformed security guards may also be authorized to carry a wooden club or baton subject to certain conditions, including completion of a course of instruction certified by the California Department of Consumer Affairs in

the carrying and use of the club or baton.  *Id.* § 22295(b).[3]  The Department of Consumer Affairs must work with the Commission of Peace Officer Standards and Training ("POST") to "develop standards for a course in the carrying and use of a club or baton."  *Id.* § 22295(c).  Section 22210 does not apply to the manufacture for, sale to, or lending of wooden clubs or batons to special police officers or uniformed security guards authorized to carry a wooden club or baton under section 22295.  Cal. Penal Code § 22215.

## II.   PROCEDURAL HISTORY

On September 1, 2019, Plaintiffs filed their complaint, challenging the constitutionality of California Penal Code section 22215 under the Second Amendment.  Dkt. 1.  Plaintiffs assert a cause of action under the Second and Fourteenth Amendments and a cause of action for declaratory judgment.  Compl. ¶¶ 76-85.  Plaintiffs pray for an injunction of section 22215 "and any other relevant California law which bans the acquisition, possession, carrying or use of billies as applied to Plaintiffs and additionally against other similarly situated law abiding persons."  *Id.* at 13 (Prayer for Relief).  On October 14, 2020, Defendant filed an answer to the complaint.  Dkt. 10.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When the constitutionality of a statute is at issue, a court's decision "must be based largely on legislative, as opposed to adjudicative, facts."  *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 205 F.3d 445, 455-56 (1st Cir.

---

[3] In addition to peace officers and uniformed security guards, animal control officers, humane officers, and illegal dumping enforcement officers may be authorized to carry a wooden club or baton in the scope of their official duties if they have completed the POST-certified baton training course.  Cal. Penal Code § 22295(g).

2000).  Legislative facts, "which go to the justification for a statute, usually are not proved through trial evidence but rather by material set forth in the briefs, the ordinary limits on judicial notice having no application to legislative facts." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999) (citing Fed. R. Evid. 201 advisory committee's note); *see also Pena v. Lindley*, 898 F.3d 969, 979 (9th Cir. 2018) ("It is important to note that we are weighing a legislative judgment, not evidence in a criminal trial.  Because legislatures are not obligated, when enacting [their] statutes, to make a record of the type that an administrative agency or court does to accommodate judicial review, we should not conflate legislative findings with 'evidence' in the technical sense." (quotation omitted)).

## ARGUMENT

### I.  THE SECOND AMENDMENT LEGAL FRAMEWORK

The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  While *Heller* recognized an individual right to keep and bear arms, it explained that "the right secured by the Second Amendment is not unlimited" and does not extend to "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Id.* at 626 (citations omitted).  The Ninth Circuit thus uses a two-step framework for assessing the constitutionality of challenged laws under the Second Amendment.  "[F]irst, the court asks whether the challenged law burdens conduct protected by the Second Amendment; and if so, the court must then apply the appropriate level of scrutiny."  *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016).  The first step considers whether the challenged law burdens conduct protected by the Second Amendment, based on a "historical understanding of the scope of the right."  *Id.* at 821 (quoting *Heller*, 554 U.S. at 625).  If it does not, then that law "may be upheld without further analysis."  *Id.* (citation omitted).  If the court determines that the

6

1   challenged law burdens conduct protected by the Second Amendment, it then

2   proceeds to the second step of the inquiry, determining the appropriate level of

3   scrutiny, and then applying that level of scrutiny.  *Id.* (citation omitted).

4

5   **II.   CALIFORNIA'S RESTRICTIONS ON BILLY CLUBS DO NOT BURDEN CONDUCT PROTECTED BY THE SECOND AMENDMENT**

6         California's billy-club restrictions are constitutional at the first step of the

7   Second Amendment inquiry for two independent reasons.  First, the State is not

8   aware of any evidence demonstrating that billy clubs are in common use for lawful

9   purposes like self-defense; to the contrary, the banned weapons are dangerous and

10  unusual and, thus, fall outside the scope of the Second Amendment's protections.

11  Second, California's billy-club restrictions are presumptively constitutional because

12  the restrictions have been in effect for over 100 years.  Simply put, section 22210 is

13  not the type of law on which the Supreme Court intended to "cast doubt" in the

14  wake of *Heller*.  *Heller*, 554 U.S. at 626.

15         **A.   Billy Clubs Are Dangerous and Unusual Weapons, and Are Not in Common Use for Lawful Purposes**

16

17        The Second Amendment "does not protect those weapons not typically

18  possessed by law-abiding citizens for lawful purposes, such as the short-barreled

19  shotguns."  *Heller*, 554 U.S. at 625; *see also Fyock v. Sunnyvale*, 779 F.3d 991, 997

20  (9th Cir. 2015).  This articulation of what is protected by the Second Amendment

21  finds its roots in the "historical tradition of prohibiting the carrying of 'dangerous

22  and unusual weapons.'"  *Heller*, 554 U.S. at 627.  It asks not whether a weapon

23  could be used lawfully, such as for self-defense, as any weapon could be

24  conceivably used to protect one's person and home.  Rather, it asks whether the

25  weapon is particularly susceptible to misuse, or criminal use, as are short-barreled

26  shotguns or machine guns.  *Id.* at 625.  Such "dangerous and unusual weapons" are

27  not, conversely, "'the sorts of weapon' that are 'in common use'" for lawful

28  purposes.  *Silvester*, 843 F.3d at 830 (Thomas, C.J., concurring).

7

1    Over one century ago, California enacted billy-club restrictions precisely

2  because billies were dangerous and unusual weapons preferred by criminals.  In

3  restricting civilian possession of billy clubs, the California Legislature "sought to

4  condemn weapons common to the criminal's arsenal; it meant as well 'to outlaw

5  instruments which are ordinarily used for criminal and unlawful purposes.'"

6  *Grubb*, 63 Cal. 2d at 620; *accord Davis*, 214 Cal. App. 4th at 1332-33 ("California

7  courts have concluded that in enacting section 12020 [the predecessor to California

8  Penal Code section 22210], the Legislature intended to outlaw instruments

9  normally used for criminal purposes." (citing *Grubb*, 63 Cal. 2d at 620)).  The

10  California Supreme Court's "articulation of the legislative intent behind [the billy-

11  club restrictions] more than 50 years ago remains valid today." *Baugh*, 20 Cal.

12  App. 5th at 449.  Under established principles of federalism, state-court

13  constructions of section 22210, including descriptions of legislative intent, are

14  entitled to deference by this Court.  *See Brodheim v. Rowland*, 993 F.2d 716, 717

15  (9th Cir. 1993) ("'We are bound by [a] state court's construction of its own penal

16  statute,' and may re-examine a state court's interpretation of its own law only if 'the

17  court's interpretation is untenable or amounts to a subterfuge to avoid federal

18  review of a constitutional violation' (quoting *Taylor v. Kincheloe*, 920 F.2d 599,

19  609 (9th Cir. 1990))).

20    Because the Legislature sought to prohibit possession of dangerous weapons

21  normally used for criminal, and not lawful, purposes, the California Court of

22  Appeal upheld California's billy-club restrictions against a Second Amendment

23  challenge at step one of the Second Amendment inquiry.  *See Davis*, 214 Cal. App.

24  4th at 1333.  The court aptly observed that, "[i]n this day and age, as we are all

25  painfully aware, it is often a gun—not a billy, sap, or blackjack—that is the weapon

26  of choice in most violent crimes," but that "does not negate the Legislature's

27  determination that the kind of weapons known as billies, blackjacks, and saps are

28  also instruments which are 'ordinarily used from crime and unlawful purposes.'"

8

1   *Id.* (quoting *Grubb*, 63 Cal. 2d at 620).  The Court should reach the same

2   conclusion here.

3   As discussed in Section III.B, *infra*, billies are dangerous weapons.  They are

4   also unusual.  Even if "[c]ommonality is determined largely by statistics," where

5   "common use" is established primarily by evidence that a weapon is

6   "overwhelmingly owned and used for lawful purposes," *Duncan v. Becerra*, __

7   F.3d __, 2020 WL 4730668, at *7 (9th Cir. Aug. 14, 2020), *petition for reh'g en*

8   *banc filed*, Plaintiffs cannot show that billy clubs are protected by the Second

9   Amendment.  In stark contrast with those cases that have found particular weapons

10  to be in common use for lawful purposes, *see id.* at 8 (finding that "nearly half of all

11  magazines in the United States today hold more than ten rounds of ammunition"

12  and that "such magazines are overwhelmingly owned and used for lawful

13  purposes"), the State is aware of no evidence quantifying the *number* of billies that

14  are lawfully possessed by civilians in the United States, let alone evidence of the

15  *reasons* why civilians may (if they actually do) choose billy clubs to engage in

16  effective self-defense.  *See id.* at 7 (noting that "typical possession requires us to

17  look into both broad patterns of use and the subjective motives of [the weapon's]

18  owners." (quoting *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242,

19  256 (2d Cir. 2015))).

20  A billy is an intermediate-force, compliance tool that has specific law-

21  enforcement applications, such as effecting an arrest or maintaining crowd control.

22  Fichtner Decl. ¶¶ 14, 20 (describing use and deployment of expandable police

23  batons); Expert Rebuttal Report & Decl. of Leofuldo Tablanza II ("Tablanza

24  Decl.")[4] at 6 (emphasis added) (acknowledging that "Mr. Fichtner has some valid

25  points, like police officers using [a baton] as a tool before resorting to lethal force,

26

27  _____

    [4] A true and correct copy of Mr. Tablanza's declaration is attached as

    Exhibit 2 to the Echeverria Declaration.

28

using it to deescalate a situation, or using [it] for compliance holds").[5]  A bily is not well suited to self-defense, even if it could conceivably be used for self-defense. Fichtner Decl. ¶ 33.  And here, the evidence confirms that billies are not needed for self-defense, especially given the myriad less-than-lethal (and lethal) options available.  *See* Fichtner Decl. ¶¶ 32-34.[6]  In fact, the witness designated by Plaintiffs as a rebuttal expert did not dispute that individuals have a range of weapons and items to use for self-defense, and conceded that "[a] civilian could use the ASP [baton] for self-defense, *just as well as they could* with any household item."  Tablanza Decl. at 6 (emphasis added).  In other words, even Plaintiffs' purported expert witness does not believe that batons provide any material advantage for self-defense over other items.

Based on the record before the Court, billies are both dangerous and unusual. Therefore, billies are not protected by the Second Amendment at step one, and California Penal Code section 22210 is constitutional.

<hr>

[5] The Connecticut Supreme Court determined that "expandable metal police batons" "are instruments manufactured specifically for law enforcement use as nonlethal weapons."  *State v. DeCiccio*, 315 Conn. 79, 133 (Conn. 2014) (citation omitted).  While that court invalidated a statute prohibiting the keeping of any police baton or nightstick in a vehicle under the Second Amendment, the court determined that such a law should be subject to intermediate scrutiny.  *Id.* at 141-42.  Under intermediate scrutiny, the court held that the statute was internally inconsistent because the statute exempted the transportation of other weapons that the legislature determined to be dangerous.  *Id.* at 147.  Section 22210, by contrast, includes exceptions that do not undermine the public-safety justifications for the law.  *See infra* Section III.B.  Moreover, in finding that police batons and nightsticks are protected by the Second Amendment at step one, the *DiCiccio* court cited evidence of "widespread acceptance of batons within the law enforcement community," *id.* at 133, even though common use among law enforcement or military personnel is not relevant to whether particular arms are common among *civilians for self-defense*.  *See Heller*, 554 U.S. at 624-25 (noting that Second Amendment does not protect "weapons not typically possessed by law-abiding citizens for lawful purposes").  And unlike the record here, the *DiCiccio* court did not examine whether Connecticut's baton law was longstanding.  *See infra* Section II.B.

[6] In responding to interrogatories asking if Plaintiffs contend that they are unable to engage in lawful self-defense without a billy, Plaintiffs responded that self-defense "is not the issue."  Echeverria Decl., Ex. 4 ("Lawful self defense is not the issue or contention, the issue is when requiring a force multiplier that is less than lethal . . . ."); *id.*, Ex. 5 ("Self-defense is not the issue, the issue is I am restricted in what tools I have available to defend myself.").

### B.   California's 100-Year-Old Billy-Club Restrictions Are Longstanding Regulations that Are Presumptively Constitutional

Plaintiffs' Second Amendment challenge fails at the first step for an additional reason:  section 22210 is a presumptively lawful regulation.  *Heller* "identified a non-exhaustive list of 'longstanding prohibitions,' which can be considered 'presumptively lawful regulatory measures' falling outside the scope of Second Amendment protection." *Silvester*, 843 F.3d at 830 (Thomas, C.J., concurring) (quoting *Heller*, 554 U.S. at 626, 627 n.26).  To qualify as sufficiently "longstanding" a challenged law need not trace an analog to the Founding-era, as courts have found laws enacted in the 1920s and 1930s to be sufficiently longstanding to immunize them from Second Amendment challenge.  *See id.* at 831 (concluding that California's ten-day waiting period for successive firearm purchases was presumptively lawful based on California's first waiting-period law enacted in 1923 that provided a *single-day* waiting period); *Fyock*, 779 F.3d at 997 (noting that "early twentieth century regulations might nevertheless demonstrate a history of longstanding regulation").[7]  And the historical regulations may be sufficiently longstanding if adopted by "several states." *See Silvester*, 843 F.3d at 831 (Thomas, C.J., concurring) (citing three states that enacted waiting-period statutes in the 1920s).

Here, the billy-club restrictions in Penal Code section 22210 are traceable to at least 1917, when the Legislature initially restricted the possession of billies.  *See* RJN, Ex. 1 (Stats. 1917, ch. 145).  The 1917 restrictions were codified in 1923, *see* RJN, Ex. 2 (Stats. 1923, ch. 339), and have been carried through without repeal to this day.  In 2010, the Legislature codified the billy-club restrictions in former

---

[7] The Supreme Court identified felon-possession bans as a longstanding regulation that is presumptively constitutional under the Second Amendment, *Heller*, 554 U.S. at 626, even though felon-possession bans were not enacted until 1938, *see United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc); *see also United States v. Phillips*, 827 F.3d 1171, 1174 & n.2 (9th Cir. 2016) (discussing disagreement over whether felon-possession bans are "longstanding").

11

Penal Code section 12020(a)(1) at section 22210.  *See King*, 38 Cal. 4th at 624 (noting that the predecessor to California Penal Code section 22210 (former Cal. Penal Code § 12020) was enacted in 1953 and was "derived from a similarly worded uncodified statute enacted three decades earlier" in 1923 and an earlier version enacted in 1917 (citing Stats. 1923, ch. 339, § 1; Stats. 1917, ch. 145, § 1)).

California's restrictions are also similar to billy-club restrictions adopted in other jurisdictions.  At least two other states restrict the civilian possession of billies.  *See, e.g.*, Nev. Rev. Stat. 202.350(1)(a); N.Y. Penal Law § 265.01.  As with California's restrictions, these laws were enacted in the early 20th Century, in 1925 and 1909, respectively.  *See* RJN, Ex. 3 (Nev. Stats. 1925, ch. 47 (1925)); *id.*, Ex. 4 (N.Y. Stats. 1909, ch. 93 (1909)).  Several other states enacted restrictions on the carrying of billies in public, dating back even earlier to the mid-19th Century.  *See, e.g.*, *id.*, Ex. 5 (N.Y. Stats. 1866, ch. 716, §§ 1, 2 (1866)) (prohibiting concealed carrying of billies "by any other than a public officer"); *id.*, Ex. 6 (Pa. P.L. 33 (1875)) ("Any person within [Pennsylvania] who shall carry any . . . handy-billy, . . . concealed upon his person, with the intent therewith unlawfully and maliciously to do injury to another person, shall be deemed guilty of a misdemeanor.").

Because California's billy-club restrictions were enacted in 1917, and are similar to other billy-club restrictions enacted in other jurisdictions at that time or earlier, California Penal Code section 22210 is a longstanding measure that is constitutional under the Second Amendment.

## III.   EVEN IF CALIFORNIA'S BILLY-CLUB RESTRICTIONS BURDEN CONDUCT PROTECTED BY THE SECOND AMENDMENT, THEY ARE SUBJECT TO, AND SATISFY, INTERMEDIATE SCRUTINY

Even if the regulated assault weapons were entitled to some protection under the Second Amendment, the challenged laws are constitutional under the applicable level of scrutiny:  intermediate scrutiny.

## A.   Billy-Club Possession Restrictions Are Subject to Intermediate Scrutiny Because They Do Not Severely Burden the Core Second Amendment Right

In determining the appropriate level of scrutiny to apply to a Second Amendment challenge, the Court must consider "(1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 960-61 (9th Cir. 2014). "A law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017) (quoting *Silvester*, 843 F.3d at 821). A "law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny.  Otherwise, intermediate scrutiny is appropriate." *Id.* (quoting *Silvester*, 843 F.3d at 821).

Here, section 22210 does not severely burden the core Second Amendment right, because it does not affect the ability of law-abiding citizens to arm themselves with other less-than-lethal weapons or devices (e.g., a stun gun, pepper spray, or an alarm device), or even lethal weapons (e.g., a shotgun or handgun), to engage in lawful self-defense in the home.  As explained by the Special Agent Supervisor responsible for baton training for the California Department of Justice: "[R]estricting civilian access to batons will not materially impair the ability of law-abiding civilians to engage effectively in lawful self-defense.  Law-abiding civilians continue to have access to the full range of all lawful lethal and intermediate-force options that can be used effectively for self-defense." Fichtner Decl. ¶¶ 32-34.[8]

---

[8] Even among law enforcement, baton use has declined as other less-than-lethal options have become more widely available. *See* Echeverria Decl., Ex. 6 at 3 ("Baton use declined in the late 20th century as other less-than lethal options such as TASER weapons and pepper spray became more widely available.  Despite their usefulness, many officers have stopped carrying batons because their use often requires more justification than other options.").  Declining baton use among law enforcement further indicates that less-than-lethal alternatives are available and

13

The California Court of Appeal similarly observed that California's billy-club restrictions, even when applied to baton-possession in the home, "does not deprive persons of their ability to defend themselves or their homes, because there are alternative means to do so." *Davis*, 214 Cal. App. 4th at 1332 (citation omitted).[9] Accordingly, any burden imposed by California Penal Code section 22210 is not severe; it should be subject to intermediate scrutiny.

### B.   California's Billy-Club Restrictions Withstand Intermediate Scrutiny

California Penal Code section 22210 withstands intermediate scrutiny.  Under Second Amendment jurisprudence, a regulation satisfies intermediate scrutiny if (1) the government's stated objective is "significant, substantial, or important"; and (2) there is a "'reasonable fit' between the challenged regulation and the asserted objective." *Silvester*, 843 F.3d at 821-22 (citation omitted).

### 1.   Section 22210 Promotes Important Government Interests

California Penal Code section 22210 advances several important government interests.  First, section 22210 promotes public-safety by seeking to reduce the prevalence of billy-club use in crime, such as assault, robbery, rioting, and vigilantism. *Grubb*, 63 Cal.2d at 620 ("The Legislature obviously sought to condemn weapons common to the criminal's arsenal . . . .").  Second, section 22210 promotes public-safety by ensuring that only trained and certified individuals are permitted to possess billy clubs, which are capable of causing serious bodily injury

---

effective for civilian use.

[9] Plaintiffs cannot argue that California's restrictions amount to a "categorical ban" of "billies" merely because the State uses a particular term in the Penal Code to prohibit certain types of weapons. *See Duncan*, 2020 WL 4730668, at *28 (Lynn, J., dissenting) ("[T]he claim that [a challenged law] is a 'categorical[] bar[]' is circular, because 'it amounts to a suggestion that whatever group of weapons a regulation prohibits may be deemed a 'class.'" (quoting *Worman v. Healy*, 922 F.3d 26 32 n.2 (1st Cir. 2019))).  Indeed, the challenged statute here lists seven distinct types of bludgeons, including "any leaded cane," "billy," and "blackjack," confirming that the statute is restricting *subsets* of weapons, not a single, broad category of weapons, like handguns or long guns.

or even death.  *See* Fichtner Decl. ¶¶ 22, 26.  Third, section 22210 protects law enforcement and the public by ensuring that peace officers have access to an effective intermediate-force compliance tool to prevent unnecessary escalations of force in the performance their official duties, which would be undermined if civilians are able to possess the same tool.  *See id.* ¶ 27-32 (discussing importance of maintaining force-multiplier to avoid escalation or injury).  California's interests in promoting public safety and reducing violence are important and substantial.  *See Fyock*, 779 F.3d at 1000; *United States v. Chovan*, 735 F.3d 1127, 1135 (9th Cir. 2013).

### 2.   Section 22210 Is Reasonably Fitted to the State's Important Public-Safety Interests

In demonstrating a reasonable fit under intermediate scrutiny, the State may "rely on any evidence 'reasonably believed to be relevant' to substantiate its important interests," and the Court "may consider 'the legislative history of the enactment as well as studies in the record or cited in pertinent case law.'"  *Fyock*, 779 F.3d at 1000 (quotation omitted).  Such "evidence need only 'fairly support[]' [the government's] conclusions."  *Pena*, 898 F.3d at 982.  Even when the record contains conflicting evidence, intermediate scrutiny "allow[s] the government to select among reasonable alternatives in its policy decisions."  *Id.* (quotation omitted); *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 99 (2d Cir. 2012) ("It is the legislature's job, not [the courts'], to weigh conflicting evidence and make policy judgments.").  Intermediate scrutiny does not require the fit between the challenged regulation and the stated objective to be perfect, nor does it require that the regulation be the least restrictive means of serving the objective.  *Jackson*, 746 F.3d at 969.  The State need only show that "the regulation 'promotes a substantial government interest that would be achieved less effectively absent the regulation.'"  *Pena*, 898 F.3d at 979 (quoting *Fyock*, 779 F.3d at 1000).

1    Evidence shows that California's billy-club restrictions are reasonably fitted to

2    the State's important government interests.  While they may appear to be safer than

3    other weapons, billies can cause significant bodily injury or death, especially in the

4    hands of individuals who are untrained in safe baton use.  Echeverria Decl., Ex. 7

5    at 1 (noting that a "concussion or depressed skull fracture" resulting from a head

6    blow with a billy "can result in brain damage and even death"); *see also id.* at 1

7    ("The nightstick also exemplifies why such weapons now are called 'less lethal'

8    rather than 'non-lethal.'").  Billies require specialized training in order to operate

9    safely and effectively.  *Id.*, Ex. 3 at 7 ("Billy clubs might take more training to use

10   effectively and reasonably than other less-lethal weapons, but the officers who

11   possess that knowledge may have greater control over how much force they

12   apply."); *id.*, Ex. 8 at 1 (emphasizing that "[t]he officer who carries a baton as part

13   of his equipment must be trained to use it properly"); *id.*, Ex. 8 at 18 ("The police

14   officer should have a thorough knowledge of the vulnerable areas of the body and

15   avoid striking those blows which produce death or permanent injury.").  Even if

16   used for self-defense, a billy can be wrestled away by an assailant and be used as a

17   weapon against the victim.  *See id.*, Ex. 8 at 18 ("Blows delivered to the head place

18   the baton in a position that is vulnerable to counterattack or a disarming movement.

19   The opponent could very well seize the baton.").

20   Batons are also susceptible to criminal misuse.  In enacting California's billy-

21   club restrictions, the Legislature determined that billies are "instruments which are

22   ordinarily used for criminal and unlawful purposes."  *Davis*, 214 Cal. App. 4th at

23   1331 (quoting *Grubb*, 63 Cal. 2d at 620).  Certain types of billies, such as

24   collapsible batons, can be concealed and smuggled into sensitive areas, *see* Fichtner

25   Decl. ¶ 20, and can be used to damage property, *see id.* ¶ 16 (noting that certain

26   batons can be equipped to make "it easier to shatter glass").  Batons have also

27   featured prominently in recent civil unrest.  *See* Echeverria Decl., Ex. 9 (describing

28

16

1  use of batons in violence in Portland, Oregon); *id.*, Ex. 10 (same); *id.*, Ex. 11
2  (describing baton attacks during protest in Berkeley, California).

3       Due to the dangers of batons, the State requires peace officers and uniformed
4  security guards to undergo rigorous training before being authorized to carry a
5  baton. *See* Fichtner Decl. ¶¶ 22-26. California peace officers are required to
6  complete the Regular Basic Course certified by the Commission on Peace Officer
7  Standards and Training ("POST") as their entry-level training. *See* 11 C.C.R.
8  § 1005(a). The Regular Basic Course involves a minimum requirement of 664
9  hours of instruction on a range of topics, including the use of force, handling
10  disputes, and effecting arrest. *See* POST, Regular Basic Course,
11  https://post.ca.gov/regular-basic-course. In addition, certain peace officers are
12  required to complete POST-certified Perishable Skills and Communications
13  training, consisting of a minimum of 12 hours in each two-year period concerning
14  certain topics, including arrest and control and tactical firearms. *See* POST,
15  Perishable Skills Program, https://post.ca.gov/perishable-skills-program. Peace
16  officers must also complete a minimum of two hours of communications training in
17  each two-year period. *See id.* Peace officers also receive training on the safe and
18  effective use of particular batons, like the ASP expandable baton issued to peace
19  officers employed by the California Department of Justice; this training involves
20  instruction on the mechanical operation of the ASP, various deployment
21  considerations, the tactical use of the ASP for various law enforcement purposes,
22  including inducing compliance or effecting arrest and the areas of the human body
23  to avoid to prevent serious injury or death. *See* Fichtner Decl. ¶¶ 22-26; *see also*
24  Echeverria Decl., Ex. 12 (Department of Justice policies regarding baton use); *id.*,
25  Ex. 13 (Department of Justice training materials for the ASP expandable baton).

26       Uniformed security guards who are authorized to carry batons within the
27  scope of their employment must receive specialized training on batons, certified by
28  the Department of Consumer Affairs. Cal. Penal Code § 22295(b). The

1    Department of Consumer Affairs, in cooperation with POST, develops the

2    standards for any such course.  *Id.*  The course of training on the carrying and usage

3    of batons is delineated in the Department of Consumer Affairs, Bureau of Security

4    and Investigative Services' "Baton Training Manual," which includes the following

5    topics:  moral and legal aspects of baton usage, use of force, baton familiarization

6    and uses, first aid for baton injuries, and fundamentals of baton handling, including

7    stances and grips, target areas, defensive techniques, control techniques, and arrest

8    techniques.  Cal. Bus. & Prof. Code, § 7585.9(a); *see also* Echeverria Decl.,

9    Exs. 14-16.

10         Section 22210 also protects law enforcement officers and the public by

11   making available to law enforcement personnel an effective intermediate-force

12   option.  As explained by Mr. Fichtner, a baton is a compliance tool that serves

13   specific law enforcement needs, such as effecting an arrest, and peace officers have

14   greater need for batons that civilians to perform their official duties.  *See* Fichtner

15   Decl. ¶ 31.  Restricting baton possession to trained law enforcement personnel

16   ensures that law enforcement maintain a force multiplier when employing

17   intermediate-force options, to ensure that potential subjects are less likely to resist

18   and endanger themselves or others.  *Id.* ¶¶ 31-32.[10]  The individual designated by

19   Plaintiffs as an expert rebuttal witness confirms that Mr. Fichnter has "valid points"

20   concerning "police officers using [a baton] as a tool before resorting to lethal force,

21   using it to deescalate a situation, or using [it] for compliance holds," Tablanza Decl.

22   at 6, but he does not address whether greater civilian access to batons may

23   undermine their effectiveness for law enforcement purposes (if law enforcement

24   loses the force multiplier) and lead to elevated uses of force than would otherwise

25   be necessary, *see* Fichtner Decl. ¶ 32.

26

27        [10] Indeed, Plaintiff Fouts states that "[l]awful self-defense is not the issue or
     contention," but rather that he is seeking to possess a billy for "a force multiplier."
28   Echeverria Decl., Ex. 4 at 8.

1   Accordingly, even if section 22210 burdens conduct protected by the Second

2   Amendment (and it does not), the statute is reasonably fitted to the State's

3   important government interests.  Section 22210 is constitutional on its face and as

4   applied to Plaintiffs.  Nevertheless, even if Plaintiffs are able to identify particular

5   applications in which the law may exhibit an unreasonable fit, any such applications

6   would not warrant the facial invalidity of the statute.  *See Puente Ariz. v. Arpaio*,

7   821 F.3d 1098, 1104 (9th Cir. 2016) ("[T]o succeed on a facial challenge the

8   plaintiff must show that 'no set of circumstances exists under which the [challenged

9   law] would be valid.'" (quoting *United States v. Solerno*, 481 U.S. 739, 746

10  (1987))).[11]

## CONCLUSION

12  For the forgoing reasons, the Court should grant Defendant's motion for

13  summary judgment.

14  Dated:  September 11, 2020          Respectfully submitted,

15                                      XAVIER BECERRA
                                        Attorney General of California
16                                      MARK R. BECKINGTON
                                        Supervising Deputy Attorney General
17

18                                      s/ John D. Echeverria

19                                      JOHN D. ECHEVERRIA
                                        Deputy Attorney General
20                                      *Attorneys for Defendant Xavier Becerra,*
                                        *in his official capacity as Attorney*
21                                      *General of the State of California*

22

23

24

---

25  [11] The *Solerno* rule "remains binding law the Ninth Circuit."  *Puente*
26  *Arizona*, 821 F.3d at 1104 n.6.  And even under the more relaxed standard that
    courts sometimes use when *upholding* laws against facial challenges,
27  unconstitutional applications of a statute will not render it facially invalid if the
    statute has a "plainly legitimate sweep."  *Jackson*, 746 F.3d at 961-62 (quoting
28  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).