XAVIER BECERRA
Attorney General of California
State Bar No. 118517
MARK R. BECKINGTON
Supervising Deputy Attorney General
State Bar No. 126009
JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3479
 Fax:  (415) 703-1234
 E-mail:  John.Echeverria@doj.ca.gov
*Attorneys for Defendant Xavier Becerra, in
his official capacity as Attorney General of
the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL FOUTS, et al.,** | 3:19-cv-01662-BEN-JLB |
| Plaintiffs, | **DEFENDANT'S REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **XAVIER BECERRA, in his official capacity as Attorney General of the State of California,** | Date:          December 7, 2020 |
| | Time:          10:30 a.m. |
| Defendant. | Courtroom:   5A |
| | Judge:         Hon. Roger T. Benitez |
| | Action Filed:  September 1, 2019 |

1

# TABLE OF CONTENTS

2

**Page**

ARGUMENT ..................................................................................................1

   I.   California's Billy-Club Restrictions Do Not Burden Conduct
       Protected by the Second Amendment ....................................................1

      A.   Billy Clubs Are Not in "Common Use" by Law-Abiding
           Civilians for Lawful Purposes ...................................................1

            1.   Billy Clubs are Dangerous Weapons ...............................2

            2.   Billy Clubs Are Unusual .................................................4

      B.   California's Billy-Club Restrictions Are Longstanding .............6

  II.  California's Billy-Club Restrictions Satisfy Intermediate
       Scrutiny ................................................................................................7

CONCLUSION ...............................................................................................10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4
5
*Binderup v. Att'y Gen. U.S.A.*
    836 F.3d 336 (3d Cir. 2016)...................................................................5

6
7
*Caetano v. Massachusetts*
    136 S. Ct. 1027 (2016) ......................................................................3

8
9
*District of Columbia v. Heller*
    554 U.S. 570 (2008)........................................................................3, 9

10
11
*Duncan v. Becerra*
    970 F.3d 1133 (9th Cir. 2020).................................................4, 5, 6, 7

12
13
*Fyock v. Sunnyvale*
    779 F.3d 991 (9th Cir. 2015)..............................................................5, 6

14
*Jackson v. City and County of San Francisco*
    746 F.3d 953 (9th Cir. 2014)...............................................................7

15
16
*Mai v. United States*
    952 F.3d 1106 (9th Cir. 2020)............................................................7

17
18
*Maloney v. Singas*
    351 F. Supp. 3d 222 (E.D.N.Y. 2018) .............................................4, 5

19
20
*Pena v. Lindley*
    898 F.3d 969 (9th Cir. 2018)..............................................................10

21
22
*People v. Baugh*
    20 Cal. App. 5th 438 (2018).............................................................8, 9

23
24
*People v. Davis*
    214 Cal. App. 4th 1322 (2013).....................................................3, 4, 9

25
*People v. Grubb*
    63 Cal. 2d 614 (1965) ................................................................2, 6, 8

26
27
*People v. Liscotti*
    219 Cal. App. 4th Supp. 1 (2013).........................................................2

28

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*People v. Mercer*
    42 Cal. App. 4th Supp. 1 (1995)..............................................................4

*Silvester v. Harris*
    843 F.3d 816 (9th Cir. 2016)..................................................................6

*State v. DeCiccio*
    315 Conn. 79 (2014) ...............................................................................3

*Teter v. Connors*
    2020 WL 2476225 (D. Haw. May 13, 2020)......................................8, 9

*Tyler v. Hillsdale County Sheriff's Department*
    837 F.3d 678 (6th Cir. 2016)...............................................................6, 7

STATUTES

United States Code, Title 18
    § 922(g)(4).........................................................................................6, 7

California Penal Code
    § 22210......................................................................................1, 7, 8, 9

New York Penal Law
    § 265.01..................................................................................................6

CONSTITUTIONAL PROVISIONS

U.S. Constitution
    Second Amendment ......................................................................*passim*

California Penal Code section 22210's restrictions on the civilian possession of billy clubs are constitutional at both steps of the Court's Second Amendment inquiry. At step one, the evidence shows that billy clubs fall outside the scope of the Second Amendment. For over 100 years, California has prohibited civilians from possessing billy clubs, and California's courts have long considered billy clubs to be weapons commonly used by criminals. Law-enforcement use notwithstanding, there is no evidence that billy clubs or police batons are commonly possessed by *civilians* for lawful purposes, particularly self-defense. At step two, section 22210 is subject to intermediate scrutiny because civilians are free to possess a range of alternative weapons and objects, which could be used for self-defense. Under intermediate scrutiny, the State has presented evidence showing—consistent with the determination of the California courts—that billy clubs are dangerous weapons that are used in crime. The State has reasonably restricted possession of police batons to law enforcement and uniformed security guards, who have both the training and *the need* to possess such weapons to perform their official duties. The Court should respect the State's 100-year-old determination to prohibit the possession of this particular type of weapon.

Under either step of the Second Amendment framework, section 22210 is constitutional. Defendant's motion for summary judgment should be granted.

## ARGUMENT

### I. CALIFORNIA'S BILLY-CLUB RESTRICTIONS DO NOT BURDEN CONDUCT PROTECTED BY THE SECOND AMENDMENT

#### A. Billy Clubs Are Not in "Common Use" by Law-Abiding Civilians for Lawful Purposes

California Penal Code section 22210 is constitutional at the first step of the Court's Second Amendment inquiry because billy clubs are not in "common use" by civilians for lawful purposes, particularly self-defense. To the contrary, billies are "dangerous and unusual" weapons that fall outside the Second Amendment.

1

### 1.   Billy Clubs are Dangerous Weapons

Even though they are less dangerous than some other weapons, billy clubs and police batons are still dangerous.  *See* Def.'s Mem. of P. & A. in Supp. of Mot. for Summary Judgment ("Def.'s Mem.") (Dkt. 22-1) at 8-9; Def.'s Opp'n to Pls.' Mot. for Summary Judgment ("Def.'s Opp'n") (Dkt. 25) at 3-5.  Police batons are specialized law-enforcement tools that serve a variety of functions beyond self-defense, such as effecting arrests through the use of compliance holds or as a "directional motivator" when applied to certain areas of the body.  Fichtner Decl. ¶¶ 14, 27, 29.  Some batons, including expandable batons, are easily concealable and can be deployed quickly for combat if needed.  *See id.* ¶ 19.  Though the handgun is generally more dangerous than a billy, billies have latent dangers of which untrained individuals may be unaware, particularly the degree of damage that batons can cause when targeting certain parts of the body.  *See id.* ¶ 22 ("A baton is also likely to be more dangerous when used for lawful self-defense if it is wielded by an individual who has not received proper training.").  Billy clubs can also be used to intimidate others or damage property.  *Id.*

Due to their offensive uses, concealability, and versatility, billy clubs have historically been "common to the criminal's arsenal" and "are ordinarily used for criminal and unlawful purposes."  *People v. Grubb*, 63 Cal. 2d 614, 620 (1965) (quoting *People v. Canales*, 12 Cal. App. 2d 215, 217 (1936)), *superseded on other grounds by statute*; *People v. Liscotti*, 219 Cal. App. 4th Supp. 1, 5 (2013) (holding that "a full-size modified baseball bat weighted with lead and wrapped in rope" concealed behind the seat of a car qualified as a billy).  In prohibiting billy possession, the Legislature intended to prohibit "the possession of objects subject to dangerous use."  *Grubb*, 63 Cal. 2d at 620.

Plaintiffs argue that batons cannot be considered dangerous because police departments in the United States have adopted their use.  Pls.' Mem. in Opp'n to Def.'s Mot. for Summary Judgment ("Pls.' Opp'n") (Dkt. 24) at 1-2 (discussing

*State v. DeCiccio*, 315 Conn. 79, 99, 105 (2014)).  Law-enforcement use, however, is indicative of the dangers inherent in the possession and use of billy clubs.  Law-enforcement officers are equipped with dangerous weapons, some of which may be unavailable to the public, because, "[u]nlike civilians, law enforcement personnel are often required to place themselves in dangerous situations to subdue criminals and to protect the public."  Fichtner Decl. ¶¶ 31-32.  Indeed, the police baton "is the most basic tool of the police officer, separating him from the soldier on the one side and the common non-citizen on the other."  Echeverria Decl., Ex. 7 at 42.

Plaintiffs argue that precedent "precludes" a determination that billies are dangerous.  Pls.' Opp'n at 1.  But Plaintiffs do not cite any binding precedent that forecloses or otherwise precludes Defendant's argument.  To the extent Plaintiffs are relying on *District of Columbia v. Heller*, 554 U.S. 570 (2008), that decision did not establish a baseline level of dangerousness for arms that may be regulated under the Second Amendment.  According to Plaintiffs' argument, the Second Amendment would protect *any* arms that happen to be less dangerous than handguns, *even if such arms are unusual* (because they would not be both dangerous *and* unusual).  That cannot be the law, and that is certainly not what *Heller* pronounced.  The Court in *Heller* invalidated a complete ban on handguns not because handguns are insufficiently dangerous, but because they are "the most popular weapon chosen by Americans for self-defense in the home"—in other words, handguns are not unusual.  *Heller*, 554 U.S. at 629.[1]

Plaintiffs also fail to distinguish the California Court of Appeal decision in *People v. Davis*, 214 Cal. App. 4th 1322 (2013).  Though the *Davis* court did not

---

[1] Plaintiffs quote from Justice Alito's concurrence in *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016) (Alito, J., concurring), to argue that the State may not regulate arms that are "merely dangerous."  Pls.' Opp'n at 3.  Of course, Justice Alito's concurrence is not binding authority.  And in any event, Justice Alito viewed stun guns as insufficiently dangerous because they were characterized in that case as "non-lethal force."  *Caetano*, 136 S. Ct. at 1031 (Alito, J., concurring).  Billy clubs, by contrast, are not generally considered to be "non-lethal" weapons.  *See* Echeverria Decl., Ex. 7 ("The nightstick also exemplifies why such weapons now are called 'less lethal' rather than 'non-lethal.'"); Def.'s Opp'n at 4.

1   "need" to rule on whether California's billy-club law was constitutional "to the

2   extent it prohibits possession of certain weapons *in the home*"—as the defendant in

3   that case was convicted of possession of a homemade billy in a car—the court did

4   note that the law "does not deprive persons of their ability to defend themselves *or*

5   *their homes*, because there are alternative means to do so," *id.* at 1332 (emphasis

6   added), suggesting that the law would not raise constitutional concerns when

7   applied to the home.  The *Davis* court also noted the legislative intent of the law—

8   "to outlaw instruments normally used for criminal purposes," *id.* (quoting *Grubb*,

9   63 Cal. 2d at 620)—and held generally that "a billy falls outside the protection of

10  the Second Amendment," *id.* at 1333.[2]

### 2.   Billy Clubs Are Unusual

12  Billy clubs are also unusual.  Tellingly, Plaintiffs offer no evidence of the

13  number of billies that are lawfully possessed by civilians in the United States.  Pls.'

14  Opp'n at 4; Def.'s Mem. at 9.  The absence of numerical data here supports the

15  conclusion that billy clubs are not in "common use."  *See Duncan v. Becerra*, 970

16  F.3d 1133, 1147 (9th Cir. 2020) (noting that "[c]ommonality is determined largely

17  by statistics" and that the "record shows that [large-capacity magazines] are

18  overwhelmingly owned and used for lawful purposes").  If billies were commonly

19  owned for self-defense, as Plaintiffs claim, *see* Compl. ¶ 37, one would expect there

20  to be *some* evidence of their purported ubiquity, such as survey data, industry sales

21  reports, or trade publications.  *See* Def.'s Opp'n at 5.  The absence of statistical

22  evidence stands in sharp contrast with *Maloney v. Singas*, 351 F. Supp. 3d 222

23  (E.D.N.Y. 2018), a case on which Plaintiffs rely, *see* Pls.' Opp'n at 4-5.  The court

24  in *Maloney* considered "sales data from six American nunchaku distributors," 351

25  ─────────────────

26  [2] Although the weapon at issue in *Davis* was a homemade billy and not a
    police baton, Pls.' Opp'n at 2, police batons are deemed billies under California
    law, and the civilian possession of a police baton would be similarly unlawful.  *See*

27  *People v. Mercer*, 42 Cal. App. 4th Supp. 1, 6 (1995); Fichtner Decl. ¶ 14.  Indeed,
    the court in *Davis* would not have had to analyze the circumstantial evidence to
    determine whether the item in possession qualified as a billy under California law.

28

1   F. Supp. 3d at 228-29, and held that nunchaku were in "common use" based on a

2   "magnitude of sales," *id.* at 237.[3]

3       In *Duncan*, the Ninth Circuit observed that the absence of statistical evidence

4   may not be dispositive where pervasive government regulation may have artificially

5   depressed the number of arms in circulation. *Duncan*, 970 F.3d at 1147 ("In the

6   Second Amendment context, protected arms may not be numerically common by

7   virtue of an unchallenged, unconstitutional regulation."). But here, civilian

8   possession of billy clubs and batons has been legal in most states. Pls.' Mem. of P.

9   & A. in Supp. of Pls.' Mot. for Summary Judgment (Pls.' Mem.) (Dkt. 21-1) at 6 &

10  n.3. Even if the Court were to expand the inquiry beyond statistics, Plaintiffs have

11  not adduced any evidence of the "subjective motives" of baton owners, *Duncan*,

12  970 F.3d at 1147 (quoting *N.Y.S. Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 256

13  (2d Cir. 2015)), aside from Plaintiffs' own statements that they want to possess

14  police batons for self-defense, *see* Fouts Decl. ¶ 10; Tolentino Decl. ¶ 8.

15      To support their claim that billies are in "common use," Plaintiffs again cite

16  the use of batons by law enforcement agencies. *See* Pls.' Mem. at 8-9. But

17  evidence of law enforcement (or military) use is not relevant to the "common use"

18  inquiry. *See* Def.'s Opp'n at 6-7. Notably, *Maloney* excluded sales of nunchaku to

19  law enforcement agencies because "the Second Amendment is only concerned with

20  weapons 'typically possessed by law-abiding citizens for lawful purposes.'"

21  *Maloney*, 351 F. Supp. 3d at 229 n.10 (quoting *Heller*, 554 U.S. at 625)).

22      Plaintiffs bear the burden of persuasion at step one. *See Binderup v. Att'y*

23  *Gen. U.S.A.*, 836 F.3d 336, 347 (3d Cir. 2016). But even if the burden were

24  assigned to Defendant, the Court should not simply "presume" that billies are in

25  "common use," Pls.' Opp'n at 4, particularly when presented with state-court

26  opinions characterizing that billies as "common to the criminal's arsenal" as

27

28

---

[3] "[M]arketing materials and sales statistics" would "not necessarily show that [batons] are in fact commonly possessed by law-abiding citizens for lawful purposes." *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015).

1     "ordinarily used for criminal and unlawful purposes," *Grubb*, 63 Cal. 2d at 620.

2     Either way, the Court should find that billies are both dangerous *and* unusual,

3     falling outside the protective scope of the Second Amendment.

4          **B.**    **California's Billy-Club Restrictions Are Longstanding**

5          In addition to regulating dangerous and unusual weapons, California's billy-

6     club restrictions, which date back to 1917, are longstanding. *See* Def.'s Mem. at

7     11-12. Plaintiffs do not address Chief Judge Thomas's concurrence in *Silvester v.*

8     *Harris*, which explains that laws dating back to the early 20th century can be

9     "longstanding" and even if such laws were adopted by "several" jurisdictions.

10    *Silvester v. Harris*, 843 F.3d 816, 831 (9th Cir. 2016) (Thomas, C.J., concurring);

11    *see also Fyock*, 779 F.3d at 997 (noting that "early twentieth century regulations

12    might nevertheless demonstrate a history of longstanding regulation"). Applying

13    that reasoning here, California's billy-club restrictions are "longstanding."

14         Plaintiffs argue that California's billy-club restrictions are not longstanding

15    under the recent *Duncan* decision. Pls.' Opp'n at 5. But that case held that

16    California's large-capacity magazine restrictions were not longstanding because the

17    challenged restrictions were "only enacted within the last three decades." *Duncan*,

18    970 F.3d at 1150-51. Here, by contrast, California's billy-club restrictions were

19    enacted in 1917 and have remained in effect,[4] and New York's restrictions, N.Y.

20    Penal Law § 265.01, have remained in continuous effect for even longer, having

21    been enacted in 1909, *see* RJN, Ex. 4 (N.Y. Stats. 1909, ch. 93).

22         Plaintiffs also rely on *Tyler v. Hillsdale County Sheriff's Department*, 837

23    F.3d 678 (6th Cir. 2016), an as-applied challenge to 18 U.S.C. § 922(g)(4), which

24    bars individuals who have been committed to a mental institution from possessing

25    firearms. Pls.' Opp'n at 7-8. The Sixth Circuit declined to hold that the law,

26

27         [4] California courts have not "broadened" the scope of the statute "to include far more than it originally prohibited." Pls.' Opp'n at 8-9. As with today's version, the original 1917 statute prohibited possession of "any instrument or weapon of the

28    kind commonly known as a . . . billy." RJN, Ex. 1 (Stats. 1917, ch. 145, § 2).

6

enacted in 1968, was longstanding because "the parties ha[d] produced scant historical evidence conclusively supporting a permanent ban on the possession of guns by anyone who has been committed to a mental institution." *Tyler*, 837 F.3d at 687.[5]  Here, Defendant has presented conclusive evidence that California's billy-club restrictions, along with similar restrictions of at least two other states, were enacted in the early 20th century.  Section 22210 is a longstanding regulation, and Plaintiffs have not rebutted its presumption of constitutionality.

## II.   CALIFORNIA'S BILLY-CLUB RESTRICTIONS SATISFY INTERMEDIATE SCRUTINY

Even assuming California's billy-club restrictions burden conduct protected by the Second Amendment at step one, California Penal Code section 22210 is subject to, and satisfies, intermediate scrutiny.  Plaintiffs propose a "categorical approach" as a distinct test from traditional tiers-of-scrutiny analysis.  Pls.' Opp'n at 9 (distinguishing between a "categorical approach" and strict scrutiny).  Even in the recent *Duncan* decision, however, the court eschewed a "categorical approach" that would dispense with means-ends scrutiny; instead, the court selected strict scrutiny based on a determination that the challenged "law *categorically* bars the possession of magazines that are commonly used in handguns, the 'quintessential self-defense weapon.'"  *Duncan*, 970 F.3d at 1152 (emphasis added) (quotation omitted).  Plaintiffs' "categorical approach" has not been adopted by this Circuit.

Relying on *Duncan* and a misreading of *Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014), Plaintiffs argue alternatively that strict scrutiny should apply.  *See* Pls.' Opp'n at 10.  They are wrong.  In contrast with *Duncan*, which applied strict scrutiny to a law deemed to "categorically bar[] the possession of magazines" in common use for lawful purposes, section 22210 does

---

[5] In a more recent case, the Ninth Circuit did not hold that the law challenged in *Tyler* was insufficiently longstanding, but rather "assume[d], without deciding, that § 922(g)(4), as applied to Plaintiff, burdens Second Amendment rights," only to uphold the restriction under intermediate scrutiny at step two.  *Mai v. United States*, 952 F.3d 1106, 1115, 1121 (9th Cir. 2020).

not prohibit "an entire class of 'arms' *that is overwhelmingly chosen by American society for th[e] lawful purpose [of self-defense].*" *Teter v. Connors*, __ F. Supp. 3d __, 2020 WL 2476225, at *10 (D. Haw. May 13, 2020) (quoting *Heller*, 554 U.S. at 628) (alterations in original); *see* Def.'s Opp'n at 11-13.  Individuals are free to possess a range of blunt-force objects in the home, such as walking canes, hammers, metal pans, and baseball bats, and Plaintiffs' own witness testified that a civilian can use a baton for self-defense "just as well as they could with any household item." *See* Def.'s Mem. at 13-14; Def.'s Opp'n at 14.  Intermediate, and not strict, scrutiny should apply because section 22210 is not a "categorical ban," and any purported burden on the core right to self-defense in the home is minimal. *Teter*, 2020 WL 2476225, at *12.[6]

California Penal Code section 22210 satisfies both prongs of intermediate scrutiny.  *See* Def.'s Mem. at 14-19; Def.'s Opp'n at 15-17.  The State has identified several important public-safety interests, each of which is important: reducing billy-club crimes and injuries, ensuring that only trained and certified individuals have access to police batons, and protecting law enforcement and the public during police encounters.  Def.'s Mem. at 14-15.  And section 22210 is reasonably fitted to those interests.

The California Supreme Court determined that billies are "common to the criminal's arsenal" and "are ordinarily used for criminal and unlawful purposes." *Grubb*, 63 Cal. 2d at 620 (quotation omitted).  The Court should defer to the California courts' characterization of the State's law.  Def.'s Mem. at 8 (citing

---

[6] Defendant is not aware of any California case defining as a "billy" under section 22210 an unmodified, ordinary household object possessed in the home, such as a baseball bat or hammer.  Where courts have considered an "ordinarily harmless object" to be a billy, the object has been possessed in public with other circumstances indicating that the object was possessed as a weapon. *See People v. Baugh*, 20 Cal. App. 5th 438, 444 (2018).  In determining the scope of section 22210, the Court should not assume how a California court might rule in a hypothetical home-possession case or adopt an overly expansive definition of a "billy" in a way that would create constitutional concerns. *See* Def.'s Opp'n at 12 n.7.

8

(3:19-cv-01662-BEN-JLB)

*Brodheim v. Rowland*, 993 F.2d 716, 717 (9th Cir. 1993)).  In any event, the

evidence shows that billies are dangerous and capable of causing significant injury.

*See supra* Section I.A.1.  By prohibiting civilian possession of billies, section

22210 is reasonably fitted to the State's important interests, particularly the

prevention of crime and injury involving billy clubs.  *See Teter*, 2020 WL 2476225,

at *14.  As the California Court of Appeal has observed:

> In this day and age, as we are all painfully aware, it is often a gun—not a billy, sap, or blackjack—that is the weapon of choice in most violent crimes.  That fact, however, does not negate the Legislature's determination that the kind of weapons known as billies, blackjacks, and saps are also instruments which are "ordinarily used for criminal and unlawful purposes."

*Davis*, 214 Cal. App. 4th at 1333 (quoting *Grubb*, 63 Cal. 2d at 620).  That

legislative intent "remains valid today."  *Baugh*, 20 Cal. App. 5th at 449.

Plaintiffs argue that, under *Heller*, the State cannot rely on the dangers of

billies or the availability of alternatives to justify the law.  Pls.' Opp'n at 11-12,

14-15.  *Heller* does not foreclose those arguments because, unlike handguns, billies

and police batons are not the "quintessential self-defense weapon."  *Heller*, 554

U.S. at 629.  And the scope of the law is reasonable because law-abiding

individuals can possess other weapons and objects that could be used for lawful

self-defense.[7]  And while there may be "situations where a billy is a preferred

weapon to others," *see* Pls.' Opp'n at 14-20, the expert witnesses agree that certain

alternatives are *as effective* as billies for self-defense.  *See* Fichtner Decl. ¶ 34

("Restricting civilian access to police batons and billies will not materially affect

[civilians''] ability to defend themselves."); Tablanza Decl. at 6 ("A civilian could

use the ASP for self-defense, just as well as they could with any household item.").

_____

[7] Plaintiffs devote a significant portion of their opposition discussing disadvantages of certain alternatives to billies, which Defendant mentioned as examples in a sentence.  Pls.' Opp'n at 15-20 (discussing pepper spray, stun guns, alarm devices, and firearms).  By referencing certain alternatives, however, Defendant was not offering an exhaustive list of alternatives—indeed, as Plaintiffs note, knives are another option, *id.* at 18 n.12—and not all of those alternatives may be appropriate in all situations, including self-defense in the home.

The State has important interests in minimizing the prevalence of billy clubs and reducing their use in crime. The Court should respect California's judgment. *See Pena v. Lindley*, 898 F.3d 969, 979-80 (9th Cir. 2018) (noting that courts do not "substitute [their] own policy judgment for that of the legislature" under intermediate scrutiny).

Finally, at various points of their opposition, Plaintiffs claim that they have received the same or equivalent training required of individuals authorized to possess police batons under California law. Pls.' Opp'n at 1, 13. Plaintiffs appear to argue that they should be permitted to carry batons because the State's interest in restricting baton-possession to those with training is not served by depriving them of the ability to possess batons. *Id.* at 13 n.7. Plaintiffs have not presented evidence showing that they have received the same or equivalent training provided to peace officers or uniformed security guards in California, particularly ongoing use-of-force training. Def.'s Mem. at 17; Fichtner Decl. ¶¶ 22-26; Echeverria Decl., Exs. 13-16.[8] But even if Plaintiffs have received comparable training, there is no evidence that they need batons to perform job duties (unlike peace officers and security guards), and the State has identified *other* important public-safety interests that are furthered by the prohibition on civilian possession of batons. *See* Def.'s Mem. at 14-15 (discussing as important government interests the reduction of billy-club use in crime and violence and the protection of law enforcement and the public during police encounters).

## CONCLUSION

For these reasons, the Court should grant Defendant's motion for summary judgment and deny Plaintiffs' motion for summary judgment.

---

[8] Plaintiff Fouts states that he was a private security contractor in Oregon and was licensed in Oregon to possess a billy, Fouts Decl. ¶ 4, and Plaintiff Tolentino states that he received "extensive billing training in the Air Force," Tolentino Decl. ¶ 4.

10

1    Dated:  October 13, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General


*s/ John D. Echeverria*

JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendant Xavier
Becerra, in his official capacity as
Attorney General of the State of
California*

Defendant's Reply in Further Support of Defendant's Motion for Summary Judgment
(3:19-cv-01662-BEN-JLB)