ALAN ALEXANDER BECK
LAW OFFICE OF ALAN BECK
2692 HARCOURT DRIVE
SAN DIEGO, CA 92123
(619) 905-9105
STATE BAR NO. 276646
ALAN.ALEXANDER.BECK@GMAIL.COM
ATTORNEYS FOR PLAINTIFFS
RUSSELL FOUTS AND
TAN MIGUEL TOLENTINO

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. BOX 4008
MADISON, MS 39130
(601) 852-3440
STEPHEN@SDSLAW.US
MS BAR NO. 102784
*ADMITTED PRO HAC VICE

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL FOUTS and TAN MIGUEL TOLENTINO,**<br><br>Plaintiffs,<br><br>v.<br><br>**XAVIER BECERRA, in his official capacity as the Attorney General of the State of California,**<br><br>Defendant. | 19-cv-01662-BEN-JLB<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Hearing Date: December 7, 2020<br>Hearing Time: 10:30 AM |

# **TABLE OF CONTENTS**

I. Introduction ................................................................................... 1
II. Argument ...................................................................................... 2
    A. Batons Are Not Dangerous ................................................... 2
    B. California's Baton Ban is not Longstanding ......................... 3
    C. This Court Should Apply a Categorical Approach ................ 5
    D. California's Billy Law is Unconstitutional Under Intermediate Scrutiny .............................................................. 8
III. Conclusion .................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Bennett v. Mueller*, 322 F.3d 573 (9th Cir. 2003) ..................................................9, 10

*Binderup v. Att'y Gen. U.S.A.*, 836 F.3d 336 (3d Cir. 2016)......................................3

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..........................................passim

*Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020)........................................1, 2, 4, 8

*Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) ..........................................3

*Hopkins v. Bonvicino*, 573 F.3d 752, 769 (9th Cir. 2009)……………………………10

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953 (9th Cir. 2014) ........................4, 7, 8, 9

*McCullen* v. *Coakley*, 573 U. S. 464 (2014) ................................................................9

*Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 60 S. Ct. 676, 84 L. Ed. 920 (1940) .....10

*New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015) ...........3

*People v. Liscotti*, 219 Cal. App. 4th Supp. 1 (2013).............................................8, 9

*State v. Deciccio*, 315 Conn. 79, 105 A.3d 165 (2014)...............................................1

*Teter v. Connors*, 2020 U.S. Dist. LEXIS 84062 (D. Haw. May 13, 2020) ...............7

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ............................................4

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) .........................................8

*United States v. Miller* 307 U.S. 174 (1939) ...............................................................1

*United States. v. Henry*, 688 F. 3d 637 (9th Cir. 2012)...............................................2

*Young v. Hawaii*, 896 F.3d 1044 (9th Cir. 2018) ........................................................6

**OTHER AUTHORITIES**

C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun*?, 32 Harv. J.L. & Pub. Pol'y 695, 698, 708 (2008) ............................................................................................4

D. Kopel, 'The Second Amendment in the Nineteenth Century,' 1998 BYU L. Rev. 1359 ................................................................................................................................1

## I. INTRODUCTION

As a preliminary matter, the California misstates the holding of *United States v. Miller* 307 U.S. 174 (1939) which held that "in the absence of any evidence tending to show that possession or use of a shotgun having a barrel of less than eighteen inches in length" ... "has some reasonable relationship to the preservation or efficiency of a well-regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly, it is not within judicial notice that this weapon is any part of the ordinary military equipment." *Id*. at 177. Here, both parties have submitted evidence that batons are commonly used by law enforcement and historically, policing was a militia function. "Furthermore, the widespread use of the baton by the police, who currently perform functions that were historically the province of the militia; see, e.g., D. Kopel, 'The Second Amendment in the Nineteenth Century,' 1998 BYU L. Rev. 1359, 1534 demonstrates the weapon's traditional military utility." *State v. Deciccio*, 315 Conn. 79, 133, 105 A.3d 165, 200 (2014). Thus, to the extent that this Court wishes to rely on *Miller*, the evidentiary posture of this case regarding batons is distinguishable.  And in *Heller* "[t]he Supreme Court held that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.'" *Duncan v. Becerra*, 970 F.3d 1133, *22 (9th Cir. 2020). This Court should find batons are protected since California has not rebutted this presumption.

## II. ARGUMENT

### A. BATONS ARE NOT DANGEROUS[1]

The State fails to confront Circuit precedent and claims that "*Heller* did not establish a floor of dangerousness." Def's. Op. at 4. In this Circuit, the State's position is foreclosed by *United States. v. Henry*, 688 F. 3d 637 (9th Cir. 2012) which established that *Heller* established a floor for dangerousness. Plaintiffs cited to *Henry* in their moving papers and the State has opted not to even attempt to rebut this precedent. *See* Plaintiffs' Memo. at 6. *Henry*'s holding was recently reiterated by the Ninth Circuit in *Duncan*. "[W]e ask whether the law regulates an arm that is *both* dangerous *and* unusual. *See United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) (citing *Heller*, 554 U.S. at 627)." *Duncan*, 970 F.3d at *19. The State opines that "Plaintiffs' argument, if taken to its logical conclusion, would prohibit the State from regulating the possession of any weapon or item that is less dangerous than a handgun—even if the weapon or item is unusual". This is untrue. All Plaintiffs' position and Circuit precedent requires is a finding that if a bearable arm is not dangerous *and* unusual that it receives Second Amendment protection[2]

---

[1] Curiously, Defendant argues that billies are "common to the criminal's arsenal" and "are ordinarily used for criminal and unlawful purposes." *See* Def.'s Opp. p. 3. But then argues "[e]xcept for legitimate law enforcement uses, billies are 'ordinarily used for criminal and unlawful purposes." *See* Def.'s Opp. P. 13. This argument reads as though the baton is tool of the criminal but then also a great tool for law enforcement. That can't be right.

[2] However, it is true pursuant to *Heller* class wide bans on protected arms are categorically unconstitutional.

However, there may be a type of a class the government could muster a sufficient interest to ban.[3] But this is not that class.

Defendant has made no attempt to either rebut the presumption that batons are usual arms or the case law that Plaintiffs rely on. "*Heller* emphasizes that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms.' *Heller*, 554 U.S. at 582. In other words, it identifies a presumption in favor of Second Amendment protection, which the State bears the initial burden of rebutting." *See New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257 (2d Cir. 2015). Rather, it relies on an inapposite case from the Third Circuit. The Third Circuit in *Binderup v. Att'y Gen. U.S.A.*, 836 F.3d 336 (3d Cir. 2016) ruled on whether a felon making an as applied challenge to 925(c) could receive Second Amendment rights. Here, the only initial showing Plaintiffs are required to demonstrate is that batons are bearable arms. The burden then shifts to the State to demonstrate that batons do not receive Second Amendment protection. This the State has not done. Pursuant to *Heller* and *New York State Rifle & Pistol Ass'n,* batons receive Second Amendment protection.

**B.    CALIFORNIA'S BATON BAN IS NOT LONGSTANDING**

The State does not dispute Plaintiffs' argument that the stray statement in *Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) about early 20th century

---

[3] For example, a ban on a specific model of handgun, i.e. a type of handgun that is dangerous for the user to operate, conceivably might survive scrutiny.

3

laws is dicta. Thus, the State must concede that there is no precedent to support its position. Rather the State focuses on whether the court's statement in *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) about early 20th century laws is precedent. However, *Duncan* recently endorsed *Chovan*'s holding, and at a bare minimum, whether the magazine ban at issue in *Duncan* was longstanding was vital to its holding:

> In *Chovan*, for example, we expressed strong doubts that bans on firearm possession for violent offenders were sufficiently longstanding because the first known restriction was not enacted until 1938. *See* 735 F.3d at 1137 (citing C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698, 708 (2008)). In *Jackson*, we reviewed regulations on handgun storage and sales of certain ammunition, keying our analysis to analogues in founding-era and Reconstruction-era fire safety laws. 746 F.3d at 962-63.

*Duncan*, 970 F.3d at *30.

Thus, circuit precedent strongly supports the finding California's baton law is not old enough to be considered longstanding.[4] Even if a twentieth century law is old enough to be considered longstanding, California's baton law is an outlier law. In *Duncan*, the panel held that California's ban was not "longstanding" because "laws restricting ammunition capacity emerged in 1927," only "a handful of state legislatures" enacted such restrictions around that time, and "all but one" of these

---

[4] For context, the State argues that this Court should uphold the baton ban because California has banned them for over 100 years. Def.'s Opp. at pp. 16-17. But this ignores the totality of American history as the United States has been a country since 1776, or 244 years. California's ban is less than half as old.

laws "have since been repealed." *Duncan*, 970 F.3d at *30. This Court should apply the same reasoning to find that three states from the 20th Century is insufficient to demonstrate that a law is longstanding even if 20th century laws are of sufficient vintage to make something longstanding. California's billy ban "cannot be considered a longstanding regulation that enjoys presumptive legality. As noted above, when the Founders ratified the Second Amendment, no laws restricted" billies and a handful of laws from the 20th century do not support a finding California's billy ban is longstanding. *Id.* Even if this Court were to find California's laws presumptively lawful, Plaintiffs have rebutted this presumption for all the reasons raised in their opposition to California's summary judgement. *See* Plaintiffs' Opp. to Summary Judgement at pp. 6-9. Thus, the baton law at issue in this litigation is subject to Second Amendment protection. This Court should apply a categorical approach to strike it as unconstitutional.

### C.  THIS COURT SHOULD APPLY A CATEGORICAL APPROACH

California contends that its laws do not categorically ban all bludgeons because it allows some bludgeons to be owned when they are not used for self-defense. However, California concedes it bans the possession of all bludgeons when "the attendant circumstances indicate that the item was to be used as a weapon". Def.'s Opp. at 11. In other words, it bans the possession of all bludgeons for self-defense. This pursuant to *Heller* requires a categorical approach.

The handgun ban in *Heller* also allowed possession of handguns but did not

5

allow their use for self-defense. This the *Heller* Court found was a categorical ban on handguns. "We must also address the District's requirement (as applied to respondent's handgun) that firearms in the home be rendered and kept inoperable at all times. This makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional." *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008).

California further argues that its law is not a categorical ban on batons because "section 22210 is not a complete ban of a 'class of arms' because section 22210 is subject to certain exceptions" for police, security guards and other similarly situated persons. Def.'s Opp. at 12. While the *Young v. Hawaii*, 896 F.3d 1044 (9th Cir. 2018) panel opinion has been robbed of its precedential value due to the Ninth Circuit's decision to hear the case en banc, the panel decision still has persuasive value. In *Young*, the panel was confronted with a similar argument and rejected it.

> Restricting open carry to those whose job entails protecting life or property necessarily restricts open carry to a small and insulated subset of law-abiding citizens. Just as the Second Amendment does not protect a right to bear arms only in connection with a militia, it surely does not protect a right to bear arms only as a security guard. The typical, law-abiding citizen in the State of Hawaii is therefore entirely foreclosed from exercising the core Second Amendment right to bear arms for self-defense. It follows that section 134-9 "amounts to a destruction" of a core right, and as such, it is infirm "[u]nder any of the standards of scrutiny."

*Young*, 896 F.3d at 1071.

This Court should use the same reasoning to decide this matter. Next,

California cites to a Hawaii case, *Teter v. Connors*, __ F. Supp. 3d __, 2020 WL 2476225 for the proposition that a categorical approach should not be applied. There, the Court rejected a categorical approach because the matter before the Court was a subset of a class of knife rather than knives in general:

> In an attempt to invoke *Heller*, they instead shift their focus to the popularity of knives generally… The Court finds Plaintiffs' arguments unpersuasive. The popularity of an all-encompassing class of weapon (the knife, or even the folding knife) is immaterial when only one narrow subset of the class (the butterfly knife) is banned here.

*Teter v. Connors*, 2020 U.S. Dist. LEXIS 84062, at *28 (D. Haw. May 13, 2020) (punctuation altered).

Here, the ban before the Court is analogous to a complete ban on handguns which the *Heller* Court struck down unlike the butterfly knife ban at issue in *Teter*. Even if this Court decides not to apply a categorical approach the ban is unconstitutional under any level of scrutiny this Court might apply. California urges this Court to reject strict scrutiny based on a flawed reading of *Jackson v. San Francisco*. In *Jackson*, the Ninth Circuit applied intermediate scrutiny because a ban on the sale of hollow point ammunition did not place a substantial burden on the right to self-defense because the litigants could still possess hollow point ammunition for self-defense.

> Nor does section 613.10(g) place a substantial burden on the Second Amendment right. A ban on the sale of certain types of ammunition does not prevent the use of handguns or other weapons in self-defense. The regulation in this case limits only the manner in which a person may exercise Second Amendment rights by making it more

> difficult to purchase certain types of ammunition. This is akin to a content-neutral time, place, and manner restriction, such as a regulation which prevents a person from owning a firearm with an obliterated serial number while not barring the possession of an otherwise lawful firearm. *See Marzzarella*, 614 F.3d at 97. Further, section 613.10(g) leaves open alternative channels for self-defense in the home. Jackson may either use fully-jacketed bullets for self-defense or obtain hollow-point bullets outside of San Francisco's jurisdiction.

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 968 (9th Cir. 2014).

Here, there is no way to obtain batons outside of California and use them for self-defense within California. Thus, pursuant to *Jackson's* reasoning, California's ban is a substantial burden on Plaintiffs Second Amendment rights. California's reading of *Duncan* is similarly flawed. There the Ninth Circuit found "any law that comes close to categorically banning the possession of arms that are commonly used for self-defense imposes a substantial burden on the Second Amendment". *Duncan*, 970 F.3d at *35. Here, California completely ban the ownership of batons which as established above are protected arms. Thus, strict scrutiny applies pursuant to *Duncan*. California has made no argument that the billy law would survive strict scrutiny and thus, concedes its law is unconstitutional under strict scrutiny review. Even if this Court applies intermediate scrutiny the billy law must fall.

### D. CALIFORNIA'S BILLY LAW IS UNCONSTITUTIONAL UNDER INTERMEDIATE SCRUTINY

California cites to a California state court case which upheld the billy ban as applied to a person carrying a modified club outside the home to support their position that Plaintiffs' challenge withstands intermediate scrutiny. *See People v.*

*Liscotti*, 219 Cal. App. 4th Supp. 1, 5 (2013) (observing that a homemade billy—"a full-size modified baseball bat weighted with lead and wrapped in rope"—does not appear to be "a weapon that would normally be possessed by a law-abiding citizen for a lawful purpose"). However, it is unclear how that is relevant to Plaintiffs' challenge to possession of standard policeman's batons in the home.

Further, California's citation to *Pena* is inapposite. *Pena* dealt with requirements imposed by California on the sale of handguns. Here, California bans the possession of all batons. Furthermore, unlike this case, in *Pena* "California's evidence 'fairly support[ed]' its conclusions. *Jackson*, 746 F.3d at 969." See *Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018). "In order to survive intermediate scrutiny, a law must be "narrowly tailored to serve a significant governmental interest." *McCullen* v. *Coakley*, 573 U. S. 464, 486 (2014) (internal quotation marks omitted). In other words, the law must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* (internal quotation marks omitted)." See *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017). "The State has not, however, met its burden to show that this sweeping law is necessary or legitimate to serve that purpose." *Id.* at 1737.

In a last-ditch argument, the State argues that this Court should "defer to the State" "about the means selected by the State to further [its] interests…" Def.'s Opp. at 16.  But "[i]t is the federal courts that are the final arbiters of federal constitutional rights, not the state courts. *See, e.g., Bennett v. Mueller*, 322 F.3d 573, 582 (9th Cir.

2003) ('[S]tate courts will not be the final arbiters of important issues under the federal constitution.' (quoting *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557, 60 S. Ct. 676, 84 L. Ed. 920 (1940)))" *Hopkins v. Bonvicino*, 573 F.3d 752, 769 (9th Cir. 2009). And the Plaintiffs here assert federal constitutional claims. And while the Plaintiffs have not asked this Court to question the State's "wisdom" in banning batons, it does ask this Court to decide if banning a baton violates the Second Amendment.

## III. CONCLUSION

The Court in *Heller* stated that:

> The very enumeration of the right takes out of the hands of government--even the Third Branch of Government--the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad.

*District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008). Batons are protected by the Second Amendment and Defendant's ban on them fails constitutional muster. This Court should find Defendant's ban unconstitutional, grant Plaintiffs' Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

Dated: October 13, 2020

*/s/ Alan Alexander Beck*                */s/ Stephen D. Stambouliehh*
Alan Alexander Beck                      Stephen D. Stambouliehh