Rob Bonta
Attorney General of California
Benjamin M. Glickman
Supervising Deputy Attorney General
John D. Echeverria
Deputy Attorney General
Anthony P. O'Brien
Deputy Attorney General
State Bar No. 232650
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-6002
  Fax:  (916) 324-8835
  E-mail:  Anthony.OBrien@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his
official capacity as Attorney General of the
State of California*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL FOUTS et al.,**<br><br>                                    Plaintiff,<br><br>            **v.**<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California,**<br><br>                                    Defendant. | Case No. 3:19-cv-01662-BEN-JLB<br><br>**COMPENDIUM OF WORKS CITED IN DEFENDANT'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S ORDER OF OCTOBER 17, 2022**<br><br>Courtroom:     5A<br>Judge:          Hon. Roger T. Benitez<br><br>Action Filed:  September 1, 2019 |

1

1

## <u>INDEX</u>

2

3

| Works | Brief Page | Compendium Page |
|---|---|---|
| **HISTORICAL STATUTES** | | |
| Cal. Stats. 1917, ch. 145, § 1 | 6 | 2-45 |
| Cal. Stats. 1923, ch. 339, § 1 | 7 | 46-102 |
| 1 Wm. & Mary ch. 2, § 7 (1689), https://press-pubs.uchicago.edu/founders/documents/bill_of_rightss1.html | 25 | 103-106 |
| 33 Hen. 8, ch. 6 § 1, 18 at 832 (1541) | 27 | 107-110 |
| Jac. I, ch. 1 (1606) | 27 | 111 |
| 7 Rich. 2, ch. 13 (1383) | 27 n.17 | 112 |
| 20 Rich. 2, ch. 1 (1396) | 27 n.17 | 113 |
| The Grants, Concessions, And Original Constitutions of The Province of New Jersey (1881) | 28 | 114 |
| The Colonial Laws of New York from the Year 1664 to the Revolution, Including the Charters to the Duke of York, the Commissions and Instructions to Colonial Governors, the Dukes Laws, the Laws of the Dongan and Leisler Assemblies, the Charters of Albany and New York and the Acts of the Colonial Legislatures from 1691 to 1775 at 687 (1894) | 28-29 | 115-116 |
| 1798 Ky. Acts 106 | 29, 29 n.18 | 117-118 |
| 1799 Miss. Laws 113, A Law for the Regulation of Slaves | 29 | 119 |
| An Act to Prevent Routs, Riots, and Tumultuous Assemblies, and the Evil Consequences Thereof, reprinted in Cumberland Gazette (Portland, Me.), Nov. | 29 | 120 |

2

| | | |
|---|---|---|
| 17, 1786, at 1 | | |
| 1750 Mass. Acts 544, An Act for Preventing and Suppressing of Riots, Routs And Unlawful Assemblies, chap. 17, § 1 | 29 | 121-123 |
| Slaves, in Laws of the Arkansas Territory 521 (J. Steele & J. M'Campbell, Eds., 1835) | 29 n.18 | 124-125 |
| 1804 Ind. Acts 108, A Law Entitled a Law Respecting Slaves, § 4; | 29 n.18 | 126-127 |
| 1804 Miss. Laws 90, An Act Respecting Slaves, § 4 | 29 n.18 | 128-129 |
| Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as Are Now in Force; with a New and Complete Index. To Which are Prefixed the Declaration of Rights, and Constitution, or Form of Government Page 187, Image 195 (1803) | 29 n.18 | 130-131 |
| 1855 Ind. Acts 153, An Act To Provide For The Punishment Of Persons Interfering With Trains or Railroads, chap. 79, § 1 | 29 n.18 | 132-133 |
| The Revised Statutes of Indiana: Containing, Also, the United States and Indiana Constitutions and an Appendix of Historical Documents (1881) | 29-30 n.18 | 134-135 |
| 1905 Ind. Acts 677 | 29-30 n.18 | 136 |
| **BOOKS** | | |
| Robert *Escobar,* Saps, Blackjacks, and Slungshots:  A History of Forgotten Weapons (Gatekeeper Press 2018) at 82-3 | 5 n.6 | 139-140 |
| Patrick J. Charles, *Armed in America: A History of Gun Rights from Colonial Militias to Concealed Carry* 62, 141 (2018) | 27, 34 | 141-145 |

3

| | | |
|---|---|---|
| Somerset Record Society, Vol. XX, at 332 (1904) | 27 n.16 | 146-149 |
| **LAW REVIEWS AND JOURNALS** | | |
| Samuel L. Bray, *"Necessary and Proper" and "Cruel and Unusual": Hendiadys in the Constitution*, 102 Va. L. Rev. 687, 695 (2016). | 22 n.14 | 151-152 |
| John Forrest Dillon, *The Right to Keep and Bear Arms for Public and Private Defence*, 1 Cent. L. J. 259, 285, 287 (1874), https://guncite.com/journals/centlj.html | 25 | 153-161 |
| **OTHER SOURCES** | | |
| PoliceOne Staff, *History and Use of the Billy Club* (Nov. 16, 2016), PoliceOne.com, *available at* < https://www.police1.com/police-history/articles/history-and-use-of-the-billy-club-lCrwpOflpDTkHY2B/> (last visited Nov. 26, 2022) | 4 n.2-4 | 163-168 |
| 1 Blackstone ch. 1 (1769) | 26, 26 n.15 | 169-178 |

4

# HISTORICAL STATUTES

ID#7794

LEGISLATIVE INTENT

Requester: Marguerite Beveridge          Date received:     25 Feb. 2014
Telephone:                               Needed by:
City/Room: Sacramento                    Completed:         27 Feb. 2014

STATS: 1917            CHAPTER: 145          CODE:
BILL: AB 980           AUTHOR: Assemblyman Marks
Summary Digest:        Final History: X       Bill Forms: X


GOVERNOR'S CHAPTERED BILL FILE (GCBF): Gov. William Stephens (1917-1923) did
not provide a file for AB 980 or any other bill to the Calif. State Archives.
The practice of retaining Governor's Chaptered Bill Files for historical
research did not start until Earl Warren's term as Governor (1943-1953).

AUTHOR'S FILE: The author of the bill, Assemblyman Milton Marks, also did not
provide bill files to the State Archives.


NOTES:
AB 980 (1917) is an act ``relating to and regulating the carrying,
possession, sale or other disposition of firearms capable of being concealed
upon the person...''

The bill was chaptered as Stats 1917 Ch. 145. The statute does not refer to
any code sections, and it looks as if it was un-codified for some time.

The State Archives has very few legislative history materials from the early
1900s. It does not have bill files for AB 980 from committees that worked on
this legislation (Assembly Committee on Judiciary and Senate Committee on
Judiciary).

The pdf for this legislative history has been OCRed (press Ctrl and F to key-
word search within pdf document).


By _Joel Tochterman_

Joel Tochterman (916)322-3375


Rev. 9-1-2011

THE

# STATUTES OF CALIFORNIA

AND

# AMENDMENTS TO THE CODES

PASSED AT THE

FORTY-SECOND SESSION OF THE LEGISLATURE

# 1917

BEGAN ON MONDAY, JANUARY EIGHTH, AND ENDED ON FRIDAY. APRIL
TWENTY-SEVENTH. NINETEEN HUNDRED AND SEVENTEEN



CALIFORNIA
STATE PRINTING OFFICE
1917

## CHAPTER 145.

*An act relating to and regulating the carrying, possession, sale or other disposition of firearms capable of being concealed upon the person; prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons and the giving, transferring and disposition thereof to other persons within this state; providing for the registering of the sales of firearms; prohibiting the carrying or possession of concealed weapons in municipal corporations; providing for the destruction of certain dangerous weapons as nuisances and making it a felony to use or attempt to use certain dangerous weapons against another.*

[Approved May 4, 1917.  In effect July 27, 1917.]

*The people of the State of California do enact as follows:*

SECTION 1. Every person who manufactures or causes to be manufactured, or leases, or keeps for sale, or offers, or gives, or otherwise disposes of any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, or metal knuckles, a dirk or dagger, to any person within this state is guilty of a misdemeanor, and if he has been previously convicted of a crime made punishable by this section, he is guilty of a felony. *[margin: Manufacture, etc., of certain dangerous weapons misdemeanor.]*

SEC. 2. Every person who possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, bomb or bombshells, or who carries a dirk or a dagger, is guilty of a misdemeanor, and if he has been convicted previously of any felony or of a crime made punishable by this act, he is guilty of a felony. *[margin: Possession of certain dangerous weapons misdemeanor.]*

SEC. 3. Every person who carries in any city, city and county, town or municipal corporation of this state any pistol, revolver, or other firearm concealed upon his person, without having a license to carry such firearm as hereinafter provided in section six of this act, shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony. *[margin: Carrying firearms without license misdemeanor.]*

SEC. 4. The unlawful possessing or carrying of any of the instruments, weapons or firearms enumerated in section one to section three inclusive of this act, by any person other than those authorized and empowered to carry or possess the same as hereinafter provided, is a nuisance, and such instruments, weapons or firearms are hereby declared to be nuisances, and when any of said articles shall be taken from the possession of any person the same shall be surrendered to the magistrate before whom said person shall be taken, except that in any city, city and county, town or other municipal corporation the same shall be surrendered to the head of the *[margin: Unlawful possession of weapon, etc., nuisance. Surrender of weapons, etc.]*

police force, or police department thereof. The officers to whom the same may be so surrendered, except upon certificate of a judge of a court of record, or of the district attorney of any county that the preservation thereof is necessary or proper to the ends of justice, shall proceed at such time or times as he deems proper, and at least once in each year to destroy or cause to be destroyed such instruments, weapons or other fire-arms in such manner and to such extent that the same shall be and become wholly and entirely ineffective and useless for the purpose for which it was manufactured.

**Destruction of weapons, etc.**

**Attempted use of weapons felony.**

SEC. 5. Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any loaded pistol, revolver or other firearm, or any instrument or weapon commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bomb, or bombshell or any other dangerous or deadly instrument or weapon, is guilty of a felony. The carrying or possession of any of the weapons specified in this section, by any person while committing, or attempting or threatening to commit a felony, or breach of the peace, or any act of violence against the person or property of another, shall be presumptive evidence of carrying or pos-sessing such weapon with intent to use the same in violation of this section.

**License to carry concealed firearm.**

SEC. 6. It shall be lawful for the board of police commis-sioners, chief of police, city marshal, town marshal, or other head of the police department of any city, city and county, town, or other municipal corporation of this state, upon proof before said board, chief, marshal or head, that the person applying therefor is of good moral character, and that good cause exists for the issuance thereof, to issue to such person a license to carry concealed a pistol, revolver or other fire-arm; *provided, however*, that the application to carry concealed such firearm shall be filed in writing and shall state the name and residence of the applicant, the nature of appli-cant's occupation, the business address of applicant, the nature of the weapon sought to be carried and the reason for the filing of the application to carry the same.

**Register of sales of firearms.**

SEC. 7. Every person in the business of selling, leasing or otherwise transferring a pistol, revolver or other firearm, of a size capable of being concealed upon the person, whether such seller, leasor or transferrer is a retail dealer, pawnbroker or otherwise, except as hereinafter provided, shall keep a register in which shall be entered the time of sale, the date of sale, the name of the salesman making the sale, the place where sold, the make, model, manufacturer's number, caliber or other marks of identification on such pistol, revolver or other firearm. Such register shall be prepared by and obtained from the state printer and shall be furnished by the state printer to said dealers on application at a cost of three dollars per one hun-dred leaves in duplicate and shall be in the form hereinafter provided. The purchaser of any firearm, capable of being

concealed upon the person shall sign, and the dealer shall require him to sign his name and affix his address to said register in duplicate and the salesman shall affix his signature in duplicate as a witness to the signatures of the purchaser. Any person signing a fictitious name or address is guilty of a misdemeanor. The duplicate sheet of such register shall on the evening of the day of sale, be placed in the mail, postage prepaid and properly addressed to the board of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the city, city and county, town or other municipal corporation wherein the sale was made; *provided,* that where the sale is made in a district where there is no municipal police department, said duplicate sheet shall be mailed to the county clerk of the county wherein the sale is made. A violation of any of the provisions of this section by any person engaged in the business of selling, leasing or otherwise transferring such firearms is a misdemeanor. This section shall not apply to wholesale dealers in their business intercourse with retail dealers, nor to wholesale or retail dealers in the regular or ordinary transportation of unloaded firearms as merchandise by mail, express or other mode of shipment, to points outside of the city, city and county, town or municipal corporation wherein they are situated. The register provided for in this act shall be substantially in the following form:

*(margin note: Duplicate sheet mailed to police.)*

*(margin note: Violation misdemeanor.)*

Series No. _____
Sheet No. _____

*(margin note: Form of register.)*

ORIGINAL.

Dealers' Record of Sale of Revolver or Pistol.
State of California.

Notice to dealers: This original is for your files. If spoiled in making out, do not destroy. Keep in books. Fill out in duplicate.

Carbon duplicate must be mailed on the evening of the day of sale, to head of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the municipal corporations wherein the sale is made, or to the county clerk of your county if the sale is made in a district where there is no municipal police department. Violation of this law is a misdemeanor. Use carbon paper for duplicate. Use indelible pencil.

Sold by _____   Salesman _____
City, town or township _____
Description of arm (state whether revolver or pistol) _____
Maker _____ number _____ caliber _____
Name of purchaser _____ age _____ years.
Permanent residence (state name of city, town or township, street and number of dwelling) _____
Height _____ feet _____ inches.   Occupation _____
Color _____ skin _____ eyes _____ hair _____

If traveling or in locality temporarily, give local address\_\_\_\_\_
_____

Signature of purchaser _____
(Signing a fictitious name or address is a misdemeanor.)   (To
be signed in duplicate.)

Witness _____, salesman.
(To be signed in duplicate.)

                                        Series No. _____
                                        Sheet  No. _____

## DUPLICATE.

### Dealers' Record of Sale of Revolver or Pistol.
### State of California.

Notice to dealers:  This carbon duplicate must be mailed
on the evening of the day of sale as set forth in the original
of this register page.  Violation of this law is a misdemeanor.

Sold by _____    Salesman _____
City, town or township _____
Description of arm (state whether revolver or pistol) _____
Maker _____ number _____ caliber _____
Name of purchaser _____ age _____ years.
Permanent address (state name of city, town or township,
street and number of dwelling) _____
_____

Height \_\_\_\_\_ feet \_\_\_\_\_ inches.  Occupation _____
Color _____ skin _____ eyes _____ hair _____
If traveling or in locality temporarily, give local address\_\_\_\_\_
_____

Signature of purchaser _____
(Signing a fictitious name or address is a misdemeanor.)   (To
be signed in duplicate.)

Witness _____, salesman.
(To be signed in duplicate.)

Exceptions.   SEC. 8.  Nothing in this act shall be construed to apply to
sheriffs, constables, marshals, policemen or other duly
appointed peace officers, nor to any person summoned by any
such officers to assist in making arrest or preserving the peace
while said person so summoned is actually engaged in assisting
such officer; nor to duly authorized military or civil organiza-
tions while parading nor to the members thereof when going
to and from the places of meeting of their respective organiza-
tions; nor to the possession or transportation by any merchant
of unloaded firearms as merchandise; nor to bona fide members
of any club or organization now existing or hereinafter organ-
ized, for the purpose of practicing shooting at targets upon
established target ranges, whether public or private, while
such members are using any of the firearms referred to in
this act upon or in such target ranges, or while going to and
from such ranges.

Constitution-   SEC. 9.  If any section, subsection, sentence, clause or
ality.        phrase of this act is for any reason held to be unconstitutional

such decision shall not affect the validity of the remaining portions of this act. The legislature hereby declares that it would have passed this act and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional.

---

## CHAPTER 146.

*An act amending an act entitled "An act to provide for the incorporation and organization and management of county water districts and to provide for the acquisition of water rights or the construction thereby of water works, and for the acquisition of all property necessary therefor, and also to provide for the distribution and sale of water by said districts," approved June 10, 1913, by adding thereto a new section to be numbered twenty-eight, providing for the exclusion from any county water district formed under said act of territory not served by such county water district.*

[Approved May 4, 1917.  In effect July 27, 1917.]

*The people of the State of California do enact as follows:*

SECTION 1.  An act approved June 10, 1913, and entitled "An act to provide for the incorporation and organization and management of county water districts and to provide for the acquisition of water rights or the construction thereby of water works, and for the acquisition of all property necessary therefor, and also to provide for the distribution and sale of water by said districts." is hereby amended by adding to said act a section numbered twenty-eight, reading as follows: *Stats. 1913, p. 1049.*

Sec. 28.  Any territory, included within any county water district formed under the provisions of this act, and not benefited in any manner by such district, or its continued inclusion therein, may be excluded therefrom by order of the board of directors of such district upon the verified petition of the owner or owners in fee of lands whose assessed value, with improvements, is in excess of one-half of the assessed value of all the lands, with improvements, held in private ownership in such territory.  Said petition shall describe the territory sought to be excluded and shall set forth that such territory is not benefited in any manner by said county water district or its continued inclusion therein, and shall pray that such territory may be excluded and taken from said district.  Such petition shall be filed with the secretary of the water district and shall be accompanied by a deposit with such secretary of the sum of one hundred dollars, to meet the expenses of advertising and other costs incident to the proceedings for the *Exclusion of territory.* *Petition.* *Contents.*

# ASSEMBLY FINAL HISTORY

## FORTY-SECOND SESSION

### 1 9 1 7

Compiled Under the Direction of

**B. O. BOOTHBY**
Chief Clerk

**HERBERT E. CLELAND**
History Clerk

**FRANK L. MORRIS**
Assistant History Clerk

DURATION OF SESSION

First Part—Began Monday, January 8, and Adjourned Friday, January 26.

Second Part (after constitutional recess)—Began Monday, February 26, and Adjourned Friday, April 27.

Full Duration of Session 80 Days.

31021

**980—Marks, Jan. 25.   To Com. on Jud.**

An act relating to and regulating the carrying, possession, sale or other dis-
position of firearms capable of being concealed upon the person, prohibiting
the possession, carrying, manufacturing and sale of certain other dangerous
weapons and the giving, transferring and disposition thereof to other persons
within this State; providing for the registering of the sales of firearms:
prohibiting the carrying or possession of concealed weapons in municipal
corporations; providing for the destruction of certain dangerous weapons as
nuisances and making it a felony to use or attempt to use certain dangerous
weapons against another.

Jan. 25—Read first time.   To Com. on Rev. & Ptg.
Jan. 26—From committee.   To printer.
Feb. 26—From printer.   To committee.
Mar. 15—From committee with recommendation : Do pass as amended.
Mar. 16—Read second time.   Amended.   To printer.
Mar. 17—From printer.   To engrossment.
Mar. 19—Reported correctly engrossed
Mar. 20—Read third time.   Amended.   To printer.
Mar. 21—From printer.   To re-engrossment.   Reported correctly re-engrossed.
Mar. 22—Passed, title approved
Mar. 28—To Senate.
Mar. 28—In Senate.   Referred to Com. on Jud.
Mar. 28—From committee with recommendation: Do pass.
Mar. 29—Read second time.
April 3—Read third time.   Amended.   To printer.
April 4—From printer.
April 5—Amended.   To printer.
April 8—From printer.
April 13—Passed, title approved.   To Assembly.
April 16—In Assembly.   Senate amendments concurred in.   To enrollment.
April 19—Reported correctly enrolled   To Governor at 4 p.m.
May   4—Approved by Governor.   Chapter 145


**981—Horbach, Jan. 25.   To Com. on Agr.**

An act to amend section 2322a of the Political Code, relating to inspection of
fruit trees and eradication of pests.
Jan. 25—Read first time.   To printer
Feb. 26—From printer.   To committee.
April 13—From committee with recommendation · Do pass
April 14—Read second time.   To engrossment.   Reported correctly engrossed.
April 17—Read third time, passed, title approved
April 18—To Senate
April 18—In Senate.   Read first time   Referred to Com. on Agr.
April 20—From committee with recommendation · Do pass as amended.
April 21—Read second time.   Amended   To printer.
April 27—Read third time, passed, title approved   To Assembly
April 27—In Assembly   Concurred in Senate amendment.   To enrollment
Reported correctly enrolled   To Governor at 11 a m.
June 1—Pocketed


**982—Horbach, Jan. 25.   To Com. on R. & H**

An act making appropriation for the location, survey and construction of a
state highway from Oak Grove, in Tulare County, to the west line of the
Sequoia National Park, and from the east line of Sequoia National Park
by way of Mineral King and Hockett Meadows, into the Kern River
Canyon.
Jan. 25—Read first time   To printer.
Feb. 26—From printer.   To committee.
Mar. 16—From committee with recommendation   Do pass   Re-referred to
Com. on W & M   To committee.
April 27—From committee without recommendation


**983—Argabrite, Jan. 25.   To Com. on Rev. & Tax.**

An act to amend section 4117 of the Political Code, relating to possession of
public moneys
Jan. 25—Read first time.   To printer.
Feb. 26—From printer.   To committee.
April 27—From committee without recommendation

# ASSEMBLY BILL

# No. 980

INTRODUCED BY MR. MARKS,

JANUARY 25, 1917.

———

REFERRED TO COMMITTEE ON JUDICIARY.

# AN ACT

RELATING TO AND REGULATING THE CARRYING, POSSESSION, SALE OR
OTHER DISPOSITION OF FIREARMS CAPABLE OF BEING CONCEALED UPON
THE PERSON; PROHIBITING THE SALE TO OR CARRYING OF CONCEALED
WEAPONS BY PERSONS UNDER THE AGE OF EIGHTEEN YEARS; PROHIBIT-
ING THE POSSESSION, CARRYING, MANUFACTURING AND SALE OF CER-
TAIN OTHER DANGEROUS WEAPONS AND THE GIVING, TRANSFERRING AND
DISPOSITION THEREOF TO OTHER PERSONS WITHIN THIS STATE; PRO-
VIDING FOR THE REGISTERING OF THE SALES OF FIREARMS; PROHIBITING
THE CARRYING OR POSSESSION OF CONCEALED WEAPONS IN MUNICIPAL
CORPORATIONS; PROVIDING FOR THE DESTRUCTION OF CERTAIN DANGER-
OUS WEAPONS AS NUISANCES AND MAKING IT A FELONY TO USE OR
ATTEMPT TO USE CERTAIN DANGEROUS WEAPONS AGAINST ANOTHER.

*The people of the State of California do enact as follows:*

1   SECTION 1.   (a) Every person who offers, sells, lends,
2   leases, gives or otherwise transfers or disposes of any gun,
3   revolver, pistol or other firearm of a size capable of being con-
4   cealed upon the person, to any person in this state under
5   the age of eighteen years is guilty of a misdemeanor.
6     (b) Every person under the age of eighteen years who shall
7   have, carry, or have in his possession any of the articles named

— 2 —

1  or described in section one (a) of this act, which is forbidden
2  therein to offer, sell, loan, lease, give or otherwise transfer to
3  him, is a juvenile delinquent.

4  SEC. 2.  Every person who manufactures or causes to be
5  manufactured, or leases, or keeps for sale, or offers, or gives,
6  or otherwise disposes of any instrument or weapon of the kind
7  commonly known as a blackjack, slungshot, billy, sandclub,
8  sandbag, bludgeon, or metal knuckles to any person within
9  this state is guilty of a misdemeanor, and if he has been pre-
10  viously convicted of a crime made punishable by this section,
11  he is guilty of a felony.

12  SEC. 3.  Every person who possesses any instrument or
13  weapon of the kind commonly known as a blackjack, slungshot,
14  billy, sandclub, sandbag, bludgeon, metal knuckles, bomb or
15  bombshells is guilty of a misdemeanor, and if he has been con-
16  victed previously of any felony or of a crime made punishable
17  by this act, he is guilty of a felony.

18  SEC. 4.  Every person, not a traveler, who possesses or
19  carries in any city, city and county, town or municipal corpo-
20  ration of this state any pistol, revolver, or other firearm
21  concealed upon his person, or of a size capable of being con-
22  cealed upon his person, without having a license to carry such
23  firearm as hereinafter provided in section seven of this act,
24  shall be guilty of a misdemeanor, and if he has been con-
25  victed previously of any felony, or of any crime made punish-
26  able by this act, he is guilty of a felony.

27  SEC. 5.  The unlawful possessing or carrying of any of
28  the instruments, weapons or firearms enumerated in sections
29  one (a) to section four inclusive of this act, by any person
30  other than those authorized and empowered to carry or possess
31  the same as hereinafter provided, is a nuisance, and such
32  instruments, weapons or firearms are hereby declared to be
33  nuisances, and when any of said articles shall be taken from
34  the possession of any person the same shall be surrendered to
35  the magistrate before whom said person shall be taken, except
36  that in any city, city and county, town or other municipal
37  corporation the same shall be surrendered to the head of the

— 3 —

1   police force, or police department thereof.  The officers to
2   whom the same may be so surrendered. except upon certificate
3   of a judge of a court of record. or of the district attorney of
4   any county that the preservation thereof is necessary or proper
5   to the ends of justice. shall proceed at such time or times as
6   he deems proper. and at least once in each year to destroy or
7   cause to be destroyed such instruments. weapons or other fire-
8   arms in such manner and to such extent that the same shall
9   be and become wholly and entirely ineffective and useless for
10  the purpose for which it was manufactured.

11      SEC. 6.  Any person who attempts to use. or who with
12  intent to use the same unlawfully against another, carries or
13  possesses a dagger, dirk, dangerous knife, razor, stiletto, or
14  any loaded pistol. revolver or other firearm, or any instrument
15  or weapon commonly known as a blackjack. slungshot, billy,
16  sandclub. sandbag. metal knuckles. bomb. or bombshell or any
17  other dangerous or deadly instrument or weapon, is guilty of
18  a felony.  The carrying or possession of any of the weapons
19  specified in this section, by any person while committing. or
20  attempting or threatening to commit a felony, or breach of the
21  peace. or any act of violence against the person or property
22  of another, shall be presumptive evidence of carrying or pos-
23  sessing such weapon with intent to use the same in violation
24  of this section.

25      SEC. 7.  It shall be lawful for the board of police commis-
26  sioners, chief of police. city marshal, town marshal, or other
27  head of the police department of any city, city and county,
28  town. or other municipal corporation of this state, upon proof
29  before said board, chief, marshal or head, that the person
30  applying therefor is of good moral character, and that good
31  cause exists for the issuance thereof, to issue to such person a
32  license to have and carry concealed a pistol, revolver or other
33  firearm; *provided, however,* that no such license shall be issued
34  to any person under the age of eighteen years; *and provided,*
35  *further,* that the application to have and carry concealed such
36  firearm shall be filed in writing and shall state the name and

— 4 —

1 residence of the applicant, the nature of applicant's occupa-
2 tion, the business address of applicant, the nature of the
3 weapon sought to be carried and the reason for the filing of
4 the application to carry the same.

5    SEC. 8. Every person in the business of selling, leasing or
6 otherwise transferring a pistol, revolver or other firearm, of a
7 size capable of being concealed upon the person, whether such
8 seller, leasor or transferrer is a retail dealer, pawnbroker or
9 otherwise, except as hereinafter provided, shall keep a register
10 in which shall be entered the time of sale, the date of sale, the
11 name of the salesman making the sale, the place where sold,
12 the make, model, manufacturer's number, caliber or other
13 marks of identification on such pistol, revolver or other firearm.
14 Such register shall be prepared by and obtained from the
15 state printer and shall be furnished by the state printer to said
16 dealers on application at a cost of three dollars per one hun-
17 dred leaves in duplicate and shall be in the form hereinafter
18 provided. The purchaser of any firearm, capable of being
19 concealed upon the person shall sign, and the dealer shall
20 require him to sign his name and affix his address to said
21 register in duplicate and the salesman shall affix his signature
22 in duplicate as a witness to the signatures of the purchaser.
23 Any person signing a fictitious name or address is guilty of a
24 misdemeanor. The duplicate sheet of such register shall on
25 the evening of the day of sale, be placed in the mail, postage
26 prepaid and properly addressed to the board of police com-
27 missioners, chief of police, city marshal, town marshal or other
28 head of the police department of the city, city and county,
29 town or other municipal corporation wherein the sale was
30 made; *provided,* that where the sale is made in a district where
31 there is no municipal police department, said duplicate sheet
32 shall be mailed to the county clerk of the county wherein the
33 sale is made. A violation of any of the provisions of this sec-
34 tion by any person engaged in the business of selling, leasing
35 or otherwise transferring such firearms is a misdemeanor.
36 This section does not apply to wholesale dealers. The register

— 5 —

1  provided for in this act shall be substantially in the following
2  form:

3                                    Series No. _____
4                                    Sheet No. _____
5                          ORIGINAL.
6  Dealers' Record of Sale of Revolver or Pistol. State of
7                          California.
8       Notice to dealers:  This original is for your files.  If spoiled
9  in making out, do not destroy.  Keep in books.  Fill out in
10 duplicate.
11     Carbon duplicate must be mailed on the evening of the day
12 of sale, to head of police commissioners, chief of police, city
13 marshal, town marshal or other head of the police department
14 of the municipal corporations wherein the sale is made, or to
15 the county clerk of your county if the sale is made in a district
16 where there is no municipal police department.  Violation of
17 this law is a misdemeanor.  Use carbon paper for duplicate.
18 Use indelible pencil.
19 Sold by _____    Salesman _____
20 City, town or township _____
21 Description of arm (state whether revolver or pistol) _____
22 Maker _____ number _____ caliber _____
23 Name of purchaser _____ age _____ years.
24 Permanent residence (state name of city, town or township,
25 street and number of dwelling) _____
26 Height _____ feet _____ inches.  Occupation _____
27 Color _____ skin _____ eyes _____ hair _____
28 If traveling or in locality temporarily, give local address_____
29 _____
30 Signature of purchaser _____
31 (Signing a fictitious name or address is a misdemeanor.)  (To
32 be signed in duplicate.)
33 Witness _____, salesman.
34     (To be signed in duplicate.)

1                                     Series No. _____

2                                     Sheet No. _____

3                      DUPLICATE.

4 Dealers' Record of Sale of Revolver or Pistol. State of

5                      California.

6 Notice to dealers: This carbon duplicate must be mailed

7 on the evening of the day of sale as set forth in the original

8 of this register page. Violation of this law is a misdemeanor.

9 Sold by _____ Salesman _____

10 City, town or township _____

11 Description of arm (state whether revolver or pistol) _____

12 Maker _____ number _____ caliber _____

13 Name of purchaser _____ age _____ years.

14 Permanent address (state name of city, town or township,

15 street and number of dwelling) _____

16 _____

17 Height _____ feet _____ inches. Occupation _____

18 Color _____ skin _____ eyes _____ hair _____

19 If traveling or in locality temporarily, give local address_____

20 _____

21 Signature of purchaser _____

22 (Signing a fictitious name or address is a misdemeanor.)   (To

23    be signed in duplicate.)

24 Witness _____, salesman.

25    (To be signed in duplicate.)

26 SEC. 9. Nothing in this act shall be construed to apply to

27 sheriffs, constables, marshals, policemen or other duly

28 appointed peace officers, nor to any person summoned by any

29 such officers to assist in making arrest or preserving the peace

30 while said person so summoned is actually engaged in assisting

31 such officer; nor to duly authorized military or civil organiza-

32 tions while parading nor to the members thereof when going

33 to and from the places of meeting of their respective organiza-

34 tions; nor to the possession or transportation by any merchant

35 of unloaded firearms as merchandise; nor to bona fide members

36 of any club or organization now existing or hereinafter organ-

37 ized, for the purpose of practicing shooting at targets upon

— 7 —

1  established target ranges, whether public or private, while
2  such members are using any of the firearms referred to in
3  this act upon or in such target ranges.

4     Sec. 10.  If any section, subsection, sentence, clause or
5  phrase of this act is for any reason held to be unconstitutional
6  such decision shall not affect the validity of the remaining
7  portions of this act.  The legislature hereby declares that it
8  would have passed this act and each section, subsection, sen-
9  tence, clause and phrase thereof, irrespective of the fact that
10  any one or more other sections, subsections, sentences, clauses
11  or phrases be declared unconstitutional.

O

AMENDED IN ASSEMBLY MARCH 16, 1917.

# ASSEMBLY BILL                              No. 980

### INTRODUCED BY MR. MARKS,

### JANUARY 25, 1917.

---

REFERRED TO COMMITTEE ON JUDICIARY.

---

# AN ACT

RELATING TO AND REGULATING THE CARRYING, POSSESSION, SALE OR
OTHER DISPOSITION OF FIREARMS CAPABLE OF BEING CONCEALED UPON
THE PERSON; PROHIBITING THE SALE TO OR CARRYING OF CONCEALED
WEAPONS BY PERSONS UNDER THE AGE OF EIGHTEEN YEARS; PROHIBIT-
ING THE POSSESSION, CARRYING, MANUFACTURING AND SALE OF CER-
TAIN OTHER DANGEROUS WEAPONS AND THE GIVING, TRANSFERRING AND
DISPOSITION THEREOF TO OTHER PERSONS WITHIN THIS STATE; PRO-
VIDING FOR THE REGISTERING OF THE SALES OF FIREARMS; PROHIBITING
THE CARRYING OR POSSESSION OF CONCEALED WEAPONS IN MUNICIPAL
CORPORATIONS; PROVIDING FOR THE DESTRUCTION OF CERTAIN DANGER-
OUS WEAPONS AS NUISANCES AND MAKING IT A FELONY TO USE OR
ATTEMPT TO USE CERTAIN DANGEROUS WEAPONS AGAINST ANOTHER.

*The people of the State of California do enact as follows:*

1    SECTION 1. (a) Every person who offers, sells, lends,
2    leases, gives or otherwise transfers or disposes of any **[ ]**
3    revolver, pistol or other firearm of a size capable of being con-
4    cealed upon the person, to any person in this state under
5    the age of eighteen years is guilty of a misdemeanor.
6    (b) Every person under the age of eighteen years who shall
7    have, carry, or have in his possession any of the articles named

— 2 —

1   or described in section one (a) of this act, which is forbidden
2   therein to offer, sell, loan, lease, give or otherwise transfer to
3   him, is a juvenile delinquent.

4   SEC. 2.   Every person who manufactures or causes to be
5   manufactured, or leases, or keeps for sale, or offers, or gives,
6   or otherwise disposes of any instrument or weapon of the kind
7   commonly known as a blackjack, slungshot, billy, sandclub,
8   sandbag, bludgeon, or metal knuckles[, a dirk or dagger,] to
9   any person within this state is guilty of a misdemeanor, and
10   if he has been previously convicted of a crime made punish-
11   able by this section, he is guilty of a felony.

12   SEC. 3.   Every person who possesses any instrument or
13   weapon of the kind commonly known as a blackjack, slungshot,
14   billy, sandclub, sandbag, bludgeon, metal knuckles, bomb or
15   bombshells [, or who carries a dirk or a dagger,] is guilty
16   of a misdemeanor, and if he has been convicted previously of
17   any felony or of a crime made punishable by this act, he is
18   guilty of a felony.

19   SEC. 4.   [Every person who] carries in any city, city and
20   county, town or municipal corporation of this state any pistol,
21   revolver, or other firearm concealed upon his person, or of a
22   size capable of being concealed upon his person, without
23   having a license to carry such firearm as hereinafter provided
24   in section seven of this act, shall be guilty of a misdemeanor,
25   and if he has been convicted previously of any felony, or of
26   any crime made punishable by this act, he is guilty of a felony.

27   SEC. 5.   The unlawful possessing or carrying of any of
28   the instruments, weapons or firearms enumerated in sections
29   one (a) to section four inclusive of this act, by any person
30   other than those authorized and empowered to carry or possess
31   the same as hereinafter provided, is a nuisance, and such
32   instruments, weapons or firearms are hereby declared to be
33   nuisances, and when any of said articles shall be taken from
34   the possession of any person the same shall be surrendered to
35   the magistrate before whom said person shall be taken, except
36   that in any city, city and county, town or other municipal
37   corporation the same shall be surrendered to the head of the

— 3 —

1  police force, or police department thereof.  The officers to
2  whom the same may be so surrendered, except upon certificate
3  of a judge of a court of record, or of the district attorney of
4  any county that the preservation thereof is necessary or proper
5  to the ends of justice, shall proceed at such time or times as
6  he deems proper, and at least once in each year to destroy or
7  cause to be destroyed such instruments, weapons or other fire-
8  arms in such manner and to such extent that the same shall
9  be and become wholly and entirely ineffective and useless for
10 the purpose for which it was manufactured.

11    SEC. 6.  Any person who attempts to use, or who with
12 intent to use the same unlawfully against another, carries or
13 possesses a dagger, dirk, dangerous knife, razor, stiletto, or
14 any loaded pistol, revolver or other firearm, or any instrument
15 or weapon commonly known as a blackjack, slungshot, billy,
16 sandclub, sandbag, metal knuckles, bomb, or bombshell or any
17 other dangerous or deadly instrument or weapon, is guilty of
18 a felony.  The carrying or possession of any of the weapons
19 specified in this section, by any person while committing, or
20 attempting or threatening to commit a felony, or breach of the
21 peace, or any act of violence against the person or property
22 of another, shall be presumptive evidence of carrying or pos-
23 sessing such weapon with intent to use the same in violation
24 of this section.

25    SEC. 7.  It shall be lawful for the board of police commis-
26 sioners, chief of police, city marshal, town marshal, or other
27 head of the police department of any city, city and county,
28 town, or other municipal corporation of this state, upon proof
29 before said board, chief, marshal or head, that the person
30 applying therefor is of good moral character, and that good
31 cause exists for the issuance thereof, to issue to such person a
32 license to [ ] carry concealed a pistol, revolver or other fire-
33 arm; *provided, however,* that no such license shall be issued
34 to any person under the age of eighteen years; *and provided,*
35 *further,* that the application to [ ] carry concealed such
36 firearm shall be filed in writing and shall state the name and

— 4 —

1   residence of the applicant, the nature of applicant's occupa-
2   tion, the business address of applicant, the nature of the
3   weapon sought to be carried and the reason for the filing of
4   the application to carry the same.
5      SEC. 8.  Every person in the business of selling, leasing or
6   otherwise transferring a pistol, revolver or other firearm, of a
7   size capable of being concealed upon the person, whether such
8   seller, leasor or transferrer is a retail dealer, pawnbroker or
9   otherwise, except as hereinafter provided, shall keep a register
10  in which shall be entered the time of sale, the date of sale, the
11  name of the salesman making the sale, the place where sold,
12  the make, model, manufacturer's number, caliber or other
13  marks of identification on such pistol, revolver or other firearm.
14  Such register shall be prepared by and obtained from the
15  state printer and shall be furnished by the state printer to said
16  dealers on application at a cost of three dollars per one hun-
17  dred leaves in duplicate and shall be in the form hereinafter
18  provided.  The purchaser of any firearm, capable of being
19  concealed upon the person shall sign, and the dealer shall
20  require him to sign his name and affix his address to said
21  register in duplicate and the salesman shall affix his signature
22  in duplicate as a witness to the signatures of the purchaser.
23  Any person signing a fictitious name or address is guilty of a
24  misdemeanor.  The duplicate sheet of such register shall on
25  the evening of the day of sale, be placed in the mail, postage
26  prepaid and properly addressed to the board of police com-
27  missioners, chief of police, city marshal, town marshal or other
28  head of the police department of the city, city and county,
29  town or other municipal corporation wherein the sale was
30  made; *provided,* that where the sale is made in a district where
31  there is no municipal police department, said duplicate sheet
32  shall be mailed to the county clerk of the county wherein the
33  sale is made.  A violation of any of the provisions of this sec-
34  tion by any person engaged in the business of selling, leasing
35  or otherwise transferring such firearms is a misdemeanor.
36  [This section shall not apply to wholesale dealers in their busi-
37  ness intercourse with a retail dealer, nor to wholesale or retail

— 5 —

1  dealer in the regular or ordinary transportation of unloaded
2  firearms as merchandise by mail, express or other mode of ship-
3  ment, to points outside of the city, city and county, town or
4  municipal corporation wherein they are situated.] The register
5  provided for in this act shall be substantially in the following
6  form:

7                                       Series  No. _____
8                                       Sheet  No. _____
9                        ORIGINAL.
10  Dealers' Record of Sale of Revolver or Pistol.  State of
11                      California.
12     Notice to dealers:  This original is for your files.  If spoiled
13  in making out, do not destroy.  Keep in books.  Fill out in
14  duplicate.
15     Carbon duplicate must be mailed on the evening of the day
16  of sale, to head of police commissioners, chief of police, city
17  marshal, town marshal or other head of the police department
18  of the municipal corporations wherein the sale is made, or to
19  the county clerk of your county if the sale is made in a district
20  where there is no municipal police department.  Violation of
21  this law is a misdemeanor.  Use carbon paper for duplicate.
22  Use indelible pencil.
23  Sold by _____  Salesman _____
24  City, town or township _____
25  Description of arm (state whether revolver or pistol) _____
26  Maker _____ number _____ caliber _____
27  Name of purchaser _____ age _____ years.
28  Permanent residence (state name of city, town or township,
29  street and number of dwelling) _____
30  Height _____ feet _____ inches.  Occupation _____
31  Color _____ skin _____ eyes _____ hair _____
32  If traveling or in locality temporarily, give local address_____
33  _____
34  Signature of purchaser _____

— 6 —

1  (Signing a fictitious name or address is a misdemeanor.)    (To
2     be signed in duplicate.)
3  Witness _____, salesman.
4     (To be signed in duplicate.)
5                                                         Series No. _____
6                                                         Sheet No. _____
7                              DUPLICATE.
8  Dealers' Record of Sale of Revolver or Pistol. State of
9                            California.
10     Notice to dealers:  This carbon duplicate must be mailed
11  on the evening of the day of sale as set forth in the original
12  of this register page.  Violation of this law is a misdemeanor.
13  Sold by _____    Salesman _____
14  City, town or township _____
15  Description of arm (state whether revolver or pistol) _____
16  Maker _____ number _____ caliber _____
17  Name of purchaser _____ age _____ years.
18  Permanent address (state name of city, town or township,
19  street and number of dwelling) _____
20  _____
21  Height _____ feet _____ inches.   Occupation _____
22  Color _____ skin _____ eyes _____ hair _____
23  If traveling or in locality temporarily, give local address_____
24  _____
25  Signature of purchaser _____
26  (Signing a fictitious name or address is a misdemeanor.)    (To
27     be signed in duplicate.)
28  Witness _____, salesman.
29     (To be signed in duplicate.)
30     SEC. 9.  Nothing in this act shall be construed to apply to
31  sheriffs, constables, marshals, policemen or other duly
32  appointed peace officers, nor to any person summoned by any
33  such officers to assist in making arrest or preserving the peace
34  while said person so summoned is actually engaged in assisting
35  such officer; nor to duly authorized military or civil organiza-
36  tions while parading nor to the members thereof when going

— 7 —

1    to and from the places of meeting of their respective organiza-
2    tions; nor to the possession or transportation by any merchant
3    of unloaded firearms as merchandise; nor to bona fide members
4    of any club or organization now existing or hereinafter organ-
5    ized, for the purpose of practicing shooting at targets upon
6    established target ranges, whether public or private, while
7    such members are using any of the firearms referred to in
8    this act upon or in such target ranges.

9        SEC. 10.  If any section, subsection, sentence, clause or
10   phrase of this act is for any reason held to be unconstitutional
11   such decision shall not affect the validity of the remaining
12   portions of this act.  The legislature hereby declares that it
13   would have passed this act and each section, subsection, sen-
14   tence, clause and phrase thereof, irrespective of the fact that
15   any one or more other sections, subsections, sentences, clauses
16   or phrases be declared unconstitutional.

O

AMENDED IN ASSEMBLY MARCH 20, 1917.

AMENDED IN ASSEMBLY MARCH 16, 1917.

# ASSEMBLY BILL                     No. 980

### INTRODUCED BY MR. MARKS,

JANUARY 25, 1917.

———

REFERRED TO COMMITTEE ON JUDICIARY.

# AN ACT

RELATING TO AND REGULATING THE CARRYING, POSSESSION, SALE OR OTHER DISPOSITION OF FIREARMS CAPABLE OF BEING CONCEALED UPON THE PERSON; PROHIBITING THE SALE TO OR CARRYING OF CONCEALED WEAPONS BY PERSONS UNDER THE AGE OF EIGHTEEN YEARS; PROHIBITING THE POSSESSION, CARRYING, MANUFACTURING AND SALE OF CERTAIN OTHER DANGEROUS WEAPONS AND THE GIVING, TRANSFERRING AND DISPOSITION THEREOF TO OTHER PERSONS WITHIN THIS STATE; PROVIDING FOR THE REGISTERING OF THE SALES OF FIREARMS; PROHIBITING THE CARRYING OR POSSESSION OF CONCEALED WEAPONS IN MUNICIPAL CORPORATIONS; PROVIDING FOR THE DESTRUCTION OF CERTAIN DANGEROUS WEAPONS AS NUISANCES AND MAKING IT A FELONY TO USE OR ATTEMPT TO USE CERTAIN DANGEROUS WEAPONS AGAINST ANOTHER.

*The people of the State of California do enact as follows:*

1    SECTION 1. (a) Every person who offers, sells, lends,
2    leases, gives or otherwise transfers or disposes of any revolver,
3    pistol or other firearm of a size capable of being concealed
4    upon the person, to any person in this state under the age of
5    eighteen years is guilty of a misdemeanor.

— 2 —

1    (b)  Every person under the age of eighteen years who shall
2    have, carry, or have in his possession any of the articles named
3    or described in section one (a) of this act, which is forbidden
4    therein to offer, sell, loan, lease, give or otherwise transfer to
5    him, is a juvenile delinquent.

6    SEC. 2.   Every person who manufactures or causes to be
7    manufactured, or leases, or keeps for sale, or offers, or gives,
8    or otherwise disposes of any instrument or weapon of the kind
9    commonly known as a blackjack, slungshot, billy, sandclub,
10   sandbag, bludgeon, or metal knuckles, a dirk or dagger, to
11   any person within this state is guilty of a misdemeanor, and
12   if he has been previously convicted of a crime made punish-
13   able by this section, he is guilty of a felony.

14   SEC. 3.   Every person who possesses any instrument or
15   weapon of the kind commonly known as a blackjack, slungshot,
16   billy, sandclub, sandbag, bludgeon, metal knuckles, bomb or
17   bombshells, or who carries a dirk or a dagger, is guilty of
18   a misdemeanor, and if he has been convicted previously of
19   any felony or of a crime made punishable by this act, he is
20   guilty of a felony.

21   SEC. 4.   Every person who carries in any city, city and
22   county, town or municipal corporation of this state any pistol,
23   revolver, or other firearm concealed upon his person, [ ]
24   without having a license to carry such firearm as hereinafter
25   provided in section seven of this act, shall be guilty of a misde-
26   meanor and if he has been convicted previously of any felony,
27   or of any crime made punishable by this act, he is guilty of a
28   felony.

29   SEC. 5.   The unlawful possessing or carrying of any of
30   the instruments, weapons or firearms enumerated in sections
31   one (a) to section four inclusive of this act, by any person
32   other than those authorized and empowered to carry or possess
33   the same as hereinafter provided, is a nuisance, and such
34   instruments, weapons or firearms are hereby declared to be
35   nuisances, and when any of said articles shall be taken from
36   the possession of any person the same shall be surrendered to
37   the magistrate before whom said person shall be taken, except

1    that in any city, city and county, town or other municipal
2    corporation the same shall be surrendered to the head of the
3    police force, or police department thereof.  The officers to
4    whom the same may be so surrendered, except upon certificate
5    of a judge of a court of record, or of the district attorney of
6    any county that the preservation thereof is necessary or proper
7    to the ends of justice, shall proceed at such time or times as
8    he deems proper, and at least once in each year to destroy or
9    cause to be destroyed such instruments, weapons or other fire-
10    arms in such manner and to such extent that the same shall
11    be and become wholly and entirely ineffective and useless for
12    the purpose for which it was manufactured.
13    SEC. 6.  Any person who attempts to use, or who with
14    intent to use the same unlawfully against another, carries or
15    possesses a dagger, dirk, dangerous knife, razor, stiletto, or
16    any loaded pistol, revolver or other firearm, or any instrument
17    or weapon commonly known as a blackjack, slungshot, billy,
18    sandclub, sandbag, metal knuckles, bomb, or bombshell or any
19    other dangerous or deadly instrument or weapon, is guilty of
20    a felony.  The carrying or possession of any of the weapons
21    specified in this section, by any person while committing, or
22    attempting or threatening to commit a felony, or breach of the
23    peace, or any act of violence against the person or property
24    of another, shall be presumptive evidence of carrying or pos-
25    sessing such weapon with intent to use the same in violation
26    of this section.
27    SEC. 7.  It shall be lawful for the board of police commis-
28    sioners, chief of police, city marshal, town marshal, or other
29    head of the police department of any city, city and county,
30    town, or other municipal corporation of this state, upon proof
31    before said board, chief, marshal or head, that the person
32    applying therefor is of good moral character, and that good
33    cause exists for the issuance thereof, to issue to such person a
34    license to carry concealed a pistol, revolver or other fire-
35    arm; *provided, however,* that no such license shall be issued
36    to any person under the age of eighteen years; *and provided,*

— 4 —

1   *further,* that the application to carry concealed such fire-
2   arm shall be filed in writing and shall state the name and
3   residence of the applicant, the nature of applicant's occupa-
4   tion, the business address of applicant, the nature of the
5   weapon sought to be carried and the reason for the filing of
6   the application to carry the same.

7     SEC. 8. Every person in the business of selling, leasing or
8   otherwise transferring a pistol, revolver or other firearm, of a
9   size capable of being concealed upon the person, whether such
10   seller, leasor or transferrer is a retail dealer, pawnbroker or
11   otherwise, except as hereinafter provided, shall keep a register
12   in which shall be entered the time of sale, the date of sale, the
13   name of the salesman making the sale, the place where sold,
14   the make, model, manufacturer's number, caliber or other
15   marks of identification on such pistol, revolver or other firearm.
16   Such register shall be prepared by and obtained from the
17   state printer and shall be furnished by the state printer to said
18   dealers on application at a cost of three dollars per one hun-
19   dred leaves in duplicate and shall be in the form hereinafter
20   provided. The purchaser of any firearm, capable of being
21   concealed upon the person shall sign, and the dealer shall
22   require him to sign his name and affix his address to said
23   register in duplicate and the salesman shall affix his signature
24   in duplicate as a witness to the signatures of the purchaser.
25   Any person signing a fictitious name or address is guilty of a
26   misdemeanor. The duplicate sheet of such register shall on
27   the evening of the day of sale, be placed in the mail, postage
28   prepaid and properly addressed to the board of police com-
29   missioners, chief of police, city marshal, town marshal or other
30   head of the police department of the city, city and county,
31   town or other municipal corporation wherein the sale was
32   made; *provided,* that where the sale is made in a district where
33   there is no municipal police department, said duplicate sheet
34   shall be mailed to the county clerk of the county wherein the
35   sale is made. A violation of any of the provisions of this sec-
36   tion by any person engaged in the business of selling, leasing
37   or otherwise transferring such firearms is a misdemeanor.

— 5 —

1 This section shall not apply to wholesale dealers in their busi-
2 ness intercourse with [retail dealers], nor to wholesale or
3 retail [dealers] in the regular or ordinary transportation of
4 unloaded firearms as merchandise by mail, express or other
5 mode of shipment, to points outside of the city, city and
6 county, town or municipal corporation wherein they are situ-
7 ated.  The register provided for in this act shall be substan-
8 tially in the following form:

9                                                Series No. _____
10                                              Sheet  No. _____

11                              ORIGINAL.

12 Dealers' Record of Sale of Revolver or Pistol.  State of
13                              California.

14    Notice to dealers:  This original is for your files.  If spoiled
15 in making out, do not destroy.  Keep in books.  Fill out in
16 duplicate.

17    Carbon duplicate must be mailed on the evening of the day
18 of sale, to head of police commissioners, chief of police, city
19 marshal, town marshal or other head of the police department
20 of the municipal corporations wherein the sale is made, or to
21 the county clerk of your county if the sale is made in a district
22 where there is no municipal police department.  Violation of
23 this law is a misdemeanor.  Use carbon paper for duplicate.
24 Use indelible pencil.

25 Sold by _____  Salesman _____
26 City, town or township _____
27 Description of arm (state whether revolver or pistol) _____
28 Maker _____ number _____ caliber _____
29 Name of purchaser _____ age _____ years.
30 Permanent residence (state name of city, town or township,
31 street and number of dwelling) _____
32 Height _____ feet _____ inches.  Occupation _____
33 Color _____ skin _____ eyes _____ hair _____
34 If traveling or in locality temporarily, give local address_____
35 _____
3) Signature of purchaser _____

— 6 —

1    (Signing a fictitious name or address is a misdemeanor.)   (To
2      be signed in duplicate.)
3    Witness _____, salesman.
4      (To be signed in duplicate.)
5                                       Series No. _____
6                                       Sheet No. _____
7                         DUPLICATE.
8    Dealers' Record of Sale of Revolver or Pistol. State of
9                      California.
10    Notice to dealers: This carbon duplicate must be mailed
11  on the evening of the day of sale as set forth in the original
12  of this register page.  Violation of this law is a misdemeanor.
13  Sold by _____   Salesman _____
14  City, town or township _____
15  Description of arm (state whether revolver or pistol) _____
16  Maker _____ number _____ caliber _____
17  Name of purchaser _____ age _____ years.
18  Permanent address (state name of city, town or township,
19  street and number of dwelling) _____
20  _____
21  Height _____ feet _____ inches.  Occupation _____
22  Color _____ skin _____ eyes _____ hair _____
23  If traveling or in locality temporarily, give local address_____
24  _____
25  Signature of purchaser _____
26  (Signing a fictitious name or address is a misdemeanor.)   (To
27    be signed in duplicate.)
28  Witness _____, salesman.
29    (To be signed in duplicate.)
30    SEC. 9.  Nothing in this act shall be construed to apply to
31  sheriffs, constables, marshals, policemen or other duly
32  appointed peace officers, nor to any person summoned by any
33  such officers to assist in making arrest or preserving the peace
34  while said person so summoned is actually engaged in assisting
35  such officer; nor to duly authorized military or civil organiza-
36  tions while parading nor to the members thereof when going

— 7 —

1   to and from the places of meeting of their respective organiza-
2   tions; nor to the possession or transportation by any merchant
3   of unloaded firearms as merchandise; nor to bona fide members
4   of any club or organization now existing or hereinafter organ-
5   ized, for the purpose of practicing shooting at targets upon
6   established target ranges, whether public or private, while
7   such members are using any of the firearms referred to in
8   this act upon or in such target ranges.

9     Sec. 10. If any section, subsection, sentence, clause or
10   phrase of this act is for any reason held to be unconstitutional
11   such decision shall not affect the validity of the remaining
12   portions of this act. The legislature hereby declares that it
13   would have passed this act and each section, subsection, sen-
14   tence, clause and phrase thereof, irrespective of the fact that
15   any one or more other sections, subsections, sentences, clauses
16   or phrases be declared unconstitutional.

O

AMENDED IN SENATE APRIL 3, 1917.
AMENDED IN ASSEMBLY MARCH 20, 1917.
AMENDED IN ASSEMBLY MARCH 16, 1917.

# ASSEMBLY BILL　　　　　No. 980

## INTRODUCED BY MR. MARKS,

### JANUARY 25, 1917.

---

REFERRED TO COMMITTEE ON JUDICIARY.

---

# AN ACT

RELATING TO AND REGULATING THE CARRYING, POSSESSION, SALE OR OTHER DISPOSITION OF FIREARMS CAPABLE OF BEING CONCEALED UPON THE PERSON; [ ] PROHIBITING THE POSSESSION, CARRYING, MANUFACTURING AND SALE OF CERTAIN OTHER DANGEROUS WEAPONS AND THE GIVING, TRANSFERRING AND DISPOSITION THEREOF TO OTHER PERSONS WITHIN THIS STATE; PROVIDING FOR THE REGISTERING OF THE SALES OF FIREARMS; PROHIBITING THE CARRYING OR POSSESSION OF CONCEALED WEAPONS IN MUNICIPAL CORPORATIONS; PROVIDING FOR THE DESTRUCTION OF CERTAIN DANGEROUS WEAPONS AS NUISANCES AND MAKING IT A FELONY TO USE OR ATTEMPT TO USE CERTAIN DANGEROUS WEAPONS AGAINST ANOTHER.

*The people of the State of California do enact as follows:*

1　　[ ]
2　　SECTION [1]. Every person who manufactures or causes to
3　be manufactured, or leases, or keeps for sale, or offers, or gives,
4　or otherwise disposes of any instrument or weapon of the kind
5　commonly known as a blackjack, slungshot, billy, sandclub,

— 2 —

1 sandbag, bludgeon, or metal knuckles, a dirk or dagger, to
2 any person within this state is guilty of a misdemeanor, and
3 if he has been previously convicted of a crime made punish-
4 able by this section, he is guilty of a felony.

5    SEC. [2]. Every person who possesses any instrument or
6 weapon of the kind commonly known as a blackjack, slungshot,
7 billy, sandclub, sandbag, bludgeon, metal knuckles, bomb or
8 bombshells, or who carries a dirk or a dagger, is guilty of
9 a misdemeanor, and if he has been convicted previously of
10 any felony or of a crime made punishable by this act, he is
11 guilty of a felony.

12    SEC. [3]. Every person who carries in any city, city and
13 county, town or municipal corporation of this state any
14 pistol, revolver, or other firearm concealed upon his person,
15 without having a license to carry such firearm as hereinafter
16 provided in section seven of this act, shall be guilty of a misde-
17 meanor and if he has been convicted previously of any felony,
18 or of any crime made punishable by this act, he is guilty of a
19 felony.

20    SEC. [4]. The unlawful possessing or carrying of any of
21 the instruments, weapons or firearms enumerated in sections
22 [one] to section [three] inclusive of this act, by any person
23 other than those authorized and empowered to carry or possess
24 the same as hereinafter provided, is a nuisance, and such
25 instruments, weapons or firearms are hereby declared to be
26 nuisances, and when any of said articles shall be taken from
27 the possession of any person the same shall be surrendered to
28 the magistrate before whom said person shall be taken, except
29 that in any city, city and county, town or other municipal
30 corporation the same shall be surrendered to the head of the
31 police force, or police department thereof. The officers to
32 whom the same may be so surrendered, except upon certificate
33 of a judge of a court of record, or of the district attorney of
34 any county that the preservation thereof is necessary or proper
35 to the ends of justice, shall proceed at such time or times as
36 he deems proper, and at least once in each year to destroy or

— 3 —

1   cause to be destroyed such instruments, weapons or other fire-
2   arms in such manner and to such extent that the same shall
3   be and become wholly and entirely ineffective and useless for
4   the purpose for which it was manufactured.

5      Sec. ⟦5⟧.  Any person who attempts to use, or who with
6   intent to use the same unlawfully against another, carries or
7   possesses a dagger, dirk, dangerous knife, razor, stiletto, or
8   any loaded pistol, revolver or other firearm, or any instrument
9   or weapon commonly known as a blackjack, slungshot, billy,
10  sandclub, sandbag, metal knuckles, bomb, or bombshell or any
11  other dangerous or deadly instrument or weapon, is guilty of
12  a felony.  The carrying or possession of any of the weapons
13  specified in this section, by any person while committing, or
14  attempting or threatening to commit a felony, or breach of the
15  peace, or any act of violence against the person or property
16  of another, shall be presumptive evidence of carrying or pos-
17  sessing such weapon with intent to use the same in violation
18  of this section.

19     Sec. ⟦6⟧.  It shall be lawful for the board of police commis-
20  sioners, chief of police, city marshal, town marshal, or other
21  head of the police department of any city, city and county,
22  town, or other municipal corporation of this state, upon proof
23  before said board, chief, marshal or head, that the person
24  applying therefor is of good moral character, and that good
25  cause exists for the issuance thereof, to issue to such person a
26  license to carry concealed a pistol, revolver or other fire-
27  arm; ⟦ ⟧ *provided*, ⟦*however*⟧, that the application to carry
28  concealed such firearm shall be filed in writing and shall state
29  the name and residence of the applicant, the nature of appli-
30  cant's occupation, the business address of applicant, the nature
31  of the weapon sought to be carried and the reason for the filing
32  of the application to carry the same.

33     Sec. ⟦7⟧.  Every person in the business of selling, leasing or
34  otherwise transferring a pistol, revolver or other firearm, of a
35  size capable of being concealed upon the person, whether such
36  seller, leasor or transferrer is a retail dealer, pawnbroker or
37  otherwise, except as hereinafter provided, shall keep a register

— 4 —

1  in which shall be entered the time of sale, the date of sale, the
2  name of the salesman making the sale, the place where sold,
3  the make, model, manufacturer's number, caliber or other
4  marks of identification on such pistol, revolver or other firearm.
5  Such register shall be prepared by and obtained from the
6  state printer and shall be furnished by the state printer to said
7  dealers on application at a cost of three dollars per one hun-
8  dred leaves in duplicate and shall be in the form hereinafter
9  provided. The purchaser of any firearm, capable of being
10  concealed upon the person shall sign, and the dealer shall
11  require him to sign his name and affix his address to said
12  register in duplicate and the salesman shall affix his signature
13  in duplicate as a witness to the signatures of the purchaser.
14  Any person signing a fictitious name or address is guilty of a
15  misdemeanor. The duplicate sheet of such register shall on
16  the evening of the day of sale, be placed in the mail, postage
17  prepaid and properly addressed to the board of police com-
18  missioners, chief of police, city marshal, town marshal or other
19  head of the police department of the city, city and county,
20  town or other municipal corporation wherein the sale was
21  made; *provided,* that where the sale is made in a district where
22  there is no municipal police department, said duplicate sheet
23  shall be mailed to the county clerk of the county wherein the
24  sale is made. A violation of any of the provisions of this sec-
25  tion by any person engaged in the business of selling, leasing
26  or otherwise transferring such firearms is a misdemeanor.
27  This section shall not apply to wholesale dealers in their
28  business intercourse with retail dealers, nor to wholesale or
29  retail dealers in the regular or ordinary transportation of
30  unloaded firearms as merchandise by mail, express or other
31  mode of shipment, to points outside of the city, city and
32  county, town or municipal corporation wherein they are situ-
33  ated. The register provided for in this act shall be substan-
34  tially in the following form:

— 5 —

Series No. _____

Sheet No. _____

ORIGINAL.

Dealers' Record of Sale of Revolver or Pistol. State of California.

Notice to dealers: This original is for your files. If spoiled in making out, do not destroy. Keep in books. Fill out in duplicate.

Carbon duplicate must be mailed on the evening of the day of sale, to head of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the municipal corporations wherein the sale is made, or to the county clerk of your county if the sale is made in a district where there is no municipal police department. Violation of this law is a misdemeanor. Use carbon paper for duplicate. Use indelible pencil.

Sold by _____ Salesman _____

City, town or township _____

Description of arm (state whether revolver or pistol) _____

Maker _____ number _____ caliber _____

Name of purchaser _____ age _____ years.

Permanent residence (state name of city, town or township, street and number of dwelling) _____

Height _____ feet _____ inches.   Occupation _____

Color _____ skin _____ eyes _____ hair _____

If traveling or in locality temporarily, give local address_____

_____

Signature of purchaser _____

(Signing a fictitious name or address is a misdemeanor.)   (To be signed in duplicate.)

Witness _____, salesman.

   (To be signed in duplicate.)

1   Series No. _____
2   Sheet No. _____
3                    DUPLICATE.
4   Dealers' Record of Sale of Revolver or Pistol.   State of
5                    California.
6      Notice to dealers:  This carbon duplicate must be mailed
7   on the evening of the day of sale as set forth in the original
8   of this register page.  Violation of this law is a misdemeanor.
9   Sold by _____     Salesman _____
10  City, town or township _____
11  Description of arm (state whether revolver or pistol) _____
12  Maker _____ number _____ caliber _____
13  Name of purchaser _____ age _____ years.
14  Permanent address (state name of city, town or township,
15  street and number of dwelling) _____
16  _____
17  Height _____ feet _____ inches.   Occupation _____
18  Color _____ skin _____ eyes _____ hair _____
19  If traveling or in locality temporarily, give local address_____
20  _____
21  Signature of purchaser _____
22  (Signing a fictitious name or address is a misdemeanor.)   (To
23     be signed in duplicate.)
24  Witness _____, salesman.
25     (To be signed in duplicate.)
26     SEC. [8].   Nothing in this act shall be construed to apply to
27  sheriffs,  constables,  marshals,  policemen  or  other  duly
28  appointed peace officers, nor to any person summoned by any
29  such officers to assist in making arrest or preserving the peace
30  while said person so summoned is actually engaged in assisting
31  such officer; nor to duly authorized military or civil organiza-
32  tions while parading nor to the members thereof when going
33  to and from the places of meeting of their respective organiza-
34  tions; nor to the possession or transportation by any merchant
35  of unloaded firearms as merchandise; nor to bona fide members
36  of any club or organization now existing or hereinafter organ-
37  ized, for the purpose of practicing shooting at targets upon

— 7 —

1  established target ranges, whether public or private, while
2  such members are using any of the firearms referred to in
3  this act upon or in such target ranges.

4    SEC. [9]. If any section, subsection, sentence, clause or
5  phrase of this act is for any reason held to be unconstitutional
6  such decision shall not affect the validity of the remaining
7  portions of this act.  The legislature hereby declares that it
8  would have passed this act and each section, subsection, sen-
9  tence, clause and phrase thereof, irrespective of the fact that
10 any one or more other sections, subsections, sentences, clauses
11 or phrases be declared unconstitutional.

O

AMENDED IN SENATE APRIL 5, 1917.

AMENDED IN SENATE APRIL 3, 1917.

AMENDED IN ASSEMBLY MARCH 20, 1917.

AMENDED IN ASSEMBLY MARCH 16, 1917.

# ASSEMBLY BILL        No. 980

### INTRODUCED BY MR. MARKS,

### JANUARY 25, 1917.

---

### REFERRED TO COMMITTEE ON JUDICIARY.

---

# AN ACT

RELATING TO AND REGULATING THE CARRYING, POSSESSION, SALE OR OTHER DISPOSITION OF FIREARMS CAPABLE OF BEING CONCEALED UPON THE PERSON; PROHIBITING THE POSSESSION, CARRYING, MANUFACTURING AND SALE OF CERTAIN OTHER DANGEROUS WEAPONS AND THE GIVING, TRANSFERRING AND DISPOSITION THEREOF TO OTHER PERSONS WITHIN THIS STATE; PROVIDING FOR THE REGISTERING OF THE SALES OF FIREARMS; PROHIBITING THE CARRYING OR POSSESSION OF CONCEALED WEAPONS IN MUNICIPAL CORPORATIONS; PROVIDING FOR THE DESTRUCTION OF CERTAIN DANGEROUS WEAPONS AS NUISANCES AND MAKING IT A FELONY TO USE OR ATTEMPT TO USE CERTAIN DANGEROUS WEAPONS AGAINST ANOTHER.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Every person who manufactures or causes to
2    be manufactured, or leases, or keeps for sale, or offers, or gives,
3    or otherwise disposes of any instrument or weapon of the kind
4    commonly known as a blackjack, slungshot, billy, sandclub,

1   sandbag, bludgeon, or metal knuckles, a dirk or dagger, to
2   any person within this state is guilty of a misdemeanor, and
3   if he has been previously convicted of a crime made punish-
4   able by this section, he is guilty of a felony.

5   SEC. 2.  Every person who possesses any instrument or
6   weapon of the kind commonly known as a blackjack, slungshot,
7   billy, sandclub, sandbag, bludgeon, metal knuckles, bomb or
8   bombshells, or who carries a dirk or a dagger, is guilty of
9   a misdemeanor, and if he has been convicted previously of
10  any felony or of a crime made punishable by this act, he is
11  guilty of a felony.

12  SEC. 3.  Every person who carries in any city, city and
13  county, town or municipal corporation of this state any
14  pistol, revolver, or other firearm concealed upon his person,
15  without having a license to carry such firearm as hereinafter
16  provided in section [six] of this act, shall be guilty of a misde-
17  meanor and if he has been convicted previously of any felony,
18  or of any crime made punishable by this act, he is guilty of a
19  felony.

20  SEC. 4.  The unlawful possessing or carrying of any of
21  the instruments, weapons or firearms enumerated in sections
22  one to section three inclusive of this act, by any person
23  other than those authorized and empowered to carry or possess
24  the same as hereinafter provided, is a nuisance, and such
25  instruments, weapons or firearms are hereby declared to be
26  nuisances, and when any of said articles shall be taken from
27  the possession of any person the same shall be surrendered to
28  the magistrate before whom said person shall be taken, except
29  that in any city, city and county, town or other municipal
30  corporation the same shall be surrendered to the head of the
31  police force, or police department thereof.  The officers to
32  whom the same may be so surrendered, except upon certificate
33  of a judge of a court of record, or of the district attorney of
34  any county that the preservation thereof is necessary or proper
35  to the ends of justice, shall proceed at such time or times as
36  he deems proper, and at least once in each year to destroy or
37  cause to be destroyed such instruments, weapons or other fire-

— 3 —

1  arms in such manner and to such extent that the same shall
2  be and become wholly and entirely ineffective and useless for
3  the purpose for which it was manufactured.

4  SEC. 5. Any person who attempts to use, or who with
5  intent to use the same unlawfully against another, carries or
6  possesses a dagger, dirk, dangerous knife, razor, stiletto, or
7  any loaded pistol, revolver or other firearm, or any instrument
8  or weapon commonly known as a blackjack, slungshot, billy,
9  sandclub, sandbag, metal knuckles, bomb, or bombshell or any
10  other dangerous or deadly instrument or weapon, is guilty of
11  a felony. The carrying or possession of any of the weapons
12  specified in this section, by any person while committing, or
13  attempting or threatening to commit a felony, or breach of the
14  peace, or any act of violence against the person or property
15  of another, shall be presumptive evidence of carrying or pos-
16  sessing such weapon with intent to use the same in violation
17  of this section.

18  SEC. 6. It shall be lawful for the board of police commis-
19  sioners, chief of police, city marshal, town marshal, or other
20  head of the police department of any city, city and county,
21  town, or other municipal corporation of this state, upon proof
22  before said board, chief, marshal or head, that the person
23  applying therefor is of good moral character, and that good
24  cause exists for the issuance thereof, to issue to such person a
25  license to carry concealed a pistol, revolver or other fire-
26  arm; *provided, however*, that the application to carry
27  concealed such firearm shall be filed in writing and shall state
28  the name and residence of the applicant, the nature of appli-
29  cant's occupation, the business address of applicant, the nature
30  of the weapon sought to be carried and the reason for the filing
31  of the application to carry the same.

32  SEC. 7. Every person in the business of selling, leasing or
33  otherwise transferring a pistol, revolver or other firearm, of a
34  size capable of being concealed upon the person, whether such
35  seller, leasor or transferrer is a retail dealer, pawnbroker or
36  otherwise, except as hereinafter provided, shall keep a register
37  in which shall be entered the time of sale, the date of sale, the

— 4 —

1   name of the salesman making the sale, the place where sold,
2   the make, model, manufacturer's number, caliber or other
3   marks of identification on such pistol, revolver or other firearm.
4   Such register shall be prepared by and obtained from the
5   state printer and shall be furnished by the state printer to said
6   dealers on application at a cost of three dollars per one hun-
7   dred leaves in duplicate and shall be in the form hereinafter
8   provided.  The purchaser of any firearm, capable of being
9   concealed upon the person shall sign, and the dealer shall
10   require him to sign his name and affix his address to said
11   register in duplicate and the salesman shall affix his signature
12   in duplicate as a witness to the signatures of the purchaser.
13   Any person signing a fictitious name or address is guilty of a
14   misdemeanor.  The duplicate sheet of such register shall on
15   the evening of the day of sale, be placed in the mail, postage
16   prepaid and properly addressed to the board of police com-
17   missioners, chief of police, city marshal, town marshal or other
18   head of the police department of the city, city and county,
19   town or other municipal corporation wherein the sale was
20   made; *provided,* that where the sale is made in a district where
21   there is no municipal police department, said duplicate sheet
22   shall be mailed to the county clerk of the county wherein the
23   sale is made.  A violation of any of the provisions of this sec-
24   tion by any person engaged in the business of selling, leasing
25   or otherwise transferring such firearms is a misdemeanor.
26   This section shall not apply to wholesale dealers in their
27   business intercourse with retail dealers, nor to wholesale or
28   retail dealers in the regular or ordinary transportation of
29   unloaded firearms as merchandise by mail, express or other
30   mode of shipment, to points outside of the city, city and
31   county, town or municipal corporation wherein they are situ-
32   ated.  The register provided for in this act shall be substan-
33   tially in the following form:

— 5 —

1

2

3                          ORIGINAL.

4    Dealers' Record of Sale of Revolver or Pistol. State of

5                            California.

6       Notice to dealers:   This original is for your files.   If spoiled

7    in making out, do not destroy.   Keep in books.   Fill out in

8    duplicate.

9       Carbon duplicate must be mailed on the evening of the day

10   of sale, to head of police commissioners, chief of police, city

11   marshal, town marshal or other head of the police department

12   of the municipal corporations wherein the sale is made, or to

13   the county clerk of your county if the sale is made in a district

14   where there is no municipal police department.   Violation of

15   this law is a misdemeanor.   Use carbon paper for duplicate.

16   Use indelible pencil.

17   Sold by _____        Salesman _____

18   City, town or township _____

19   Description of arm (state whether revolver or pistol) _____

20   Maker _____ number _____ caliber _____

21   Name of purchaser _____ age _____ years.

22   Permanent residence (state name of city, town or township,

23   street and number of dwelling) _____

24   Height _____ feet _____ inches.   Occupation _____

25   Color _____ skin _____ eyes _____ hair _____

26   If traveling or in locality temporarily, give local address_____

27   _____

28   Signature of purchaser _____

29   (Signing a fictitious name or address is a misdemeanor.)   (To

30      be signed in duplicate.)

31   Witness _____, salesman.

2       (To be signed in duplicate.)

Series No. _____

Sheet No. _____

— 6 —

1                                           Series No. _____

2                                           Sheet No. _____

3                               DUPLICATE.

4  Dealers' Record of Sale of Revolver or Pistol. State of

5                       California.

6    Notice to dealers:  This carbon duplicate must be mailed

7  on the evening of the day of sale as set forth in the original

8  of this register page.  Violation of this law is a misdemeanor.

9  Sold by _____  Salesman _____

10  City, town or township _____

11  Description of arm (state whether revolver or pistol) _____

12  Maker _____ number _____ caliber _____

13  Name of purchaser _____ age _____ years.

14  Permanent address (state name of city, town or township,

15  street and number of dwelling) _____

16  _____

17  Height _____ feet _____ inches.  Occupation _____

18  Color _____ skin _____ eyes _____ hair _____

19  If traveling or in locality temporarily, give local address_____

20  _____

21  Signature of purchaser _____

22  (Signing a fictitious name or address is a misdemeanor.)   (To

23    be signed in duplicate.)

24  Witness _____, salesman.

25    (To be signed in duplicate.)

26    SEC. 8.  Nothing in this act shall be construed to apply to

27  sheriffs, constables, marshals, policemen or other duly

28  appointed peace officers, nor to any person summoned by any

29  such officers to assist in making arrest or preserving the peace

30  while said person so summoned is actually engaged in assisting

31  such officer; nor to duly authorized military or civil organiza-

32  tions while parading nor to the members thereof when going

33  to and from the places of meeting of their respective organiza-

34  tions; nor to the possession or transportation by any merchant

35  of unloaded firearms as merchandise; nor to bona fide members

36  of any club or organization now existing or hereinafter organ-

37  ized, for the purpose of practicing shooting at targets upon

1    established target ranges, whether public or private, while
2    such members are using any of the firearms referred to in
3    this act upon or in such target ranges[, or while going to and
4    from such ranges].

5       Sec. 9. If any section, subsection, sentence, clause or
6    phrase of this act is for any reason held to be unconstitutional
7    such decision shall not affect the validity of the remaining
8    portions of this act. The legislature hereby declares that it
9    would have passed this act and each section, subsection, sen-
10    tence, clause and phrase thereof, irrespective of the fact that
11    any one or more other sections, subsections, sentences, clauses
12    or phrases be declared unconstitutional.

O

LEGISLATIVE INTENT

Requester:__David_Zarmi_____     . Date received_01_Jul_2009
Telephone: .              .             Needed by_____2009
City/Room:__Los_Angeles_____     Completed_____03_Jul_2009

STATS__1923____CHAPTER___339_____CODE__Current_Penal_12020_____
BILL __AB_263____AUTHOR___Fred_C._Hawes_____
Summary Digest_____  Final History___X.__  Bill Forms_____X_____

Very little material is available for legislation that is over
eighty years old.  Governors' Chaptered Bill Files were not
retained until 1943.  Authour, committee, and party caucus bill
files were generally not retained until the 1960s and 1970s.

Included following this page are copies of the following:

1) Title 151 of the General Laws of the State of California, as
   published in 1924, concerning Deadly Weapons.  Act 1970 of
   this title was created by AB 263 (Stats 1923, Chapter 339).

2) Statutes of 1923, Chapter 339 (created by AB 263)

3) Statutes of 1917, Chapter 145, which was repealed by Stats
   1923, Chapter 339.

4) Final History of AB 263, as published in the 1923 Final
   Calendar of Legislative Business

5) Bill Versions of AB 263

By _Allan Harjala_____
   Allan Harjala (916)324-5317

Rev. 4-5-2006

STATE PRISON AT FOLSOM

# GENERAL LAWS

OF THE

## STATE OF CALIFORNIA

AS AMENDED UP TO THE END OF THE
SESSION OF 1923

CONTAINING THE GENERAL LAWS IN FULL AND
REFERENCES TO THE SPECIAL LAWS
BY TITLE

WITH

STATUTORY HISTORY TO DATE AND CHRONOLOGICAL
INDEX OF ACTS REFERRED TO IN THE
GENERAL LAWS

### IN TWO PARTS

### PART ONE

**ACTS 1 TO 5546**

**ABORTION TO NURSING**

EDITED BY

## JAMES H. DEERING

Of the San Francisco Bar

SAN FRANCISCO
BANCROFT-WHITNEY COMPANY
1924

regulate the business of producing, buying and selling dairy products, oleomargarine, renovated or imitation butter and cheese; to provide for the enforcement of its provisions and for the punishment of violations thereof, and appropriating money therefor and to repeal section seventeen of an act approved March 4, 1897, entitled "An act to prevent deception in the manufacture and sale of butter and cheese, to secure its enforcement, and to appropriate money therefor," and to repeal all acts and parts of acts inconsistent with this act, is hereby repealed; and all other acts or parts of acts in conflict herewith are hereby repealed.

## ACT 1946.

An act to establish a standard for evaporated milk and condensed milk.

[Approved April 24, 1911.  Stats. 1911, p. 1101.]

§ 1.   Standard of condensed milk.
§ 2.   Conflicting acts repealed.

§ 1.   **Standard of condensed milk.**  The standard of purity of condensed milk and evaporated milk shall be that proclaimed and established by the secretary of the United States Department of Agriculture.

§ 2.   **Conflicting acts repealed.**  All acts and parts of acts inconsistent with the provisions of this act are hereby repealed.

## ACT 1947.

To provide for the inspection of dairies, factories of dairy products, and of dairy products as to their sanitary condition and as to the health of stock; to prevent the sale of milk and the products of milk drawn from diseased animals; to prevent the spread of infectious and contagious diseases common to stock.  [Stats. 1899, p. 171.] Repealed 1905, p. 467.  See ante, Act 1944.

## TITLE 150.
### DAVISVILLE.

## ACT 1957.

To prevent hogs and goats running at large in.  [Stats. 1873–74, p. 82.] See § 9, Stats. 1897, p. 198; Stats. 1901, p. 603, §§ 9, 10.

## TITLE 151.
### DEADLY WEAPONS.

## ACT 1967.

To prevent the improper and criminal use of deadly weapons.  [Stats. 1855, p. 268.]

Superseded by Penal Code, § 417.

## ACT 1968.

An act providing for the registration of the purchasers of pistols; and providing for the punishment of dealers neglecting to register such purchasers.

[Approved March 6, 1909.  Stats. 1909, p. 163.]

See the Act of 1923, p. 695, post, Act 1970.

Acts 1969, 1970        GENERAL LAWS.

§ 1.  Registration required.
§ 2.  Penalty.

§ 1.  **Registration required.**  Every person engaged in the business of selling at retail pistols shall keep a register in which shall be entered the name, age, occupation and residence (if residing in a city then the street number of such residence) of each and every purchaser of such pistols, together with the number or other mark of identification if any on such pistol, which said register shall be open to the inspection of all peace officers at all times.

§ 2.  **Penalty.**  Every person violating any of the provisions of this act shall be deemed guilty of a misdemeanor and shall on conviction be fined a sum not to exceed fifty dollars or in default of the payment of said fine shall be imprisoned in the county jail not to exceed one day for each two dollars of said fine.

**ACT 1969.**

An act relating to and regulating the carrying, possession, sale or other disposition of firearms capable of being concealed upon the person; prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons and the giving, transferring and disposition thereof to other persons within this state; providing for the registering of the sales of firearms; prohibiting the carrying or possession of concealed weapons in municipal corporations; providing for the destruction of certain dangerous weapons as nuisances and making a felony to use or attempt to use certain dangerous weapons against another. [Approved May 4, 1917. Stats. 1917, p. 221. In effect July 27, 1917.]

Repealed 1923; Stats. 1923, p. 702, § 17. See next act.

This act is constitutional: People v. Smith, 36 Cal. App. 88, 171 Pac. 696; In re Dare, 176 Cal. 83, 168 Pac. 19.

**ACT 1970.**

An act to control and regulate the possession, sale and use of pistols, revolvers and other firearms capable of being concealed upon the person; to prohibit the manufacture, sale, possession or carrying of certain other dangerous weapons within this state; to provide for registering all sales of pistols, revolvers or other firearms capable of being concealed upon the person; to prohibit the carrying of concealed firearms except by lawfully authorized persons; to provide for the confiscation and destruction of such weapons in certain cases; to prohibit the ownership, use, or possession of any of such weapons by certain classes of persons; to prescribe penalties for violations of this act and increased penalties for repeated violations hereof; to authorize, in proper cases, the granting of licenses or permits to carry firearms concealed upon the person; to provide for licensing retail dealers in such firearms and regulating sales thereunder; and to repeal chapter one hundred forty-five of California statutes of 1917, relating to the same subject.

[Approved June 13, 1923. Stats. 1923, p. 695.]

662

§ 1. Manufacture, sale, carrying, etc., certain dangerous weapons prohibited.
§ 2. Aliens and felons must not possess certain firearms.
§ 3. Committing felony while carrying dangerous weapon. Evidence.
§ 4. No probation or suspension of sentence.
§ 5. Carrying certain firearms without license. Exceptions.
§ 6. Police officers, soldiers, etc., excepted.
§ 7. Nuisances. Destruction of weapons.
§ 8. Licenses to carry firearms. Applications. Record.
§ 9. Dealers' registers. Cost. Signatures. Disposition of duplicate sheets. Penalty.
§ 10. Restrictions on transfer of certain firearms.
§ 11. Local licenses for sale of certain firearms.
§ 12. Penalty for dealing in certain firearms without license.
§ 13. Tampering with marks on certain firearms. Penalty.
§ 14. Expiration of current licenses.
§ 15. Antique pistols, etc.
§ 16. Constitutionality.
§ 17. Stats. 1917, p. 221, repealed.

§ 1. **Manufacture, sale, carrying, etc., certain dangerous weapons prohibited.** On and after the date upon which this act takes effect, every person who within the state of California manufactures or causes to be manufactured, or who imports into the state, or keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any instrument or weapon of the kind commonly known as a black-jack, slung-shot, billy, sandclub, sandbag, or metal knuckles, or who carries concealed upon his person any explosive substance, other than fixed ammunition, or who carries concealed upon his person any dirk or dagger, shall be guilty of a felony and upon a conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

§ 2. **Aliens and felons must not possess certain firearms.** On and after the date upon which this act takes effect, no unnaturalized foreign born person and no person who has been convicted of a felony against the person or property of another or against the government of the United States or of the state of California or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person. The terms "pistol," "revolver," and "firearms capable of being concealed upon the person" as used in this act shall be construed to apply to and include all firearms having a barrel less than twelve inches in length. Any person who shall violate the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

§ 3. **Committing felony while carrying dangerous weapon. Evidence.** If any person shall commit or attempt to commit any felony within this state while armed with any of the weapons mentioned in section one hereof or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as hereinafter provided, upon conviction of such felony or of an attempt to commit such felony, he shall in addition to the punishment prescribed for the crime of which

663

he has been convicted, be punishable by imprisonment in a state prison for not less than five nor for more than ten years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he stands convicted and shall not run concurrently with such sentence. Upon a second conviction under like circumstances such additional period of imprisonment shall be for not less than ten years nor for more than fifteen years, and upon a third conviction under like circumstances such additional period of imprisonment shall be for not less than fifteen nor for more than twenty-five years, such terms of additional imprisonment to run consecutively as before. Upon a fourth or subsequent conviction under like circumstances the person so convicted may be imprisoned for life or for a term of years not less than twenty-five years, within the discretion of the court wherein such fourth or subsequent conviction was had.

In the trial of a person charged with committing or attempting to commit a felony against the person of another while armed with any of the weapons mentioned in section one hereof, or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as hereinafter provided, the fact that he was so armed shall be prima facie evidence of his intent to commit such felony.

§ 4.  No probation or suspension of sentence.  In no case shall any person punishable under the preceding sections of this act be granted probation by the trial court, nor shall the execution of the sentence imposed upon such person be suspended by the court.

§ 5.  Carrying certain firearms without license.  Exceptions.  Except as otherwise provided in this act, it shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person without having a license to carry such firearm as hereinafter provided in section eight hereof. Any person who violates the provisions of this section shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony.

This section shall not be construed to prohibit any citizen of the United States, over the age of eighteen years, who resides or is temporarily sojourning within this state, and who is not within the excepted classes prescribed by section two hereof, from owning, possessing or keeping within his place of residence or place of business any pistol, revolver or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess or keep any such firearm at his place of residence or place of business shall be required of any such citizen. Firearms carried openly in belt holsters shall not be deemed to be concealed within the meaning of this section, nor shall knives which are carried openly in sheaths suspended from the waist of the wearer.

§ 6.  Police officers, soldiers, etc., excepted.  Nothing in the preceding section shall be construed to apply to or affect sheriffs, constables, marshals, policemen, whether active or honorably retired, or other duly appointed peace officers, nor to any person summoned by any such

DEADLY WEAPONS.                    Act 1970, §§ 7, 8

officers to assist in making arrests or preserving the peace while
said person so summoned is actually engaged in assisting such officer;
nor to the possession or transportation by any merchant of unloaded
firearms as merchandise; nor to members of the army, navy, or
marine corps of the United States, or the national guard, when on
duty, or to organizations which are by law authorized to purchase
or receive such weapons from the United States, or from this state;
nor to duly authorized military or civil organizations while parading,
nor to the members thereof when going to and from the places of
meeting of their respective organizations; nor to members of any
club or organization now existing, or hereafter organized, for the
purpose of practicing shooting at targets upon the established target
ranges, whether public or private, while such members are using any
of the firearms referred to in this act upon such target ranges, or
while going to and from such ranges; or to licensed hunters or fisher-
men while engaged in hunting or fishing, or while going to or re-
turning from such hunting or fishing expedition.

§ 7. Nuisances. Destruction of weapons. The unlawful concealed
carrying upon the person or within the vehicle of the carrier of any
dirk, dagger, pistol, revolver, or other firearm capable of being con-
cealed upon the person, is a nuisance. Any such weapons taken from
the person or vehicle of any person unlawfully carrying the same
are hereby declared to be nuisances, and shall be surrendered to
the magistrate before whom said person shall be taken, except that
in any city, city and county, town or other municipal corporation the
same shall be surrendered to the head of the police force or police
department thereof. The officers to whom the same may be so sur-
rendered, except upon the certificate of a judge of a court of record,
or of the district attorney of the county, that the preservation thereof
is necessary or proper to the ends of justice, shall annually, between
the first and tenth days of July, in each year, destroy or cause to be
destroyed such weapons to such extent that the same shall become and
be wholly and entirely ineffective and useless for the purpose for
which it was manufactured; provided, however, that in the event any
such weapon has been stolen and is thereafter recovered from the
thief or his transferee, the same shall not be destroyed but shall be
restored to the lawful owner thereof, so soon as its use as evidence
has been served, upon his identification of the weapon and proof of
ownership thereof. Blackjacks, slungshots, billies, sandclubs, sandbags
and metal knuckles are hereby declared to be nuisances and shall be
subject to confiscation and summary destruction whenever found within
the state; provided, that upon the certificate of a judge or of the
district attorney that the ends of justice will be subserved thereby,
such weapon shall be preserved until the necessity for its use ceases.

§ 8. Licenses to carry firearms. Applications. Record. It shall be
lawful for the sheriff of a county, and the board of police commis-
sioners, chief of police, city marshal, town marshal, or other head of
the police department of any city, city and county, town, or other
municipal corporation of this state, upon proof before said board, chief,
marshal or other police head, that the person applying therefor is of
good moral character, and that good cause exists for the issuance
thereof, to issue to such person a license to carry concealed a pistol,
revolver or other firearm for a period of one year from the date of

665

Case 3:19-cv-01662-BEN-JLB    Document 53    Filed 12/01/22    PageID.932    Page 57 of 182

such license. All applications for such licenses shall be filed in writing, signed by the applicant, and shall state the name, occupation, residence and business address of the applicant, his age, height, weight, color of eyes and hair, and reason for desiring a license to carry such weapon. Any license issued upon such application shall set forth the foregoing data and shall, in addition, contain a description of the weapon authorized to be carried, giving the name of the manufacturer, the serial number and the caliber thereof. When such licenses are issued by a sheriff a record thereof shall be kept in the office of the county clerk; when issued by police authority such record shall be maintained in the office of the authority by whom issued. Such applications and licenses shall be uniform throughout the state, upon forms to be prescribed by the attorney general.

§ 9. Dealers' registers. Cost. Signatures. Disposition of duplicate sheets. Penalty. Every person in the business of selling, leasing or otherwise transferring a pistol, revolver or other firearm, of a size capable of being concealed upon the person, whether such seller, lessor or transferor is a retail dealer, pawn-broker or otherwise, except as hereinafter provided, shall keep a register in which shall be entered the time of sale, the date of sale, the name of the salesman making the sale, the place where sold the make, model, manufacturer's number, caliber or other marks of identification on such pistol, revolver or other firearm.

Cost. Such register shall be prepared by and obtained from the state printer and shall be furnished by the state printer to said dealers on application at a cost of three dollars per one hundred leaves in duplicate and shall be in the form hereinafter provided.

Signature. The purchaser of any firearm, capable of being concealed upon the person shall sign, and the dealer shall require him to sign his name and affix his address to said register in duplicate and the salesman shall affix his signature in duplicate as a witness to the signatures of the purchaser. Any person signing a fictitious name or address is guilty of a misdemeanor.

Disposition of duplicate sheets. The duplicate sheet of such register shall on the evening of the day of sale, be placed in the mail, postage prepaid and properly addressed to the board of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the city, city and county, town or other municipal corporation wherein the sale was made; provided, that where the sale is made in a district where there is no municipal police department, said duplicate sheet shall be mailed to the county clerk of the county wherein the sale is made.

Penalty. A violation of any of the provisions of this section by any person engaged in the business of selling, leasing or otherwise transferring such firearm is a misdemeanor.

Act not to apply to wholesalers. This section shall not apply to wholesale dealers in their business intercourse with retail dealers, nor to wholesale or retail dealers in the regular or ordinary transportation of unloaded firearms as merchandise by mail, express or other mode of shipment, to points outside of the city, city and county, town or municipal corporation wherein they are situated.

666

DEADLY WEAPONS.                    Act 1970, § 9

**Form of register.** The register provided for in this act shall be substantially in the following form:

Form of Register.

Series No.——
Sheet No.——

ORIGINAL.

Dealers' Record of Sale of Revolver or Pistol.

State of California.

Notice to dealers: This original is for your files. If spoiled in making out, do not destroy. Keep in books. Fill out in duplicate.

Carbon duplicate must be mailed on the evening of the day of sale, to head of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the municipal corporations wherein the sale is made, or to the county clerk of your county if the sale is made in a district where there is no municipal police department. Violation of this law is a misdemeanor. Use carbon paper for duplicate. Use indelible pencil.

Sold by —— Salesman ——
City, town or township ——
Description of arm (state whether revolver or pistol) ——
Maker ——. Number ——. Caliber ——
Name of purchaser —— age —— years.
Permanent residence (state name of city, town or township, street and
    number of dwelling) ——
Height —— feet —— inches. Occupation ——
Color —— skin —— eyes —— hair ——
If traveling or in locality temporarily, give local address ——
Signature of purchaser ——
(Signing a fictitious name or address is a misdemeanor.)  (To be signed
    in duplicate.)
Witness ——, salesman.
    (To be signed in duplicate.)

Series No.——
Sheet No.——

DUPLICATE.

Dealers' Record of Sale of Revolver or Pistol.

State of California.

Notice to dealers: This carbon duplicate must be mailed on the evening of the day of sale as set forth in the original of this register page. Violation of this law is a misdemeanor.

Sold by —— Salesman ——
City, town or township ——
Description of arm (state whether revolver or pistol) ——
Maker —— number —— caliber ——
Name of purchaser —— age —— years.
Permanent address (state name of city, town or township, street and
    number of dwelling) ——
Height —— feet —— inches. Occupation ——
Color —— skin —— eyes —— hair ——
If traveling or in locality temporarily, give local address ——
Signature of purchaser ——

667

Act 1970, §§ 10–13   GENERAL LAWS.

(Signing a fictitious name or address is a misdemeanor.)   (To be signed in duplicate.)

Witness ——, salesman.
 (To be signed in duplicate.)

§ 10.  Restrictions on transfer of certain firearms.  No person shall sell, deliver or otherwise transfer any pistol, revolver or other firearm capable of being concealed upon the person to any person whom he has cause to believe to be within any of the classes prohibited by section two hereof from owning or possessing such firearms, nor to any minor under the age of eighteen years.  In no event shall any such firearm be delivered to the purchaser upon the day of the application for the purchase thereof, and when delivered such firearm shall be securely wrapped and shall be unloaded.  Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer any such firearm to any other person within this state who is not personally known to the vendor.  Any violation of the provisions of this section shall be a misdemeanor.

§ 11.  Local licenses for sale of certain firearms.  The duly constituted licensing authorities of any county, city and county, city, town or other municipality within this state, may grant licenses in form prescribed by the attorney general, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said county, city and county, city, town or other municipality pistols, revolvers, and other firearms capable of being concealed upon the person, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered
 (a) On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; nor
 (b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity.

4. No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

§ 12.  Penalty for dealing in certain firearms without license.  Any person who, without being licensed as above provided, engages in the business of selling or otherwise transferring, or who advertises for sale, or offers or exposes for sale or transfer, any pistol, revolver or other firearm capable of being concealed upon the person is guilty of a misdemeanor.

§ 13.  Tampering with marks on certain firearms.  Penalty.  No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver.  Possession of any such firearm upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed, or obliterated the same.  Violations of this section shall be punished

668

by imprisonment in the state prison for not less than one year nor more than five years.

§ 14.  **Expiration of current licenses.** All licenses heretofore issued within this state permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of December 31, 1924.

§ 15.  **Antique pistols, etc.** This act shall not apply to antique pistols or revolvers incapable of use as such.

§ 16.  **Constitutionality.** If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional such decision shall not affect the validity of the remaining portions of this act. The legislature hereby declares that it would have passed this act and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional.

§ 17.  **Stats. 1917, p. 221, repealed.** That certain act entitled, "An act relating to and regulating the carrying, possession, sale or other disposition of firearms capable of being concealed upon the person; prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons and the giving, transferring and disposition thereof to other persons within this state; providing for the registering of the sales of firearms; prohibiting the carrying or possession of concealed weapons in municipal corporations; providing for the destruction of certain dangerous weapons as nuisances and making it a felony to use or attempt to use certain dangerous weapons against another," approved May 4, 1917, is hereby repealed.

This act is constitutional: Ramirez, In re, 67 Cal. Dec. 468.

## TITLE 152.
### DEAF AND BLIND ASYLUM.

**ACT 1980.**

An act to provide for the separation of the deaf and the blind departments in the California School for the Deaf and the Blind.

[Approved April 1, 1915.   Stats. 1915, p. 20.   In effect August 8, 1915.]

§ 1.  Separation of deaf and blind departments.

§ 1.  **Separation of deaf and blind departments.** The board of directors of the California School for the Deaf and the Blind are hereby authorized and empowered, with a view to the separation of the departments of the deaf and the blind in said school, to select and purchase as soon as the necessary funds for said purpose shall have been appropriated, and subject to the approval of the state board of control, a suitable tract of land for the purpose of effecting said separation.

California School for Deaf: See Pol. Code, § 2236 et seq.

California School for Blind: See Pol. Code, § 2251 et seq.

**ACT 1981.**

Powers of directors.   [Stats. 1875–76, p. 686.]

California School for Deaf: See Pol. Code, § 2236 et seq.

California School for Blind: See Pol. Code, § 2251 et seq.

Compendium_Supplemental Brief
Page 56

# STATUTES OF CALIFORNIA

---

## CONSTITUTION OF 1879
### As Amended

## MEASURES SUBMITTED TO VOTE
## OF ELECTORS, 1922

## GENERAL LAWS, AMENDMENTS TO CODES, RESOLUTIONS, CONSTITUTIONAL AMENDMENTS

PASSED AT THE

### REGULAR SESSION OF THE
### FORTY-FIFTH LEGISLATURE

## 1923



CALIFORNIA STATE PRINTING OFFICE
FRANK J. SMITH, Superintendent
SACRAMENTO, 1923

A 27172

treasurer or the inheritance tax appraiser of the county of the superior court having jurisdiction as provided in section fifteen of this act.

(6) This act shall become effective and in force contemporaneously with the taking effect of amendments to sections one thousand four hundred one and one thousand four hundred two of the Civil Code, which amendments were enacted at the forty-fifth session of the legislature of the State of California and known as chapter eighteen of the statutes of 1923, and not otherwise.

*Act takes effect.*

---

## CHAPTER 338.

*An act to add a new section to the Civil Code to be numbered three thousand fifty-one a, fixing a limit on the amount of a lien on property held under the provisions of section three thousand fifty-one of said code.*

[Approved June 13, 1923.]

*The people of the State of California do enact as follows:*

SECTION 1.  A new section is hereby added to the Civil Code to be numbered three thousand fifty-one *a* and to read as follows:

3051*a*.  That portion of any lien, as provided for in the next preceding section, in excess of one hundred dollars, for any work, services, care, or safekeeping rendered or performed at the request of any person other than the holder of the legal title, shall be invalid, unless prior to commencing any such work, service, care, or safekeeping, the person claiming such lien shall give actual notice in writing either by personal service or by registered letter addressed to the holder of the legal title to such property, if known.  In the case of automobiles, the person named as legal owner in the registration certificate, shall be deemed for the purpose of this section, as the holder of the legal title.

*Limitation on amount recoverable where written notice not given.*

---

## CHAPTER 339.

*An act to control and regulate the possession, sale and use of pistols, revolvers and other firearms capable of being concealed upon the person; to prohibit the manufacture, sale, possession or carrying of certain other dangerous weapons within this state; to provide for registering all sales of pistols, revolvers or other firearms capable of being concealed upon the person; to prohibit the carrying of concealed firearms except by lawfully authorized persons; to provide for the confiscation and destruction of such weapons in certain cases; to prohibit the ownership, use, or possession of any of such weapons by certain classes of persons; to prescribe penalties for violations of this act and increased penalties for repeated violations hereof; to*

696            STATUTES OF CALIFORNIA.      [Ch. 339

*authorize, in proper cases, the granting of licenses or permits to carry firearms concealed upon the person; to provide for licensing retail dealers in such firearms and regulating sales thereunder; and to repeal chapter one hundred forty-five of California statutes of 1917, relating to the same subject.*

[Approved June 13, 1923.]

### The people of the State of California do enact as follows:

**Manufacture, sale, carrying, etc., certain dangerous weapons prohibited.**

SECTION 1. On and after the date upon which this act takes effect, every person who within the State of California manufactures or causes to be manufactured, or who imports into the state, or who keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles, or who carries concealed upon his person any explosive substance, other than fixed ammunition, or who carries concealed upon his person any dirk or dagger, shall be guilty of a felony and upon a conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

**Aliens and felons must not possess certain firearms.**

SEC. 2. On and after the date upon which this act takes effect, no unnaturalized foreign born person and no person who has been convicted of a felony against the person or property of another or against the government of the United States or of the State of California or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person. The terms "pistol," "revolver," and "firearms capable of being concealed upon the person" as used in this act shall be construed to apply to and include all firearms having a barrel less than twelve inches in length. Any person who shall violate the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

**Committing felony while carrying dangerous weapon.**

SEC. 3. If any person shall commit or attempt to commit any felony within this state while armed with any of the weapons mentioned in section one hereof or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as hereinafter provided, upon conviction of such felony or of an attempt to commit such felony, he shall in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in a state prison for not less than five nor for more than ten years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he stands convicted and shall not run concurrently with such sentence. Upon a second conviction under like circumstances such additional period of impris-

onment shall be for not less than ten years nor for more than fifteen years, and upon a third conviction under like circumstances such additional period of imprisonment shall be for not less than fifteen nor for more than twenty-five years, such terms of additional imprisonment to run consecutively as before. Upon a fourth or subsequent conviction under like circumstances the person so convicted may be imprisoned for life or for a term of years not less than twenty-five years, within the discretion of the court wherein such fourth or subsequent conviction was had.

In the trial of a person charged with committing or attempting to commit a felony against the person of another while armed with any of the weapons mentioned in section one hereof, or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as hereinafter provided, the fact that he was so armed shall be prima facie evidence of his intent to commit such felony. *Evidence.*

SEC. 4. In no case shall any person punishable under the preceding sections of this act be granted probation by the trial court, nor shall the execution of the sentence imposed upon such person be suspended by the court. *No probation or suspension of sentence.*

SEC. 5. Except as otherwise provided in this act, it shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person without having a license to carry such firearm as hereinafter provided in section eight hereof. Any person who violates the provisions of this section shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony. *Carrying certain firearms without license.*

This section shall not be construed to prohibit any citizen of the United States, over the age of eighteen years, who resides or is temporarily sojourning within this state, and who is not within the excepted classes prescribed by section two hereof, from owning, possessing or keeping within his place of residence or place of business any pistol, revolver or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess or keep any such firearm at his place of residence or place of business shall be required of any such citizen. Firearms carried openly in belt holsters shall not be deemed to be concealed within the meaning of this section, nor shall knives which are carried openly in sheaths suspended from the waist of the wearer. *Exceptions.*

SEC. 6. Nothing in the preceding section shall be construed to apply to or affect sheriffs, constables, marshals, policemen, whether active or honorably retired, or other duly appointed peace officers, nor to any person summoned by any such officers to assist in making arrests or preserving the peace while said person so summoned is actually engaged in assisting such officer; nor to the possession or transportation by any merchant of unloaded firearms as merchandise; nor to members of *Police officers, soldiers, etc., excepted.*

the army, navy, or marine corps of the United States, or the national guard, when on duty, or to organizations which are by law authorized to purchase or receive such weapons from the United States, or from this state; nor to duly authorized military or civil organizations while parading, nor to the members thereof when going to and from the places of meeting of their respective organizations; nor to members of any club or organization now existing, or hereafter organized, for the purpose of practicing shooting at targets upon the established target ranges, whether public or private, while such members are using any of the firearms referred to in this act upon such target ranges, or while going to and from such ranges; or to licensed hunters or fishermen while engaged in hunting or fishing, or while going to or returning from such hunting or fishing expedition.

Nuisances.

SEC. 7.  The unlawful concealed carrying upon the person or within the vehicle of the carrier of any dirk, dagger, pistol, revolver, or other firearm capable of being concealed upon the person, is a nuisance.  Any such weapons taken from the person or vehicle of any person unlawfully carrying the same are hereby declared to be nuisances, and shall be surrendered to the magistrate before whom said person shall be taken, except that in any city, city and county, town or other municipal corporation the same shall be surrendered to the head of the police force or police department thereof.  The officers to

Destruction of weapons.

whom the same may be so surrendered, except upon the certificate of a judge of a court of record, or of the district attorney of the county, that the preservation thereof is necessary or proper to the ends of justice, shall annually, between the first and tenth days of July, in each year, destroy or cause to be destroyed such weapons to such extent that the same shall become and be wholly and entirely ineffective and useless for the purpose for which it was manufactured; *provided, however,* that in the event any such weapon has been stolen and is thereafter recovered from the thief or his transferee, the same shall not be destroyed but shall be restored to the lawful owner thereof, so soon as its use as evidence has been served, upon his identification of the weapon and proof of ownership thereof.  Blackjacks, slungshots, billys, sandclubs, sandbags and metal knuckles are hereby declared to be nuisances and shall be subject to confiscation and summary destruction whenever found within the state; *provided,* that upon the certificate of a judge or of the district attorney that the ends of justice will be subserved thereby, such weapon shall be preserved until the necessity for its use ceases.

Licenses to carry firearms.

SEC. 8.  It shall be lawful for the sheriff of a county, and the board of police commissioners, chief of police, city marshal, town marshal, or other head of the police department of any city, city and county, town, or other municipal corporation of this state, upon proof before said board, chief, marshal or other police head, that the person applying therefor is of good moral character, and that good cause exists for the issuance thereof, to issue to such person a license to carry con-

cealed a pistol, revolver or other firearm for a period of one
year from the date of such license.  All applications for such *Applications.*
licenses shall be filed in writing, signed by the applicant,
and shall state the name, occupation, residence and business
address of the applicant, his age, height, weight, color of
eyes and hair, and reason for desiring a license to carry
such weapon.  Any license issued upon such application shall
set forth the foregoing data and shall, in addition, contain
a description of the weapon authorized to be carried, giving
the name of the manufacturer, the serial number and the
caliber thereof.  When such licenses are issued by a
sheriff a record thereof shall be kept in the office of the county *Record.*
clerk; when issued by police authority such record shall be
maintained in the office of the authority by whom issued.
Such applications and licenses shall be uniform throughout
the state, upon forms to be prescribed by the attorney general.

SEC. 9.  Every person in the business of selling, leasing or *Dealers registers.*
otherwise transferring a pistol, revolver or other firearm, of
a size capable of being concealed upon the person, whether
such seller, lessor or transferrer is a retail dealer, pawn-
broker or otherwise, except as hereinafter provided, shall keep
a register in which shall be entered the time of sale, the date of
sale, the name of the salesman making the sale, the place
where sold, the make, model, manufacturer's number, caliber
or other marks of identification on such pistol, revolver or
other firearm.  Such register shall be prepared by and
obtained from the state printer and shall be furnished by the
state printer to said dealers on application at a cost of three *Cost.*
dollars per one hundred leaves in duplicate and shall be in
the form hereinafter provided.  The purchaser of any fire-
arm, capable of being concealed upon the person shall sign,
and the dealer shall require him to sign his name and affix *Signatures.*
his address to said register in duplicate and the salesman shall
affix his signature in duplicate as a witness to the signatures of
the purchaser.  Any person signing a fictitious name or address
is guilty of a misdemeanor.  The duplicate sheet of such *Disposition of duplicate sheets.*
register shall on the evening of the day of sale, be placed in
the mail, postage prepaid and properly addressed to the board
of police commissioners, chief of police, city marshal, town
marshal or other head of the police department of the city,
city and county, town or other municipal corporation wherein
the sale was made; *provided,* that where the sale is made in a
district where there is no municipal police department, said
duplicate sheet shall be mailed to the county clerk of the
county wherein the sale is made.  A violation of any of the *Penalty.*
provisions of this section by any person engaged in the busi-
ness of selling, leasing or otherwise transferring such fire-
arm is a misdemeanor.  This section shall not apply to whole-
sale dealers in their business intercourse with retail dealers,
nor to wholesale or retail dealers in the regular or ordinary
transportation of unloaded firearms as merchandise by mail,
express or other mode of shipment, to points outside of the
city, city and county, town or municipal corporation wherein

**Form of register.** they are situated.  The register provided for in this act shall be substantially in the following form:

Form of Register.

Series No._____<br>Sheet No._____

ORIGINAL.

Dealers' Record of Sale of Revolver or Pistol.

State of California.

Notice to dealers: This original is for your files.  If spoiled in making out, do not destroy.  Keep in books.  Fill out in duplicate.

Carbon duplicate must be mailed on the evening of the day of sale, to head of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the municipal corporations wherein the sale is made, or to the county clerk of your county if the sale is made in a district where there is no municipal police department.  Violation of this law is a misdemeanor.  Use carbon paper for duplicate. Use indelible pencil.

Sold by_____ Salesman_____
City, town or township _____
Description of arm (state whether revolver or pistol)_____
Maker_____ Number_____ Caliber_____
Name of purchaser _____age_____years.
Permanent residence (state name of city, town or township, street and number of dwelling)_____
Height _____feet_____inches.  Occupation_____
Color _ _____skin_____eyes_____hair_____
If traveling or in locality temporarily, give local address
_____
_____
Signature of purchaser_____
(Signing a fictitious name or address is a misdemeanor.)   (To be signed in duplicate.)
Witness_____, salesman.
(To be signed in duplicate.)

Series No._____<br>Sheet No._____

DUPLICATE.

Dealers' Record of Sale of Revolver or Pistol.

State of California.

Notice to dealers:  This carbon duplicate must be mailed on the evening of the day of sale as set forth in the original of this register page.  Violation of this law is a misdemeanor.
Sold by _____ Salesman_____
City, town or township _____
Description of arm (state whether revolver or pistol)_____
Maker _____number_____caliber_____

Name of purchaser _____age_____years.
Permanent address (state name of city, town or township,
street and number of dwelling)_____
_____
Height_____feet_____inches.  Occupation _____
Color _____skin_____eyes_____hair_____
If traveling or in locality temporarily, give local address
_____
Signature of purchaser_____
(Signing a fictitious name or address is a misdemeanor.)   (To
be signed in duplicate.)
Witness_____, salesman.
   (To be signed in duplicate.)

SEC. 10.  No person shall sell, deliver or otherwise transfer <sub>Restrictions on transfer of certain firearms.</sub> any pistol, revolver or other firearm capable of being con-
cealed upon the person to any person whom he has cause to
believe to be within any of the classes prohibited by section
two hereof from owning or possessing such firearms, nor to any
minor under the age of eighteen years.  In no event shall any
such firearm be delivered to the purchaser upon the day of the
application for the purchase thereof, and when delivered such
firearm shall be securely wrapped and shall be unloaded.
Where neither party to the transaction holds a dealer's license,
no person shall sell or otherwise transfer any such firearm
to any other person within this state who is not personally
known to the vendor.  Any violation of the provisions of this
section shall be a misdemeanor.

SEC. 11.  The duly constituted licensing authorities of <sub>Local licenses for sale of certain firearms.</sub> any county, city and county, city, town or other municipality
within this state, may grant licenses in form prescribed by the
attorney general, effective for not more than one year from
date of issue, permitting the licensee to sell at retail within
the said county, city and county, city, town or other munic-
ipality pistols, revolvers, and other firearms capable of being
concealed upon the person, subject to the following conditions,
for breach of any of which the license shall be subject to
forfeiture:

1. The business shall be carried on only in the building
designated in the license.

2. The license or a copy thereof, certified by the issuing
authority, shall be displayed on the premises where it can
easily be read.

3. No pistol or revolver shall be delivered

(a) On the day of the application for the purchase, and
when delivered shall be unloaded and securely wrapped; nor

(b) Unless the purchaser either is personally known to the
seller or shall present clear evidence of his identity.

4. No pistol or revolver, or imitation thereof, or placard
advertising the sale or other transfer thereof, shall be displayed
in any part of said premises where it can readily be seen from
the outside.

702　　　　　　　　　　STATUTES OF CALIFORNIA.　　　　　[Ch. 339

Penalty for dealing in certain firearms without license.

SEC. 12.　Any person who, without being licensed as above provided, engages in the business of selling or otherwise transferring, or who advertises for sale, or offers or exposes for sale or transfer, any pistol, revolver or other firearm capable of being concealed upon the person is guilty of a misdemeanor.

Tampering with marks on certain firearms.

SEC. 13.　No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearm upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed, or obliterated the same.　Violations of this section

Penalty.

shall be punished by imprisonment in the state prison for not less than one year nor more than five years.

Expiration of current licenses.

SEC. 14.　All licenses heretofore issued within this state permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of December 31, 1924.

Antique pistols, etc.

SEC. 15.　This act shall not apply to antique pistols or revolvers incapable of use as such.

Constitutionality.

SEC. 16.　If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional such decision shall not affect the validity of the remaining portions of this act.　The legislature hereby declares that it would have passed this act and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional.

Stats. 1917, p. 221, repealed.

SEC. 17.　That certain act entitled, "An act relating to and regulating the carrying, possession, sale or other disposition of firearms capable of being concealed upon the person; prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons and the giving, transferring and disposition thereof to other persons within this state; providing for the registering of the sales of firearms; prohibiting the carrying or possession of concealed weapons in municipal corporations; providing for the destruction of certain dangerous weapons as nuisances and making it a felony to use or attempt to use certain dangerous weapons against another," approved May 4, 1917, is hereby repealed.

THE

# STATUTES OF CALIFORNIA

AND

## AMENDMENTS TO THE CODES

PASSED AT THE

FORTY-SECOND SESSION OF THE LEGISLATURE

# 1917

BEGAN ON MONDAY, JANUARY EIGHTH, AND ENDED ON FRIDAY, APRIL
TWENTY-SEVENTH, NINETEEN HUNDRED AND SEVENTEEN



CALIFORNIA
STATE PRINTING OFFICE
1917

## CHAPTER 145.

*An act relating to and regulating the carrying, possession, sale*
*or other disposition of firearms capable of being concealed*
*upon the person; prohibiting the possession, carrying, man-*
*ufacturing and sale of certain other dangerous weapons*
*and the giving, transferring and disposition thereof to*
*other persons within this state; providing for the registering*
*of the sales of firearms; prohibiting the carrying or posses-*
*sion of concealed weapons in municipal corporations; pro-*
*viding for the destruction of certain dangerous weapons as*
*nuisances and making it a felony to use or attempt to use*
*certain dangerous weapons against another.*

[Approved May 4, 1917.  In effect July 27, 1917.]

*The people of the State of California do enact as follows:*

SECTION 1.  Every person who manufactures or causes to
be manufactured, or leases, or keeps for sale, or offers, or gives,
or otherwise disposes of any instrument or weapon of the kind
commonly known as a blackjack, slungshot, billy, sandclub,
sandbag, bludgeon, or metal knuckles, a dirk or dagger, to
any person within this state is guilty of a misdemeanor, and
if he has been previously convicted of a crime made punish-
able by this section, he is guilty of a felony. *(margin: Manufacture, etc., of certain dangerous weapons misdemeanor.)*

SEC. 2.  Every person who possesses any instrument or
weapon of the kind commonly known as a blackjack, slungshot,
billy, sandclub, sandbag, bludgeon, metal knuckles, bomb or
bombshells, or who carries a dirk or a dagger, is guilty of
a misdemeanor, and if he has been convicted previously of
any felony or of a crime made punishable by this act, he is
guilty of a felony. *(margin: Possession of certain dangerous weapons misdemeanor.)*

SEC. 3.  Every person who carries in any city, city and
county, town or municipal corporation of this state any
pistol, revolver, or other firearm concealed upon his person,
without having a license to carry such firearm as hereinafter
provided in section six of this act, shall be guilty of a misde-
meanor, and if he has been convicted previously of any felony,
or of any crime made punishable by this act, he is guilty of a
felony. *(margin: Carrying firearms without license misdemeanor.)*

SEC. 4.  The unlawful possessing or carrying of any of
the instruments, weapons or firearms enumerated in section
one to section three inclusive of this act, by any person
other than those authorized and empowered to carry or possess
the same as hereinafter provided, is a nuisance, and such
instruments, weapons or firearms are hereby declared to be
nuisances, and when any of said articles shall be taken from
the possession of any person the same shall be surrendered to
the magistrate before whom said person shall be taken; except
that in any city, city and county, town or other municipal
corporation the same shall be surrendered to the head of the *(margin: Unlawful possession or carrying of weapon, etc., nuisance. Surrender of weapons, etc.)*

police force, or police department thereof. The officers to whom the same may be so surrendered, except upon certificate of a judge of a court of record, or of the district attorney of any county that the preservation thereof is necessary or proper to the ends of justice, shall proceed at such time or times as he deems proper, and at least once in each year to destroy or cause to be destroyed such instruments, weapons or other firearms in such manner and to such extent that the same shall be and become wholly and entirely ineffective and useless for the purpose for which it was manufactured.

**Destruction of weapons, etc.**

**Attempted use of weapons felony.**

SEC. 5. Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any loaded pistol, revolver or other firearm, or any instrument or weapon commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bomb, or bombshell or any other dangerous or deadly instrument or weapon, is guilty of a felony. The carrying or possession of any of the weapons specified in this section, by any person while committing, or attempting or threatening to commit a felony, or breach of the peace, or any act of violence against the person or property of another, shall be presumptive evidence of carrying or possessing such weapon with intent to use the same in violation of this section.

**License to carry concealed firearm.**

SEC. 6. It shall be lawful for the board of police commissioners, chief of police, city marshal, town marshal, or other head of the police department of any city, city and county, town, or other municipal corporation of this state, upon proof before said board, chief, marshal or head, that the person applying therefor is of good moral character, and that good cause exists for the issuance thereof, to issue to such person a license to carry concealed a pistol, revolver or other firearm; *provided, however,* that the application to carry concealed such firearm shall be filed in writing and shall state the name and residence of the applicant, the nature of applicant's occupation, the business address of applicant, the nature of the weapon sought to be carried and the reason for the filing of the application to carry the same.

**Register of sales of firearms.**

SEC. 7. Every person in the business of selling, leasing or otherwise transferring a pistol, revolver or other firearm, of a size capable of being concealed upon the person, whether such seller, leasor or transferrer is a retail dealer, pawnbroker or otherwise, except as hereinafter provided, shall keep a register in which shall be entered the time of sale, the date of sale, the name of the salesman making the sale, the place where sold, the make, model, manufacturer's number, caliber or other marks of identification on such pistol, revolver or other firearm. Such register shall be prepared by and obtained from the state printer and shall be furnished by the state printer to said dealers on application at a cost of three dollars per one hundred leaves in duplicate and shall be in the form hereinafter provided. The purchaser of any firearm, capable of being

concealed upon the person shall sign, and the dealer shall require him to sign his name and affix his address to said register in duplicate and the salesman shall affix his signature in duplicate as a witness to the signatures of the purchaser. Any person signing a fictitious name or address is guilty of a misdemeanor. The duplicate sheet of such register shall on the evening of the day of sale, be placed in the mail, postage prepaid and properly addressed to the board of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the city, city and county, town or other municipal corporation wherein the sale was made; *provided*, that where the sale is made in a district where there is no municipal police department, said duplicate sheet shall be mailed to the county clerk of the county wherein the sale is made. A violation of any of the provisions of this section by any person engaged in the business of selling, leasing or otherwise transferring such firearms is a misdemeanor. This section shall not apply to wholesale dealers in their business intercourse with retail dealers, nor to wholesale or retail dealers in the regular or ordinary transportation of unloaded firearms as merchandise by mail, express or other mode of shipment, to points outside of the city, city and county, town or municipal corporation wherein they are situated. The register provided for in this act shall be substantially in the following form:

*Duplicate sheet mailed to police.*

*Violation misdemeanor.*

Series No. _____      *Form of register.*
Sheet No. _____

ORIGINAL.

Dealers' Record of Sale of Revolver or Pistol.
State of California.

Notice to dealers: This original is for your files. If spoiled in making out, do not destroy. Keep in books. Fill out in duplicate.

Carbon duplicate must be mailed on the evening of the day of sale, to head of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the municipal corporations wherein the sale is made, or to the county clerk of your county if the sale is made in a district where there is no municipal police department. Violation of this law is a misdemeanor. Use carbon paper for duplicate. Use indelible pencil.

Sold by _____ Salesman _____
City, town or township _____
Description of arm (state whether revolver or pistol) _____
Maker _____ number _____ caliber _____
Name of purchaser _____ age _____ years.
Permanent residence (state name of city, town or township, street and number of dwelling) _____
Height _____ feet _____ inches. Occupation _____
Color _____ skin _____ eyes _____ hair _____

If traveling or in locality temporarily, give local address_____

_____

Signature of purchaser _____
(Signing a fictitious name or address is a misdemeanor.)   (To be signed in duplicate.)

Witness _____, salesman.
   (To be signed in duplicate.)

Series No. _____
Sheet No. _____

DUPLICATE.

Dealers' Record of Sale of Revolver or Pistol.
State of California.

Notice to dealers:   This carbon duplicate must be mailed on the evening of the day of sale as set forth in the original of this register page.   Violation of this law is a misdemeanor.

Sold by _____   Salesman _____
City, town or township _____
Description of arm (state whether revolver or pistol) _____
Maker _____ number _____ caliber _____
Name of purchaser _____ age _____ years.
Permanent address (state name of city, town or township, street and number of dwelling) _____

_____

Height _____ feet _____ inches.   Occupation _____
Color _____ skin _____ eyes _____ hair _____
If traveling or in locality temporarily, give local address_____

_____

Signature of purchaser _____
(Signing a fictitious name or address is a misdemeanor.)   (To be signed in duplicate.)

Witness _____, salesman.
   (To be signed in duplicate.)

Exceptions.   SEC. 8.   Nothing in this act shall be construed to apply to sheriffs, constables, marshals, policemen or other duly appointed peace officers, nor to any person summoned by any such officers to assist in making arrest or preserving the peace while said person so summoned is actually engaged in assisting such officer; nor to duly authorized military or civil organizations while parading nor to the members thereof when going to and from the places of meeting of their respective organizations; nor to the possession or transportation by any merchant of unloaded firearms as merchandise; nor to bona fide members of any club or organization now existing or hereinafter organized, for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while such members are using any of the firearms referred to in this act upon or in such target ranges, or while going to and from such ranges.

Constitutionality.   SEC. 9.   If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional

such decision shall not affect the validity of the remaining portions of this act. The legislature hereby declares that it would have passed this act and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional.

---

## CHAPTER 146.

*An act amending an act entitled "An act to provide for the incorporation and organization and management of county water districts and to provide for the acquisition of water rights or the construction thereby of water works, and for the acquisition of all property necessary therefor, and also to provide for the distribution and sale of water by said districts," approved June 10, 1913, by adding thereto a new section to be numbered twenty-eight, providing for the exclusion from any county water district formed under said act of territory not served by such county water district.*

[Approved May 4, 1917. In effect July 27, 1917.]

*The people of the State of California do enact as follows:*

SECTION 1. An act approved June 10, 1913, and entitled "An act to provide for the incorporation and organization and management of county water districts and to provide for the acquisition of water rights or the construction thereby of water works, and for the acquisition of all property necessary therefor; and also to provide for the distribution and sale of water by said districts," is hereby amended by adding to said act a section numbered twenty-eight, reading as follows:  *Stats. 1913, p. 1049.*

Sec. 28. Any territory, included within any county water district formed under the provisions of this act, and not benefited in any manner by such district, or its continued inclusion therein, may be excluded therefrom by order of the board of directors of such district upon the verified petition of the owner or owners in fee of lands whose assessed value, with improvements, is in excess of one-half of the assessed value of all the lands, with improvements, held in private ownership in such territory. Said petition shall describe the territory sought to be excluded and shall set forth that such territory is not benefited in any manner by said county water district or its continued inclusion therein, and shall pray that such territory may be excluded and taken from said district. Such petition shall be filed with the secretary of the water district and shall be accompanied by a deposit with such secretary of the sum of one hundred dollars, to meet the expenses of advertising and other costs incident to the proceedings for the  *Exclusion of territory.*  *Petition.*  *Contents.*

15—30574

# CALIFORNIA LEGISLATURE
## FORTY-FIFTH SESSION, 1923

# Final Calendar *of* Legislative Business

History and Index of all Senate and Assembly Bills, Constitutional Amendments, Joint and Concurrent Resolutions Introduced

Also List of Officers and Members, Standing Committees and Attaches of the Senate and Assembly

Compiled under the direction of
JOSEPH A. BEEK, Secretary of the Senate and
ARTHUR A. OHNIMUS, Chief Clerk
of the Assembly



CALIFORNIA STATE PRINTING OFFICE
FRANK J. SMITH, Superintendent
SACRAMENTO, 1923

27155

# ASSEMBLY FINAL HISTORY

### FORTY-FIFTH SESSION

COMPILED UNDER DIRECTION OF

ARTHUR A. OHNIMUS, Chief Clerk

ELLSWORTH E. EUSTICE, Assistant Chief Clerk

## DURATION OF SESSION

First Half—January 8–February 2, inclusive, 1923
Second Half—March 5–May 18, inclusive, 1923

(Duration, 101 days)

21—27155 AFH

260—Emme, Jan. 24.  To Com. on Ins.

An act to amend section 29 of the "Workmen's Compensation Insurance and
Safety Act of 1917," as amended, to permit the revocation of certificates of
self-insurance, to make failure to secure the payment of compensation a mis-
demeanor, and to require employers to furnish the Industrial Accident Com-
mission with statements showing the name of their insurance carrier or how
they have secured the payment of compensation.

Jan.  24—Read first time.  To printer.
Jan.  26—From printer.  To committee.
Mar.  15—From committee with recommendation : Do pass.
Mar.  19—Read second time.  To engrossment.
Mar.  23—Reported correctly engrossed.
April  9—Read third time, passed, title approved.
April 10—To Senate.
April 10—In Senate.  Read first time, and referred to Com. on Ins.  To committee.
May   4—From committee with recommendation : Do pass.
May   9—Read second time.
May  10—Read third time, passed, title approved.  To Assembly.
May  10—In Assembly.  To enrollment.
May  16—Reported correctly enrolled.  To Governor, at 1.30 p.m.
June 22—Pocket veto by Governor.

261—Emme, Jan. 24.  To Com. on L. & C.

An act to amend section 3 of an act entitled, "An act requiring employers to
provide hospital service for their employees and to make a charge therefor
and to keep records and accounts of all such charges and to make an annual
written report thereof ; requiring each such charge to be just and reasonable
and to be devoted to no other purpose than such hospital service and prescrib-
ing penalties for the violation of the provisions thereof," approved June 8,
1915, as amended.

Jan.  24—Read first time.  To printer.
Jan.  26—From printer.  To committee.
May  18—From committee without recommendation.

262—Weller, Jan. 24.  To Com. on Jud.

An act to add a new section to the Civil Code, to be numbered 2957a, relating to
the filing of memorandum of conditional sales contracts and certain leases.

Jan.  24—Read first time.  To Com. on Rev. & Ptg.  From committee.  To printer.
Jan.  26—From printer.  To committee.
May  18—From committee without recommendation.

263—Hawes, Jan. 24.  To Com. on Jud.

An act to control and regulate the possession, sale and use of pistols, revolvers
and other firearms capable of being concealed upon the person ; to prohibit the
manufacture, sale, possession or carrying of certain other dangerous weapons
within this State ; to provide for registering all sales of pistols, revolvers or
other firearms capable of being concealed upon the person ; to prohibit the
carrying of concealed firearms except by lawfully authorized persons ; to
provide for the confiscation and destruction of such weapons in certain cases ;
to prohibit the ownership, use, or possession of any of such weapons by
certain classes of persons ; to prescribe penalties for violations of this act and
increased penalties for repeated violations hereof ; to authorize, in proper
cases, the granting of licenses or permits to carry firearms concealed upon the
person ; to provide for licensing retail dealers in such firearms and regulating
sales thereunder ; and to repeal chapter 145 of California Statutes of 1917,
relating to the same subject.

Jan.  24—Read first time.  To printer.
Jan.  26—From printer.  To committee.
April 12—From committee with recommendation : Do pass as amended.
April 13—Read second time.  Amendment adopted.  To printer.
April 16—From printer.  To engrossment.
April 17—Reported correctly engrossed.
April 27—Read third time.  Amended.  To printer.
April 30—From printer.  To re-engrossment.
May   1—Reported correctly re-engrossed.
May   2—Read third time, passed, title approved.  To Senate.
May   2—In Senate.  Read first time, and referred to Com. on Jud.  To com-
mittee.
May   9—From committee with recommendation : Do pass as amended.
May  10—Read second time.  Amendment adopted.  To printer.
May  11—From printer.
May  16—Read third time, passed, title approved.  To Assembly.
May  17—In Assembly.  Assembly concurs in Senate amendments.  To enrollment.
May  18—Reported correctly enrolled.  To Governor at 4.50 p.m.
June 13—Approved by Governor.  Chapter 339.

# ASSEMBLY BILL   No. 263

### INTRODUCED BY MR. HAWES,

#### January 24, 1923.

#### REFERRED TO COMMITTEE ON JUDICIARY.

*An act to control the possession, sale, and use of pistols and revolvers, to provide penalties, and for other purposes.*

*The people of the State of California do enact as follows:*

1 SECTION 1. "Pistol or revolver," as used in this act, shall
2 be construed as meaning any firearm with barrel less than
3 twelve inches in length.
4 SEC. 2. If any person shall commit or attempt to commit
5 a crime when armed with a pistol or revolver, and having no
6 permit to carry the same, he shall in addition to the punishment
7 provided for the crime, be punished by imprisonment in the
8 state prison for not less than five nor more than ten years.
9 SEC. 3. The judge shall have the power to sentence any
10 person who may be convicted for a second or third offense
11 under section two, of this act, to double and triple the penalty
12 imposed thereby, and for a fourth offense the person so con-
13 victed may be sentenced to perpetual imprisonment.
14 SEC. 4. In the trial of a person for the commission of a
15 felony or of an attempt to commit a felony against the person
16 of another, the fact that he was armed with a pistol or revolver
17 and having no permit to carry the same shall be prima facie
18 evidence of his intention to commit said felony.
19 SEC. 5. No unnaturalized foreign-born person and no per-
20 son who has been convicted of a felony against the person or
21 property of another or against the Government of the United
22 States or of the State of California or any subdivisions thereof,
23 shall own or have in his possession or under his control, a pistol
24 or revolver. Violation of this section shall be punished by
25 imprisonment in the state prison for not less than five years.
26 SEC. 6. No person shall carry a pistol or revolver con-
27 cealed in any vehicle or upon his person, except in his dwelling

1 house or place of business, without a license therefor as here-
2 inafter provided.  Violations of this section shall be punished
3 by imprisonment in the state prison for not less than one year,
4 and upon conviction the pistol or revolver shall be confiscated
5 and destroyed.
6    SEC. 7.  The provisions of the preceding section shall not
7 apply to marshals, sheriffs, policemen, or other duly appointed
8 peace officers, nor to the regular and ordinary transportation
9 of pistols or revolvers as merchandise, nor to members of the
10 army, navy, or marine corps of the United States, or the
11 national guard, when on duty, or organizations by law author-
12 ized to purchase or receive such weapons from the United
13 States, or this state, nor to duly authorized military or civil
14 organizations when parading, nor to the members thereof when
15 at or going to or from their customary places of assembly.
16    SEC. 8.  The judge of a court of record, the chief of police
17 or marshal of a city or town and the sheriff of a county, or
18 persons authorized by any of them, shall, upon the application
19 of any person having a bona fide residence or place of business
20 within the jurisdiction of said licensing authority, or of any
21 person having a bona fide residence or place of business within
22 the State of California and a license to carry a firearm con-
23 cealed upon his person issued by the authorities of this state
24 or any subdivision of the United States, issue a license to
25 such person to carry a pistol or revolver within this state
26 for not more than one year from date of issue, if it appears
27 that the applicant has good reason to fear an injury to his
28 person or property or for any other proper purpose, and that
29 he is a suitable person to be so licensed.  The license shall be
30 in triplicate, in form to be prescribed by the Secretary of State
31 of the State of California, and shall bear the name, address,
32 description and signature of the licensee and the reason given
33 for desiring a license.  The original thereof shall be delivered
34 to the licensee, the duplicate shall within seven days be sent
35 by registered mail to the secretary of state, and the triplicate
36 shall be preserved for six years by the authority issuing said
37 license.
38    SEC. 9.  Any person or persons who shall sell, barter, hire,
39 lend, or give to any minor under the age of eighteen years any
40 pistol or revolver shall be deemed guilty of a misdemeanor,
41 and shall upon conviction thereof be fined not less than one
42 hundred dollars nor more than one thousand dollars, or be
43 imprisoned in the county jail not less than three months, nor
44 more than one year, or both such fine and imprisonment.
45    SEC. 10.  No person shall sell, deliver, or otherwise transfer
46 a pistol or revolver to a person who he has reasonable cause to
47 believe either is an unnaturalized foreign-born person or has
48 been convicted of a felony against the person or property of
49 another, or against the government of the United States, or the
50 State of California or any subdivision thereof, nor in any
51 event shall he deliver a pistol or revolver on the day of the
52 application for the purchase thereof, and when delivered, said

1 pistol or revolver shall be securely wrapped and shall be
2 unloaded. Before a delivery be made the purchaser shall sign
3 in triplicate and deliver to the seller a statement containing his
4 full name, address, occupation, and nationality, the date of
5 sale, the caliber, make, model, and manufacturer's number of
6 the weapon. The seller shall, within seven days, sign and for-
7 ward by registered mail one copy each thereof to the secretary
8 of state, and one copy each thereof to the chief of police of the
9 city or town and the sheriff of the county of which the seller
10 is a resident, and shall retain the other copy for six years.
11 This section shall not apply to sales at wholesale. Where
12 neither party to the transaction holds a dealer's license, no
13 person shall sell or otherwise transfer a pistol or revolver to
14 any person not personally known to him. Violations of this
15 section shall be punished by a fine of not less than one hundred
16 dollars or by imprisonment in the county jail for not less than
17 one year, or by both such fine and imprisonment.
18 SEC. 11. Whoever, without being licensed as hereinafter
19 provided, sells, or otherwise transfers, advertises, or exposes
20 for sale, or transfer or has in his possesssion with intent to
21 sell, or otherwise transfer, pistols or revolvers, shall be pun-
22 ished by imprisonment in the state prison for not less than
23 two years.
24 SEC. 12. The duly constituted licensing authorities of any
25 city, town or political subdivision of this state, may grant
26 licenses in form prescribed by the secretary of state, effec-
27 tive for not more than one year from date of issue, permitting
28 the licensee to sell at retail within the said city or town or
29 political subdivision, pistols and revolvers, subject to the fol-
30 lowing conditions, for breach of any of which the license shall
31 be subject to forfeiture:
32 1. The business shall be carried on only in the building
33 designated in the license.
34 2. The license or a copy thereof, certified by the issuing
35 authority, shall be displayed on the premises whre it can
36 easily be read.
37 3. No pistol or revolver shall be delivered—
38 (a). On the day of the application for the purchase, and
39 when delivered shall be unloaded and securely wrapped; nor
40 (b) Unless the purchaser either is personally known to the
41 seller or shall present clear evidence of his identity; nor
42 (c) If the seller has reasonable cause to believe that the
43 purchaser either is an unnaturalized foreign born person or
44 has been convicted of a felony against the person or property
45 of another or against the government of the United States
46 or the State of California or any subdivision thereof.
47 4. A true record, in quadruplicate, shall be made of every
48 pistol or revolver sold, said record to be made in a book kept
49 for the purpose, the form of which may be prescribed by the

4

1    secretary of state, and shall be personally signed by the pur-
2    chaser and by the person effecting the sale, each in the pres-
3    ence of the other, and shall include the date of sale, the cali-
4    ber, make, model, and manufacturer's number of the weapon,
5    the name, address, occupation, and nationality of the pur-
6    chaser.   One copy of said record shall, within seven days, be
7    forwarded by registered mail to the secretary of state and one
8    copy thereof each to the chief of police of the city or town and
9    the sheriff of the county of which the seller is a resident, and
10   the other copy retained for six years.
11      5. No pistol or revolver, or imitation thereof, or placard
12   advertising the sale or other transfer thereof, shall be dis-
13   played in any part of said premises where it can readily be
14   seen from the outside.
15     SEC. 13.   If any person in purchasing or otherwise securing
16   delivery of a pistol or revolver or in applying for a permit to
17   carry the same, shall give false information or offer false
18   evidence of his identity he shall be punished by imprisonment
19   in the state prison for not less than five nor more than ten
20   years.
21     SEC. 14.   No person shall change, alter, remove, or obliter-
22   ate the name of the maker, model, manufacturer's number,
23   or other mark of identification on any pistol or revolver.
24   Possession of any such firearm upon which the same shall
25   have been changed, altered, removed, or obliterated, shall be
26   presumptive evidence that such possessor has changed, altered,
27   removed, or obliterated the same.   Violations of this section
28   shall be punished by imprisonment in the state prison for
29   not less than one year nor more than five years.
30     SEC. 15.   All licenses heretofore issued within this state
31   permitting the carrying of pistols or revolvers concealed upon
32   the person shall expire at midnight of December 31, 1924.
33     SEC. 16.   This act shall not apply to antique pistols or
34   revolvers incapable of use as such.
35     SEC. 17.   All acts or parts of acts inconsistent herewith
36   are hereby repealed.

O

AMENDED IN ASSEMBLY APRIL 13, 1923.

# ASSEMBLY BILL                    No. 263

INTRODUCED BY MR. HAWES,

January 24, 1923.

———

REFERRED TO COMMITTEE ON JUDICIARY.

*An act [to control and regulate the possession, sale and use of pistols, revolvers and other firearms capable of being concealed upon the person; to prohibit the manufacture, sale, possession or carrying of certain other dangerous weapons within this state; to provide for registering all sales of pistols, revolvers or other firearms capable of being concealed upon the person; to prohibit the carrying of concealed firearms except by lawfully authorized persons; to provide for the confiscation and destruction of such weapons in certain cases; to prohibit the ownership, use, or possession of any of such weapons by certain classes of persons; to prescribe penalties for violations of this act and increased penalties for repeated violations hereof; to authorize, in proper cases, the granting of licenses or permits to carry firearms concealed upon the person; to provide for licensing retail dealers in such firearms and regulating sales thereunder; and to repeal chapter one hundred forty-five of California statutes of 1917, relating to the same subject.]*

### *The people of the State of California do enact as follows:*

1   SECTION 1.  [On and after the date upon which this act
2   takes effect, every person who within the state of California
3   manufactures or causes to be manufactured, or who imports
4   into the state, or who keeps for sale, or offers or exposes for
5   sale, or who gives, lends, or possesses any instrument or
6   weapon of the kind commonly known as a blackjack, slung-
7   shot, billy, sandclub, sandbag, or metal knuckles, or who
8   carries concealed upon his person any explosive substance,
9   other than fixed ammunition, or who carries concealed upon

— 2 —

1 his person any dirk or dagger, shall be guilty of a felony and
2 upon a conviction thereof shall be punishable by imprison-
3 ment in a state prison for not less than one year nor for more
4 than five years.]
5    SEC. 2. [On and after the date upon which this act takes
6 effect, no unnaturalized foreign born person and no person who
7 has been convicted of a felony against the person or property
8 of another or against the government of the United States or
9 of the State of California or of any political subdivision thereof
10 shall own or have in his possession or under his custody or
11 control any pistol, revolver or other firearm capable of being
12 concealed upon the person. The terms ''pistol,'' ''revolver,''
13 and ''firearms capable of being concealed upon the person'' as
14 used in this act shall be construed to apply to and include all
15 firearms having a barrel less than twelve inches in length. Any
16 person who shall violate the provisions of this section shall
17 be guilty of a felony and upon conviction thereof shall be
18 punishable by imprisonment in a state prison for not less than
19 one year nor for more than five years.]
20    SEC. 3. [If any person shall commit or attempt to commit
21 any felony within this state while armed with any of the
22 weapons mentioned in section one hereof or while armed with
23 any pistol, revolver or other firearm capable of being concealed
24 upon the person, without having a license or permit to carry
25 such firearm as hereinafter provided, upon conviction of such
26 felony or of an attempt to commit such felony, he shall in
27 addition to the punishment prescribed for the crime of which
28 he has been convicted, be punishable by imprisonment in a
29 state prison for not less than five nor for more than ten years.
30 Such additional period of imprisonment shall commence upon
31 the expiration or other termination of the sentence imposed
32 for the crime of which he stands convicted and shall not
33 run concurrently with such sentence. Upon a second convic-
34 tion under like circumstances such additional period of impris-
35 onment shall be for not less than ten years nor for more than
36 fifteen years, and upon a third conviction under like circum-
37 stances such additional period of imprisonment shall be for
38 not less than fifteen nor for more than twenty-five years, such
39 terms of additional imprisonment to run consecutively as
40 before. Upon a fourth or subsequent conviction under like
41 circumstances the person so convicted may be imprisoned for
42 life or for a term of years not less than twenty-five, within
43 the discretion of the court wherein such fourth or subsequent
44 conviction was had.
45    In the trial of a person charged with committing or attempt-
46 ing to commit a felony against the person of another while
47 armed with any of the weapons mentioned in section one
48 hereof, or while armed with any pistol, revolver or other fire-
49 arm capable of being concealed upon the person, without hav-
50 ing a license or permit to carry such firearm as hereinafter
51 provided, the fact that he was so armed shall be prima facie
52 evidence of his intent to commit such felony.

1    Sec. 4.  In no case shall any person punishable under the
2  preceding sections of this act be granted probation by the
3  trial court, nor shall the execution of the sentence imposed
4  upon such person be suspended by the court.]
5    Sec. 5.  No unnaturalized foreign-born person and no per-
6  son who has been convicted of a felony against the person or
7  property of another or against the Government of the United
8  States or of the State of California or any subdivisions thereof,
9  shall own or have in his possession or under his control, a pistol
10  or revolver.  Violation of this section shall be punished by
11  imprisonment in the state prison for not less than five years.
12  [Sec. 5.  Except as otherwise provided in this act, it shall
13  be unlawful for any person within this state to carry con-
14  cealed upon his person or within any vehicle which is under
15  his control or direction any pistol, revolver or other firearm
16  capable of being concealed upon the person without having
17  a license to carry such firearm as hereinafter provided in
18  section eight hereof.  Any person who violates the provisions
19  of this section shall be guilty of a misdemeanor, and if he
20  has been convicted previously of any felony, or of any crime
21  made punishable by this act, he is guilty of a felony.
22    This section shall not be construed to prohibit any citizen
23  of the United States, over the age of eighteen years, who
24  resides or is temporarily sojourning within this state, and
25  who is not within the excepted classes prescribed by section
26  two hereof, from owning, possessing or keeping within his
27  place of residence or place of business any pistol, revolver or
28  other firearm capable of being concealed upon the person, and
29  no permit or license to purchase, own, possess or keep any
30  such firearm at his place of residence or place of business
31  shall be required of any such citizen.  Firearms carried openly
32  in belt holsters shall not be deemed to be concealed within
33  the meaning of this section, nor shall knives which are carried
34  openly in sheaths suspended from the waist of the wearer.
35    Sec. 6.  Nothing in the preceding section shall be construed
36  to apply or to affect sheriffs, constables, marshals, policemen,
37  whether active or honorably retired, or other duly appointed
38  peace officers, nor to any person summoned by any such officers
39  to assist in making arrests or preserving the peace while said
40  person so summoned is actually engaged in assisting such
41  officer; nor to the possession or transportation by any mer-
42  chant of unloaded firearms as merchandise; nor to members of
43  the army, navy, or marine corps of the United States, or the
44  national guard, when on duty, or to organizations which are
45  by law authorized to purchase or receive such weapons from
46  the United States, or from this state; nor to duly authorized
47  military or civil organizations while parading, nor to the mem-
48  bers thereof when going to and from the places of meeting
49  of their respective organizations; nor to members of any club
50  or organization now existing, or hereafter organized, for the
51  purpose of practicing shooting at targets upon the established
52  target ranges, whether public or private, while such members

— 4 —

1 are using any of the firearms referred to in this act upon such
2 target ranges, or while going to and from such ranges; or to
3 licensed hunters or fishermen while engaged in hunting or
4 fishing, or while going to or returning from such hunting or
5 fishing expedition.

6    SEC. 7.  The unlawful concealed carrying upon the person
7 or within the vehicle of the carrier of any dirk, dagger, pistol,
8 revolver, or other firearm capable of being concealed upon
9 the person, is a nuisance.  Any such weapons taken from the
10 person or vehicle of any person unlawfully carrying the same
11 are hereby declared to be nuisances, and shall be surrendered
12 to the magistrate before whom said person shall be taken,
13 except that in any city, city and county, town or other munic-
14 ipal corporation the same shall be surrendered to the head of
15 the police force or police department thereof.  The officers to
16 whom the same may be so surrendered, except upon the certif-
17 icate of a judge of a court of record, or of the district attor-
18 ney of the county, that the preservation thereof is necessary or
19 proper to the ends of justice, shall annually, between the first
20 and tenth days of July, in each year, destroy or cause to be
21 destroyed such weapons to such extent that the same shall
22 become and be wholly and entirely ineffective and useless for
23 the purpose for which it was manufactured; *provided, how-*
24 *ever*, that in the event any such weapon has been stolen and
25 is thereafter recovered from the thief or his transferee, the
26 same shall not be destroyed but shall be restored to the lawful
27 owner thereof, so soon as its use as evidence has been served,
28 upon his identification of the weapon and proof of ownership
29 thereof.  Blackjacks, slungshots, billys, sandclubs, sandbags
30 and metal knuckles are hereby declared to be nuisances and
31 shall be subject to confiscation and summary destruction
32 whenever found within the state; *provided*, that upon the cer-
33 tificate of a judge or of the district attorney that the ends of
34 justice will be subserved thereby, such weapon shall be pre-
35 served until the necessity for its use ceases.

36    SEC. 8.  It shall be lawful for a judge of the superior court,
37 the sheriff of a county, and the board of police commissioners,
38 chief of police, city marshal, town marshal, or other head of
39 the police department of any city, city and county, town, or
40 other municipal corporation of this state, upon proof before
41 said board, chief, marshal or other police head, that the person
42 applying therefor is of good moral character, and that good
43 cause exists for the issuance thereof, to issue to such person a
44 license to carry concealed a pistol, revolver or other firearm
45 for a period of one year from the date of such license.  All
46 applications for such licenses shall be filed in writing, signed
47 by the applicant, and shall state the name, occupation, resi-
48 dence and business address of the applicant, his age, height,
49 weight, color of eyes and hair, and reason for desiring a license
50 to carry such weapon.  Any license issued upon such applica-
51 tion shall set forth the foregoing data and shall, in addition,
52 contain a description of the weapon authorized to be carried,

— 5 —

1  giving the name of the manufacturer, the serial number and
2  the calibre thereof. When such licenses are issued by a
3  superior judge or by a sheriff a record thereof shall be kept
4  in the office of the county clerk; when issued by police author-
5  ity such record shall be maintained in the office of the authority
6  by whom issued. Such applications and licenses shall be uni-
7  form throughout the state, upon forms to be prescribed by
8  the attorney general.
9      Sec. 9. Every person in the business of selling, leasing or
10 otherwise transferring a pistol, revolver or other firearm, of
11 a size capable of being concealed upon the person, whether
12 such seller, leasor or transferrer is a retail dealer, pawnbroker
13 or otherwise, except as hereinafter provided, shall keep a
14 register in which shall be entered the time of sale, the date of
15 sale, the name of the salesman making the sale, the place
16 where sold, the make, model, manufacturer's number, caliber
17 or other marks of identification on such pistol, revolver or
18 other firearm. Such register shall be prepared by and
19 obtained from the state printer and shall be furnished by the
20 state printer to said dealers on application at a cost of three
21 dollars per one hundred leaves in duplicate and shall be in
22 the form hereinafter provided. The purchaser of any fire-
23 arm, capable of being concealed upon the person shall sign,
24 and the dealer shall require him to sign his name and affix
25 his address to said register in duplicate and the salesman shall
26 affix his signature in duplicate as a witness to the signatures of
27 the purchaser. Any person signing a fictitious name or address
28 is guilty of a misdemeanor. The duplicate sheet of such
29 register shall on the evening of the day of sale, be placed in
30 the mail, postage prepaid and properly addressed to the board
31 of police commissioners, chief of police, city marshal, town
32 marshal or other head of the police department of the city,
33 city and county, town or other municipal corporation wherein
34 the sale was made; *provided,* that where the sale is made in a
35 district where there is no municipal police department, said
36 duplicate sheet shall be mailed to the county clerk of the
37 county wherein the sale is made. A violation of any of the
38 provisions of this section by any person engaged in the busi-
39 ness of selling, leasing or otherwise transferring such fire-
40 arm is a misdemeanor. This section shall not apply to whole-
41 sale dealers in their business intercourse with retail dealers,
42 nor to wholesale or retail dealers in the regular or ordinary
43 transportation of unloaded firearms as merchandise by mail,
44 express or other mode of shipment, to points outside of the
45 city, city and county, town or municipal corporation wherein
46 they are situated. The register provided for in this act shall
47 be substantially in the following form:
48                    Form of Register.
49                                        Series No._____
50                                        Sheet No._____
51                    ORIGINAL.
52      Dealers' Record of Sale of Revolver or Pistol.
53                    State of California.

1    Notice to dealers: This original is for your files. If spoiled
2    in making out, do not destroy. Keep in books. Fill out in
3    duplicate.
4    Carbon duplicate must be mailed on the evening of the day
5    of sale, to head of police commissioners, chief of police, city
6    marshal, town marshal or other head of the police department
7    of the municipal corporations wherein the sale is made, or to
8    the county clerk of your county if the sale is made in a district
9    where there is no municipal police department. Violation of
10   this law is a misdemeanor. Use carbon paper for duplicate.
11   Use indelible pencil.
12   Sold by_____ Salesman_____
13   City, town or township _____
14   Description of arm (state whether revolver or pistol)_____
15   Maker_____ Number_____ Caliber_____
16   Name of purchaser _____age_____years.
17   Permanent residence (state name of city, town or township,
18   street and number of dwelling)_____
19   Height _____feet_____inches. Occupation_____
20   Color _____skin_____eyes_____hair_____
21   If traveling or in locality temporarily, give local address
22   _____
23   _____
24   Signature of purchaser_____
25   (Signing a fictitious name or address is a misdemeanor.) (To
26   be signed in duplicate.)
27   Witness_____, salesman.
28      (To be signed in duplicate.)
29                      Series No._____
30                      Sheet No._____
31             DUPLICATE.
32    Dealers' Record of Sale of Revolver or Pistol.
33          State of California.
34   Notice to dealers: This carbon duplicate must be mailed
35   on the evening of the day of sale as set forth in the original
36   ot this register page. Violation of this law is a misdemeanor.
37   Sold by _____ Salesman_____
38   City, town or township _____
39   Description of arm (state whether revolver or pistol)_____
40   Maker _____number_____caliber_____
41   Name of purchaser _____age_____years.
42   Permanent address (state name of city, town or township,
43   street and number of dwelling)_____
44   _____
45   Height_____feet_____inches. Occupation _____
46   Color _____skin_____eyes_____hair_____
47   If traveling or in locality temporarily, give local address
48   _____
49   Signature of purchaser_____
50   (Signing a fictitious name or address is a misdemeanor.) (To
51   be signed in duplicate.)
52   Witness_____, salesman.
53      (To be signed in duplicate.)

— 7 —

1    Sec. 10.   No person shall sell, deliver or otherwise transfer
2   any pistol, revolver or other firearm capable of being con-
3   cealed upon the person to any person whom he has cause to
4   believe to be within any of the classes prohibited by section
5   two hereof from owning or possessing such firearms, nor to any
6   minor under the age of eighteen years.   In no event shall any
7   such firearm be delivered to the purchaser upon the day of the
8   application for the purchase thereof, and when delivered such
9   firearm shall be securely wrapped and shall be unloaded.
10   Where neither party to the transaction holds a dealer's license,
11   no person shall sell or otherwise transfer any such firearm
12   to any other person within this state who is not personally
13   known to the vendor.   Any violation of the provisions of this
14   section shall be a misdemeanor.]
15    ( )
16    [Sec. 12.   The duly constituted licensing authorities of any
17   county, city and county, city, town or other municipality
18   within this state, may, grant licenses in form prescribed by the
19   attorney general, effective for not more than one year from
20   date of issue, permitting the licensee to sell at retail within
21   the said county, city and county, city, town or other munic-
22   ipality pistols, revolvers, and other firearms capable of being
23   concealed upon the person, subject to the following conditions,
24   for breach of any of which the license shall be subject to
25   forfeiture:
26    1. The business shall be carried on only in the building
27   designated in the license.
28    2. The license or a copy thereof, certified by the issuing
29   authority, shall be displayed on the premises where it can
30   easily be read.
31    3. No pistol or revolver shall be delivered
32    (a) On the day of the application for the purchase, and
33   when delivered shall be unloaded and securely wrapped; nor
34    (b) Unless the purchaser either is personally known to the
35   seller or shall present clear evidence of his identity.
36    4. No pistol or revolver, or imitation thereof, or placard
37   advertising the sale or other transfer thereof, shall be displayed
38   in any part of said premises where it can readily be seen from
39   the outside.
40    Sec. 13.   Any person who, without being licensed as above
41   provided, engages in the business of selling or otherwise trans-
42   ferring, or who advertises for sale, or offers or exposes for
43   sale or transfer, any pistol, revolver or other firearm capable
44   of being concealed upon the person is guilty of a misde-
45   meanor.]
46    Sec. 14.   No person shall change, alter, remove, or obliter-
47   ate the name of the maker, model, manufacturer's number,
48   or other mark of identification on any pistol or revolver.
49   Possession of any such firearm upon which the same shall
50   have been changed, altered, removed, or obliterated, shall be
51   presumptive evidence that such possessor has changed, altered,
52   removed, or obliterated the same.   Violations of this section

— 8 —

1   shall be punished by imprisonment in the state prison for
2 not less than one year nor more than five years.
3     Sec. 15. All licenses heretofore issued within this state
4 permitting the carrying of pistols or revolvers concealed upon
5 the person shall expire at midnight of December 31, 1924.
6     Sec. 16. This act shall not apply to antique pistols or
7 revolvers incapable of use as such.
8     [Sec. 17. If any section, subsection, sentence, clause or
9 phrase of this act is for any reason held to be unconstitutional
10 such decision shall not affect the validity of the remaining
11 portions of this act. The legislature hereby declares that it
12 would have passed this act and each section, subsection, sen-
13 tence, clause and phrase thereof, irrespective of the fact that
14 any one or more other sections, subsections, sentences, clauses
15 or phrases be declared unconstitutional.
16     Sec. 18. That certain act entitled, ''An act relating to and
17 regulating the carrying, possession, sale or other disposition of
18 firearms capable of being concealed upon the person; prohibit-
19 ing the possession, carrying, manufacturing and sale of certain
20 other dangerous weapons and the giving, transferring and dis-
21 position thereof to other persons within this state; providing
22 for the registering of the sales of firearms; prohibiting the
23 carrying or possession of concealed weapons in municipal cor-
24 porations; providing for the destruction of certain dangerous
25 weapons as nuisances and making it a felony to use or attempt
26 to use certain dangerous weapons against another,'' approved
27 May 4, 1917, is hereby repealed.]

O

AMENDED IN ASSEMBLY APRIL 27, 1923.

AMENDED IN ASSEMBLY APRIL 13, 1923.

# ASSEMBLY BILL     No. 263

---

INTRODUCED BY MR. HAWES,

January 24, 1923.

---

REFERRED TO COMMITTEE ON JUDICIARY.

---

*An act to control and regulate the possession, sale and use of pistols, revolvers and other firearms capable of being concealed upon the person; to prohibit the manufacture, sale, possession or carrying of certain other dangerous weapons within this state; to provide for registering all sales of pistols, revolvers or other firearms capable of being concealed upon the person; to prohibit the carrying of concealed firearms except by lawfully authorized persons; to provide for the confiscation and destruction of such weapons in certain cases; to prohibit the ownership, use, or possession of any of such weapons by certain classes of persons; to prescribe penalties for violations of this act and increased penalties for repeated violations hereof; to authorize, in proper cases, the granting of licenses or permits to carry firearms concealed upon the person; to provide for licensing retail dealers in such firearms and regulating sales thereunder; and to repeal chapter one hundred forty-five of California statutes of 1917, relating to the same subject.*

*The people of the State of California do enact as follows:*

1    SECTION 1. On and after the date upon which this act
2 takes effect, every person who within the state of California
3 manufactures or causes to be manufactured, or who imports
4 into the state, or who keeps for sale, or offers or exposes for
5 sale, or who gives, lends, or possesses any instrument or
6 weapon of the kind commonly known as a blackjack, slung-
7 shot, billy, sandclub, sandbag, or metal knuckles, or who
8 carries concealed upon his person any explosive substance,

1   other than fixed ammunition, or who carries concealed upon
2   his person any dirk or dagger, shall be guilty of a felony and
3   upon a conviction thereof shall be punishable by imprison-
4   ment in a state prison for not less than one year nor for more
5   than five years.
6       SEC. 2.  On and after the date upon which this act takes
7   effect, no unnaturalized foreign born person and no person who
8   has been convicted of a felony against the person or property
9   of another or against the government of the United States or
10  of the State of California or of any political subdivision thereof
11  shall own or have in his possession or under his custody or
12  control any pistol, revolver or other firearm capable of being
13  concealed upon the person.  The terms "pistol," "revolver,"
14  and "firearms capable of being concealed upon the person" as
15  used in this act shall be construed to apply to and include all
16  firearms having a barrel less than twelve inches in length.  Any
17  person who shall violate the provisions of this section shall
18  be guilty of a felony and upon conviction thereof shall be
19  punishable by imprisonment in a state prison for not less than
20  one year nor for more than five years.
21      SEC. 3.  If any person shall commit or attempt to commit
22  any felony within this state while armed with any of the
23  weapons mentioned in section one hereof or while armed with
24  any pistol, revolver or other firearm capable of being concealed
25  upon the person, without having a license or permit to carry
26  such firearm as hereinafter provided, upon conviction of such
27  felony or of an attempt to commit such felony, he shall in
28  addition to the punishment prescribed for the crime of which
29  he has been convicted, be punishable by imprisonment in a
30  state prison for not less than five nor for more than ten years.
31  Such additional period of imprisonment shall commence upon
32  the expiration or other termination of the sentence imposed
33  for the crime of which he stands convicted and shall not
34  run concurrently with such sentence.  Upon a second convic-
35  tion under like circumstances such additional period of impris-
36  onment shall be for not less than ten years nor for more than
37  fifteen years, and upon a third conviction under like circum-
38  stances such additional period of imprisonment shall be for
39  not less than fifteen nor for more than twenty-five years, such
40  terms of additional imprisonment to run consecutively as
41  before.  Upon a fourth or subsequent conviction under like
42  circumstances the person so convicted may be imprisoned for
43  life or for a term of years not less than twenty-five, within
44  the discretion of the court wherein such fourth or subsequent
45  conviction was had.
46      In the trial of a person charged with committing or attempt-
47  ing to commit a felony against the person of another while
48  armed with any of the weapons mentioned in section one
49  hereof, or while armed with any pistol, revolver or other fire-
50  arm capable of being concealed upon the person, without hav-
51  ing a license or permit to carry such firearm as hereinafter

1   provided, the fact that he was so armed shall be prima facie
2   evidence of his intent to commit such felony.
3   SEC. 4.   In no case shall any person punishable under the
4   preceding sections of this act be granted probation by the
5   trial court, nor shall the execution of the sentence imposed
6   upon such person be suspended by the court.
7   SEC. 5.   No unnaturalized foreign-born person and no per-
8   son who has been convicted of a felony against the person or
9   property of another or against the Government of the United
10   States or of the State of California or any subdivisions thereof,
11   shall own or have in his possession or under his control, a pistol
12   or revolver.   Violation of this section shall be punished by
13   imprisonment in the state prison for not less than five years.
14   SEC. 5.   Except as otherwise provided in this act, it shall
15   be unlawful for any person within this state to carry con-
16   cealed upon his person or within any vehicle which is under
17   his control or direction any pistol, revolver or other firearm
18   capable of being concealed upon the person without having
19   a license to carry such firearm as hereinafter provided in
20   section eight hereof.   Any person who violates the provisions
21   of this section shall be guilty of a misdemeanor, and if he
22   has been convicted previously of any felony, or of any crime
23   made punishable by this act, he is guilty of a felony.
24   This section shall not be construed to prohibit any citizen
25   of the United States, over the age of eighteen years, who
26   resides or is temporarily sojourning within this state, and
27   who is not within the excepted classes prescribed by section
28   two hereof, from owning, possessing or keeping within his
29   place of residence or place of business any pistol, revolver or
30   other firearm capable of being concealed upon the person, and
31   no permit or license to purchase, own, possess or keep any
32   such firearm at his place of residence or place of business
33   shall be required of any such citizen.   Firearms carried openly
34   in belt holsters shall not be deemed to be concealed within
35   the meaning of this section, nor shall knives which are carried
36   openly in sheaths suspended from the waist of the wearer.
37   SEC. 6.   Nothing in the preceding section shall be construed
38   to apply or to affect sheriffs, constables, marshals, policemen,
39   whether active or honorably retired, or other duly appointed
40   peace officers, nor to any person summoned by any such officers
41   to assist in making arrests or preserving the peace while said
42   person so summoned is actually engaged in assisting such
43   officer; nor to the possession or transportation by any mer-
44   chant of unloaded firearms as merchandise; nor to members of
45   the army, navy, or marine corps of the United States, or the
46   national guard, when on duty, or to organizations which are
47   by law authorized to purchase or receive such weapons from
48   the United States, or from this state; nor to duly authorized
49   military or civil organizations while parading, nor to the mem-
50   bers thereof when going to and from the places of meeting
51   of their respective organizations; nor to members of any club
52   or organization now existing, or hereafter organized, for the

— 4 —

1  purpose of practicing shooting at targets upon the established
2  target ranges, whether public or private, while such members
3  are using any of the firearms referred to in this act upon such
4  target ranges, or while going to and from such ranges; or to
5  licensed hunters or fishermen while engaged in hunting or
6  fishing, or while going to or returning from such hunting or
7  fishing expedition.

8    SEC. 7.   The unlawful concealed carrying upon the person
9  or within the vehicle of the carrier of any dirk, dagger, pistol,
10  revolver, or other firearm capable of being concealed upon
11  the person, is a nuisance.   Any such weapons taken from the
12  person or vehicle of any person unlawfully carrying the same
13  are hereby declared to be nuisances, and shall be surrendered
14  to the magistrate before whom said person shall be taken,
15  except that in any city, city and county, town or other munic-
16  ipal corporation the same shall be surrendered to the head of
17  the police force or police department thereof.   The officers to
18  whom the same may be so surrendered, except upon the certif-
19  icate of a judge of a court of record, or of the district attor-
20  ney of the county, that the preservation thereof is necessary or
21  proper to the ends of justice, shall annually, between the first
22  and tenth days of July, in each year, destroy or cause to be
23  destroyed such weapons to such extent that the same shall
24  become and be wholly and entirely ineffective and useless for
25  the purpose for which it was manufactured; *provided, how-*
26  *ever,* that in the event any such weapon has been stolen and
27  is thereafter recovered from the thief or his transferee, the
28  same shall not be destroyed but shall be restored to the lawful
29  owner thereof, so soon as its use as evidence has been served,
30  upon his identification of the weapon and proof of ownership
31  thereof.   Blackjacks, slungshots, billys, sandclubs, sandbags
32  and metal knuckles are hereby declared to be nuisances and
33  shall be subject to confiscation and summary destruction
34  whenever found within the state; *provided,* that upon the cer-
35  tificate of a judge or of the district attorney that the ends of
36  justice will be subserved thereby, such weapon shall be pre-
37  served until the necessity for its use ceases.

38    SEC. 8.   It shall be lawful for ( ) the sheriff of a county,
39  and the board of police commissioners, chief of police, city
40  marshal, town marshal, or other head of the police department
41  of any city, city and county, town, or other municipal corpo-
42  ration of this state, upon proof before said board, chief, marshal
43  or other police head, that the person applying therefor is of
44  good moral character, and that good cause exists for the
45  issuance thereof, to issue to such person a license to carry con-
46  cealed a pistol, revolver or other firearm for a period of one
47  year from the date of such license.   All applications for such
48  licenses shall be filed in writing, signed by the applicant,
49  and shall state the name, occupation, residence and business
50  address of the applicant, his age, height, weight, color of
51  eyes and hair, and reason for desiring a license to carry
52  such weapon.   Any license issued upon such application shall

1  set forth the foregoing data and shall, in addition, contain
2  a description of the weapon authorized to be carried, giving
3  the name of the manufacturer, the serial number and the
4  calibre thereof.  When such licenses are issued by a ( )
5  sheriff a record thereof shall be kept in the office of the county
6  clerk; when issued by police authority such record shall be
7  maintained in the office of the authority by whom issued.
8  Such applications and licenses shall be uniform throughout
9  the state, upon forms to be prescribed by the attorney general.
10   SEC. 9.  Every person in the business of selling, leasing or
11  otherwise transferring a pistol, revolver or other firearm, of
12  a size capable of being concealed upon the person, whether
13  such seller, leasor or transferrer is a retail dealer, pawnbroker
14  or otherwise, except as hereinafter provided, shall keep a
15  register in which shall be entered the time of sale, the date of
16  sale, the name of the salesman making the sale, the place
17  where sold, the make, model, manufacturer's number, caliber
18  or other marks of identification on such pistol, revolver or
19  other firearm.  Such register shall be prepared by and
20  obtained from the state printer and shall be furnished by the
21  state printer to said dealers on application at a cost of three
22  dollars per one hundred leaves in duplicate and shall be in
23  the form hereinafter provided.  The purchaser of any fire-
24  arm, capable of being concealed upon the person shall sign,
25  and the dealer shall require him to sign his name and affix
26  his address to said register in duplicate and the salesman shall
27  affix his signature in duplicate as a witness to the signatures of
28  the purchaser. Any person signing a fictitious name or address
29  is guilty of a misdemeanor.  The duplicate sheet of such
30  register shall on the evening of the day of sale, be placed in
31  the mail, postage prepaid and properly addressed to the board
32  of police commissioners, chief of police, city marshal, town
33  marshal or other head of the police department of the city,
34  city and county, town or other municipal corporation wherein
35  the sale was made; *provided*, that where the sale is made in a
36  district where there is no municipal police department, said
37  duplicate sheet shall be mailed to the county clerk of the
38  county wherein the sale is made.  A violation of any of the
39  provisions of this section by any person engaged in the busi-
40  ness of selling, leasing or otherwise transferring such fire-
41  arm is a misdemeanor.  This section shall not apply to whole-
42  sale dealers in their business intercourse with retail dealers,
43  nor to wholesale or retail dealers in the regular or ordinary
44  transportation of unloaded firearms as merchandise by mail,
45  express or other mode of shipment, to points outside of the
46  city, city and county, town or municipal corporation wherein

1 they are situated. The register provided for in this act shall
2 be substantially in the following form:

Form of Register.

Series No._____
Sheet No._____

ORIGINAL.

Dealers' Record of Sale of Revolver or Pistol.
State of California.

Notice to dealers: This original is for your files. If spoiled in making out, do not destroy. Keep in books. Fill out in duplicate.

Carbon duplicate must be mailed on the evening of the day of sale, to head of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the municipal corporations wherein the sale is made, or to the county clerk of your county if the sale is made in a district where there is no municipal police department. Violation of this law is a misdemeanor. Use carbon paper for duplicate. Use indelible pencil.

Sold by_____ Salesman_____
City, town or township _____
Description of arm (state whether revolver or pistol)_____
Maker_____ Number_____ Caliber_____
Name of purchaser _____age_____years.
Permanent residence (state name of city, town or township, street and number of dwelling)_____
Height \_\_\_\_\_feet\_\_\_\_\_inches. Occupation_____
Color _____skin_____eyes_____hair_____
If traveling or in locality temporarily, give local address
_____
_____
Signature of purchaser_____
(Signing a fictitious name or address is a misdemeanor.) (To be signed in duplicate.)
Witness_____, salesman.
(To be signed in duplicate.)

Series No._____
Sheet No._____

DUPLICATE.

Dealers' Record of Sale of Revolver or Pistol.
State of California.

Notice to dealers: This carbon duplicate must be mailed on the evening of the day of sale as set forth in the original of this register page. Violation of this law is a misdemeanor.

Sold by _____ Salesman_____
City, town or township _____
Description of arm (state whether revolver or pistol)_____
Maker _____number_____caliber_____
Name of purchaser _____age_____years.
Permanent address (state name of city, town or township, street and number of dwelling)_____
_____

— 7 —

1  Height_____feet_____inches.  Occupation _____
2  Color _____skin_____eyes_____hair_____
3  If traveling or in locality temporarily, give local address
4  _____
5  Signature of purchaser_____
6  (Signing a fictitious name or address is a misdemeanor.)  (To
7  be signed in duplicate.)
8  Witness_____, salesman.
9  (To be signed in duplicate.)
10    SEC. 10.  No person shall sell, deliver or otherwise transfer
11  any pistol, revolver or other firearm capable of being con-
12  cealed upon the person to any person whom he has cause to
13  believe to be within any of the classes prohibited by section
14  two hereof from owning or possessing such firearms, nor to any
15  minor under the age of eighteen years.  In no event shall any
16  such firearm be delivered to the purchaser upon the day of the
17  application for the purchase thereof, and when delivered such
18  firearm, shall be securely wrapped and shall be unloaded.
19  Where neither party to the transaction holds a dealer's license,
20  no person shall sell or otherwise transfer any such firearm
21  to any other person within this state who is not personally
22  known to the vendor.  Any violation of the provisions of this
23  section shall be a misdemeanor.
24    SEC. 12.  The duly constituted licensing authorities of any
25  county, city and county, city, town or other municipality
26  within this state, may, grant licenses in form prescribed by the
27  attorney general, effective for not more than one year from
28  date of issue, permitting the licensee to sell at retail within
29  the said county, city and county, city, town or other munic-
30  ipality pistols, revolvers, and other firearms capable of being
31  concealed upon the person, subject to the following conditions,
32  for breach of any of which the license shall be subject to
33  forfeiture:
34    1. The business shall be carried on only in the building
35  designated in the license.
36    2. The license or a copy thereof, certified by the issuing
37  authority, shall be displayed on the premises where it can
38  easily be read.
39    3. No pistol or revolver shall be delivered
40    (a) On the day of the application for the purchase, and
41  when delivered shall be unloaded and securely wrapped; nor
42    (b) Unless the purchaser either is personally known to the
43  seller or shall present clear evidence of his identity.
44    4. No pistol or revolver, or imitation thereof, or placard
45  advertising the sale or other transfer thereof, shall be displayed
46  in any part of said premises where it can readily be seen from
47  the outside.
48    SEC. 13.  Any person who, without being licensed as above
49  provided, engages in the business of selling or otherwise trans-
50  ferring, or who advertises for sale, or offers or exposes for
51  sale or transfer, any pistol, revolver or other firearm capable

— 8 —

1 of being concealed upon the person is guilty of a misde-
2 meanor.
3     Sec. 14. No person shall change, alter, remove, or obliter-
4 ate the name of the maker, model, manufacturer's number,
5 or other mark of identification on any pistol or revolver.
6 Possession of any such firearm upon which the same shall
7 have been changed, altered, removed, or obliterated, shall be
8 presumptive evidence that such possessor has changed, altered,
9 removed, or obliterated the same. Violations of this section
10 shall be punished by imprisonment in the state prison for
11 not less than one year nor more than five years.
12     Sec. 15. All licenses heretofore issued within this state
13 permitting the carrying of pistols or revolvers concealed upon
14 the person shall expire at midnight of December 31, 1924.
15     Sec. 16. This act shall not apply to antique pistols or
16 revolvers incapable of use as such.
17     Sec. 17. If any section, subsection, sentence, clause or
18 phrase of this act is for any reason held to be unconstitutional
19 such decision shall not affect the validity of the remaining
20 portions of this act. The legislature hereby declares that it
21 would have passed this act and each section, subsection, sen-
22 tence, clause and phrase thereof, irrespective of the fact that
23 any one or more other sections, subsections, sentences, clauses
24 or phrases be declared unconstitutional.
25     Sec. 18. That certain act entitled, "An act relating to and
26 regulating the carrying, possession, sale or other disposition of
27 firearms capable of being concealed upon the person; prohibit-
28 ing the possession, carrying, manufacturing and sale of certain
29 other dangerous weapons and the giving, transferring and dis-
30 position thereof to other persons within this state; providing
31 for the registering of the sales of firearms; prohibiting the
32 carrying or possession of concealed weapons in municipal cor-
33 porations; providing for the destruction of certain dangerous
34 weapons as nuisances and making it a felony to use or attempt
35 to use certain dangerous weapons against another," approved
36 May 4, 1917, is hereby repealed.

O

AMENDED IN SENATE MAY 10, 1923.

AMENDED IN ASSEMBLY APRIL 27, 1923.

AMENDED IN ASSEMBLY APRIL 13, 1923.

# ASSEMBLY BILL   No. 263

### INTRODUCED BY MR. HAWES,

January 24, 1923.

REFERRED TO COMMITTEE ON JUDICIARY.

*An act to control and regulate the possession, sale and use of pistols, revolvers and other firearms capable of being concealed upon the person; to prohibit the manufacture, sale, possession or carrying of certain other dangerous weapons within this state; to provide for registering all sales of pistols, revolvers or other firearms capable of being concealed upon the person; to prohibit the carrying of concealed firearms except by lawfully authorized persons; to provide for the confiscation and destruction of such weapons in certain cases; to prohibit the ownership, use, or possession of any of such weapons by certain classes of persons; to prescribe penalties for violations of this act and increased penalties for repeated violations hereof; to authorize, in proper cases, the granting of licenses or permits to carry firearms concealed upon the person; to provide for licensing retail dealers in such firearms and regulating sales thereunder; and to repeal chapter one hundred forty-five of California statutes of 1917, relating to the same subject.*

*The people of the State of California do enact as follows:*

1   SECTION 1. On and after the date upon which this act
2   takes effect, every person who within the state of California
3   manufactures or causes to be manufactured, or who imports
4   into the state, or who keeps for sale, or offers or exposes for
5   sale, or who gives, lends, or possesses any instrument or
6   weapon of the kind commonly known as a blackjack, slung-
7   shot, billy, sandclub, sandbag, or metal knuckles, or who
8   carries concealed upon his person any explosive substance,

— 2 —

1   other than fixed ammunition, or who carries concealed upon
2   his person any dirk or dagger, shall be guilty of a felony and
3   upon a conviction thereof shall be punishable by imprison-
4   ment in a state prison for not less than one year nor for more
5   than five years.
6      SEC. 2.  On and after the date upon which this act takes
7   effect, no unnaturalized foreign born person and no person who
8   has been convicted of a felony against the person or property
9   of another or against the government of the United States or
10   of the State of California or of any political subdivision thereof
11   shall own or have in his possession or under his custody or
12   control any pistol, revolver or other firearm capable of being
13   concealed upon the person.  The terms "pistol," "revolver,"
14   and "firearms capable of being concealed upon the person" as
15   used in this act shall be construed to apply to and include all
16   firearms having a barrel less than twelve inches in length.  Any
17   person who shall violate the provisions of this section shall
18   be guilty of a felony and upon conviction thereof shall be
19   punishable by imprisonment in a state prison for not less than
20   one year nor for more than five years.
21      SEC. 3.  If any person shall commit or attempt to commit
22   any felony within this state while armed with any of the
23   weapons mentioned in section one hereof or while armed with
24   any pistol, revolver or other firearm capable of being concealed
25   upon the person, without having a license or permit to carry
26   such firearm as hereinafter provided, upon conviction of such
27   felony or of an attempt to commit such felony, he shall in
28   addition to the punishment prescribed for the crime of which
29   he has been convicted, be punishable by imprisonment in a
30   state prison for not less than five nor for more than ten years.
31   Such additional period of imprisonment shall commence upon
32   the expiration or other termination of the sentence imposed
33   for the crime of which he stands convicted and shall not
34   run concurrently with such sentence.  Upon a second convic-
35   tion under like circumstances such additional period of impris-
36   onment shall be for not less than ten years nor for more than
37   fifteen years, and upon a third conviction under like circum-
38   stances such additional period of imprisonment shall be for
39   not less than fifteen nor for more than twenty-five years, such
40   terms of additional imprisonment to run consecutively as
41   before.  Upon a fourth or subsequent conviction under like
42   circumstances the person so convicted may be imprisoned for
43   life or for a term of years not less than twenty-five [years],
44   within the discretion of the court wherein such fourth or
45   subsequent conviction was had.
46      In the trial of a person charged with committing or attempt-
47   ing to commit a felony against the person of another while
48   armed with any of the weapons mentioned in section one
49   hereof, or while armed with any pistol, revolver or other fire-
50   arm capable of being concealed upon the person, without hav-
51   ing a license or permit to carry such firearm as hereinafter

— 3 —

1  provided, the fact that he was so armed shall be prima facie
2  evidence of his intent to commit such felony.
3     Sec. 4.  In no case shall any person punishable under the
4  preceding sections of this act be granted probation by the
5  trial court, nor shall the execution of the sentence imposed
6  upon such person be suspended by the court.
7    ( )
8     Sec. 5.  Except as otherwise provided in this act, it shall
9  be unlawful for any person within this state to carry con-
10  cealed upon his person or within any vehicle which is under
11  his control or direction any pistol, revolver or other firearm
12  capable of being concealed upon the person without having
13  a license to carry such firearm as hereinafter provided in
14  section eight hereof.  Any person who violates the provisions
15  of this section shall be guilty of a misdemeanor, and if he
16  has been convicted previously of any felony, or of any crime
17  made punishable by this act, he is guilty of a felony.
18    This section shall not be construed to prohibit any citizen
19  of the United States, over the age of eighteen years, who
20  resides or is temporarily sojourning within this state, and
21  who is not within the excepted classes prescribed by section
22  two hereof, from owning, possessing or keeping within his
23  place of residence or place of business any pistol, revolver or
24  other firearm capable of being concealed upon the person, and
25  no permit or license to purchase, own, possess or keep any
26  such firearm at his place of residence or place of business
27  shall be required of any such citizen.  Firearms carried openly
28  in belt holsters shall not be deemed to be concealed within
29  the meaning of this section, nor shall knives which are carried
30  openly in sheaths suspended from the waist of the wearer.
31     Sec. 6.  Nothing in the preceding section shall be construed
32  to apply [to or] affect sheriffs, constables, marshals, policemen,
33  whether active or honorably retired, or other duly appointed
34  peace officers, nor to any person summoned by any such officers
35  to assist in making arrests or preserving the peace while said
36  person so summoned is actually engaged in assisting such
37  officer; nor to the possession or transportation by any mer-
38  chant of unloaded firearms as merchandise; nor to members of
39  the army, navy, or marine corps of the United States, or the
40  national guard, when on duty, or to organizations which are
41  by law authorized to purchase or receive such weapons from
42  the United States, or from this state; nor to duly authorized
43  military or civil organizations while parading, nor to the mem-
44  bers thereof when going to and from the places of meeting
45  of their respective organizations; nor to members of any club
46  or organization now existing, or hereafter organized, for the

— 4 —

1   purpose of practicing shooting at targets upon the established
2   target ranges, whether public or private, while such members
3   are using any of the firearms referred to in this act upon such
4   target ranges, or while going to and from such ranges; or to
5   licensed hunters or fishermen while engaged in hunting or
6   fishing, or while going to or returning from such hunting or
7   fishing expedition.
8       SEC. 7.   The unlawful concealed carrying upon the person
9   or within the vehicle of the carrier of any dirk, dagger, pistol,
10   revolver, or other firearm capable of being concealed upon
11   the person, is a nuisance.   Any such weapons taken from the
12   person or vehicle of any person unlawfully carrying the same
13   are hereby declared to be nuisances, and shall be surrendered
14   to the magistrate before whom said person shall be taken,
15   except that in any city, city and county, town or other munic-
16   ipal corporation the same shall be surrendered to the head of
17   the police force or police department thereof.   The officers to
18   whom the same may be so surrendered, except upon the certif-
19   icate of a judge of a court of record, or of the district attor-
20   ney of the county, that the preservation thereof is necessary or
21   proper to the ends of justice, shall annually, between the first
22   and tenth days of July, in each year, destroy or cause to be
23   destroyed such weapons to such extent that the same shall
24   become and be wholly and entirely ineffective and useless for
25   the purpose for which it was manufactured; *provided, how-*
26   *ever,* that in the event any such weapon has been stolen and
27   is thereafter recovered from the thief or his transferee, the
28   same shall not be destroyed but shall be restored to the lawful
29   owner thereof, so soon as its use as evidence has been served,
30   upon his identification of the weapon and proof of ownership
31   thereof.   Blackjacks, slungshots, billys, sandclubs, sandbags
32   and metal knuckles are hereby declared to be nuisances and
33   shall be subject to confiscation and summary destruction
34   whenever found within the state; *provided,* that upon the cer-
35   tificate of a judge or of the district attorney that the ends of
36   justice will be subserved thereby, such weapon shall be pre-
37   served until the necessity for its use ceases.
38       SEC. 8.   It shall be lawful for the sheriff of a county,
39   and the board of police commissioners; chief of police, city
40   marshal, town marshal, or other head of the police department
41   of any city, city and county, town, or other municipal corpo-
42   ration of this state, upon proof before said board, chief, marshal
43   or other police head, that the person applying therefor is of
44   good moral character, and that good cause exists for the
45   issuance thereof, to issue to such person a license to carry con-
46   cealed a pistol, revolver or other firearm for a period of one
47   year from the date of such license.   All applications for such
48   licenses shall be filed in writing, signed by the applicant,
49   and shall state the name, occupation, residence and business
50   address of the applicant, his age, height, weight, color of
51   eyes and hair, and reason for desiring a license to carry
52   such weapon.   Any license issued upon such application shall

— 5 —

1 set forth the foregoing data and shall, in addition, contain
2 a description of the weapon authorized to be carried, giving
3 the name of the manufacturer, the serial number and the
4 calibre thereof.  When such licenses are issued by a
5 sheriff a record thereof shall be kept in the office of the county
6 clerk; when issued by police authority such record shall be
7 maintained in the office of the authority by whom issued.
8 Such applications and licenses shall be uniform throughout
9 the state, upon forms to be prescribed by the attorney general.

10 SEC. 9.  Every person in the business of selling, leasing or
11 otherwise transferring a pistol, revolver or other firearm, of
12 a size capable of being concealed, upon the person, whether
13 such seller, [lessor] or transferrer is a retail dealer, pawn-
14 broker or otherwise, except as hereinafter provided, shall keep
15 a register in which shall be entered the time of sale, the date of
16 sale, the name of the salesman making the sale, the place
17 where sold, the make, model, manufacturer's number, caliber
18 or other marks of identification on such pistol, revolver or
19 other firearm.  Such register shall be prepared by and
20 obtained from the state printer and shall be furnished by the
21 state printer to said dealers on application at a cost of three
22 dollars per one hundred leaves in duplicate and shall be in
23 the form hereinafter provided.  The purchaser of any fire-
24 arm, capable of being concealed upon the person shall sign,
25 and the dealer shall require him to sign his name and affix
26 his address to said register in duplicate and the salesman shall
27 affix his signature in duplicate as a witness to the signatures of
28 the purchaser. Any person signing a fictitious name or address
29 is guilty of a misdemeanor.  The duplicate sheet of such
30 register shall on the evening of the day of sale, be placed in
31 the mail, postage prepaid and properly addressed to the board
32 of police commissioners, chief of police, city marshal, town
33 marshal or other head of the police department of the city,
34 city and county, town or other municipal corporation wherein
35 the sale was made; *provided,* that where the sale is made in a
36 district where there is no municipal police department, said
37 duplicate sheet shall be mailed to the county clerk of the
38 county wherein the sale is made.  A violation of any of the
39 provisions of this section by any person engaged in the busi-
40 ness of selling, leasing or otherwise transferring such fire-
41 arm is a misdemeanor.  This section shall not apply to whole-
42 sale dealers in their business intercourse with retail dealers,
43 nor to wholesale or retail dealers in the regular or ordinary
44 transportation of unloaded firearms as merchandise by mail,
45 express or other mode of shipment, to points outside of the
46 city, city and county, town or municipal corporation wherein

— 6 —

1 they are situated.  The register provided for in this act shall
2 be substantially in the following form:

Form of Register.

4 Series No._____
5 Sheet No._____

6 ORIGINAL.
7 Dealers' Record of Sale of Revolver or Pistol.
8 State of California.

9 Notice to dealers:  This original is for your files.  If spoiled
10 in making out, do not destroy.  Keep in books.  Fill out in
11 duplicate.

12 Carbon duplicate must be mailed on the evening of the day
13 of sale, to head of police commissioners, chief of police, city
14 marshal, town marshal or other head of the police department
15 of the municipal corporations wherein the sale is made, or to
16 the county clerk of your county if the sale is made in a district
17 where there is no municipal police department.  Violation of
18 this law is a misdemeanor.  Use carbon paper for duplicate.
19 Use indelible pencil.

20 Sold by_____ Salesman_____
21 City, town or township_____
22 Description of arm (state whether revolver or pistol)_____
23 Maker_____ Number_____ Caliber_____
24 Name of purchaser_____age_____years.
25 Permanent residence (state name of city, town or township,
26 street and number of dwelling)_____
27 Height _____feet_____inches.  Occupation_____
28 Color _____skin_____eyes_____hair_____
29 If traveling or in locality temporarily, give local address
30 _____
31 _____
32 Signature of purchaser_____
33 (Signing a fictitious name or address is a misdemeanor.)   (To
34 be signed in duplicate.)
35 Witness_____, salesman.
36 (To be signed in duplicate.)

37 Series No._____
38 Sheet No._____

39 DUPLICATE.
40 Dealers' Record of Sale of Revolver or Pistol.
41 State of California.

42 Notice to dealers:  This carbon duplicate must be mailed
43 on the evening of the day of sale as set forth in the original
44 of this register page.  Violation of this law is a misdemeanor.
45 Sold by _____ Salesman_____
46 City, town or township_____
47 Description of arm (state whether revolver or pistol)_____
48 Maker _____number_____caliber_____
49 Name of purchaser _____age_____years.
50 Permanent address (state name of city, town or township,
51 street and number of dwelling)_____
52 _____

1 Height _____ feet _____ inches.  Occupation _____
2 Color _____ skin _____ eyes _____ hair _____
3 If traveling or in locality temporarily, give local address
4 _____
5 Signature of purchaser _____
6 (Signing a fictitious name or address is a misdemeanor.)  (To
7 be signed in duplicate.)
8 Witness _____, salesman.
9   (To be signed in duplicate.)
10   SEC. 10.  No person shall sell, deliver or otherwise transfer
11 any pistol, revolver or other firearm capable of being con-
12 cealed upon the person to any person whom he has cause to
13 believe to be within any of the classes prohibited by section
14 two hereof from owning or possessing such firearms, nor to any
15 minor under the age of eighteen years.  In no event shall any
16 such firearm be delivered to the purchaser upon the day of the
17 application for the purchase thereof, and when delivered such
18 firearm shall be securely wrapped and shall be unloaded.
19 Where neither party to the transaction holds a dealer's license,
20 no person shall sell or otherwise transfer any such firearm
21 to any other person within this state who is not personally
22 known to the vendor.  Any violation of the provisions of this
23 section shall be a misdemeanor.
24   SEC. [11].  The duly constituted licensing authorities of
25 any county, city and county, city, town or other municipality
26 within this state, may, grant licenses in form prescribed by the
27 attorney general, effective for not more than one year from
28 date of issue, permitting the licensee to sell at retail within
29 the said county, city and county, city, town or other munic-
30 ipality pistols, revolvers, and other firearms capable of being
31 concealed upon the person, subject to the following conditions,
32 for breach of any of which the license shall be subject to
33 forfeiture:
34   1. The business shall be carried on only in the building
35 designated in the license.
36   2. The license or a copy thereof, certified by the issuing
37 authority, shall be displayed on the premises where it can
38 easily be read.
39   3. No pistol or revolver shall be delivered
40   (a) On the day of the application for the purchase, and
41 when delivered shall be unloaded and securely wrapped; nor
42   (b) Unless the purchaser either is personally known to the
43 seller or shall present clear evidence of his identity.
44   4. No pistol or revolver, or imitation thereof, or placard
45 advertising the sale or other transfer thereof, shall be displayed
46 in any part of said premises where it can readily be seen from
47 the outside.
48   SEC. [12].  Any person who, without being licensed as
49 above provided, engages in the business of selling or otherwise
50 transferring, or who advertises for sale, or offers or exposes for
51 sale or transfer, any pistol, revolver or other firearm capable

— 8 —

1 of being concealed upon the person is guilty of a misde-
2 meanor.
3    Sec. **[13]**. No person shall change, alter, remove, or oblit-
4 erate the name of the maker, model, manufacturer's number,
5 or other mark of identification on any pistol or revolver.
6 Possession of any such firearm upon which the same shall
7 have been changed, altered, removed, or obliterated, shall be
8 presumptive evidence that such possessor has changed, altered,
9 removed, or obliterated the same. Violations of this section
10 shall be punished by imprisonment in the state prison for
11 not less than one year nor more than five years.
12    Sec. **[14]**. All licenses heretofore issued within this state
13 permitting the carrying of pistols or revolvers concealed upon
14 the person shall expire at midnight of December 31, 1924.
15    Sec. **[15]**. This act shall not apply to antique pistols or
16 revolvers incapable of use as such.
17    Sec. **[16]**. If any section, subsection, sentence, clause or
18 phrase of this act is for any reason held to be unconstitutional
19 such decision shall not affect the validity of the remaining
20 portions of this act. The legislature hereby declares that it
21 would have passed this act and each section, subsection, sen-
22 tence, clause and phrase thereof, irrespective of the fact that
23 any one or more other sections, subsections, sentences, clauses
24 or phrases be declared unconstitutional.
25    Sec. **[17]**. That certain act entitled, ''An act relating to
26 and regulating the carrying, possession, sale or other disposi-
27 tion of firearms capable of being concealed upon the person;
28 prohibiting the possession, carrying, manufacturing and sale
29 of certain other dangerous weapons and the giving, transfer-
30 ring and disposition thereof to other persons within this state;
31 providing for the registering of the sales of firearms; prohibit-
32 ing the carrying or possession of concealed weapons in munici-
33 pal corporations; providing for the destruction of certain
34 dangerous weapons as nuisances and making it a felony to
35 use or attempt to use certain dangerous weapons against
36 another,'' approved May 4, 1917, is hereby repealed.

O

# Bill of Rights

---

**Document 1**

## Bill of Rights 1 W. & M., 2d sess., c. 2,

16 Dec. 1689

## An act for declaring the rights and liberties of the subject, and settling the succession of the crown.

Whereas the lords spiritual and temporal, and commons assembled at *Westminster,* lawfully, fully, and freely representing all the estates of the people of this realm, did upon the thirteenth day of *February,* in the year of our Lord one thousand six hundred eighty eight, present unto their Majesties, then called and known by the names and stile of *William* and *Mary,* prince and princess of *Orange,* being present in their proper persons, a certain declaration in writing, made by the said lords and commons, in the words following; *viz.*

*Whereas* the late King *James* the Second, by the assistance of divers evil counsellors, judges, and ministers employed by him, did endeavour to subvert and extirpate the protestant religion, and the laws and liberties of this kingdom.

1. By assuming and exercising a power of dispensing with and suspending of laws, and the execution of laws, without consent of parliament.

2. By committing and prosecuting divers worthy prelates, for humbly petitioning to be excused from concurring to the said assumed power.

3. By issuing and causing to be executed a commission under the great seal for erecting a court called, *The court of commissioners for ecclesiastical causes*.

4. By levying money for and to the use of the crown, by pretence of prerogative, for other time, and in other manner, than the same was granted by parliament.

5. By raising and keeping a standing army within this kingdom in time of peace, without consent of parliament, and quartering soldiers contrary to law.

6. By causing several good subjects, being protestants, to be disarmed, at the same time when papists were both armed and employed, contrary to law.

7. By violating the freedom of election of members to serve in parliament.

8. By prosecutions in the court of King's bench, for matters and causes cognizable only in parliament; and by divers other arbitrary and illegal courses.

9. And whereas of late years, partial, corrupt, and unqualified persons have been returned and served on juries in trials, and particularly divers jurors in trials for high treason, which were not freeholders.

10. And excessive bail hath been required of persons committed in criminal cases, to elude the benefit of the laws made for the liberty of the subjects.

11. And excessive fines have been imposed; and illegal and cruel punishments inflicted.

12. And several grants and promises made of fines and forfeitures, before any conviction or judgment against the persons, upon whom the same same were to be levied.

All which are utterly and directly contrary to the known laws and statutes, and freedom of this realm.

And whereas the said late King *James* the Second having abdicated the government, and the throne being thereby vacant, his highness the prince of *Orange* (whom it hath pleased Almighty God to make the glorious instrument of delivering this kingdom from popery and arbitrary power) did (by the advice of the lords spiritual and temporal, and divers principal persons of the commons) cause letters to be written to the lords spiritual and temporal, being protestants; and other letters to the several counties, cities, universities, boroughs, and cinque-ports, for the choosing of such persons to represent them, as were of right to be sent to parliament, to meet and sit at *Westminster* upon the two and twentieth day of *January,* in this year one thousand six hundred eighty and eight, in order to such an establishment, as that their religion, laws, and liberties might not again be in danger of being subverted: upon which letters, elections have been accordingly made,

And thereupon the said lords spiritual and temporal, and commons, pursuant to their respective letters and elections, being now assembled in a full and free representative of this nation, taking into their most serious consideration the best means for attaining the ends aforesaid; do in the first place (as their ancestors in like case have usually done) for the vindicating and asserting their ancient rights and liberties, declare;

1. That the pretended power of suspending of laws, or the execution of laws, by regal authority, without consent of parliament, is illegal.

2. That the pretended power of dispensing with laws, or the execution of laws, by regal authority, as it hath been assumed and exercised of late, is illegal.

3. That the commission for erecting the late court of commissioners for ecclesiastical causes, and other commissions and courts of like nature are illegal and pernicious.

4. That levying money for or to the use of the crown, by pretence of prerogative, without grant of parliament, for longer time, or in other manner than the same is or shall be granted, is illegal.

5. That it is the right of the subjects to petition the King, and all committments and prosecutions for such petitioning are illegal.

6. That the raising or keeping a standing army within the kingdom in time of peace, unless it be with consent of parliament, is against law.

7. That the subjects which are protestants, may have arms for their defence suitable to their conditions, and as allowed by law.

8. That election of members of parliament ought to be free.

9. That the freedom of speech, and debates or proceedings in parliament, ought not to be impeached or questioned in any court or place out of parliament.

10. That excessive bail ought not to be required, nor excessive fines imposed; nor cruel and unusual punishments inflicted.

11. That jurors ought to be duly impanelled and returned, and jurors which pass upon men in trials for high treason ought to be freeholders.

12. That all grants and promises of fines and forfeitures of particular persons before conviction, are illegal and void.

13. And that for redress of all grievances, and for the amending, strengthening, and preserving of the laws, parliaments ought to be held frequently.

And they do claim, demand, and insist upon all and singular the premisses, as their undoubted rights and liberties; and that no declarations, judgments, doings or proceedings, to the prejudice of the people in any of the said premisses, ought in any wise to be drawn hereafter into consequence or example.

To which demand of their rights they are particularly encouraged by the declaration of his highness the prince of *Orange,* as being the only means for obtaining a full redress and remedy therein.

Having therefore an entire confidence, That his said highness the prince of *Orange* will perfect the deliverance so far advanced by him, and will still preserve them from the violation of their rights, which they have here asserted, and from all other attempts upon their religion, rights, and liberties.

II. The said lords spiritual and temporal, and commons, assembled at *Westminster,* do resolve, that *William* and *Mary* prince and princess of *Orange* be, and be declared, King and Queen of *England, France* and *Ireland,* and the dominions thereunto belonging, to hold the crown and royal dignity of the said kingdoms and dominions to them the said prince and princess during their lives, and the life of the survivor of them; and that the sole and full exercise of the regal power be only in, and executed by the said prince of *Orange,* in the names of the said prince and princess, during their joint lives; and after their deceases, the said crown and royal dignity of the said kingdoms and dominions to be to the heirs of the body of the said princess; and for default of such issue to the princess *Anne* of *Denmark,* and the heirs of her body; and for default of such issue to the heirs of the body of the said prince of *Orange.* And the lords spiritual and temporal, and commons, do pray the said prince and princess to accept the same accordingly.

III. And that the oaths hereafter mentioned be taken by all persons of whom the oaths of allegiance and supremacy might be required by law, instead of them; and that the said oaths of allegiance and supremacy be abrogated.

I *A. B.* do sincerely promise and swear, That I will be faithful, and bear true allegiance, to their Majesties King *William* and Queen *Mary:*

*So help me God.*

I *A. B.* do swear, That I do from my heart abhor, detest, and abjure as impious and heretical, that damnable doctrine and position, *That princes excommunicated or deprived by the pope, or any authority of the see of* Rome, *may be deposed or murdered by their subjects, or any other whatsoever.* And I do declare, That no foreign prince, person, prelate, state, or potentate hath, or ought to have any jurisdiction, power, superiority, pre-eminence, or authority ecclesiastical or spiritual, within this realm:

*So help me God.*

IV. Upon which their said Majesties did accept the crown and royal dignity of the kingdoms of *England, France,* and *Ireland,* and the dominions thereunto belonging, according to the resolution and desire of the said lords and commons contained in the said declaration.

V. And thereupon their Majesties were pleased, That the said lords spiritual and temporal, and commons, being the two houses of parliament, should continue to sit, and with their Majesties royal concurrence make effectual provision for the settlement of the religion, laws and liberties of this kingdom, so that the same for the future might not be in danger again of being subverted; to which the said lords spiritual and temporal, and commons, did agree and proceed to act accordingly.

VI. *Now in pursuance of the premisses, the said lords spiritual and temporal, and commons, in parliament assembled, for the ratifying, confirming and establishing the said declaration, and the articles, clauses, matters, and things therein contained, by the force of a law made in due form by authority of parliament, do pray that it*

*may be declared and enacted, That all and singular the rights and liberties asserted and claimed in the said declaration, are the true, ancient, and indubitable rights and liberties of the people of this kingdom, and so shall be esteemed, allowed, adjudged, deemed, and taken to be, and that all and every the particulars aforesaid shall be firmly and strictly holden and observed, as they are expressed in the said declaration; and all officers and ministers whatsoever shall serve their Majesties and their successors according to the same in all times to come.*

---

**The Founders' Constitution**
Volume 5, Bill of Rights, Document 1
http://press-pubs.uchicago.edu/founders/documents/bill_of_rightss1.html
The University of Chicago Press

 [Easy to print version.](http://press-pubs.uchicago.edu/founders/documents/bill_of_rightss1.html)

VI.
Proviso as to Persons whose Wives were Velvets, &c.
[Se. § I.]

AND be it pᵉryded and enacted by auᵗᵉrie aforesaid, that if the Wif of any pᵉon oꝛ psons were any velvet in the lynyng or other part of her gowne other then in the cuffes or purfels of suche gowneſ, or ellꝰ were any velvet in her kyrtell or were any peticote of silke, that then the husbande of eꝰy suche Wiff shall fynde one stoned horse of the stature above in this acte resyted, or shall incurre the aboveraide penaltie and forfaiture of tenne poundes to be levyed and receiꝰed as is afore declared : Provyded also that this Acte or any thing therin conteyned shall not extende to charge any pᵉon or psons whose Wif or Wiffes shall were any of the apparell or thingꝭ above rehersed during the tyme such Wif or Wyffes shalbe devorsyd from her or ther husbonde or husbondes, or shall willingly absent her self from her said husbound and daringe suche absence shall were any of the apparell or other thyngꝭ afore resyted : Provyded alwaies that heires wᵗin age being wardes whose landes teñtꝭ and hereditamentꝭ amount to the yerely value of CC li. shall not be compelled by auᵗᵉrie of this acte till they cũme to ther full age to kepe any horses, althoughe the wiffes of suche heires wᵗin age were any gowne of Sylke or any Frenche hood or Bonet of Velvet wᵗ any habilyment past or egge of Gold Perle or Stone or any chayne of gold about ther nekkꝭ or in ther plettꝭ or in any apparell of ther bodie; Any thing in this Acte to the contrary notwᵗstonding.

VII.
Proviso for replacing Horses killed in War, &c.

PROVYDED also that if all or any the horses kept by vertue of this acte shall happen to be kyllyd maymyd or lost in the ꝯvice of the Kingꝭ warres, That then in eꝰy suche case the owners of suche horse or horses so kyllyd maymed pisshed or lost in the warres shall have libᵗie, by the space of twoo yeres next after suche chaunce of kylling maymyng pisshing or losing ther horses, to pᵛide other horses in the stede and place of the horses so kylled maymed pisshed or lost in the Warres, wᵗout any daunger losse or penaltie of this acte; Any thing in this acte to the contrary therof notwᵗstonding.

VIII.
Cart-Horses and Sumpter-Horses.

PROVYDED also that cart horses or sumpter horses shall not be takyn reputed or reckned for any suche horses whiche any pᵉon is or shalbe bounden to kepe by vertu of this acte.

---

## CHAPTER VI.

### AN ACTE concerninge Crosbowes and Handguns.

Recital of Stat. 25 H.VIII. c. 17, against shooting with Cross-bows and Hand-guns :

Violation thereof ;

WHERE in the Parliament holden at Westñi the fyftenthe daye of Januarie in the twenty fyve Yere of the Kinges most gracious Raigne, and there contynued and kepte untill the thirtieth daye of Marche then next ensuynge, amonge diꝰse and sondrie holsome and lawdable Actꝭ Statutꝭ and Ordyn'ncꝭ one Statute and Ordyn'nce was made and ordeyned for the avoydinge and eschewinge of shotinge in Crosbowes and Handguns; synce the makinge of whiche Acte diꝰse malicious and evill disposed psons not only ꝑnumynge wilfullye and obstynatlye the violaꝯon and breach of the saide Acte, but also of their malicious and evill disposed myndes and purposes have wilfully and shamefully cõmytted pᵖetrated and done diꝰse detestable and shamefull murthers roberies felonyes ryotꝭ and routꝭ with Crosbowes little shorte handguns and little hagbuttꝭ, to the great pill and contynuall feare and daunger of the Kingꝭ most lovinge subjectꝭ, and also diꝰse Kepers of Forestꝭ Chases and Parkꝭ aswell of our saide Soveraigne Lorde as other his Nobles and Cõmons and diꝰse Gentlemen Yomen and Servingmen nowe of late have layde aparte the good and laudable exercise of the longe bowe, whiche alwaye heretofore hathe bene the suertie savegarde and contynuall defence of this Realme of Englande, and an inestimable dread and terror to the Enemyes of the same, and nowe of late the saide evill disposed psons have used and yet doo daylie use to ryde and goe in the Kingꝭ highe Wayes and elswhere, havinge with them Crosbowes and little handguns, ready furnished with Quarrellꝭ Gunpowder fyer & touche to the great pill and feare of the Kingꝭ most lovinge Subjectꝭ : FOR REFORMAꝯON wherof be it enacted ordeyned and established by the Kinge our Soveraigne Lorde the Lordes spuall and temporall and the Cõmons in this pᵖent Parliament assembled and by thauctoritie of the same, in maner and fourme followinge That yᵗ to saye ; that noe pᵉon or psons of what estate or degree he or they be, excepte he or they in their owne right or in the right of his or their Wyeffꝭ to his or their owne uses or any other to the use of any suche pᵉon or psons, have landes teñtꝭ fees annuyties or Officꝭ to the yerely value of one hundred poundꝭ, from or after the laste daye of June next cõmynge, shall shote in any Crosbowe handgun hagbutt or demy hake, or use or kepe in his or their houses or elswhere any Crosbowe handgun hagbut or demy hake, otherwise or in any other manner then yᵗ hereafter in this pᵖent Acte declared, uppon payne to forfeyt for everie tyme that he or they so offendinge contᵉrie to this Acte tenne poundes.

Penalty on Persons, having less than £100. per Annum, keeping or using Cross-bows, &c. &c.

II.
Length of Hand-guns, &c. to be kept.

AND furthermore be it cnacted by thauctoritie aforesaide that no pᵉon or psons, of what estate or degree soever he or they be, from or after the saide laste daye of June shall shote in carye kepe use or have in his house or els where any handgune other then suche as shalbe in the stock and gonne of the lenghe of one hole Yarde, or any hagbutt or demyhake other then suche as shalbe in the stock and gune of the lenghe of thre quarters of one Yarde, uppon payne to forfeyt for everie tyme that he or they shall carie use or have anye suche Gun being not of the lenghe of one whole Yarde or hagbutt or demyhake beinge not of the lenghe of thre quarters of a Yarde, Tenne poundꝭ sterlinge.

Those of less Length may be seized and cestroyed by Persons having £100. a Year.

And that it shalbe laufull to everie pᵉon and psons, wᵗʰ have landes teñtꝭ fees annuyties or officꝭ to the yerelye value of one hundred poundꝭ as yᵗ aforesaide, to seise and take everie suche Crosbowe, and also everie handgun beinge in stock and gune shorter in lenghe then one whole Yarde and everie hagbutt and demyhake beinge shorter in lenghe then thre quarters of a Yarde, or any of them; from the Kepinge or possession of everie suche Offendor contᵉrie to the forme of this Acte, and the same Crosbowe or Crosbowes to kepe and reteyne to his or their owne

me, and also the same handguns hagbutt̃ and demyhak̃ so seised and taken within twenty dayes next after the same seisure or takinge to breake and distroye, upon peyne of fourtye Shilling̃ for everie Gune so seised and not broken and destroyed, and the same so broken and destroyed to kepe & reteyne to his or their owne use.

And be it further enacted by thauctoritie aforesaide, that noe p̃son or p̃sons, other then suche as have land̃ tent̃ rent̃ fees annuyties or Offic̃ to the yerely value of one hundred Pound̃ as ys aforesaide, from or after the saide laste daye of June, shall carrie or have, in his or their Jorney goinge or ridinge in the King̃ highe waye or elswhere, any Crosbowe bent or Gune charged or furnished withe Powder fier or touche for the same, Except it be in tyme and Service of Warre, upon payne to forfeyt for everie suche Offence tenne pound̃; this p̃sent Acte or any thinge therin conteyned to the contr̃ie notwithstandinge.

III.
Penalty upon unqualified Persons riding, &c. with Guns charged, &c.

And be it further enacted by thauctoritie aforesaide, that no p̃son or p̃sons from the saide laste daye of June shall in anywise shote in or withe anye handgune demyhake or hagbutt at any thinge at lardge, within any Cittie Boroughe or Markett Towne or within one quarter of a myle of anny Cittie Boroughe or Markett Towne, excepte it be at a Butt or Banck of earth in place convenient, or for the defence of his p̃son or house, upon payne to forfeyte for everie suche Shott tenne poundes; this p̃sent Acte or anny thinge therin conteyned to the contrarie notwithstandinge.

IV.
None shall shoot at large in Cities, &c.

And be it further enacted by thauctoritie aforesaide, that noe p̃son or p̃sons of what estate or degre soever he or they be, shall from or after the saide laste daye of June cōmaunde any of his or their servaunt̃ to shote in any Crosbowe handgune hagbutt or demyhake of his or their saide Masters or of any other p̃sons, at any deare fowle or other thinge excepte it be only at a butt or bank of Earth or in the tyme of Warre as ys aboveraide, upon payne to forfeyt for everie suche offence tenne pound̃ : The one moytie of all w̃ forfeytures and penalties in this p̃sent Acte above specified shalbe to the Kinge our Soveraigne Lorde his heires and Successors, and thother moytie thereof to the partie that will sue for the same by bill playnt accōn of Debte or Informacōn in anny of the King̃ Court̃ of Recorde in whiche auyte noe Essoyne ptecōn nor Wager of lawe shalbe allowed.

V.
None shall order their Servants to shoot at Deer, &c. with Hand-guns.

Application of Penalties.

Provided alwaye and be it enacted by thauctoritie aforesaide, that it shalbe laufull from henceforthe to all Gentlemen Yeomen and Servingemen of everie Lorde or Lord̃ s̃uall or temporall and of all Knight̃ Esquiers and Gentlemen, and to all the Inhabitaunt̃ of Citties Boroughes and Markett Townes of this Realme of Englande, to shote withe any handgune Demyhake or hagbutt at anye butt or bank of Earth onlye in place convenient for the same, so that everie suche handgune Demyhake or hagbutt be of the seṽall lenghes aforesaide and not under ; and that it shalbe laufull to everie of the saide Lorde and Lord̃ Knight̃ Esquiers and Gentlemen, and the Inhabitaunt̃ of everie Cittie Boroughe and Markett Towne, to have and kepe in everie of their houses any suche handgune or handgunes of the lenghe of one whole Yarde, or any hagbutt or Demyhake of the lenghe of thre quarters of a Yarde as ys aforesaide and not under, to thintent to use and shote in the same at a butt or banke of Earthe onlye, as ys abovesaid, wherbye they and everie of them by thex̃cise thereof in forme abovesaid may the better syde and assist to the defence of this Realme when nede shall requyre; this p̃sent Acte or any thinge therein conteyned to the contr̃ie notwithstandinge.

VI.
Shooting at Butts with Hand-guns allowed.

And be it further enacted by thauctoritie aforesaide, that it shalbe laufull to everie p̃son and p̃sons whiche dwelleth and inhabiteth in anye house standinge and being sett distant twoo furlong̃ from any Cittie Boroughe or Towne, to kepe and have in his saide house for the onelye defence of the same handgunes hagbutt̃ and demyhakes beinge of the severall lenghes aforesaide and not under, & to use and exc̃ise to shote in the same at any butt or bancke of earthe nere to his house and not otherwise; Any thinge conteyned in this Acte to the contr̃ie notwithstandinge.

VII.
Hand-guns allowed out of Cities for Defence of Houses, &c.

And furthermore the King̃ most lovinge Subject̃ the Lordes s̃uall and temporall and the Cōmons in this p̃sent Parliament assembled, most humblye doe beseche the King̃ Majestie that it be further enacted by thauctoritie aforesaide, that all tres patent̃ Fraternyties, and also all other placard̃ lycences and bill̃ assigned heretofore had made or signed by his Highnes or by any other authorised by his Highnes tres patent̃ under his Great Seale to give licence and placarde to shote in Crosbowes & handgunes or any of them, shalbe from and after the saide laste daye of June frustrate voyde and of none effecte.

VIII.
Patents, &c. to shoot in Crosbows, &c. declared void. [*But see* § XIV.]

And also that it may be further enacted by thauctoritie aforesaide that the saide Statute made in the saide xxṽᵃ Yere of the King̃ most gracious Raigne, and all other Statut̃ heretofore made and p̃vided for thavoydinge and restreynt in shotinge of Crosbowes and handguns or for any of them, or for the usinge and kepinge of the same, be from henceforth utterlie voyde and of none effecte : Provided alwayes that everie p̃cesse suyte or Informacōn conceaved cōmenced and nowe dependinge for any Offence done contr̃ie to the forme of the saide Statute made in the said xxṽᵗᵉ Yere of the King̃ moste noble Raigne, or of any other Statute made (') p̃vyded for and concerninge the shotinge in Crosbowes and handguns, not repealed, and for the kepinge of the same, shalbe as good and effectuall to the parties that have comenced the (') and shall stande and be in suche forme effecte and condicōn as if this Acte had never bene made.

IX.
25 H. VIII. c. 17, &c. repealed ;

Except as to Suits depending.

Provided also that this Acte or any thinge therin conteyned be not in any wise hurtfull or p̃judiciall to any p̃son or p̃sons nowe beinge or that hereafter shalbe appoynted by the King̃ Highnes, to kepe receyve or take any Crosbowes or Handguns that shalbe forfeyted or taken within the precinc̃te or libtye of the King̃ forrest̃ park̃ or chaces, but that he or they may laufully kepe and reteyne the same Crosbowes or Handguns from tyme to tyme untill suche tyme

X.
Proviso for Persons keeping Crossbows, &c. seized in Forests :

---

' or *O.*                    * same *O.*

**for Makers of Crossbows, &c.**

at the further pleasure of the Kingᵉ Highnes in that behalfe be to eṽy suche pson shewed & declared : Provided also that this Acte extende not to the makers of Crosbowes or Handguns, but that they may laufully kepe Crosbowes and Handguns Hagbuttᵉ and Demyhakes in their houses, and shott in the same onlye for provinge & assayinge of them at a butt or bank of earthe in the place convenient and not otherwise, so that the saide Handguns Hagbuttᵉ & Demyhakᵉ

**and Merchants dealing therein.**

be of the seṽall lenghes in Stock and Gune as ys above lymitted : Provided also that this Acte nor any thinge therin conteyned extende not or be p̃judiciall to any Marchauntᵉ whiche have or shall have any Crosbowes Handguns Hagbuttᵉ and Demyhakᵉ or any of them to sell within this Realme and to none other use, so that the same Handguns Hagbuttᵉ and Demyhakᵉ be of the seṽall lenghes in Gune and Stocke as ys above lymitted and not under.

**XI.**
**Proclamation of the Act in each County.**

Provided also that noe manner of parson rune in any daunger or take hurte by reason of any penaltye or forfeiture conteyned in this Acte untill suche tyme as pclamaĉŏn be made of the same Acte, within the Countye where the partie that shall or maye offende contʳie to this Acte dwelleth, by the space of twentye dayes nexte after the makinge of the saide pclamaĉŏn.

**XII.**
**Housekeepers not liable to Penalty for their Lodgers keeping Crossbows, &c.**

Provided also that yf any manner of pson bringe or cause to be brought withe him into his lodginge or in or to any other mans house any Crosbowe or Handgune, that then the penaltye and forfeyture, yf any suche be or hereafter shalbe forfeited by reason of this Acte, to rune and be onely upon the bringer of the saide Crosbowe and Handgune and not to the owner of the same lodginge or house, yf the saide [howner ¹] of the said lodging or house cause thes aide bringer thereof to take & carrie awaye the saide Crosbowe or Handgune agayne withe him at his departinge ; anye thinge in this Aĉte made to the contʳie notwithstandinge.

**XIII.**
**Offenders may be arrested by any Persons.**

And be it also enacted by thauctoritie of this p̃sent parliament that if any pson or psons, from or after the laste daye of June next comynge, see or fynde any pson or psons offendinge or doinge contʳie to the forme and effecte of this Acte, that then it shalbe laufull to everie suche pson or psons pceyvinge fyndinge or seinge anye suche pson or psons so offendinge contʳie to the fourme of this acte, to arrest and attache eṽy suche offendor or offendors and to bringe or convey the same to the next Justice of Peace of the same Countye where the said offendor or offendors shalbe founde soe offendinge ; And that the same Justice of Peace upon a due exiaĉŏn and proeff thereof before him had or made by his discreĉŏn shall have full power and aucthoritie to sende or cŏmytt the same offendor or offendors to the next Gaole, there to remayne till suche tyme as the saide penaltye or forfeyture shalbe trulye contented and paide by the saide offendor ; the one moytie of the same penaltye to be paide to the Kingᵉ Highnes and thother moytie thereof to the first bringer or conveyer of the saide offendor to the same Justice of Peace.

**XIV.**
**Licences, if given, (See § VIII.) shall specify at what Boasts, &c. the Party licensed may shoot, and he shall give Security to obey such Regulations.**

And be it further enacted by thauctoritie aforesaide, that yf any pson or psons doe at any tyme hereafter obteyne gett or purchase, of the Kingᵉ Majestie his heires or successors, any placarde licence or bill assigned to shote in any Crosbowe Handgun Hagbutt or Demyhake contʳie to the tenor purporte and effecte of this p̃sent acte, that then there shalbe conteyned in everie suche placarde licence and bill assigned, at what beastᵉ fowles or other thinges the saide pson or psons so obteyninge any suche placarde licence or bill assigned shall shote, withe any Crosbowe Handgune Hagbutt or Demyhake, or els that everie suche placarde licence and bill assigned hereafter to be obteyned gotten or purchased shalbe clerely voyde frustrate and of none effecte : And also that everie suche pson or psons so obteyninge any suche placarde licence or bill assigned, before they shote in any suche Crosbowes Handgun Hagbutt or Demyhake, in any suche manner or forme as shalbe mencioned in any suche placarde licence or bill assigned, shalbe bounden in the Kingᵉ Courte of Chauncerie by recognizaunce in the some of twenty poundᵉ to the Kingᵉ use withe and upon condiĉŏn that he so obteyninge or havinge the saide licence placarde or bill assigned, shall not shote in any Crosbowe Handgune Hagbutt or Demyhake at any other beastᵉ or fowles then in any suche placarde licence or bill assigned shalbe conteyned and specified, and els all suche placardes licencᵉ and billᵉ assigned so hereafter to be made to any pson or psons not beinge so bounden by recognizaunce in the Courte of Chauncerie as is aforesaide, to be utterlie voide and of none effecte.

**XV.**
**Recovery and Application of Penalties.**

And be it further enaĉted by thauctoritie aforesaide, that it shalbe laufull to all Justicᵉ of Peace in their sessions and to all Stewardes and Baylieffᵉ in their seṽall leetᵉ and lawe dayes to enquyre heare and determyne eṽy suche offence after the saide laste daye of June to be cŏmytted and done contʳie to the tenor of this p̃sent Acte ; So that alwayes noe lesse fyne then tenne poundes be assessed upon everie suche p̃sentment and conviĉŏn made accordinge to the due course of the lawe ; the same fyne so by the same Justicᵉ of Peace upon everie suche p̃sentment and conviĉŏn made before them in their Sessions, to be payde and levyed onely to the Kingᵉ use ; and the one moytie of everie fyne to be assessed by the Stewardᵉ or Baylyffᵉ of any leete or lawe daye, upon everie p̃sentment and conviĉŏn before them, to be payde and levyed to the use of the Kinge our Soveraigne Lorde, and (¹) the other moytie the one halfe to the owner of the saide leete or lawe daye by distresse or acĉŏn of debte, and thother halfe of the same seconde moytie of the same fyne, to be to the partie that will pursue for the same in any of the Kingᵉ Courtᵉ by bill playnte informaĉŏn or acĉŏn of debte, in the whiche none Essoyne pteĉŏn nor wager of lawe shalbe allowed.

**XVI.**
**Penalty on Jurors charged to enquire into Offences, who shall conceal the same, 20 s.**

And be it further enacted, that yf any Jurie beinge sworne and charged to enquyre for the Kinge our Soṽaigne Lorde before anye Justicᵉ of the Peace or Stewardᵉ of leetᵉ or lawdayes, of any offencᵉ cŏmytted or done contʳie to this p̃sent Aĉte, doe wilfullie conceale any of the same offencᵉ, that then the saide Justicᵉ Stewardᵉ or Baylliffᵉ before whom any concealment shalbe had and done, shall have auctoritie by vertue of this p̃sent Acte from tyme to tyme to chardge and sweare an other Jurie of twelve or mo good and substantiall honest psons to enquire of everie suche concealment, and if any suche concealment be founde and presented by the saide Jurie so chardged to enquyre of the same, that

----
¹ owner O.       ¹ of O.

Compendium_Supplemental Brief
Page 109

then everie one of the saide fyrste Jurie that so did conceale the same, shall leese and forfeyt for everie suche concealement of eṽy suche offence twenty shillingƚ ; All whiche forfeytures and penaltyes of twentye shillingƚ for everie such concealment of everie suche offence so found and p̱sented before the same Justicƚ of Peace shall holye be levyed and payde to the Kingƚ use, and the moytie of all the same forfeytures and penaltyes of twenty shillingƚ, so founde and p̱sented before the Stewardƚ or Bayliffƚ of any leete or lawdaye, shalbe levied and paide to the use of the owner of the saide leete or lawdaye by distresse or accõn of debte, and thother moytie thereof to be to the partie or parties that will sue for the same by accõn informacõn bill or playnte in any of the Kingƚ Courtƚ, in the whiche accõns informacõns billƚ or playntƚ no wager of lawe essoyne nor p̱teccõn shalbe allowed.

PROVIDED alwaies and be it enacted by thauctoritie aforesaide, that yf any p̱son or p̱sons hereafter in any parte do offende or do contr̄ie to the purvewe and remedy of this Acte, whereupon cause of Accõn for the same offence shalbe geven to the Kinge his heires or successors or to any other p̱son or p̱sons that will sue by vertue of this Acte for the punyshment of the saide offence or forfeytures, that yf the Kinge our Soveraigne Lorde his heires or successors within one yere next and ymediatlye after suche offencƚ and forfeytures had and made do not pursue their accõn or accõns so given by this Acte or cause exãlacõn upon suche defaultƚ and offencƚ to be had and made before their counsaile, or other p̱sentmentƚ thereof to be had accordinge to the meanynge of the same Acte, and everie other p̱son whiche hereafter by vertue of this Acte maye have accõn or accõns suyte or informacõn upon this Statute within halfe a yere next and ymediatlye after suche offencƚ or forfeitures had and made do not comence their suytƚ informacõn accõns or p̱sentmentƚ of and upon the said forfeytƚ by accõn or otherwise as in this p̱sent Acte ys lymited and declared, that then aswell the Kinge our Soṽaigne Lorde his heires and successors, after one yere next after suche offencƚ and forfeytƚ had and made yf no suyte in his or their name be taken by accõn or otherwise as ys before exp̱ssed before the same yere ended & det̄myned, as everie other p̱son after halfe yere next after like Offencƚ had and done in the fourme aforesaide yf noe suyte thereupon be taken by none of them in fourme above declared, be utterly excluded and debarred of their saide suytƚ accõns Informacõns and exãiacõns to them gyven by vertue of the saide Acte, and the partyes and eṽy of them so offendinge shalbe of all suche Offencƚ and forfeytƚ clerely dischardged and quytt ; Any thinge in this Acte comprised to the contr̄ie notwithstandinge.

PROVIDED alwayes and be it enacted by thauctoritie aforesaide that this p̱sent Acte ne any thinge therin conteyned shall in anywise extende or be p̱judiciall unto the Kingƚ Subjectƚ resident or inhabitinge nere unto the Coastƚ of the Sea in any parte of this Realme, their houses beinge not above fyve myles distant from the same Costƚ, nor also to any of the saide Subjectƚ inhabitinge within twelve myles of the borders of Scotlande, nor to any the Kingƚ Subjectƚ Inhabitauntƚ of the Towne and Marches of Callice, nor to any of the Inhabitᵃuntƚ of the Isles of Jersey Gernesey Anglesey and the Isles of Weight and Man, but that it shalbe laufull for everie of the saide Inhabitauntƚ at all tymes hereafter to have excīse and use their handguns hagbuttƚ and demyhakes of the lenghes abovesaide within the lymyttƚ and Isles abovesaide, so that it be at noe manner of Dere heron Shovelet fesant partriche Wild Swanne or Wilde Eike or any of them ; this p̱sent Acte or any thinge therin conteyned to the contr̄ie notwithstandinge.

PROVIDED also that this Acte ne any thinge therin conteyned be in anywise hurtfull or p̱judiciall to any Ṣv̄nte or p̱son that hereafter, from the saide laste daye of June, shall bend beare carrie charge use or assaye anye Crosbowe or any handgun demyhake or hagbutt of the lenghes abovesaide, by the cõmaundment of his Lorde [and '] Master so that the saide Ṣv̄nte or p̱son doe not shote at any fowle Dere or other Game of what Kynd or nature soever they be ; nor also to any suche Ṣv̄nte p̱son or p̱sons that shall after the saide last daye of June beare or convey any Crosbowe handgun hagbutt or Demyhake of the lenghes aforesaide to any place or places, by the comaundment of his lorde or master that maye shote by auctoritie of this Acte, to be amended repayred delyvered or assayed ; so that the saide Servaunte or other p̱son so bringinge or conveyinge the saide Crosbowe handgun hagbutt or demyhake have redye to shewe to eṽy p̱son requiring the sight thereof one licence in Writinge sealed or subscribed by his saide Lorde or Master to carrie and convey the same Crosbowe handgun hagbutt or demyhake to thintent to be amended repayred assayed or delivered as ys aforesaide.

PROVIDED alwaies that this Acte or any thinge conteyned therein shall not extende to any Owner of any Shippe, for having or kepinge of any handgun hagbutt or demyhake of the seṽall lenghes in this Acte exp̱ssed or under, only to be had and occupied within their Shippe or other Vessell, or for the carriage and recarriage of them or any of them on lande, or kepinge of them for the onlye excīse and occupyinge of them within their saide Shippe or Vessell ; Anye thinge in this Acte to the contr̄ie in any wise notwithstandinge.

* or O.

Case 3:19-cv-01662-BEN-JLB   Document 53   Filed 12/01/22   PageID.990   Page 115 of 182

## CHAPTER I.

An Act for the utter abolicion of all memory of Hostilitie and the Dependances thereof beweene England and Scotland, and for the repressinge of occasions of Discord and Disorders in tyme to come.

**For promoting Union between England and Scotland, certain English Acts repealed ; viz.**
**4 H. V. st. 2. c. 7.**
**Letters of Marque, against the Scots.**

FOR the honour weale and good of theis two mightie famous and auncient Kingdomes of England and Scotland, and for the furtheraunce and advancement of the happie Union already begun in his Majesties Royall pson : Be it enacted by the Kinges most excellent Majestie w^th the Assent of the Lord^es Spirituall and Temporall and the Cõmons in this p̃sent Parliament assembled and by the Authoritie of the same, That one Act made in the fowrth yeere of the Reigne of King Henrie the Fifth, whereby it is enacted, that tres of Marte or Reprisall be granted against the People of Scotland, in case where the Subject^es of England have beene spoyled and have complayned and not received Redresse, shall for soe much thereof as soe concerneth the People of Scotland, be utterlie repealed and made void : And also that one Proviso conteyned in an Act made in the three and thirteth yeare of the Reigne of Kinge Henry the Eighte, by which Proviso the King^es Majesties Subject^es inhabitinge within Twelve Myles of the Borders of Scotland are allowed and p̃mitted to use Crossebowes Handgunns Hackbutt^es or Demyhakes, or to use or keepe in his or their Howses or elsewhere any such Crossebowes Handguñes Hackbutt^es and Demyhakes, for soe much of the said Proviso as soe concerñeth such as shall inhabite within Twelve Miles of the said late Borders, shalbe utterlie repealed and made void.

**II.**
**Repeal of certain other English Acts, viz.**
**7 Ric. II. c. 16.**
**Importation of Arms, &c. into Scotland;**
**11 H. VI. c. 5.**
**March Law ;**
**7 H. VII. c. 6.**
**Scotchmen leaving England ;**
**23 H. VIII. c. 16.**
**1 Eliz. c. 7.**
**exporting Horses to Scotland ;**
**2, 3 P. & M. c. 1.**
**23 Eliz. c. 4.**
**letting Lands to Scotchmen.**

**General Repeal of all other unfriendly Laws.**

And be it further enacted by the Authoritie aforesaid, That theis other Statutes hereafter followinge, That is to say, One Act made in the seaventh yeare of the Raigne of Kinge Richard the Second, whereby it is enacted, That noe Armour Victuall or other Refreshment be caried into Scotland, uppon paine of seizure or forfeiture ; And one other Act made in the one and thirteth yeere of the Reigne of Kinge Henry the Sixt, wherebie it is enacted, That March Lawe be not used out of the Circuit of the Counties of Northumbland Cumberland and Westm̃land or the Towne of Newecastle ; And one other Statute made in the seventh yeere of the Reigne of Kinge Henry the Seaventh, whereby it is enacted, That Scottishmen should avoyde out of the Realme of England within a tyme p̃fixed ; And one other Statute made in the three and twentieth yeere of the Reigne of Kinge Henrie the Eighte ; And a like Statute made in the first yeere of the Reigne of the late Queene Elizabeth, whereby the conveyinge of Horses out of England into Scotland is made Felonie ; And one other Statute made in the second and third yeeres of the Reigne of Kinge Philip and Queene Mary ; And the like Statute made in the three and twentieth yeere of the Reigne of the late Queene Elizabeth, wherebie it is enacted, That noe Landes or Tenement^es be lett to Scottishmen uppon the Borders ; shalbe utterlie abrogated repealed and made void : And if there had appeared any other Statute of this Realme of England, wherein any thinge is ordeyned enacted or established expresly and by Name against Scottishmen as Enimyes, or Scotland as an Enemye Countrye, to the King^es of this Realme or the State of the same, Wee should for soe much of them as had soe concẽned Scottishmen or Scotland have utterly abrogated and adnulled the same, seinge all Enmitie and Hostilitie of former tymes beweene the two Kingdomes and People is nowe happily taken away, and under the Goverment of his Majestie, as under one Parent and Head turned into frat̃nitye or brotherlie Frindship.

**III.**
**The Effect of this Act to depend on the Repeal of certain Scotch Acts, viz.**
**Temp. Jas. I.**
**Visiting England ; Assurance with English ;**
**Buying English Goods.**
**Temp. Jac. II.**
**Visiting England ; Englishmen visiting Scotland ;**
**Supply to Berwick ;**
**Defence against England.**
**Temp. Jac. III.**
**Resisting Ed. IV. ;**
**Supply of Berwick.**
**Temp. Mary,**
**Assurance with English.**
**Temp. Jac. VI.**
**Marriage of Borderers ;**
**English holding Land in Scotland, &c.**

Provided nevertheles and be it enacted by the Authoritie of this p̃sent Parliament, That none of the Articles Braunches or Clauses abovesaid in this Act before conteyned and exp̃ssed, shall take effect or be in force or in any wise be deemed or expounded to take effect or be in force to any intent construcc̃õn or purpose untill theis Act^es of Parliament of the Realme of Scotland hereafter followinge, That is to say, One Act made in the tyme of James the First, Kinge of Scotland, by which it was enacted, That all psons remayninge in England without the King^es License did cõmytt Treason ; One other Act made in the tyme of the said Kinge James the First, wherebie any Assurance with Englishe men for takinge P̃teccion from them for Landes or Good^es, is Treason ; One other Act [in^es] the same King^es tyme, inhibiting all buyinge and sellinge of Englishe Good^es forbidden, under payne of Escheate ; One other Act made in the tyme of James the Second, Kinge of Scotland, that none should passe into England in tyme of Warre w^thout Licence, under payne of Treason ; One other Act made in the Reigne of the saide Kinge James the Second conteyninge that noe Englishman come into Scotland without conduct, and that noe Scottishman sit under Assurance w^th them ; One other Acte of the same King^es tyme, That noe Scottishman supply Barwick or Roxburgh, under paine of Treason ; One other Act made in the tyme of the said Kinge James the Second, That all men be ready for Defence of the Realme against England ; Two Act^es made in the tyme of James the Third, King of Scotland, for resisting Kinge Edward the Fourth ; One other Act made in the tyme of the said Kinge James the Third, conc̃ning the upholding of Barwicke and Garisons upon the Borders ; One Act made in the Reigne of Mary late Queene of Scotland, by which it was enacted, That Scottishmen are charged to leave Assurance w^th Englishmen ; One other Acte made in the tyme of the saide Queene Marie, conc̃ninge assured Scottishmen assistinge the English Armye ; One Act made in the Parliament of Scotland, in the tyme of the most happie Reigne of our most gracious Soveraigne Lord the Kinge that nowe is, conteyninge that the Scottish Borderers are discharged to marry English Borderers Daughters ; And lastlye one other Act made in the tyme of our said Sovereigne Lorde the Kinge, injoyninge the Warden to put in a Bill the Names of all Englishmen that occupie Land^es in Scotland and seeke Redresse accordinge to the Treaties ; shall by Act of Parliament of the said Realme of Scotland be utterlie repealed frustrate and made voide ; And unrill alsoe the said

Compendium_Supplemental Brief

Page 111

Digitized by Google      Original from PENN STATE

force & vtue en toutz pointz; et outre ceo est auxint assentuz q si ascun alien est purchacez ou desore purchace ascun benefice de Seinte Esglise Dignite ou autre & en pprie psone Pigne possession dicelle ou loccupie de fait, deinz mesme le Roialme, soit il a son oeps ppre, ou al oeps dautri sanz especiale congie du Roi, soit il compris en mesme lestatut, & outre ceo encourge en toutz pointz tielx peines & forfaiture come sont ordeignez p un autre estatut fait en lan xxvᵉ del regne luy noble Roi E. aiel nře tᵉ le Roi qore est, contre ceux qi purchacent prisions dabbeies ou Priories; et enoutre au fyn q̃ tielx licences ne se facent desore enavant, le Roi voet & comande a toutz ses lieges & autres qils lour abstiegnent de cy enavant de luy prier dascuna tielx licences doner; et si voet auxi le Roi luy mesmes abstiegner de doner ascune tiele licence, durantes les guerres horspris au Cardinal de Naples ou a autre especiale psone a qi le Roi soit p especiale cause tenuz.

xiij.    Item est ordeignez & assentuz & le Roi defende q̃ desormes nuł hōme chivache deinz le Roialme armez, encontre la forme de lestatut de Norhamptoñ sur ce fait, ne ovesq lancegay deinz mesme le Roialme, les queux lancegayes soient de tout oustez deinz le dit Roialme come chose defendue p nře tᵉ le Roi, sur peine de forfaiture dicelx lancegaies armures & auťs herneys quelconqes et mayns & possession de celluy qi les porťa desore deinz mesme le Roialme contre cestz estatut & ordinances sanz especiale congie de Roi nře tᵉ.

xiiij.    Item est briefs de p̄munire faƈ est assentuz & accordez q̃ ceux q̃ queux tielx briefs sont portez, & qi sont de p̄sent hors de Roialme & sont de bone fame & aient faitz lo' geħalx atto'nes devant lo' depir, q̃ le Chaunceller [Dengleťre '] pur le temps esteant, p ladvis des Justices purra g'ntier q̃ mesmes les psones purront apparoir & respondre & faire & resceivre ce q̃ la ley demande, p lo' geħalx atto'nes avantditz eiavant come es autres cas & quereles; et ceux psones qi decy enavant passeront p lincident nře tᵉ le Roi & soient auxint de bone fame, q̃ a lo' requeste le dit Chaunceller p ladvis des Justices lour purra g'ntier defaire lo' geħalx atto'nes en la Chancellerie p patent du Roi devant lo' passer, [a respondre'] sibn es ditz briefs de p̄munire faƈ, come en auťs quereles en quel cas toutes voies soit exp̄sse mencion [faite'] des briefs & quereles de p̄munire faƈ; et celle patente ensi faite, purront des lors les ditz atto'nes en absence de lo' Meistres, respondre p eux & auťs atto'nes desouz eux, devant quelconq, juge du Roialme & faire & resceivre el dit cas, siavant come en nuł autre cas nientcontresteant ascun estatut fait a contr'ie avant ces heures.

Item sur la grevouse pleinte qest faite des meynteno's des quereles & chaumpto's; est ordeignez & assentuz q̃ lestatutz est faitz en les ans du regne le Roi Edward aiel nře dit tᵉ le Roi primer & quart, et auxint en lan de nře tᵉ le Roi qore est primer, soient tenuz & gardez & duement executz en toutz pointz.

Item est assentuz & le Roi defende estroitement q̃ decy enavant nulle psone aliene ou denszein de quelconq, estat ou condicion qil soit amesne ou envoie ou face amesner ou envoier p ťre ou p meer hors du Roialme Dengleťre as ascunes pties Descoce en prive ne en appt ascune malle darmure de blee de brees ne dautre vitaille ou dautre refresshchement quelconq, sur peine de forfaiture de mesmes les vitailles armures & des autres choses avantdites ensemble avec les niefs vesseulx charettes & chivalx qi les portent ou amesment, ou de la vroie value dicelles, si ensi ne soit q̃ le

¹ ¹ ¹ Interlined on the Roll.

Force and Effect in all Points; and moreover it is assented, That if any Alien have purchased, or from henceforth shall purchase any Benefice of Holy Church, Dignity, or other Thing, and in his proper Person take Possession of the same, or occupy it himself within the Realm, whether it be to his own proper Use, or to the Use of another, without especial Licence of the King, he shall be comprised within the same Statute; and moreover shall incur all Pains and Forfeitures in all Points as is before ordained by another Statute made the Five and twentieth Year of the noble King Edward the Third, Grandfather to our Lord the King that now is, against them that purchase Provisions of Abbeys or Priories; and to the Intent that such Licences shall not be from henceforth made, the King willeth and commandeth to all his Subjects and other, that they shall abstain them from henceforth to pray him for any such Licence to be given; and also the King himself will refrain to give any such Licence during the Wars, except to the Cardinal of Naples, or to some other special Person to whom the King is beholden for a special Cause.

<span style="font-size:smaller">who shall also be liable to the Penalties of 25 Ed. III. st. 5. c. 22.</span>

<span style="font-size:smaller">The King's Licence to the contrary shall not be asked for.</span>

ITEM, It is ordained and assented, and also the King doth prohibit, That from henceforth no Man shall ride in Harness within the Realm, contrary to the Form of the Statute of Northampton thereupon made, neither with Launcegay within the Realm, the which Launcegays be clearly put out within the said Realm, as a Thing prohibited by our Lord the King, upon Pain of Forfeiture of the said Launcegays, Armours, and other Harness, in whose Hands or Possession they be found that bear them within the Realm, contrary to the Statutes and Ordinances aforesaid, without the King's special Licence.

<span style="font-size:smaller">XIII. No Man shall ride armed, contrary to the Statute 2 Edw. III. chapter 3.</span>

ITEM, In Writs of Præmunire facias, It is assented and agreed, That they against whom such Writs be sued, and who at this Time be out of the Realm, and be of good Fame, and have made their general Attornies before their departing, that the Chancellor of England for the Time being, by the Advice of the Justices, may grant, that the same Persons may appear to answer, to do, and to receive that Thing which the Law demandeth, by their general Attornies aforesaid, as well as in other Causes and Quarrels; and those Persons which from henceforth shall pass by the King's Licence, and be of good Fame, that at their Request the Chancellor, by the Advice of the Justices, may grant to them to make their general Attornies in the Chancery by the King's Patent, before their Passage, to answer as well in the said Writs of Præmunire facias, as in other Writs and Plaints; in which Case express Mention shall be made at all Times of the Writs and Plaints of Præmunire facias; and this Patent so made, the said Attornies from henceforth, in Absence of their Masters, may answer [for them, and make '] other Attornies under them, before any Judge of the Realm, [to'] do and receive in the said Case as much as in any other Case or Matter, notwithstanding any Statute made to the contrary heretofore.

<span style="font-size:smaller">XIV. For enabling Parties out of the Realm to appoint Attornies in Writs of Præmunire.</span>

ITEM, For the grievous Complaint that is made of Maintainers of Quarrels, and Champertors; It is ordained and assented, That the Statutes thereof made in the First and Fourth Years of King Edward, Grandfather to our Lord the King that now is, and also in the First Year of our Lord the King that now is, shall be holden and kept, and duly executed in all Points.

<span style="font-size:smaller">XV. Statutes 1 Edw. III. stat. 2. c. 14; 4 E III c 11; 1 Ric.II. c 4; against Maintenance, &c. confirmed.</span>

ITEM, It is assented, and the King straitly defendeth, That from henceforth no Person, Alien nor Denizen, of whatsoever Estate or Condition that he be, shall carry nor send, nor do to be carried nor sent, by Land nor by Sea, out of the Realm of England, to any Parts of Scotland, privily nor apertly, any Manner of Armour, Corn, Malt, or other Victuals, or any other refreshing, upon Pain of Forfeiture of the same Victuals, Armours, and other Things aforesaid, together with the Ships, Vessels, Carts, and Horses which shall bring or carry the same, or of the very Value of the same, except so it be

<span style="font-size:smaller">XVI. No Armour or Victual shall be sent into Scotland without Licence of the King; on Pain of Forfeiture thereof.</span>

' by themselves and        ' and

1

# 20 Ric. 2, 93, ch. 1 (1396)

|

First, whereas in a Statute made the Seventh Year of the Reign of the King that now is, it is ordained and assented, That no Man shall ride armed within the Realm, against the form of the Statute of Northampton thereupon made, nor with Launcegays within the same Realm, and that the said Launcegays shall by utterly put out within the said Realm, as a Thing prohibited by the King, upon Pain of Forfeiture of the same Launcegays, Armours, or any other Harness, in the Hands and Possession of them that bear them, form henceforth within the same Realm against the same Statutes and Ordinances without the King's special License. Our Lord the King, considering the great clamour made to him in this present Parliament, because that the said Statute is not holden, hath ordained and established in the said Parliament, That the said Statutes shall be fully holden and kept, and duly executed; and that the said Launcegayes shall be clear put out upon the Pain contained in the said Statute of Northampton, and also to make Fine and Ransom to the King. And moreover, that no Lord, Knight nor other, little nor great, shall go nor ride by Night nor by Day armed, nor bear [Sallet] nor Skull of Iron, nor [of] other Armour, upon the pain aforesaid; save and except the King's Officers and Ministers in doing their Office. And Moreover, the King will and hath ordained, that the statute made the First Year of his Reign, of Liveries of Hats, shall be holden and kept upon the pain contined in the same Statute, and upon Pain to be imprisoned, and make Fine and Ransom of the King.

# The Grants, Concessions, And Original Constitutions Of The Province Of New Jersey Page 289-290; Image 293-294 (1881) available at The Making Of Modern Law: Primary Sources. | Duke Center for Firearms Law

An Act Against Wearing Swords, Etc. Whereas there hath been great complaint by the inhabitants of this Province, that several persons wearing swords, daggers, pistols, dirks, stilettoes, skeines, or any other unusual or unlawful weapons, by reason of which several persons in this Province, receive great abuses, and put in great fear and quarrels, and challenges made, to the great abuse of the inhabitants of this Province. . . And be it further enacted by the authority aforesaid, that no person or persons after publication hereof, shall presume privately to wear any pocket pistol, skeines, stilettoes, daggers or dirks, or other unusual or unlawful weapons within this Province, upon penalty for the first offence five pounds, and to be committed by any justice of the peace, his warrant before whom proof thereof shall be made, who is hereby authorized to enquire of and proceed in the same, and keep in custody till he hath paid the said five pounds, one half to the public treasury for the use of this Province, and the other half to the informer: And if such person shall again offend against this law, he shall be in like manner committed upon proof thereof before any justice of the peace to the common jail, there to remain till the next sessions, and upon conviction thereof by verdict of twelve men, shall receive judgment to be in prison six month, and pay ten pounds for the use aforesaid. And be it further enacted by the authority aforesaid, that no planter shall ride or go armed with sword, pistol or dagger, upon the penalty of five pounds, to be levied as aforesaid, excepting all officers, civil and military, and soldiers while in actual service, as also all strangers, travelling upon their lawful occasions through this Province, behaving themselves peaceably.

# THE

# COLONIAL LAWS

#### OF

## NEW YORK

#### FROM THE

### YEAR 1664 TO THE REVOLUTION,

INCLUDING THE

CHARTERS TO THE DUKE OF YORK, THE COMMISSIONS AND IN-
STRUCTIONS TO COLONIAL GOVERNORS, THE DUKE'S LAWS,
THE LAWS OF THE DONGAN AND LEISLER ASSEM-
BLIES, THE CHARTERS OF ALBANY AND NEW
YORK AND THE ACTS OF THE COLO-
NIAL LEGISLATURES FROM 1691
TO 1775 INCLUSIVE.

### VOLUME II.

TRANSMITTED TO THE LEGISLATURE BY THE COMMISSIONERS OF STATUTORY
REVISION, PURSUANT TO CHAPTER 125 OF THE LAWS OF 1891.

ALBANY:
JAMES B. LYON, STATE PRINTER.
1894.

Generated on 2022-10-11 18:26 GMT / https://hdl.handle.net/2027/mdp.35112104871449
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
UNIVERSITY OF MICHIGAN

and Execution shall not Exceed the sum of three pounds Current mony of this Colony.

And Be it further Enacted by the same Authority that the owner or owners of such slave or slaves which shall happen to be Executed by Virtue of this Act in the City and County of New York shall be paid for the same, and the mony shall be Assessed Collected and paid as in and by this Act the Justices of the Peace for the said City and County are directed and Impowered to Levy pay and discharge the prosecution and Execution of Slave or Slaves Provided the price to be paid for each Slave so Executed do not Exceed the sum of Twenty five pounds Current mony of this Colony

And be it further Enacted by the Authority aforesaid that it shall not be Lawfull for any Slave or Slaves to have or use any gun Pistoll sword Club or any other Kind of Weapon whatsoever, but in the presence or by the Direction of his her or their Master or Mistress, and in their own Ground on Penalty of being whipt for the same at the discretion of the Justice of the Peace befor whom such Complaint Shall Come or upon the View of the said Justice not Exceeding Twenty Lashes on the bare back for every such offence

And be it further Enacted by the Authority aforesaid, that every Such Justice of the Peace, Constable, Assessor Collector or any other officer as doe neglect delay or Refuse the several duties and Services hereby Enjond to be Respectively Done and performed by them shall for every such offence forfeit the sum of Fourty Shillings, and every freeholder summoned as aforesaid and neglecting or refusing to Serve shall forfeit the sum of Twenty shillings which Penaltie or Penalties shall be recovered befor any two Justices of the Peace dwelling in the City or County where Such Neglect delay or refusal shall happen, to be Levied on the goods and Chattles of the offender by a Constable by warrent from such Justices who are hereby Impowered and Directed upon such neglect delay or refusal to Issue their warrant for Levying the same and one half of Such penalties shall be for the use of the Prosecutor and the other half for the use of the Poor of the Place where such Penalty shall be Levy'd And for Preventing Doubts scruples or Confussion concerning the several Acts of General Assembly heretofore passed in Relation to Slaves

Be it Enacted by the Authority aforesaid that all and every the following Acts, and every Clause article and thing therein

Generated on 2022-10-11 18:25 GMT  /  https://hdl.handle.net/2027/mdp.35112104871449
Public Domain, Google-digitized  /  http://www.hathitrust.org/access_use#pd-google

Digitized by Google

 

DATE DOWNLOADED: Thu Oct  6 22:25:42 2022
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1798 105 .

ALWD 7th ed.
, , 1798 105 .

Chicago 17th ed.
"," Kentucky - 6th General Assembly, Public Laws, 2nd Session : 105-116


AGLC 4th ed.
" Kentucky - 6th General Assembly, Public Laws, 2nd Session 105

OSCOLA 4th ed.
" 1798 105

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

[ 106 ]

on the seventeenth day of October, in the year one thousand seven hundred and eighty five, and the descendants of the females of them.

§ 2. No negro or mulatto, shall be a witness except in pleas of this commonwealth, against negroes or mulattoes, or in civil pleas where negroes or mulattoes alone shall be parties.

*In cases they may be witnesses.*

§ 3. No slave shall go from the tenements of his master or other person with whom he lives without a pass or some letter or token, whereby it may appear that he is proceeding by authority, from his master, employer or overseer; if he does it shall be lawful for any person to apprehend and carry him before a justice of the peace, to be by his order punished with stripes or not, in his discretion.

*Not to go from home without passes.*

§ 4. And if any slave shall presume to come and be upon the plantation of any person whatsoever, without leave in writing from his or her owner, or overseer, not being sent upon lawful business, it shall be lawful for the owner or overseer of such plantation to give or order such slave, ten lashes on his or her bare back, for every such offence.

*Coming on the plantation of others without leave from their masters may be whipped.*

§ 5. No negro, mulatto, or Indian whatsoever, shall keep or carry any gun, powder, shot, club, or other weapon whatsoever, offensive or defensive, but all and every gun, weapon and ammunition found in the possession or custody of any negro, mulatto, or Indian, may be seized by any person and upon due proof thereof made before any justice of the peace of the county where such seizure shall be, shall by his order, be forfeited to the seizor for his own use, and moreover every such offender shall have and receive by order of such justice any number of lashes not exceeding thirty nine, on his or her bare back, well laid on for every such offence.

*Not to keep or carry arms.*

§ 6. *Provided nevertheless*, That every free negro, mulatto or Indian, being a house keeper may be permitted to keep one gun, powder and shot, and all negroes, mulattoes and indians, bond or free, living at any frontier plantation, may be permitted to keep and use guns, powder, shot and weapons offensive or defensive, by license from a justice of peace of the county wherein such plantations lie, to be obtained upon the application of free negroes mulattoes, or indians, or by the owners of such as are slaves.

*Except those living on frontiers licensed by justices of the peace.*

§ 7. Riots, routs, unlawful assemblies, trespasses and seditious speeches by a slave or slaves shall be punished with stripes at the discretion of a justice of

*Riots, routs &c.*

# 1799 Miss. Laws 113, A Law For The Regulation Of Slaves. | Duke Center for Firearms Law

[Slaves interdicted the carrying arms, etc.] No negro or mulatto shall keep or carry any gun, powder, shot, club or other weapon whatsoever, offensive or defensive; but all and every gun, weapon and ammunition found in the possession or custody of any negro or mulatto may be seized by any person, and upon due proof thereof made before any justice of the peace of the county where such seizure shall be, shall by his order be forfeited to the seizor for his own use, and moreover every such offender shall have and receive by order of such justice, any number of lashes not exceeding thirty-nine, on his or her bare back, well laid on, for every such offense.

# 1786 Mass. Sess. Laws An Act to Prevent Routs, Riots, and Tumultuous assemblies, and the Evil Consequences Thereof. | Duke Center for Firearms Law

Whereas the provision already made by law for the preventing of routs, riots, and tumultuous assemblies and the evil consequences thereof has been found insufficient: § 1. Be it therefore enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same, That from and after the publication of this Act, if any persons to the number of twelve, or more, being armed with clubs or other weapons; or if any number of persons, consisting of thirty or more, shall be unlawfully, routously, riotously or tumultuously assembled, any Justice of the Peace, Sheriff or Deputy-Sheriff of the county, or constable of the town, shall, among the rioters, or as near to them as he can safely come, command silence while proclamation is making, and shall openly make proclamations in these or the like words. [Text of Massachusetts Riot Act] and if such persons, assembled as aforesaid, shall not disperse themselves within one hour after proclamation made, or attempted to be made, as aforesaid, it shall be lawful for every such officer to command sufficient aid, and he shall seize such persons, who shall be had before a Justice of the Peace; and the aforesaid Justice of the Peace, Sheriff or Deputy-Sheriff is hereby further empowered to require the aid of a sufficient number of persons in arms, if any of the persons assembled as aforesaid shall appear armed; and if any such person or persons shall be killed or wounded by reason of his or their resisting the persons endeavoring to disperse or seize them, the said Justice, Sheriff, Deputy-Sheriff, Constable and their assistants shall be indemnified and held guiltless. § 2. And be it further enacted, That if any person being commanded by such Justice, Sheriff, Deputy-Sheriff or Constable, as aforesaid, shall refuse or neglect to afford the assistance required, and shall be convicted thereof upon the oath of either of the said officers so commanding or other legal evidence, he shall forfeit and pay a sum not less than forty shillings.

*And whereas* there are sometimes contingent and unforeseen charges that demand prompt payment,—

*Be it further enacted,* -

£100 for contingent charges.

[SECT. 16.] That the sum of one hundred pounds, being the remaining part of the aforesaid sum of seven thousand eight hundred and sixty pounds, be applied to pay such contingent charges, and for no other purpose whatsoever.

*Provided always,*—

Remainder to be and remain as a stock in the treasury.

[SECT. 17.] That the remainder of the sum which shall be brought into the treasury by the tax aforesaid, over and above what shall be sufficient to pay off the benefit tickets as aforesaid, shall be and remain as a stock in the treasury, to be applied as the general court of this province shall hereafter order, and to no other purpose whatsoever; any thing in this act to the contrary notwithstanding.

*And be it further enacted,*

Money to be paid out of the proper appropriations.

[SECT. 18.] That the treasurer is hereby directed and ordered to pay the sum of eight thousand and ten pounds, as aforesaid, out of such appropriations as shall be directed to by warrant, and no other, upon pain of refunding all such sum or sums as he shall otherwise pay; and the secretary to whom it belongs to keep the muster-rolls and accompts of charge, shall lay before the house of representatives, when they direct, such muster-rolls and accompts after payment thereof.

*And be it further enacted,*

Directors' allowance to be made by the general court.

[SECT. 19.] That the directors or managers by this act appointed, shall have such allowances for their services as the general court shall hereafter order, and in case of the death, refusal or incapacity of attendance of any one or more of said managers, the vacancy shall be fill'd up by the governour and council.  [*Passed February* 8; *published February* 16, 1750-51.

## CHAPTER 16.

AN ACT FOR GRANTING THE SUM OF THREE HUNDRED POUNDS, FOR THE SUPPORT OF HIS HONOUR THE LIEUTENANT-GOVERNOUR AND COMMANDER-IN-CHIEF.

*Be it enacted by the Lieutenant-Governour, Council and House of Representatives,*

Governor's grant.

That the sum of three hundred pounds be and hereby is granted unto his most excellent majesty, to be paid out of the publick treasury to his honour Spencer Phips, Esq[r]., lieutenant-governour and commander-in-chief in and over his majesty's province of the Massachusetts Bay, for his past services, and further to enable him to manage the publick affairs of the province.  [*Passed February* 15;* *published February* 16, 1750-51.

## CHAPTER 17.

AN ACT FOR PREVENTING AND SUPPRESSING OF RIOTS, ROUTS AND UNLAWFUL ASSEMBLIES.

Preamble.

WHEREAS the provision already made by law has been found insufficient to prevent routs, riots and tumultuous assemblies, and the evil consequences thereof; wherefore,—

* See the note to this chapter, *post.*

Case 3:19-cv-01662-BEN-JLB   Document 53   Filed 12/01/22   PageID.1001   Page 126 of 182

*Be it enacted by the Lieutenant-Governour, Council and House of Representatives,*

[SECT. 1.] That from and after the publication of this act, if any persons, to the number of twelve or more, being arm'd with clubs or other weapons, or if any number of persons, consisting of fifty or upwards, whether armed or not, shall be unlawfully, riotously or tumultuously assembled, any justice of the peace, field officer or captain of the militia, sheriff of the county or undersheriff, or any constable of the town, shall, among the rioters, or as near to them as he can safely come, command silence while proclamation is making, and shall openly make proclamation in these or the like words :— *Officers to make proclamation when persons are riotously assembled.*

Our sovereign lord the king chargeth and commandeth all persons being assembled, immediately to disperse themselves, and peaceably to depart to their habitations, or to their lawful business; upon the pains contained in the act of this province made in the twenty-fourth year of his majesty King George the Second, for preventing and suppressing of riots, routs and unlawful assemblies. God save the king. *Form of the proclamation.*

And if such persons so unlawfully assembled, shall, after proclamation made, not disperse themselves within one hour, it shall be lawful for every such officer or officers, and for such other persons as he or they shall command to be assisting, to seize such persons, and carry them before a justice of the peace; and if such person shall be killed or hurt by reason of their resisting the persons so dispersing or seizing them, the said officer or officers and their assistants shall be indemnified and held guiltless.

[SECT. 2.] And all persons who, for the space of one hour after proclamation made as aforesaid,—or to whom proclamation ought to have been made, if the same had not been hindred,—shall unlawfully, routously, riotously and tumultuously continue together, or shall wilfully let or hinder any such officer, who shall be known, or shall openly declare himself to be such, from making the said proclamation, shall forfeit all their lands and tenements, goods and chattles, to his majesty· (or such a part thereof as shall be adjudged by the justices before whom such offence shall be tried), to be applied towards the support of the government of this province; and shall be whipt thirty-nine stripes on the naked back at the publick whipping-post, and suffer one year's imprisonment, and once every three months during said imprisonment receive the same number of stripes on the naked back at the publick whipping-post as aforesaid. *Penalty for disobedience.*

[SECT. 3.] And if any such person or persons, so riotously assembled, shall demolish or pull down, or begin to demolish or pull down, any dwelling-house or other house parcel thereof, any house built for publick uses, any barn, mill, malt-house, store-house, shop or ship, he or they shall suffer the same pains and penalties as are before provided in this act.

*And be it further enacted,*

[SECT. 4.] That this act shall be read at every general sessions of the peace, and at the anniversary meeting of each town, within this province, annually; and no person shall be prosecuted for any offence contrary to this act, unless prosecution be commenced within twelve months after the offence committed. *This act to be read at the anniversary meeting of the towns and general sessions of the peace.*

*Provided always,—*

[SECT. 5.] That where there shall appear any circumstances to mitigate or alleviate any of the offences against this act, in the judgment of the court before which such offence shall be tried, it shall and may be lawful for the judges of such court to abate the whole of the pun- *Judges empowered to abate the punishment of whipping, in case.·*

Compendium_Supplemental Brief
Page 122

ishment of whipping, or such part thereof as they shall judge proper; anything in this act to the contrary notwithstanding.

Continuance of the act.

[SECT. 6.] This act to continue and be in force for the space of three years from the publication thereof, and no longer. [*Passed and published February* 14, 1750-51.

# CHAPTER 18.

AN ACT IN ADDITION TO AN ACT, INTITLED "AN ACT TO PREVENT DAMAGE BEING DONE ON THE BEACH, HUMOCKS AND MEADOWS BELONGING TO THE TOWN OF SCITUATE, LYING BETWEEN THE SOUTHERLY END OF THE 'THIRD CLIFT,' SO CALLED, AND THE MOUTH OF THE NORTH RIVER."

Preamble.

1749-50, chap. 14.

WHEREAS in and by an act made and passed in the twenty-third year of his present majesty's reign, intitled " An Act to prevent damage being done on the beach, humocks and meadows belonging to the town of Scituate, lying between the southerly end of the ' Third Clift,' so called, and the mouth of the North River," the penalt[y][*ie*]s for turning or driving neat cattle, horse-kind, sheep or goats upon such beach, humocks or sedge-ground adjo[y][*i*]ning to said beach, to feed thereon, are to be recovered from him or them that shall so drive said cattle, horse-kind, sheep or goats, or from the owner or owners of them that shall so order them to be driven; and it is found, by experience, that proof thereof can seldom be obtained, whereby the good end and design of said act in a great measure is defeated,—

*Be it therefore enacted by the Lieutenant-Governour, Council and House of Representatives,*

Neat cattle and other creatures to be impounded if found feeding on the meadows, &c.

[SECT. 1.] That if any neat cattle, horse-kind, sheep or goats shall be found feeding on said beach, humocks, meadows or sedge-ground adjoyning to said beach, it shall and may be lawful for any person to impound the same, such person to observe the rules and directions in the said act prescribed in case of impounding; and the owner or owners of them shall forfeit and pay to the impounder one shilling a head for all neat cattle and horse-kind, and twopence for every sheep or goat; and the said penalt[y][*ie*]s or forfeitures shall be paid, before the creatures, which shall or may be impounded by virtue of this act, be discharged or released by the pound-keeper.

*Provided, nevertheless,*—

Rates to be paid for such impounded creatures.

[SECT. 2.] The owner or owners of the creatures so impounded may, if they think fit, replevie such creatures, on condition they give sufficient bond, with one or more suret[y][*ie*]s, to prosecute such replevin to effect before some justice of the peace in the same county, within fifteen days from the date of such replevin, and to pay all such forfeitures and costs as shall be awarded or adjudged against them. [*Passed February* 8; *published February* 16, 1750-51.

# CHAPTER 19.

AN ACT FOR GRANTING UNTO BENJAMIN CRABB THE SOLE PRIVILE[D]GE OF MAKING CANDLES OF COARSE SPERMACÆTI OYL.

Preamble.

WHEREAS Benjamin Crabb, of Rehoboth, in the county of Bristol, has represented to this court that he, and no other person in the prov-



DATE DOWNLOADED: Thu Oct  6 21:59:23 2022
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
J. Steele, Compiler; M'Campbell, J., Compiler. Laws of the Arkansas Territory (1835).

ALWD 7th ed.
Steele, J., Compiler; M'Campbell, J., Compiler. Ls of the Arkansas Territory (1835).

APA 7th ed.
Steele, J. (1835). Laws of the Arkansas Territory. Little Rock, Ark. Ter, Printed by
J. Steele.

Chicago 17th ed.
Steele J., Compiler; M'Campbell, J., Compiler. Laws of the Arkansas Territory. Little
Rock, Ark. Ter, Printed by J. Steele.

McGill Guide 9th ed.
J. Steele, Compiler; M'Campbell, J., Compiler, Ls of the Arkansas Territory (Little
Rock, Ark. Ter: Printed by J. Steele., 1835)

AGLC 4th ed.
J. Steele, Compiler; M'Campbell, J., Compiler, Laws of the Arkansas Territory
(Printed by J. Steele., 1835

MLA 9th ed.
Steele, J., Compiler, and J. M'Campbell, Compiler. Laws of the Arkansas Territory.
Little Rock, Ark. Ter, Printed by J. Steele. HeinOnline.

OSCOLA 4th ed.
Steele, J., Compiler; M'Campbell, J., Compiler. Laws of the Arkansas Territory.
Little Rock, Ark. Ter, Printed by J. Steele.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

upon [the plantation] of any person whatsoever without Coming on
leave in writing from his or her owner or overseer, not any planta-
being sent upon lawful business, it shall be lawful for tion, &c.
the owner or overseer of such plantation, to give or order Punished by
such slave ten lashes on his or her bare back for every stripes.
such offence.—*Ib.*

Sec. 3. No slave or mulatto whatsoever, shall keep Not to keep a
or carry a gun, powder, shot, club or other weapon gun, &c.
whatsoever, offensive or defensive; but all and every
gun weapon and ammunition found in the possession or Arms and
custody of any negro or mulatto, may be seized by ammunition
any person and upon due proof made before any justice ed.
of the peace of the district [county] where such seizure
shall be, shall by his order be forfeited to the seizor,
for his own use, and moreover, every such offender Slave pun-
shall have and receive by order of such justice any num- ished by
ber of lashes not exceeding thirty nine on his or her stripes.
bare back well laid on for every such offence.—*Ib.*

Sec. 4. Every free negro or mulatto, being a house- Free negro
keeper may be permitted to keep one gun, powder and may carry
shot; and all negroes or mulattoes bond or free, liv- gun, &c.
ing at any frontier plantation, may be permitted to keep groes in cer-
and use guns, powder shot and weapons, offensive and tain cases.
defensive, by license from a justice of the peace of the
district [county] wherein such plantation lies, to be ob-
tained upon the application of free negroes or mulattoes,
or of the owners of such as are slaves.—*Ib.*

Sec. 5. All riots, routs unlawful assemblies and se- Riots, &c.
ditious speeches by a slave or slaves, shall be punished How punish-
with stripes, at the discretion of a justice of the peace ed.
and he who will may apprehend and carry him, her or
them before such justice.—*Ib.*

Sec. 6. To prevent the inconvenience arising from Meetings of
the meetings of slaves, if any master mistress or over- slaves.
seer of a family shall knowingly permit or suffer any Persons per-
slave not belonging to him or her, to be and remain on to remain &c
his or her plantation, above four hours at any one time,
without leave of the owner or overseer of such slave,
he or she so permitting shall forfeit and pay three dol-
lars for every such offence and every owner or over- Or at any
seer of a plantation, who shall so permit or suffer more time not
than five negroes or slaves, other than his or her own, more than 5.

K*

 

DATE DOWNLOADED: Thu Oct  6 22:07:52 2022
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1804 3 .

ALWD 7th ed.
, , 1804 3 .

Chicago 17th ed.
"," Indiana - Laws for the Government of the District of Louisiana : 3-136

AGLC 4th ed.
" Indiana - Laws for the Government of the District of Louisiana 3

OSCOLA 4th ed.
" 1804 3

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

108

justice of the peace to be by his order punish-
ed with stripes, or not, in his discretion.

§ 3rd.   And be it further enacted  That
if any slave shall presume to come, and be
upon the plantation of any person whatsoe-
ver, without leave in writing from his or her
owner or overseer, not being sent upon law-
ful business, it shall be lawful for the owner
or overseer of such plantation, to give or or-
der such slave ten lashes on his or her bare
back for every such offence.

§ 4th.  And be it further enacted, That
no slave or mulatto whatsoever, shall keep
or carry any gun, powder, shot, club, or o-
ther weapon whatsoever, offensive or defen-
sive, but all and every gun weapon and am-
munition found in the possession or custody
of any negro or mulatto, may be seized  by
any person, and upon due proof thereof made
before any justice of the peace of the district
where such seizure shall be, shall by his order
be forfeited to the seizor, for his own  use,
and moreover every such offender shall have
and receive by order of such justice any num-
ber of lashes not exceeding thirty-nine on
his or her bare back, well laid on for  every
such offence.

§ 5th. And be it further enacted, That
every free negro or mulatto, being a house
keeper, may be permitted to keep one gun,
powder and shot ; and all negroes and mu-
lattoes, bond or free, living at any frontier
plantation, may be permitted to keep and use

Digitized from Best Copy Available

 

DATE DOWNLOADED: Thu Oct  6 22:46:56 2022
SOURCE: Content Downloaded from HeinOnline

Citations:

Bluebook 21st ed.
1804 3 .

ALWD 7th ed.
, , 1804 3 .

Chicago 17th ed.
"," Mississippi - 3rd General Assembly, 1st Session : 3-136

AGLC 4th ed.
" Mississippi - 3rd General Assembly, 1st Session 3

OSCOLA 4th ed.
" 1804 3

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  https://heinonline.org/HOL/License
-- The search text of this PDF is generated from  uncorrected OCR text.

( 90 )

or some letter or token, whereby it may appear that he is proceeding by authority from his master, employer or overseer; if he does, it shall be lawful for any person to apprehend and carry him before a justice of the peace, to be by his order punished with stripes, or not, in his discretion, not exceeding twenty stripes.

Sec. 3. *And be it further enacted,* That if any slave shall presume to come and be upon the plantation of any person whatsoever, without leave in writing from his or her owner or overseer, not being sent upon lawful business, it shall be lawful for the owner or overseer of such plantation to give or order such slave ten lashes on his or her bare back, for every such offence.

Sec. 4. *And be it further enacted,* That no slave shall keep or carry any gun, powder, shot, club, or other weapon whatsoever offensive or defensive, except the tools given him to work with, or that he is ordered by his master, mistress or overseer to carry the said articles from one place to another, but all, and every gun, weapon or ammunition found in the possession or custody of any slave, may be seized by any person, and upon due proof thereof made before any justice of the peace of the county or corporation, where such seizure shall be made, by his order, be forfeited to the seizer for his own use; and moreover, every such offender shall have and receive by order of such justice, any number of lashes not exceeding thirty nine, on his bare back for every such offence: *Provided nevertheless,* That any justice of the peace may grant, in his proper county, permission in writing, to any slave, on application of his master, or overseer to carry and use a gun and ammunition within the limits of his said master's or owner's plantation, for a term not exceeding one year, and recoverable, at any time within such term, at

*[margin note:]* Nor upon the plantation of any person without leave in writing.

*[margin note:]* Slaves not to carry offensive or defensive weapons.

*[margin note:]* In what cases they may get leave to carry gun.



DATE DOWNLOADED: Thu Oct  6 23:15:15 2022
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
Virginia. Collection of All Such Acts of the General Assembly of Virginia, of a
Public and Permanent Nature, as are Now in Force (1803).

ALWD 7th ed.
Virginia. Collection of All Such Acts of the General Assembly of Virginia, of a
Public & Permanent Nature, as are Now in Force (1803).

APA 7th ed.
Virginia. (1803). Collection of All Such Acts of the General Assembly of Virginia, of
Public and Permanent Nature, as are Now in Force. Richmond, Printed by Samuel
Pleasants, Jun., and Henry Pace.

Chicago 17th ed.
Virginia. Collection of All Such Acts of the General Assembly of Virginia, of a
Public and Permanent Nature, as are Now in Force. Richmond, Printed by Samuel
Pleasants, Jun., and Henry Pace.

McGill Guide 9th ed.
Virginia, Collection of All Such Acts of the General Assembly of Virginia, of a
Public & Permanent Nature, as are Now in Force (Richmond: Printed by Samuel
Pleasants, Jun., and Henry Pace., 1803)


AGLC 4th ed.
Virginia, Collection of All Such Acts of the General Assembly of Virginia, of a
Public and Permanent Nature, as are Now in Force (Printed by Samuel Pleasants, Jun.,
and Henry Pace., 1803

MLA 9th ed.
Virginia. Collection of All Such Acts of the General Assembly of Virginia, of a
Public and Permanent Nature, as are Now in Force. Richmond, Printed by Samuel
Pleasants, Jun., and Henry Pace. HeinOnline.

OSCOLA 4th ed.
Virginia. Collection of All Such Acts of the General Assembly of Virginia, of a
Public and Permanent Nature, as are Now in Force. Richmond, Printed by Samuel
Pleasants, Jun., and Henry Pace.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

I, A. B. *do swear, that my removal into the State of Virginia, was with no intent of evading the laws for preventing the further importation of slaves, nor have I brought with me any slaves, with an intention of selling them, nor have any of the slaves which I have brought with me, been imported from Africa, or any of the West India Islands, since the first day of* November, *one thousand seven hundred and seventy-eight.* So help me GOD.

Nor to any persons claiming slaves by descent, marriage or devise; nor to any citizens of this Commonwealth, being now the actual owners of slaves within any of the United States and removing such hither; nor to travellers and others making a transient stay, and bringing slaves for necessary attendance, and carrying them out again. *a*

V. NO negro or mulatto shall be a witness, except in pleas of the Commonwealth against negroes or mulattoes, or in civil pleas, where negroes or mulattoes alone shall be parties. *a* †

VI. NO slave shall go from the tenements of his master or other person with whom he lives, without a pass, or some letter or token, whereby it may appear that he is proceeding by authority from his master, employer, or overseer: If he does, it shall be lawful for any person to apprehend and carry him before a Justice of the Peace, to be by his order punished with stripes, or not, in his discretion. *a*

VII. AND if any slave shall presume to come and be upon the plantation of any person whatsoever, without leave in writing from his or her owner, or overseer, not being sent upon lawful business, it shall be lawful for the owner or overseer of such plantation, to give or order such slave ten lashes on his or her bare back for every such offence. *b*

VIII. NO negro or mulatto whatsoever shall keep or carry any gun, powder, shot, club, or other weapon whatsoever, offensive or defensive; but all and every gun, weapon, and ammunition found in the possession or custody of any negro or mulatto, may be seized by any person, and upon due proof thereof made before any Justice of the Peace of the County or Corporation where such seizure shall be, shall by his order be forfeited to the seizor for his own use; and moreover, every such offender shall have and receive by order of such Justice, any number of lashes not exceeding thirty-nine, on his or her bare back, well laid on, for every such offence. *b*

IX. PROVIDED *nevertheless*, That every free negro or mulatto, being a house-keeper, may be permitted to keep one gun, powder and shot; and all negroes and mulattoes, bond or free, living at any frontier plantation, may be permitted to keep and use guns, powder, shot, and weapons, offensive or defensive, by license from a Justice of Peace of the County wherein such plantation lies, to be obtained upon the application of free negroes or mulattoes, or of the owners of such as are slaves. *b*

X. EVERY person other than a negro, of whose grand-fathers or grand-mothers any one is, or shall have been a negro, although all his other progenitors, except that descending from the negro, shall have been white persons, shall be deemed a mulatto; and so every such person who shall have one fourth part or more of negro blood, shall in like manner be deemed a mulatto. *c*

XI. RIOTS, routs, unlawful assemblies, trespasses and seditious speeches by a slave or slaves, shall be punished with stripes, at the discretion of a Justice of the Peace, and he who will, may apprehend and carry him, her, or them, before such Justice. *d*

XII. AND to prevent the inconveniences arising from the meetings of slaves, *Be it further enacted*, That if any master, mistress, or overseer of a family, shall knowingly permit or suffer any slave not belonging to him of her, to be and remain upon his or her plantation above four hours at any one time, without leave of the owner or overseer of such slave, he or she so permitting, shall forfeit and pay three dollars for every such offence; and every owner or overseer of a plantation, who shall so permit or suffer more than five negroes or slaves, other than his or her own, to be and remain upon his or her plantation or quarter at any one time, shall forfeit and pay one dollar for each negro or slave above that number; which said several forfeitures shall be to the informer, and recoverable with costs, before any Justice of Peace of the County or Corporation where such offence shall be committed. *e*

*(a)* 1.85, *ch.* 77, *sec.* 2, 3. † *Altered by act of Dec. sess.* 1800, *ch.* 70; *negroes or mulattoes, bond or free, are by that act made legal witnesses against each other.* *(b)* 23, Geo. 2, *ch.* 31, *sec.* 17, 18, 19. *(c)* 1785, *ch.* 78. *(d)* *ib. ch.* 77, *sec.* 4. *(e)* 32, Geo. 2, *ch.* 31, *sec.* 12.

[Marginal notes:]

And of citizens claiming slaves by descent, devise, or marriage, or being now the owners & removing them from another state, and travellers carrying them out again.

In what cases negroes or mulattoes may or may not be witnesses.

Slaves not to go from home, without passes.

Coming on the plantations of others without leave from their masters, may be whipped.

Negroes and mulattoes not to keep or carry arms.

Except those living on the frontiers licensed by the justices of the peace.

Who shall be deemed mulattoes.

Punishment of slaves for riots, unlawful assemblies, seditious speeches, &c.

No person shall permit the slaves of others to remain on his plantation.

 

DATE DOWNLOADED: Thu Oct  6 22:13:08 2022
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1855 153 .

ALWD 7th ed.
, , 1855 153 .

Chicago 17th ed.
"," Indiana - 38th Session : 153-155


AGLC 4th ed.
" Indiana - 38th Session 153

OSCOLA 4th ed.
" 1855 153

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

# CHAPTER LXXIX.

AN ACT to provide for the punishment of persons interfering with Trains on Railroads.

## [APPROVED MARCH 1, 1855.]

SECTION 1. *Be it enacted by the General Assembly of the State of Indiana*, That any person who shall shoot a gun, pistol, or other weapon, or throw a stone, stick, clubs, or any other substance whatever at or against any locomotive, or car, or train of cars containing persons, on any railroad in this State, shall be deemed guilty of a misdemeanor, and upon conviction, shall be fined in any sum not less than ten nor more than one hundred dollars, and imprisoned in the county jail not less than ten days nor more than three months.

*Persons interfering with trains in any manner, guilty of misdemeanor.*

*Penalty*

SEC. 2. In case any person on such locomotive, car, or train of cars shall be injured or wounded by any such act, the person so offending shall, on conviction, be deemed guilty of assault, with intent to commit murder, and be imprisoned in the State's Prison for not less than one nor more than four years; and if death ensue, such person shall be deemed guilty of murder in the first degree, and punished accordingly.

*If injury occur to any person, person so interfering guilty of assault with intent to murder.*

*Penalty.*

SEC. 3. In case of prosecution under this act, it shall not be deemed necessary in the information or indictment to name or set out the names of persons injured or wounded, except in case of prosecution for murder.

*Not necessary to name person injured except in prosecution for murder.*

SEC. 4. It is hereby declared that an emergency exists for the immediate taking effect of this act, and that the same shall be in force from and after its passage and publication in the Indiana State Sentinel and Indiana State Journal.

*Emergency.*

---

# CHAPTER LXXX.

AN ACT providing for an investigation of the affairs of the Madison and Indianapolis Railroad Company, authorizing a compromise therewith, if deemed of advantage to the State, and providing for the payment of said Company's floating and unfunded debt, and of certain debts of the Columbus and Shelby Railroad Company, and em-




DATE DOWNLOADED: Thu Oct  6 22:21:52 2022
SOURCE: Content Downloaded from HeinOnline

Citations:

Bluebook 21st ed.
James S. Frazer, ed.; Stotsenburg, John H., ed. et al. Revised Statutes of Indiana:
Containing, also, the United States and Indiana Constitutions and an Appendix of
Historical Documents (1881).

ALWD 7th ed.
Frazer, James S., ed.; Stotsenburg, John H., ed. et al. Revised Statutes of Indiana:
Containing, also, the United States & Indiana Constitutions & an Appendix of
Historical Documents (1881).

APA 7th ed.
Frazer, J. (1881). Revised Statutes of Indiana: Containing, also, the United States
and Indiana Constitutions and an Appendix of Historical Documents. Chicago, E.B.
Myers.

Chicago 17th ed.
Frazer James S., ed.; Stotsenburg, John H., ed. et al. Revised Statutes of Indiana:
Containing, also, the United States and Indiana Constitutions and an Appendix of
Historical Documents. Chicago, E.B. Myers.

McGill Guide 9th ed.
James S. Frazer, ed.; Stotsenburg, John H., ed. et al., Revised Statutes of Indiana:
Containing, also, the United States & Indiana Constitutions & an Appendix of
Historical Documents (Chicago: E.B. Myers., 1881)

AGLC 4th ed.
James S. Frazer, ed.; Stotsenburg, John H., ed. et al., Revised Statutes of Indiana:
Containing, also, the United States and Indiana Constitutions and an Appendix of
Historical Documents (E.B. Myers., 1881

MLA 9th ed.
Frazer, James S., ed., and John H. Stotsenburg, ed. et al. Revised Statutes of
Indiana: Containing, also, the United States and Indiana Constitutions and an
Appendix of Historical Documents. Chicago, E.B. Myers. HeinOnline.

OSCOLA 4th ed.
Frazer, James S., ed.; Stotsenburg, John H., ed. et al. Revised Statutes of Indiana:
Containing, also, the United States and Indiana Constitutions and an Appendix of
Historical Documents. Chicago, E.B. Myers.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   https://heinonline.org/HOL/License
-- The search text of this PDF is generated from  uncorrected OCR text.

one thousand dollars, and disfranchised and rendered incapable of holding any office of trust or profit for any determinate period.

**1953. Selling or secreting State arms.** 52. Whoever unlawfully sells, disposes of, hides, secretes, or detains or refuses to give up, to any person authorized to demand and receive them, any of the arms, accoutrements, ordnance stores, camp or garrison equipage belonging to this State, shall be fined in any sum not more than five hundred dollars nor less than five dollars, to which may be added imprisonment in the county jail not more than six months nor less than ten days.

**1954. Removing mortgaged goods.** 53. A mortgagor of personal property, in possession of the same, who, without the consent of the owner of the claim secured by the mortgage, removes any of the property mortgaged out of the county where it was situated at the time it was mortgaged, or secretes or converts the same or any part thereof to his own use, or sells the same or any part thereof to any person, without informing him of the existence of such mortgage, shall be fined in any sum not more than two hundred dollars nor less than five dollars.

**1955. Malicious trespass.** 54. Whoever maliciously or mischievously injures or causes to be injured any property of another or any public property is guilty of a malicious trespass, and, upon conviction thereof, shall be fined not more than two-fold the value of the damage done, to which may be added imprisonment in the county jail for not more than twelve months.

1. As to the indictment, see State *v.* Peden, 2 Blackf. 371; State *v.* Merrill, 3 id. 346; State *v.* Kuns, 5 id. 314; State *v.* Slocum, 8 id. 315; State *v.* Jackson, 7 Ind. 270; State *v.* Clevinger, 14 id. 366; Hayworth *v.* State, id. 590; State *v.* Williams, 21 id. 206; Harness *v.* State, 27 id. 425; Croy *v.* State, 32 id. 384; State *v.* Sparks, 60 id. 298; State *v.* Pitzer, 62 id. 362.

2. As to the evidence, see State *v.* Bush, 29 Ind. 110; Croy *v.* State, 32 id. 384; Palmer *v.* State, 45 id. 388; Lowe *v.* State, 46 id. 305; Dawson *v.* State, 52 id. 478; Gaskill *v.* State, 56 id. 550; Squires *v.* State, 59 id. 261; Lossen *v.* State, 62 id. 437; Gundy *v.* State, 63 id. 528.

**1956. Injuring telegraph or telephone poles or wires.** 55. Whoever maliciously or mischievously injures any telegraph-pole or telephone-pole, or the wire or any part of the apparatus thereof, upon conviction thereof, shall be fined not more than five hundred dollars nor less than five dollars, and imprisoned in the county jail not more than six months nor less than thirty days.

**1957. Attacking public conveyance.** 56. Whoever maliciously or mischievously shoots a gun, rifle, pistol, or other missile or weapon, or throws a stone, stick, club, or other substance whatever, at or against any stage-coach, locomotive, railroad-car, or train of cars, or street-car on any railroad in this State, or at or against any wharf-boat, steamboat, or other water-craft, shall be imprisoned in the county jail not more than one year nor less than thirty days, and fined not more than one hundred dollars nor less than ten dollars.

**1958. Penalty if person is wounded or killed.** 57. In case any person on such stage-coach, locomotive, car, train of cars, street-car, or wharf-boat, steamboat, or other water-craft, shall be injured or wounded by any such act as is specified in the preceding section, the person so offending shall be deemed guilty of an assault and battery with intent to commit murder, and, upon conviction thereof, shall be imprisoned in the State prison not more than fourteen years nor less than two years; and if death




DATE DOWNLOADED: Thu Oct  6 22:17:04 2022
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1905 584 .

ALWD 7th ed.
, , 1905 584 .

Chicago 17th ed.
"," Indiana - 64th Regular Session : 584-757


AGLC 4th ed.
" Indiana - 64th Regular Session 584

OSCOLA 4th ed.
" 1905 584

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

with, on conviction shall be fined not less than five dollars nor
more than five hundred dollars and imprisoned in the county jail
not less than thirty days nor more than six months.

### Electric Meters, Etc.—Injury.

SEC. 409.   Whoever unlawfully and intentionally injures or
destroys or permits to be injured or destroyed any meter, pipe,
conduit, wire, line, post, lamp or other apparatus belonging to
a company engaged in the manufacture or sale of electricity for
light, heat, power or other purposes; or whoever unlawfully and
intentionally prevents an electric meter from duly registering
the quantity of electricity supplied, or in any way interferes with
its proper action or just registration; or, whoever, without the
consent of such company, unlawfully and intentionally diverts
any electric current from any wire of such company, or other-
wise unlawfully and intentionally uses or causes to be used, with-
out the consent of such company, any electricity manufactured
or distributed by such company, shall be deemed guilty of a mis-
demeanor, and, on conviction shall, for every such offense, be
punished by a fine not exceeding one hundred dollars, or by im-
prisonment in the county jail not exceeding one year, or by both
such fine and imprisonment.

### Public Conveyance—Attacking.

SEC. 410.   Whoever maliciously or mischievously shoots a gun,
rifle, pistol or other weapon, or throws a stone, stick, club or any
other substance whatever, at or against any stage coach, or any
locomotive, railroad car, or train of cars, street car, or inter-
urban car on any railroad in this state, or at or against any wharf-
boat, steamboat, or other water-craft, shall be imprisoned in the
county jail not less than thirty days nor more than one year, and
fined not less than ten dollars nor more than one hundred dollars.

### Injury to Person—Penalty.

SEC. 411.   In case any person on such stage coach, locomotive,
car, train of cars, street car, interurban car, or wharfboat, steam-
boat or other water craft, shall be injured or wounded by any
such act as is specified in the preceding section, the person so
offending shall be deemed guilty of an assault and battery with
intent to commit murder, and, on conviction, shall be imprisoned
in the state prison not less than two years nor more than four-
teen years; and, if death ensue from such act such offender shall
be deemed guilty of murder in the second degree, and on convic-
tion, shall be imprisoned in the state prison during life.

# BOOKS

82                              Robert Escobar



A "KIT" OF BURGLARS' TOOLS.

1874 illustration showing a standard array of burglar equipment. #9 "the loaded club," #10 "the sand-bag," #11-13 "various types of slung-shots," two of which we could call blackjacks.

O UR MID TO late 19th century milestone is arbitrary but useful. The Middle Ages and Renaissance are our murky pre-history if you will. The late Colonial era to the 2nd half of the 1800's are a formative period. The following years mark a new phase by necessity, it's the Sap Gilded Age. With a lot more raw material to work with (e.g. contemporary accounts), our cast of interesting characters grows exponentially as this chapter's title hints. You would think an age with firearms markedly increasing in availability and reliability would mark the decline of something like the sap but it does not. It was still as handy and relied upon as ever.

## Gangs of New York . . . San Francisco, London, Paris, etc.

As detailed, professional policing began early in the 19th century and it did not take long for criminals to follow suit. Gangs had certainly existed before now but this timeframe is considered to contain the roots of modern, organized crime. These were the *Gangs of New York* years if you will (referencing the book by Herbert Asbury of course). That fabled group of roughs was but one manifestation of a larger phenomenon. Industrialization had brought poor and working

Case 3:19-cv-01662-BEN-JLB   Document 53   Filed 12/01/22   PageID.1019   Page 144 of 182

class populations into densely populated cities. Endless hours for parents, youths looking to escape a life of menial labor and subsistence level conditions led to an ever growing problem of gang activity. The places were different but the crimes mostly the same with some startling exceptions. Each of these groups would be so memorable as to leave a lasting legacy in their respective cities and beyond. Furthermore a legendary, generational war between cops and these criminals escalated at this time and everything from blackjacks to sandbags were very much a part of it.

New York City was a dangerous town then. Saloons in the area, sometimes owned and operated by the gangs, functioned like a watering hole on the African savannah, bringing predator and prey together.

"These places were hells of exceptional fragrance, wherein whiskey was sold for ten cents a drink and crowds of lush workers, pickpockets and blackjack artists waited for a visitor to fall unconscious so they could rob him . . . . " *The Gangs of New York*, 1926[2]

Gang names like the Five Pointers, Bowery Boys and Dead Rabbits are still remembered. They were usually grouped ethnically (Jewish, Irish, etc.) and prosecuted a dizzying variety of crimes including pickpocketing and roughing up on commission as already seen. One amusing side note regarding pricing is that another hood was convicted of taking $100 from a stranger to blackjack a man.[3] You'll recall that's as much as the enterprising thug at the start of this chapter charged for murder. Either our second criminal was a much better salesman or just found a very motivated client that day. And an additional note on itemizing and paperwork,

"One of Monk Eastman's most efficient blackjackers always turned in a formal, type-written document, designating the victim as the subject and himself as the operative." *The Gangs of New York*, 1926[4]

Back to the various crimes carried out by these syndicates, the more organized ones included counterfeiting, prostitution and racketeering. Such efforts took considerable muscle. Run by an Italian immigrant named Paolo Vaccarelli, who changed his name to Paul Kelly to pass for Irish, the Five Points gang was estimated to be 1,500 strong at one point.[5] That's a lot of blackjackers. Each outfit operated within their territory and the battle for more of that valuable commodity led to a constant source of inter-gang conflict, the turf war.

"Monk and Kelly both sent regular patrols of their men into the disputed territory with instructions to beat, black-jack, or shoot any member of the rival gang they

# ARMED
## IN
# AMERICA

A HISTORY OF GUN RIGHTS *from*
COLONIAL MILITIAS *to* CONCEALED CARRY

PATRICK J. CHARLES



Prometheus Books
59 John Glenn Drive
Amherst, New York 14228

Published 2018 by Prometheus Books

*Armed in America: A History of Gun Rights from Colonial Militias to Concealed Carry.* Copyright © 2018 by Patrick J. Charles. All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, digital, electronic, mechanical, photocopying, recording, or otherwise, or conveyed via the Internet or a website without prior written permission of the publisher, except in the case of brief quotations embodied in critical articles and reviews.

Top cover image © Media Bakery
Bottom cover image © Jamie Carroll / Shutterstock
Cover design by Liz Mills
Cover design © Prometheus Books

Every attempt has been made to trace accurate ownership of copyrighted material in this book. Errors and omissions will be corrected in subsequent editions, provided that notification is sent to the publisher.

Inquiries should be addressed to
Prometheus Books
59 John Glenn Drive
Amherst, New York 14228
VOICE: 716–691–0133. • FAX: 716–691–0137
WWW.PROMETHEUSBOOKS.COM

22 21 20 19 18    5 4 3 2 1

Library of Congress Cataloging-in-Publication Data

Names: Charles, Patrick J. (Historian), author.
Title: Armed in America : a history of gun rights from colonial militias to concealed carry / Patrick J. Charles.
Description: Amherst, New York : Prometheus Books, 2018. | Includes index.
Identifiers: LCCN 2017028290 (print) | LCCN 2017039818 (ebook) |
   ISBN 9781633883147 (ebook) | ISBN 9781633883130 (hardback)
Subjects: LCSH: Firearms—Law and legislation—United States—History. | Gun control—United States—History. | BISAC: POLITICAL SCIENCE / Constitutions. | HISTORY / United States / General.
Classification: LCC KF3941 (ebook) | LCC KF3941 .C49 2018 (print) |
   DDC 344.7305/33—dc23
LC record available at https://lccn.loc.gov/2017028290

Printed in the United States of America

3 1223 12351 3096

*For my daughter, Addison Harper Charles.*

regulated militia."[93] However, the "civilized warfare" test first appeared in the 1840 Tennessee Supreme Court case *Aymette v. State*. The issue before the court in *Aymette* was whether an 1837 Tennessee statute, which prohibited any person from wearing concealed a bowie knife or Arkansas toothpick, violated the 1835 Tennessee Constitution's right to "bear arms."[94] The Tennessee Supreme Court ultimately upheld the statute as constitutional, with one of the justifications being that bowie knives and Arkansas toothpicks were not the types of arms contemplated by the framers of the Tennessee Constitution: "As the object for which the right to keep and bear arms is secured, is of general and public nature, to be exercised by the people in a body, for their *common defence*, so the *arms*, the right to keep which is secured, are such as are usually employed in civilized warfare, and that constitute the ordinary military equipment."[95]

In the decades that followed, other state courts incorporated the *Aymette* "civilized warfare" test into their jurisprudence. For instance, in 1870 the Texas Supreme Court upheld a comparable armed carriage statute under the rationale that neither the framers of the Second Amendment nor the framers of the 1869 Texas Constitution intended to protect those arms unsuitable for the militiaman or soldier.[96] Two decades later, the West Virginia Supreme Court did the same, when it held that the "kind of arms" contemplated by the framers of the Second Amendment were "weapons of warfare to be used by the militia," not weapons as are "usually employed in brawls, street-fights, duels and affrays, and are only habitually carried by bullies, blackguards, and desperadoes, to the terror of the community and the injury of the State."[97]

By the time the United States progressed into the Reconstruction Era, what it meant to "keep and bear arms" in the militia was not the only context in which the right to arms transformed. Armed individual self-defense also became associated with the right. Two notable changes in the law aided with this transformation. The first was a noticeable shift in constitutional language at the state level. Beginning in the Antebellum Era, "bear arms" provisions in state constitutions reflected a more individualized conception of the right to arms.[98] Consider that at the time of the Constitution's ratification only four of the thirteen state constitutions retained "bear arms" provisions, each of which reflected more of a communal view of the right to arms.[99] Meanwhile, five state constitutions included provisions highlighting the constitutional significance of a well-regulated militia.[100] Early on, this trend continued as new states joined the Union and adopted their own constitutions or old states modified existing ones. The states of Kentucky, Tennessee, and Ohio all included communal language in their respective "bear arms" analogues.[101] It was not until 1817 that the individualized language began to appear. The first state constitution was that of Missis-

sippi, followed by the state constitutions of Connecticut and Alabama.[102] This is not to say that each and every follow-on state constitution adopted the more individualized language.[103] But by 1868 the shift toward the more individualized language was certainly noticeable, with seven of the thirty-six state constitutions maintaining individualized "bear arms" provisions.[104]

Coinciding with this change in constitutional language were modifications to state and local armed carriage laws. Recall that up through the late eighteenth century the Statute of Northampton was the prevailing rule of law. The Statute of Northampton essentially restricted the preparatory carriage of dangerous weapons in the public concourse, with the common law exceptions being government officials, militia musters and training, the hue and cry, and so forth. This is not to say that the Statute of Northampton restricted armed carriage outright. Up through the late eighteenth century, it was common for individuals to carry arms for trade, repair, on travels, and for hunting. However, should an individual carry dangerous weapons into the public concourse, say through the bustling streets of Boston, Massachusetts, it was within the discretion of the justice of the peace, sheriff, or constable to detain the offending individual, confiscate their weapons, or seek surety of the peace.[105] While this standard seems to have worked well up through the eighteenth century, state and local governments eventually modified or replaced it.

Certainly each state and local government maintained its own reasons and rationales as to why they modified or replaced the longstanding Statute of Northampton. In most cases, the legislative reasons and rationales have been lost to time, but there are a few postulations as to why state and local governments felt compelled to modify or replace the Statute of Northampton. One is the technological advances in firearms and other dangerous weapons. These advances made firearms and dangerous weapons more readily available to the public at large, and therefore resulted in an increase of deadly encounters and violence. Another postulation as to why the Statute of Northampton was eventually modified or replaced in the early nineteenth century was changes in demography. Consider that from 1790 to 1830 the population of the United States more than tripled, from 3,929,214 to 12,860,353 people. The state of New York led the way, with a population increase from 340,120 to 1,918,608 people. From 1830 to 1870, the population once again tripled, to 38,558,371 people. This time, the state of Illinois led the nation with a population increase from 157,445 to 2,539,891 people. Needless to say, as the population of the United States continued to grow, the small communal aspect of many American towns, localities, and cities began to disintegrate, and would have required state and local governments to adopt more tangible forms of restricting armed carriage.

so at large and not confined, kill any human being, such owner is liable to be punished as for manslaughter in the third degree. It is provid[ed] in the constitution of the United States that the freedom of speech and of the press shall not be abridged by any law of Congress, and yet this provision has never been so construed as to deny to Congress the power to make it either for libelous matter to be published, rendering the offender liable to prosecution and punishment for the libel so published.[199]

Viewing these Southern Reconstruction Era cases together reveals that as the United States progressed into the Reconstruction Era Southern governments and courts came to embrace Northern attitudes on the law and armed carriage. This included the state of Mississippi, which in 1878 adopted a variant of the Massachusetts Model. Recall that the model prohibited all forms of armed carriage unless the person was able demonstrate an "imminent" or "reasonable" fear of assault or injury. What differentiated the Mississippi law was that it only applied to the carriage of concealable weapons. The Mississippi law stipulated that "any person, not being threatened with, or having good and sufficient reason to apprehend an attack, or traveling . . . or setting out on a journey, or peace officers, or deputies in discharge of their duties," shall not carry a concealed weapon.[200] Like other Southern armed carriage laws, the Mississippi law was eventually challenged in court. The case, *Tipler v. State*, involved George W. Tipler, who was tried and found guilty of carrying a concealed weapon, despite Tipler having informed the jury that a railroad employee had uttered threats of "serious personal injury" against him.[201] The case ultimately made its way up to the Mississippi Supreme Court, where Tipler challenged the law on both constitutional and circumstantial grounds.[202] As it pertained to the constitutional issue, although the court did not fully explain why the Mississippi law was constitutional, the opinion, written by Judge Josiah A. P. Campbell, suggests that the court did not see any issue with the legislature determining when in fact a person was justified in publicly carrying dangerous weapons, particularly when it involved the carrying of concealable weapons.

The court then addressed whether Tipler's circumstances fell within the Mississippi law's "being threatened" exception—that is, whether Tipler was legally justified in carrying a concealed weapon for self-defense. The answer provided by the court essentially mirrored Northern attitudes as to when it was necessary to go armed in self-defense:

The term "threatened" in the statute does not mean that a mere denunciation of evil will license the person denounced to carry concealed weapons. The

person excepted from the prohibition of the statute is one so menaced as to have good reason to believe that he is in danger of an attack from which he may properly defend himself by the character of weapon he carries concealed. The statute permits one justly apprehensive of attack to provide against it by carrying weapons concealed; but apprehension must not be simulated or too easily excited; and idle threats, the ebullition of passion, or the offspring of intoxication, which import no serious danger, must not be made a pretext for carrying concealed weapons, which is permitted only to him who has "good and sufficient reason to apprehend attack."[203]

The *Tipler* case provides another historical example as to how integrated Northern and Southern attitudes on the law and armed carriage became during the Reconstruction Era. Indeed, the *Tipler* case merely involved a law regulating the concealed carriage of dangerous weapons, not their open carriage. The same was true for other Southern courts examining the constitutionality of armed carriage laws in the late nineteenth century. Faced with only the constitutionality of a concealed-carry prohibition, Southern courts were able to summarily uphold the respective armed carriage law on the grounds it did not prohibit all forms of carriage.[204] However, this does not diminish the fact that as Southern armed carriage laws evolved to cover aspects of open carriage so too did its jurisprudence.[205]

This in turn led to the development of a national standard on the law and armed carriage. The standard provided that state and local governments maintained broad police powers to regulate dangerous weapons, so long as they did not utterly destroy the armed citizenry model of the right to arms or fail to allow for armed self-defense in extreme cases.[206] As jurist John Forrest Dillon summarized the matter in the first law review article on the issue, "It is within common experience that there are circumstances under which to disarm a citizen would be to leave his life at the mercy of a treacherous and plotting enemy. If such a state of facts were clearly proven, it is obvious it would be contrary to all our notions of right and justice to punish the carrying of arms [in that instance], although it may have infringed the letter of some statute."[207] In all other cases, however, Dillon noted that state and local governments were acting within their authority "to regulate the bearing of arms in such manner as [they] may see fit, or to restrain it altogether."[208]

Michigan Supreme Court chief justice Thomas M. Cooley provided a similar exposition on the law and armed carriage. In *A Treatise on the Law of Torts*, while acknowledging the prevalence of the armed citizenry model, Cooley noted how the right to arms did not necessarily extend to the carrying of dangerous weapons in public places, particularly concealable weapons:

military commentator up through the late eighteenth century attested, arms were not the central component of a well-regulated militia. Arms were merely a tool to achieve the constitutional end of republican liberty—liberty that the Founding Fathers thought would be undermined should the public's trust in a well-regulated militia ever cease to exist.[2]

In less than half a century, the Founding Fathers fears had been realized. Due both to political inaction and public disfavor with militia service, the civic republicanism model of the Second Amendment eventually died. In place of the civic republicanism model arose its antithesis—the armed citizenry model. Accompanying this conceptual change in American thinking was the recognition of a new Second Amendment right to armed individual self-defense. This new right, although legally actionable, was severely limited in constitutional scope. Certainly, in the Antebellum Era, some Southern state courts recognized a more robust right to armed self-defense both in private and public, but it was a right that only applied to a small segment of the country. For most Americans the right to own weapons for self-defense and other purposes, was, like other rights, limited by governmental police power, and therefore was subject to reasonable regulation, including limiting what types of weapons could be owned, as well as time, place, and manner restrictions. After the Civil War, the majority view of the Second Amendment completely consumed the minority view, and a national consensus developed. The national consensus was that state and local governments maintained broad police powers to regulate dangerous weapons in the interest of public safety—that is, so long as they did not utterly destroy the armed citizenry model of the Second Amendment or fail to allow for individuals to exercise their right to armed self-defense in extreme cases.[3]

In the early part of the twentieth century, although many Americans had come to believe that the Second Amendment protected a right to own firearms for lawful and legitimate purposes outside of service in the militia, the Supreme Court of the United States had never defined the Second Amendment in such broad terms. In fact, it is fair to say that Supreme Court jurisprudence was ambiguous as to what individual rights, if any, the Second Amendment afforded. This ultimately placed the burden on the lower federal courts to settle the matter. One after the other, every twentieth-century appellate court to examine the Second Amendment held that the right to keep and bear arms was tied to the militia, in some form or another.

Undeterred by the federal courts was a group of staunch believers in the right to own and use firearms for legitimate and lawful purposes. Provoked to action by the unceasing growth of firearms restrictions, these believers assembled the first gun-rights advocacy groups. During these earlier years

the primary agenda of gun-rights advocacy was to promote model firearms legislation. However, as gun-rights advocates achieved one political victory after another and the gun-rights community continued to grow, their resolve for larger conceptual change reached new heights. To gun-rights advocates, in order to achieve this conceptual change the *end* almost always justified the *means*. Whatever was necessary to rouse the gun-rights community to action, influence lawmakers, or garner public opinion was morally justifiable. This often meant vilifying the intellectual opposition, relying on sensationalism, and fabricating political motives. At the same time, firearms regulations were whimsically assailed as being ineffective, promoting crime, and nothing more than a slippery slope toward complete disarmament.[4]

For most of the twentieth century, the political agenda advanced by gun-rights advocates—although undoubtedly effective at rousing the gun-rights community to stall or defeat firearms legislation—did little to sway the general public, who overwhelmingly supported firearms controls. But, through persistence, gun-rights advocates eventually succeeded in changing the general public's perception. This ultimately culminated in the Supreme Court recognizing an individual right to armed self-defense in one's home. In achieving this conceptual change, gun-rights advocates surprisingly did not advance any new arguments. Rather, they recycled old ones, with more nuance and sometimes with new rationales. What was fundamentally different was the increasingly partisan nature of American politics. What was also different was the manner in which the gun-rights message was presented.[5]

From the early to mid-twentieth century, gun-rights advocates pushed their agenda with little, if any, substantiated evidence. However, following the 1977 Cincinnati Revolt, gun-rights advocacy began recruiting, fostering, and promoting academic literature that coincided with longstanding gun-rights theology. Almost everything gun-rights advocates had claimed for decades was now being packaged and sold as academically true. This was particularly the case for the Standard Model Second Amendment. Whether the period was the American Revolution, the Reconstruction Era, the Civil Rights Movement, or some other period in time, the Standard Model of firearms ownership and use was historically cast as a societal good that promoted liberty, facilitated civil virtue, and reduced crime. Conversely, any historical event, chain of events, person, group, or action that curtailed the ownership and use of firearms was historically vilified.[6]

There are a number of examples in Standard Model literature to this effect, including the longest standing arch-nemesis of gun-rights—the Sullivan Law. Recall that it was primarily the Sullivan Law that prompted the editors of

# Somerset Record Society.

## VOL. XX.

Digitized by Google

# CERTIFICATE OF MUSTERS

IN THE

# COUNTY OF SOMERSET.

TEMP. ELIZ. A.D. 1569.

EXTRACTED, AND WITH NOTES

BY

EMANUEL GREEN, F.S.A., F.R.S.L.

PRINTED FOR SUBSCRIBERS ONLY.

1904.

Digitized by Google

Minot fund

(XX)

LONDON:
HARRISON AND SONS, PRINTERS IN ORDINARY TO HIS MAJESTY,
ST. MARTIN'S LANE.

Digitized by Google

### THE ARQUEBUS.

The arquebus, sometimes miscalled a caliver, the next favourite weapon as "shot," was fairly light and about a yard in length.   Whilst considered of great use in woods or other ambush it was also especially the weapon for skirmishing as being "maniable," hence the smaller and younger men were chosen for this service as more nimble to traverse the ground.   The name is found spelled in several ways, and also as hacqbutt or hagbut, and so leads to the thought that different weapons may be intended, which may not always be the case.   Hacqbutt was the earlier name for the first form of the weapon ; the slight differences or improvements from time to time must account for the slight after-differences in the name.

An Act, 33 Hen. VIII., cap. 6, concerning crossbows and handguns, orders that no person should have any handgun other than being in the stock and gun of the length of one whole yard, or any hagbutt or demy hake other than shall be in the stock and gun the length of three-quarters of a yard.   Handgun sometimes meant what would to-day be called a pistol.

The barrel was at this time called the cannon.   The arquebus was in fact from origin a cannon in little, a diminutive cannon, reduced to "maniable" size.   The earliest form was simply this "cannon" with the usual touch hole at the breach end to which a lighted match—incandescent prepared rope—was applied by the hand to ignite the powder, as was the case with the cannon proper.   To avoid this plan of lighting which really employed one arm, next was introduced attached to the stock, a simple iron lever in which the match was fixed, and this, working on a pivot, being moved gradually by one finger, left the right arm free from strain and brought the light accurately to the touch hole at the breach end, more exactly and more easily than the man's hand could do it.   Then came a further improvement, when the lever carrying the lighted match was moved by a spring



# LAW REVIEWS AND JOURNALS

COPYRIGHT © 2016, VIRGINIA LAW REVIEW ASSOCIATION

"NECESSARY AND PROPER" AND "CRUEL AND UNUSUAL": HENDIADYS IN THE CONSTITUTION

*Samuel L. Bray**

INTRODUCTION ................................................................................. 688
I.   HOW HENDIADYS WORKS ......................................................... 695
II.  "CRUEL AND UNUSUAL" ........................................................... 706
     A.  The Modern Trend to Read the Terms as Separate
         Requirements ......................................................................... 706
     B.  Textual Difficulties with Reading the Terms as Separate
         Requirements ......................................................................... 709
     C.  Reading "Cruel and Unusual" as a Hendiadys ..................... 712
III. "NECESSARY AND PROPER" ...................................................... 720
     A.  The Modern Trend to Read the Terms as Separate
         Requirements ......................................................................... 720
     B.  Revisiting the Evidence for Two Requirements ...................... 726
     C.  Reading "Necessary and Proper" as a Hendiadys ................ 732
     D.  New Light on Three Puzzles ................................................... 740
     E.  How Many Things Is It Proper for "Proper" To Do? ........... 746
     F.  Implications for Judicial Enforcement ................................... 751
     G.  Testing the Hypothesis: Two Case Studies from Marshall's
         Defense of McCulloch ............................................................ 757
CONCLUSION .................................................................................... 761

> "*Unfortunately, no one, including the constitutional framers, knows the point of the phrase 'necessary and proper.'*"[1]

> "*Those who object to the [Necessary and Proper Clause] as a part of the Constitution, . . . have they considered whether a better form could have been substituted?*"[2]

* Assistant Professor, UCLA School of Law. I am grateful for the criticisms and comments of Will Baude, Jud Campbell, Nathan Chapman, Beth Colgan, Marc DeGirolami, Sharon Dolovich, Stephen Gardbaum, Philip Hamburger, David Hershenov, Allison Hoffman, Albertus Horsting, Joshua Jensen, Andy Kelly, Gary Lawson, Daniel Lowenstein, Michael McConnell, Hashim Mooppan, Michael Moreland, Robert Natelson, Zachary Price, Richard Re, Stephen Sachs, Steve Smith, John Stinneford, Eugene Volokh, Adam Winkler, and participants in law faculty workshops at Berkeley, Notre Dame, and UCLA.

[1] Mark A. Graber, Unnecessary and Unintelligible, 12 Const. Comment. 167, 168 (1995).

[2] The Federalist No. 44, at 299, 303 (James Madison) (Jacob E. Cooke ed., 1961).

687

COPYRIGHT © 2016, VIRGINIA LAW REVIEW ASSOCIATION

### I. How Hendiadys Works

Hendiadys is a figure of speech in which two terms, separated by a conjunction, are melded together to form a single complex expression. The word *hendiadys* is a Latin word formed from three Greek words (ἓν διὰ δυοῖν) meaning "one by means of two." The "two" in the hendiadys may be nouns, adjectives, or verbs. The "one" is the new meaning or meanings that emerge from the two. In a hendiadys, "a single conceptual idea is realized by two distinct constituents."[37] Or, as one scholar put it, "hendiadys might be thought of as the building of a hybrid representation developed from two distinct concepts, which produces a wider array of implicatures than can be recovered from each of the two original parts."[38]

Yet it is important to qualify the definition used here. Because hendiadys is only a slice of the phenomenon of coordinate construction, any definition exaggerates the difference between what falls just inside and just outside the definitional lines.[39] As defined here, hendiadys is relatively broad. Narrower definitions are restricted to nouns, or to instances in which one term is subordinate to the other.[40] Those limitations are hard to justify, however, and *hendiadys* is commonly used by linguists and literary scholars in this broader sense.[41]

---

[37] Paul Hopper, Hendiadys and Auxiliation in English, *in* Complex Sentences in Grammar and Discourse: Essays in Honor of Sandra A. Thompson 145, 146 (Joan Bybee & Michael Noonan eds., 2002).

[38] Nigel Fabb, Is Literary Language a Development of Ordinary Language?, 120 Lingua 1219, 1229 (2010).

[39] Cf. Sandra Mollin, The (Ir)reversibility of English Binomials: Corpus, Constraints, Developments 9–10 (2014) (noting that the choice of definition for *hendiadys* determines how much it overlaps with another category).

[40] E.g., Fowler's Dictionary of Modern English Usage, at ix (Jeremy Butterfield ed., 4th ed. 2015) [hereinafter Fowler's Dictionary]. On the variety of definitions for hendiadys in biblical Hebrew, see Rosmari Lillas-Schuil, A Survey of Syntagms in the Hebrew Bible Classified as *Hendiadys*, *in* Current Issues in the Analysis of Semitic Grammar and Lexicon II: Oslo-Göteborg Cooperation 4th–5th November 2005, at 79, 81–84 (Lutz Edzard & Jan Retsö eds., 2006).

[41] E.g., Edward Hirsch, A Poet's Glossary 278–79 (2014); Frank Kermode, Shakespeare's Language 100–01 (2000); Fabb, supra note 38, at 1229; Wright, supra note 8. The restrictions in the definition here are not pointless. The reference to a conjunction helps the reader grasp the concept, with no loss of scope. (Some languages, such as Akkadian and Latin, do use asyndetic hendiadic constructions, but English does not.) The limitation to two terms is traditional and economical for this Article. There is another figure of speech called

[ Back | Home ]

[ Originally published as *1 Cent. L. J. 259-261, 273-275, 285-287, 295-296 (1874)*. NOTE: The Central Law Journal was published weekly in St. Louis, Mo. This article was published in four installments: Thursday, May 28, 1874, Thursday, June 4, 1874, Thursday, June 11, 1874, and Thursday, June 18, 1874. These were issue numbers 22-25 respectively. The article bears no author name. It was presumably written by the editors of the Journal: John F. Dillon, Editor & S.D. Thompson, Ass't Editor.]

# The Right to Keep and Bear Arms for Private and Public Defence.

The second amendment of the constitution of the United States recites that "a well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed." Similar provisions will probably be found in the constitutions of most of the states. Thus the constitution of Texas declares that "every person shall have the right to keep and bear arms in the lawful defence of himself or the state, under such regulations as the (p.260)legislature may prescribe." *Art. 1, § 13*. So the present constitution of Tennessee provides that "the citizens of this state have a right to keep and bear arms for their common defence; but the legislature shall have power by law to regulate the wearing of arms with a view to prevent crime." These and similar provisions in the constitutions of other states have been discussed in several cases, and with the apparently growing habit of legislatures to restrict the wearing of arms, their exposition assumes increasing importance. The provision in the federal constitution does not appear ever to have received exposition in the Supreme Court of the United States, but the state tribunals have furnished a series of interesting decisions upon the subject, referring either to the federal or to the state constitution.

1. The first of these appears to have been *Bliss v. Commonwealth, 2 Littell, 90*, determined in the Court of Appeals of Kentucky in 1822, and relates to the question we shall consider first--the *manner* of carrying weapons. The constitution of Kentucky provided "that the right of the citizens to bear arms in defence of themselves and the state *shall not be questioned*." It was held that a statute providing that "any person in this commonwealth, who shall hereafter wear a pocket-pistol, dirk, large knife, or sword in a cane, *concealed as a weapon*, unless when travelling on a journey, shall be fined in any sum not less than one hundred dollars," etc. This statute was held to be in conflict with the constitutional guaranty, and hence void--one of the three judges dissenting. The court said : "That the provisions of the act in question do not import an entire destruction of the right of the citizens to bear arms in defence of themselves and the state, will not be controverted by the court; for though the citizens are forbid wearing weapons *concealed* in the manner described in the act, they may nevertheless, bear arms in any other admissible form. But to be in conflict with the constitution it is not essential that the act should contain a prohibition against bearing arms in every possible form. It is the *right* to bear arms in defence of the citizens and the state that is secured by the constitution, and whatever restrains the full and complete exercise of that right, though not an entire destruction of it, is forbidden by the explicit language of the constitution. If, therefore, the act in question imposes *any* restraint upon the right, immaterial what appellation may be given to the act, whether it be an act *regulating* the manner of bearing arms or any other, the consequence, in reference to the constitution, is precisely the same, and its collision with that instrument equally obvious." And the court further on declare that "in principle there is no difference between a law prohibiting the wearing of *concealed* arms and a law forbidding the wearing of such as are exposed." And, therefore, the defendant having been convicted and fined for carrying a sword concealed in a cane, the judgment was reversed.

The next case in order of time appears to have been *The State v. Mitchell, 3 Blackf. 229*, determined in the Supreme Court of Indiana in 1833. The ruling is diametrically opposed to that in the Kentucky case. The report does no more than mention the point ruled in the briefest terms, but it would seem that the Indiana constitutional provision was simply "that the people have a right to bear arms for the defence of themselves and the state." And the statute (*Laws of Ind., ed. of 1831, p. 192*) which was held not in derogation of this provision provided that

"every person, not being a traveller, who shall wear or carry any dirk, pistol, sword in a cane, or other dangerous weapon *concealed*, shall, upon conviction thereof, be fined in any sum not exceeding one hundred dollars."

This ruling was followed by the Supreme Court of Alabama in 1840, in *The State v. Reid, 1 Ala.* 612. The provision of the Alabama constitution was almost identical with that of Indiana. It provided that "every citizen has the right to bear arms in defence of himself and the state." And it was held that this provision was not infringed by a statute which provided that "if any person shall carry *concealed* about his person any species of fire-arms, or any bowie-knife, Arkansas tooth-pick, or any other knife of the like kind, dirk, or other concealed weapon, the person so offending shall, on conviction thereof, before any court having competent jurisdiction, pay a fine of not less than fifty nor more than five hundred dollars," etc. The statute was held not in conflict with the constitutional provision. And this ruling was reaffirmed in *Owen v. The State, 31 Ala.* 387. The Supreme Court of Alabama in the former case say: "The constitution, in declaring that 'every citizen has the right to bear arms in defence of himself and the state,' has neither expressly nor by implication denied the legislature the right to enact laws in regard to the *manner* in which arms shall be borne. The right guarantied to the citizen is not to bear arms upon all occasions and in all places, but merely 'in defence of himself and the state.' The terms in which this provision is phrased seem to us necessarily to leave with the legislature the authority to adopt such regulations of police as may be dictated by the safety of the people and the advancement of public morals." And further on they say: "We do not desire to be understood as maintaining that in regulating the manner of bearing arms, the authority of the legislature has no other limit than that of its own discretion. A statute which, under pretence of *regulating*, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional. But a law which is intended merely to promote personal security, and to put down lawless aggression and violence, and to that end inhibits the wearing of certain weapons in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the constitution." And the court also say: "Under the provision of our constitution, we incline to the opinion that the legislature cannot inhibit the citizen from bearing arms *openly*, because it authorizes him to bear them for the purpose of defending himself and the state, and it is only when carried openly that they can be effectively used for defence." *1 Ala.* 616, 617, 619.

The distinction here taken in regard to the *manner* of carrying or wearing weapons, has been followed in several later cases. Thus in *Nunn v. The State, 1 Kelly,* 243, decided in 1846, the Supreme Court of Georgia held that a statute of that state, so far as it sought to suppress the practice of carrying certain weapons *secretly*, was valid, inasmuch as it did not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear arms; but that so (p.261)much of it as prohibited the wearing of certain arms *openly*, was unconstitutional and void. To the same effect, see *Stockdale v. The State, 32 Ga.* 225, and the very thoroughly considered case of *The State v. Buzzard, 4 Ark.* 18. So it has been held in several cases in Louisiana, that a statute prohibiting the carrying of *concealed* weapons did not infringe the right of the people to keep and bear arms, but was simply a measure of police, prohibiting only *a particular mode* of bearing arms which is found dangerous to the peace of society. *The State v. Jumel, 13 La. An.* 399; *The State v. Smith, 11 La. An.* 633; *The State v. Chandler, 5 La. An.* 489. The same conclusion was reached by the Supreme Court of Tennessee in 1840 in *Aymette v. The State, 2 Humph.* 154, but upon somewhat different grounds, as we shall see further on; and is also supported by *Andrews v. The State, 3 Heiskell (Tenn.)* 165.

[TO BE CONTINUED.](p.273)

[CONTINUED.]

2. A second branch of the question relates to the *kind* of weapon, the carrying of which is within the constitutional guaranty. By far the most instructive case on this branch of the question is *Aymette v. State, 2 Humph.* 154. The constitution of Tennessee in force at that time provided that "the free white men of this state shall have a right to keep and bear arms *for their common defence*." And the question considered by the court was whether this constitutional provision was violated by a statute which provided "that if any person shall wear any bowie-knife, or Arkansas tooth-pick, or other knife or weapon that shall in form, shape or size resemble a bowie-knife, or Arkansas tooth-pick, under his clothes, or keep the same concealed about his person, such person shall be guilty of a misdemeanor, and upon conviction thereof, shall be find," etc. Green, J., in an able

opinion traces the constitutional provision to its origin in the *English Bill of Rights, Stat. 1 W. & M., ch. St. 2, ch. 2, cl.* and then makes the following observations upon its policy and scope: "As the object for which the right to keep and bear arms is secured, is of a *general* and *public* nature, to be exercised by the people in a body for their *common* defence, so the *arms*, the right to keep which is secured, are those which are usually employed in civilized warfare, and that constitute the ordinary military equipment. If the citizens have these arms in their hands, they are prepared in the best possible manner to repel any encroachments upon their rights by those in authority. They need not, for such a purpose, the use of those weapons which are usually employed in private broils, and which are efficient only in the hands of the robber and the assassin. These weapons would be useless in war. They could not be employed advantageously in the common defence of the citizens. The right to keep and bear them is not, therefore, secured by the constitution." It was accordingly held that the statute was not in derogation of the state constitution.

But by far the most elaborate discussion of the question will be found in *Andrews v. The State, 3 Heiskell, 165,* determined in the Supreme Court of Tennessee in 1871. The state was ably represented, and the synopsis of the argument of the attorney-general should not be overlooked. The court possessed the weight of being composed of six judges; but unfortunately they were by no means unanimous, either as to the result, or as to the reasoning by which the result was reached. The provision of the present constitution of Tennessee is that "the citizens of this state have a right to keep and bear arms *for their common defence*; but the legislature shall have power by law to regulate the *wearing* of arms with a view to prevent crime." *Const. of Tenn., art. 1, § 26.* The material provision of the statute whose validity was disputed was that "it shall not be lawful for any person to *publicly* or *privately* carry and dirk, sword-cane, Spanish stiletto, belt or pocket pistol or revolver." *Act of Tenn., June 11, 1870; 2 Tho. & S. Code, § 4756 a.* It was held that this statute was not in derogation of the constitution of the state, except so far as it restrained the keeping of arms "in the ordinary mode known to the court." In this result four of the judges concurred. Freeman, J., delivered the opinion of the court, in which the question is discussed at great length. Nicholson, Ch. J., and Deaderick, J., concurred in the general views expressed by him; but Sneed, J., dissented from so much of the opinion as questioned the right of the legislature to prohibit the wearing of arms of any description, or sought to limit the operation of the act of 1870. On the other hand, Nelson, J., dissented with much force, holding that the act was in derogation of the constitutional right to bear arms, and in derogation of the natural and inalienable right of self-defence. While it is difficult to say precisely what this long case does decide, it may be fairly said to be an affirmance of Aymette v. State, *supra*; and no doubt the following sentences represent the views of all of the four concurring judges, except Sneed, J., who goes further in support of the power of the legislature to regulate the wearing of arms: "What, then, is he [the citizen] protected in the right to keep and thus use? Not everything that may be useful for offence or defence; but what may (p.274)properly be understood or included under the title of arms, taken in connection with the fact that the citizen is to keep them as a citizen. Such, then, as are found to make up the usual arms of the citizen of the country, and the use of which will properly train and render him efficient in defence of his own liberties, as well as of the state. Under this head, with a knowledge of the habits of our people, and of the arms in the use of which a soldier should be trained, we would hold that the rifle of all descriptions, the shot-gun, the musket and repeater are such arms; and under the constitution, the right to *keep* such arms cannot be *infringed* or *forbidden* by the legislature. Their *use*, however, may be subordinated to such regulations and limitations as are or may be authorized by the laws of the land, passed to subserve the general good, so as not to infringe the right secured, and the necessary incidents to the exercise of such right." * * * "We hold, then, that the act of the legislature in question, so far as it prohibits the citizen, either publicly or privately, to carry a dirk, sword-cane, Spanish stilletto, belt or pocket pistol, is constitutional. As to the pistol designated as a *revolver*, we hold this may or may not be such a weapon as is adapted to the usual equipment of the soldier, or the use of which may render him more efficient as such; and therefore hold this to be a matter to be settled by evidence, as to what character of weapon is included in the designation 'revolver.'" * * * * "We know there is a pistol of that name [revolver] which is not adapted to the equipment of the soldier, yet we also know that the pistol known as the 'repeater' is a soldiers' weapon--skill in the use of which will add to the efficiency of the soldier. If such is the character of the weapon here designated, then the prohibition of the statute is too broad to be allowed to stand consistently with the views herein expressed. * * * As we have said, the statute amounts to a prohibition to keep and use such weapon for any and all purposes. It therefore, in this respect, violates the constitutional right to keep arms, and the incidental right to use them, in the ordinary mode of using such arms, and is inoperative."

We must not here overlook the early Tennessee case of *Simpson v. The State, decided by the Supreme Court of Tennessee in 1833, and reported in 5 Yerger, 356*. The only question in that case was the sufficiency of an indictment for an *affray* which charged that the defendant, "with force and arms, at, etc., being arrayed in a warlike manner, then and there, in a certain public street and highway situate, unlawfully, and to the great terror of divers good citizens of the state, then and there being, an affray did make," etc. It was held that this indictment did not sufficiently charge an affray. The court consisted of four judges, among them Judge Green, who delivered the opinion of the court in Aymette v. The State, *supra*, and also Judge Catron, afterwards one of justices of the Supreme Court of the United States, who, two years before, had delivered the opinion of the court in the famous *Grainger case (5 Yerg. 459)* expounding the law of self-defence; and with these were associated Judges Whyte and Peck. Whyte, J., delivered the opinion of the court, Peck, J., dissenting. Two *reasons* were given for holding the indictment insufficient. The *first* was that in order to constitute an affray there must be, 1st, fighting; 2d, and between two or more persons, 3d, and in some public place so as to cause terror to the people. Now the indictment did not charge *fighting*, nor fighting *between two or more persons*. It was therefore held insufficient. It is difficult to conceive how there can be *fighting*, unless there be at least two persons, unless it be between a man and a beast; but we are stating accurately the reasoning of the court. The *second* reason, and the one with which we have to do, is embodied in the following language of Judge Whyte: "But suppose it to be assumed on any ground that our ancestors adopted and brought over with them this English statute [*2 Edw. III.*] or portion of the common law, our constitution [of 1796] has completely abrogated it. It says 'that the freemen of this state have a right to keep and to bear arms for their common defence.' (*Art 11, § 29.*) It is submitted that this clause of our constitution fully meets and opposes the passage or clause in Hawkins of 'a man's arming himself with dangerous and unusual weapons,' as being an independent ground of affray, so as of itself to constitute the offense cognizable by indictment. By this clause of the constitution an express power is given and secured to all the free citizens of the state to keep and bear arms for their defence, without any qualification whatever as to their kind or nature; and it is conceived that it would be going much too far to impair by construction or abridgment a constitutional privilege which is so declared. Neither, after so solemn an instrument hath said the people may carry arms, can we be permitted to impute to the acts thus licensed such a necessarily consequent operation as terror to the people to be incurred thereby. We must attribute to the framers of it the absence of such a view." In Aymette's case, *supra*, Judge Green characterized the above language as "only an incidental remark of the judge who delivered the opinion, and therefore entitled to no weight." To enable the reader to judge how far this declaration of law by Judge White was necessary to the determination of the question in the case, it should be remarked that it is an *argument* put forth to obviate the force of the following language of Sergeant Hawkins: "But granting that no bare words in the judgment of law carry with them so much terror as to amount to an affray, yet it seems certain that in some cases there may be an affray where there is no actual violence; as where a man arms himself with dangerous and unusual weapons, in such a manner as will naturally cause terror to the people, which is said always to have been an offence at common law, and is strictly prohibited by many statutes." (*Hawk. P. C. Book 1, ch. 28, § 4, Leach's ed.*)

The latest case upon this branch of the subject appears to be *English v. The State, 35 Tex. 473*. The statute considered in that case (*Act of 12 April, 1871, 2 Pasch. Dig. Laws, art. 6512*) provides with certain exceptions that "any person carrying on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, sling-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purpose of offence or defence, unless he has reasonable grounds for fearing an unlawful attack on his person, and that such grounds of attack shall be immediate and pressing; or unless having or carrying the same on or about his person for the lawful defence of the state, as a militia-man in actual service, or as a peace officer or policeman, shall be guilty of misdemeanor," etc. The second section provides that "any person charged under the first section of this act who may offer to prove by way of defence that he was in danger of an attack on his person, or unlawful (p.275)interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage; and that the weapon so carried was borne openly and was not concealed beneath his clothing; and if it shall appear that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered a legal defence." *Section 3* provides that the governor may, by proclamation, exempt the frontier counties from the operation of the act. The remaining sections contain provisions which it is not necessary to notice. It will be seen that this statute is much stronger than any which we have previously cited. With certain restricted exceptions, it effectually prohibits the bearing of all small arms, whether openly or concealed, on horseback or on foot. It is doubtful whether so

Compendium_Supplemental Brief
Page 156

sweeping a statute can be sustained in the light of any of the adjudications already quoted. But the late Supreme Court of Texas nevertheless did, in English v. The State, *supra*, declare that it is neither in conflict with the second amendment of the federal constitution, nor with the provision of the constitution of that state quoted at the beginning of this article. The court (Walker, J.) say: "The word 'arms,' in the connection we find it in the constitution of the United States, refers to the arms of a militia-man or soldier, and the word is used in its military sense. The arms of the infantry soldier are the musket and bayonet; of cavalry and dragoons, the sabre, holster-pistol and carbine; of the artillery, the field-piece, siege gun and mortar, with side-arms. The terms dirks, daggers, slung-shots, sword-canes, brass-knuckles and bowie-knives belong to no military vocabulary. Were a soldier on duty found with one of these things about his person he would be punished for an offence against discipline. The act referred to makes all necessary exceptions, and points out the place, the time and manner in which certain deadly weapons may be carried as a means of self-defence; and these exceptional cases, in our judgment, fully cover all the wants of society. There is no abridgment of the *personal* rights, such as may be regarded as inherent and inalienable to man, nor do we think his *political* rights are the least infringed by any part of this law." The court also understand the word "arms" in the Texas constitution as having the same import and meaning which it has in the second amendment of the federal constitution; and they hold that the legislature may *regulate* the right to bear arms without taking it away, and that this has been done by the act under consideration.

[TO BE CONTINUED.](p.285)

[CONTINUED.]

3. A third question is, whether the natural right of self-defence will under any circumstances justify the carrying of a particular weapon, and in a particular manner, when such carrying is forbidden by statute. "In reason," says Mr. Bishop, "there may be circumstances in which the right of self-defence will justify the carrying of a concealed weapon for the purpose; and should such a case arise (and it must be an extreme one, out of the ordinary course of things, or it could not arise), doubtless this should be held to be an exception, engrafted by the common law upon the general terms of the statute." *Bish. Stat. Crimes, § 789*. This view would seem to be entirely consistent with reason, and unavoidable. When we reflect on the question of what is termed the right of self-defence, we shall see that it is a most comprehensive right; that it is one and the same thing with the right to "life, liberty and the pursuit of happiness," which our fathers asserted in the Declaration of Independence. It would seem to follow from what has been said upon the subject by various writers that while society may *regulate* this right of self-defence so as to promote the safety and good of its members, yet any law which should attempt to take it away, or materially abridge it, would be the grossest and most odious form of tyranny. Thus, Sir Michael Foster says: "The right of self-defence in these cases [cases of felonious attacks upon person, habitation, or property] is founded in the law of nature, and is not, *nor can be*, superseded by any law of society; for, before societies were formed, * * * the right of self-defence resided in individuals; it could not reside elsewhere; and since, in cases of necessity, individuals incorporated into society cannot resort for protection to the law of society, that law with great propriety and (p.286)strict justice, considereth them as still in that instance under the protection of the law of nature." (*Foster Crown Law, 273-4*. See also *2 Rutherforth's Institutes, ch. 16*; *Grotius' De Jure Belli et Pacis, lib. 2 cap. 1*; *Gray v. Coombs, 7 J. J. Marshall, 478*; *Isaacs v. State, 25 Tex. 174*; *Com. v. Riley, Thacher's Crim. Cas. 471*; *United States v. Holmes, 1 Wallace, Jr. 1*.) It is within common experience that there are circumstances under which to disarm a citizen would be to leave his life at the mercy of a treacherous and plotting enemy. If such a state of facts were clearly proven, it is obvious that it would be contrary to all our notions of right and justice to punish the carrying of arms, although it may have infringed the letter of some statute. To do so would be to make the law what it never was intended to be, an instrument of cruelty and injustice. Such a case might clearly be said to fall within that class of cases in which the previously existing common law interpolates exceptions upon subsequently enacted statutes. See *Bish. Stat. Crimes, §§ 7, 123, 131, 141, 351-359, 362, 789*.

Turning to the adjudications, we find it declared in one case, under an Indiana statute, probably the same already cited (*ante, 260*), that if a person, not being a traveller, carry a concealed weapon, he is guilty of an indictable offense and his *motive* for carrying the weapon is immaterial. *Walls v. The State, 7 Black. 572*. A similar ruling was made in *Cutsinger v. Commonwealth, 7 Bush. Ky. 392*. But these cases do not help our enquiries, because

the defendants did not claim to have carried the weapons for the purpose of defence against any threatened or impending injury, but, in one case, for the purpose of exhibiting it as a curiosity, and in the other, for the purpose of conveying it to another person.

In *Hopkins v. Commonwealth, 3 Bush, Ky. 480,* there was sufficient proof that the defendant, on a certain day, carried a pistol concealed about his person, and the defendant attempted to excuse the act by proving that he had been shot at by strangers more than two years before, and that "for precautionary security of self-defence" against a like attack he had carried a pistol ever since. The court (Robertson, J.) said: "These facts were wholly *irrelevant*, as there was neither proof nor cause for apprehension of any such impending danger; and, therefore, there was no error in refusing to admit another witness to the same facts."

Another ground of error urged in the same case, was that the court should not have given the following instruction: "If the jury believe from the evidence that the defendant * * * carried a pistol concealed about his person, and that he had no *reasonable ground* to believe, and did not believe, that his person was in danger of great bodily harm, they should punish him by a fine," etc. To understand the force of this instruction, it should be observed that the Kentucky statute against carrying concealed weapons, in force at that time, made the carrying of such weapons lawful "where the person has *reasonable grounds* to believe that his person, or the person of some of his family, or his property, is in danger from violence or crime." *1 Stanton's Code, p. 414*. The defendant's counsel insisted that the defendant was rightfully the best judge of the necessity or prudence of carrying a concealed pistol for self-defence, and was the only person who could know whether he in fact apprehended danger; and hence objected to so much of the instruction as required *reasonable grounds* for apprehension. The court, however, did not see the instruction in this light. Judge Robertson said: "Were this erroneous, the salutary law against the pestilent and alarmingly prevalent habit among all classes, and especially among young men and even boys, of wearing concealed arms, through false and cowardly pride, and through mock chivalry, might soon become practically a dead letter. A statute so beneficent, and so often and so easily evaded, should be vigilantly upheld and stringently enforced by the judiciary, for repressing a dishonorable and mischievous practice, which, licensed or unlicensed, leads almost daily to causeless homicides and disturbances, which would otherwise never be perpetrated; and to that end, the accused should always be required to prove that he carried a concealed weapon only for the purpose of defending himself or family or property against an impending attack, *reasonably apprehended*, and which, if attempted, would justify the use of some such means of defence. But the superfluous addition of the words, 'and did not believe that his person was in danger,' relieves the instruction from the counsel's criticism, and makes it more favorable to the appellant than he had a right to demand or expect." Although this ruling was necessary in view of the terms of the Kentucky statute, yet it is thought that it would be the same on general principles; for it is in strict analogy with that numerous class of cases which makes the fears of *a reasonable man*, and not the fears actually entertained, the test of the justification of the degree of force and kind of weapon employed in one's defence. (*Selfridge's case, 1 Self-Defence Cases, 1*; *Sullivan's case, ib. 65*; *Shorter's case, ib. 258*; and many others.)

In one of the cases in Tennessee, already quoted, *Andrews v. The State, 3 Heiskell, 165, 188,* there are considerable *dicta* on the question whether a man can defend himself against an indictment for carrying arms forbidden to be carried by law, by showing that he carried them in self-defence. While admitting the question to be one of "some little difficulty," the learned judge who delivered the opinion of the court says: "The real question in such case, however, is not the right of self-defence, as seems to be supposed (for that is conceded by our law to its fullest extent), but the right to use weapons or select weapons for such defence, which the law forbids him to keep or carry. If this plea could be allowed as to weapons thus forbidden, it would amount to a denial of the right of the legislature to prohibit the keeping of such weapons; for if he may lawfully use them in self-defence, he may certainly provide them and keep them for such purpose, and thus the plea of right of self-defence will draw with it, necessarily, the right to keep and use everything for such purpose, however pernicious to the general interest or peace or quiet of the community. Admitting the right of self-defence in its broadest sense, still, on sound principles, every good citizen is bound to yield his preference as to the means to be used, to the demands of the public good; and where certain weapons are forbidden to be kept or used by the law of the land, in order to the prevention of crime--a great public end--no man can be permitted to disregard this general end, and demand of the community the right, in order to gratify his whim or wilful desire, to use a particular weapon in his particular self-defence. The law allows ample means of self-defence without the means which we

Compendium_Supplemental Brief
Page 158

have held may be rightfully (p.287)proscribed by this statute, The object being to banish these weapons from the community by an absolute prohibition, for the prevention of crime, *no man's particular safety*, if such case could exist, ought to be allowed to defeat this end. Mutual sacrifice of individual rights is the bond of all social organizations, and prompt and willing obedience to all laws passed for the general good is not only the duty, but the highest interest of every man in the land. * * * We admit that extreme cases may be put where the rule may work harshly, but this is the result of all general rules--that they may work harshly sometimes in individual cases. By our system, however, allowing the attorney-general to enter a *nolle prosequi* with the assent of the court, there is but little danger of the law being enforced in any such cases to the detriment of any one; and if such case should occur, an application to executive clemency may fairly be presumed to be the remedy provided by the constitution to meet all such exigencies." The court, therefore, hold that the testimony tending to prove "that there was a set of men in the neighborhood of defendant during the time he carried his pistol and before, seeking the life of defendant," was properly rejected, *because it did not appear what the character of the weapon was*, and it may have been such a weapon as could not be properly carried at all, and if so, the testimony would be no defence to the indictment. Comparing the above with that part of this case which was quoted on *page 274 of our last number*, it is seen that it decides that a man may not, even in his necessary defence, carry, either publicly or privately, a *dirk, sword-cane, Spanish stiletto, belt or pocket-pistol*, but that he may carry such arms for his private defence as are adapted to the equipment of the soldier. Much as we respect the general views of the learned judge and the commendable desire to promote peace and public order which his opinion manifests, yet we do not think that either his reasoning or his conclusion on this particular branch of the question can be commended. It entirely confounds the right of arming one's self for private defence against a threatened danger, with the policy of the constitution of Tennessee, which guarantees the right of bearing certain arms in order to educate the citizen for military duty. If a citizen is obliged to perform a journey where he is in danger of being attacked by highwaymen, or by assassins who seek his life, he may, if he have the arms used by a militiaman, arm himself with them;--we suppose he may even take a cannon along with him, if he have one. But if he have not, and cannot procure any of the weapons which are used in civilized warfare, he must go unarmed. Besides, in attempting to distinguish between the weapons which he may and may not use, the learned court descend into distinctions altogether too nice to be of any practical value. A belt or pocket-pistol may not be worn, but a "repeater" may. What is a large "repeater" but a belt-pistol, and what is a small "repeater" but a pocket-pistol? According to these distinctions, we suppose if the citizen have no other arms than an old-fashioned "pepper-box," he must needs leave it at home--to carry it to defend himself against the attack of a highwayman will be an indictable offence (and we don't know but it ought to be)--but he may lawfully carry a far more formidable and dangerous weapon--a cavalry-revolver, Colt or Remington. In short, before he may lawfully take with him any weapon for his personal defence, he must debate and settle in his mind whether such a weapon would be appropriate to the equipment of a soldier, and if it would, he may lawfully carry it for the purpose of defending himself; otherwise not. That such conclusions do not commend themselves to reason, need scarcely to be suggested. Nor do we perceive any ground for the distinction which the learned judge attempts to draw between the *right* of self-defence and the *means* by which that right may be secured. If the *means* are prohibited or withheld, can any one say that the right is of any substantial value? We think that upon this branch of the case the views of Judge Nelson, in his dissenting opinion, are much to be preferred. "I hold," said that learned judge, "that when a man is really and truly endangered by a lawless assault, and the fierceness of the attack is such as to require immediate resistance in order to save his own life, he may defend himself with *any weapon whatever*, whether seized in the heat of conflict, or carried for the purpose of self-defence."

In the principal Alabama case which we have already quoted, *The State v. Reid, 1 Ala. 612, 619*, the question, it will be remembered, arose on a constitutional provision which guaranteed the right to bear arms "in defence of *himself* and the state." The court thought that in view of that provision it would not be competent for the legislature to prohibit the wearing of arms *openly*, because "it is only when worn openly that they can be efficiently used for defence." And they also say: "We will not undertake to say that if in any case it should appear to be indispensable to the right of defence that arms should be carried concealed about the person, the act 'to suppress the evil practice of carrying weapons secretly' should be so construed as to operate a prohibition in such case." The right to bear arms *when threatened with, or having good reason to apprehend an attack, or travelling or setting out on a journey*, was subsequently recognized in Alabama by statute. *Ala. Code, 1852, § 3274*; *Owen v. State, 31 Ala. 388*.

In Texas, as we have already seen (*ante, p. 274*), it has been held within the power of the legislature to prohibit the carrying of all *small arms*, notwithstanding a constitutional provision similar to that of Alabama, guaranteeing the right to carry arms for the defence of *one's self*, as well as for the defence of the state.

Such appears to be the unsatisfactory state of the authorities on this branch of the question. On the one hand, as long as the machinery which society has afforded for the *prevention* of private injuries remains in its present ineffective state, society cannot justly require the individual to surrender and lay aside the means of self-protection in seasons of personal danger; and it will be in vain that the laws of society denounce penalties against the citizen for arming himself when his life is menaced by the attacks of wild beasts, of highwaymen, or of dangerous and persevering enemies. On the other hand, the peace of society and the safety of peaceable citizens plead loudly for protection against the evils which result from permitting other citizens to go armed with dangerous weapons, and the utmost that the law can hope to do is to strike some sort of balance between these apparently conflicting rights.

[TO BE CONTINUED.](p.295)

[CONCLUDED.]

4. We shall take leave of this subject by briefly considering whether the second amendment of the constitution of the United States is restrictive upon the states. This amendment provides that "a well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed." Mr. Bishop suggests that, "though most of the amendments are restrictions on the general government alone, this one seems to be of a nature to bind both the state and the national legislatures; and doubtless it does." Of the same view was the Supreme Court of Georgia in *Nunn v. The State, 1 Kelly, 243*, where the question was discussed at considerable length, and where a statute of that state was held in part invalid because in conflict with this amendment. In the three Louisiana cases already quoted, the subject was discussed solely with reference to this amendment to the federal constitution, and it seems to have been taken for granted that it is restrictive upon the states. *State v. Chandler, 5 La. An. 489*; *State v. Smith, 11 La. An. 633*; *State v. Jumel, 13 La. An. 399*. So in the Arkansas case, *The State v. Buzzard, 4 Ark. 18*, all the judges appear to have understood this amendment as applicable to the states; and Judge Dickinson supposes it to pertain to the power possessed by the general government of organizing, arming and disciplining the militia. He says this provision of the federal constitution "is but an assertion of that general right of sovereignty belonging to independent nations, to regulate their military force."

This view of Judge Dickinson contains the only plausible reason we have met with for supposing that this amendment is binding upon the states. The decisions of the Supreme Court of the United States, expounding the early amendments of the federal constitution, leave little room to doubt that none of the first ten amendments apply to the states, but that all of them are merely restrictive upon the federal power. Thus, in *Barron v. The City of Baltimore, 7 Pet. 243, 247*, it was held that an act of the Maryland legislature, which it was alleged deprived the plaintiff in error of his property without just compensation, was not void as being in conflict with the *fifth* amendment of the federal constitution. Chief Justice Marshall, delivering the unanimous judgment of the court, said: "The question presented is, we think, of great importance, but not of much difficulty. The constitution was ordained and established by the people of the United States themselves, for their own government, and not for the government of the individual states. Each state established a constitution for itself, and in that constitution provided such limitations and restrictions on the powers of its particular government as its judgment dictated. The people of the United States framed such a government for the United States as they supposed best adapted to their situation and best calculated to promote their interests. The power they conferred on this government was to be exercised by itself, and the limitations on power, if expressed in general terms, are naturally and, we think, necessarily, applicable to the government created by the instrument. They are limitations of power granted in the instrument itself, not of distinct governments framed by different persons and for different purposes." This language would be equally decisive if applied to any of the first ten amendments. Again, in *Fox v. The State of Ohio, 5 How. 410, 434*, it is declared that the prohibitions contained in the amendments to the federal constitution "were not designed as limits upon the state governments in reference to their own citizens. They are exclusively restrictions upon federal power, intended to prevent interference with the rights of the states and of their citizens." "Such, indeed," said Mr. Justice Daniel, in delivering the opinion of the court, "is the only

rational and intelligible interpretation which these amendments can bear, since it is neither probable nor credible that the states should have anxiously insisted to engraft upon the federal constitution restrictions upon their own authority--restrictions which some of the states regarded as the *sine qua non* of its adoption by them." So, also, it was held in *Smith v. The State of Maryland, 18 How. 71, 76*, that the provision of the *fourth* amendment of the federal constitution which prohibits the issuing of a warrant, "but upon probable cause, supported by oath or affirmation," had no application to the process of the state courts. Language equally decisive will be found in *Withers v. Buckley, 20 How. 84, 90*; *Twichell v. The Commonwealth, 7 Wall. 321*, and in other cases decided by the same court.(p.296)

In view of these decisions of the only court whose interpretations of the federal constitution are binding and decisive, there would seem to remain no doubt that if the question should ever arise in that court it would be held that the second amendment of the federal constitution is restrictive upon the general government merely, and not upon the states, and that every state has power to regulate the bearing of arms in such manner as it may see fit, or to restrain it altogether.

# OTHER SOURCES

# History and use of the billy club

By Police1 Staff

Billy clubs were the first less-lethal weapon used by police officers to subdue criminals and maintain public order. Known by many names, the police officer's club, mace, truncheon, nightstick, or baton is as old as the profession itself. Though the names and techniques have changed, the tool itself has not, and is now a symbol of police officers worldwide.



British police constable wearing a decorated billy club. (Photo: Anthony McCallum)

The billy club in early police history

London's first police department was founded in 1829 by Prime Minister Sir Robert Peel. His concept of a modern police force was based on the principle of "policing by consent:" earning the respect and compliance of the public instead of ruling by intimidation. The new police force would be unarmed except for the billy club, the signature tool of early police officers.

Billy clubs differed in length depending on the officer's preferences and physical size. Historically, they ranged from about about 14 inches in length for close-quarters use, to over 36 inches for use in riots or by officers on horseback.



A mounted officer carries a 36-inch club to a Vietnam War protest, 1968. (AP Photo)

Because of the billy club's versatility and the police culture established by Robert Peel, British law enforcement's use of firearms was very limited until the mid-1990's.

Billy clubs as a symbol of police worldwide

Between the different sizes and personal ornamentation, many Victorian era billy clubs are unique items. The staffs were ornately decorated with marks such as a royal crown and scepter, various coats of arms, and sometimes, the initials of the billy club's owner.



A collection of decorated 19th century billy clubs. (Photo: Kim Traynor)

The tradition of decorating a billy club, truncheon, or baton was carried over to the United States. In New York, batons made of finely carved woods and ivory were given to officers by police personnel under their jurisdiction. These particular items are largely ceremonial and not used in the field.



A collection of fine clubs presented to NYPD officers. (AP Photo)

In Baltimore, a large club called the espantoon became known as an officer's "Badge of Authority" sometime in the 19th century. Police officers from the area were known for twirling their trademark batons, which became a unique piece of the department's culture. Though espantoons were banned in 1994 by police commissioner Thomas C. Frazier for being "too intimidating," they were brought back by popular demand in 2000 following his replacement.

Billy clubs as a less-lethal option

The first London police officers were issued billy clubs as a tool for self-defense, but these tools can still cause great physical harm in the hands of a trained officer—especially when striking vulnerable areas such as the head, spine, or groin.

A baton has numerous advantages as a striking weapon. Most notably, it preserves the hands which can be easily injured while boxing, and can be used defensively to protect against blows from blunt and sharp objects.

If they must strike with their batons, today's officers are taught to disable offenders by targeting nerve clusters and bony prominences in the limbs and torso rather than hitting to cause a concussion.



Points of impact from a mid-20th century FBI training manual. (Photo: Technique and Use of the Police Baton)

An FBI tactical manual called "Technique and Use of the Police Baton" also contains several instructions on how to use a straight baton to restrain a suspect, force them to move in a certain direction ("come alongs"), or manipulate a resisting offender's limbs.



Even if officers never use a billy club as a tool of force, there are other applications for the baton. Clubs have been used to break windows and intimidate (but not harm) belligerent folks into compliance. Billy clubs were even used as a means of communication: before they had radios, Baltimore police officers used to knock their espantoon clubs along curbs and pipes to alert other officers. Even the way an officer carries their baton on their person can be used to send messages to a hostile person or crowd.

Billy clubs today

After incidents such as the beating of Rodney King, the use of straight clubs declined out of public image concerns. The

Compendium_Supplemental Brief
Page 167

availability of TASERs, pepper spray, and collapsible batons along with a greater concern for officer safety have also contributed to the reduced use of the traditional straight club.

Billy clubs might take more training to use effectively and reasonably than other less-lethal weapons, but the officers who possess that knowledge may have greater control over how much force they apply. It's a fading art, but even so, billy clubs are a part of police history and a useful tool, versatile tool for those willing to learn.

Case 3:19-cv-01663-BEN-JLB  Document 56  Filed 12/01/22  PageID.1048  Page 173 of 182

Yale Law School
**LILLIAN GOLDMAN LAW LIBRARY**
*in memory of Sol Goldman*

THE AVALON PROJECT *Documents in Law, History and Diplomacy*

Search Avalon

## Blackstone's Commentaries on the Laws of England
## Book the First - Chapter the First : Of the Absolute Rights of Individuals

Blackstone Contents

.P 116

.P 117

COMMENTARIES

ON THE

LAWS OF ENGLAND.

BOOK THE FIRST.

OF THE RIGHTS OF PERSONS.

CHAPTER THE FIRST.

OF THE ABSOLUTE RIGHTS OF INDIVIDUALS.

THE objects of the laws of England are fo very numerous and extenfive, that, in order to confider them with any tolerable eafe and perfpicuity, it will be neceffary to diftribute them methodically, under proper and diftinct heads ; avoiding as much as poffible divifions too large and comprehenfive on the one hand, and too trifling and minute on the other ; both of which are equally productive of confufion.

NOW.

.P 118

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

NOW, as municipal law is a rule of civil conduct, commanding what is right, and prohibiting what is wrong ; or, as Cicero [d], and after him our Bracton [b], has expreffed it, fanctio jufta, jubens honefta et prohibens contraria ; it follows, that the primary and principal objects of the law are RIGHTS, and WRONGS. In the profecution therefore of thefe commentaries, I fhall follow this very fimple and obvious divifion ; and fhall in the firft place confider the rights that are commanded, and fecondly the wrongs that are forbidden by the laws of England.

RIGHTS are however liable to another fubdivifion ; being either, firft, thofe which concern, and are annexed to the perfons of men, and are then called jura perfonarum or the rights of perfons ; or they are, fecondly, fuch as a man may acquire over external objects, or things unconnected with his perfon, which are ftiled jura rerum or the rights of things. Wrongs alfo are divifible into, firft, prvate wrongs, which, being an infringement merely of particular rights, concern individuals only, and are called civil injuries ; and fecondly, public wrongs, which, being a breach of general and public rights, affect the whole community, and are called crimes and mifdemefnors.

THE objects of the laws of England falling into this fourfold divifion, the prefent commentaries will therefore confift of the four following parts : 1. The rights of perfons ; with the means whereby fuch rights may be either acquired or loft. 2. The rights of things ; with the means alfo of acquiring and lofing them. 3. Private wrongs, or civil injuries ; with the means of redreffing them by law. 4. Public wrongs, or crimes and mifdemefnors ; with the means of prevention and punifhment.

WE are now, firft, to confider the rights of perfons ; with the means of acquiring and lofing them.

.{FS}

11 Philipp. 12.

[b] l. 1. c. 3.

.{FE}

NOW

.P 119

The RIGHTS OF PERSONS.

BOOK I.

1.

the rights of perfons that are commanded to be obferved by the municipal law are of two forts ; firft, fuch as are due from every citizen, which are ufually called civil duties ; and, fecondly, fuch as belong to him, which is the more popular acceptation of rights or jura. Both may indeed be comprized in this latter divifion ; for, as all focial duties are of a relative nature, at the fame time that they are due from one man, or fet of men, they muft alfo be due to another. But I apprehend it will be more

Compendium_Supplemental Brief
Page 169

clear and eafy, to confider many of them as duties required from, rather than as rights belonging to, particular perfons. Thus, for inftance, allegiance is ufually, and therefore as the duty of the magiftrate ; and yet they are, reciprocally, the rights as well as duties of each other. Allegiance is the right of the magiftrate, and protection the right of the people.

PERSONS alfo are divided by the law into either natural perfons, or artificial. Natural perfons are fuch as God of nature formed us : artificial are fuch as created and devifed by human laws for the purpofes of fociety and government ; which are called corporations or bodies politic.

THE rights of perfons confidered in their natural capacities are alfo of two forts, abfolute, and relative. Abfolue, which are fuch as appertain and belong to particular men, merely as individuals or fingle perfons : relative, which are incident to them as members of fociety, and ftanding in various relations to each other. The firft, that is, abfolute rights, will be the fubject of the prefent chapter.

BY the abfolute rights of individuals we mean thofe which are fo in their primary and ftricteft fenfe; fuch as would belong to their perfons merely in a ftate of nature, and which every man is intitled to enjoy whether out of fociety or in it. But with regard to the abfolute duties, which man is bound to perform con-

fidered

.P 120

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

fidered as a mere individual, it is not to be expected that any human municipal laws fhould at all explain or enforce them. For the end and intent of fuch laws being only to regulate the behaviour of mankind, as they are members of fociety, and ftand in various relations to each other, they have confequently no bufinefs or concern with any but focial or relative duties. Let a man therefore be ever fo abandoned in his principles, or vitious in his practice, provided he keeps his wickednefs to himfelf, and does not offend againft the rules of public decency, he is out of the reach of human laws. But if he makes his vices public, though they be fuch as feem principally to affect himfelf, (as drunkennefs, or the like) they then become, by the bad example they fet, of pernicious effects to fociety ; and therefore it is then the bufinefs of human laws to correct them. Here the circumftance of publication is what alters the nature of the café. Public fobriety is a relative duty, and therefore enjoined by our laws : private fobriety is an abfolute duty, which, whether it be performed or not, human tribunals can never know; and therefore they can never enforce it by any civil fanction. But, with refpect to rights, the café is different. Human laws define and enforce as well thofe rights which belong to a man confidered as an individual, as thofe which belong to him confidered as related to others.

FOR the principal aim of fociety is to protect individuals in the enjoyment of thofe abfolute rights, which were vefted in them by the immutable laws of nature ; but which could not be preferved in peace without that mutual affiftance and intercourfe, which is gained by the inftitution of friendly and focial communities. Hence it follows, that the firft and primary end of human laws is to formation of ftates and focieties : fo that to maintain and regulate thefe, is clearly a fubfequent confideration. And therefore the principal view of human laws is, or ought always to be, to, explain, protect, and enforce fuch rights as are

abfolute,

.P 121

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

abfolute, which in themfelves are few and fimple ; and, then, fuch rights as are relative, which arifing from a variety of connexions, will be far more numerous and more complicated. Thefe will take up a greater fpace in any code of laws, and hence may appear to be more attended to, though in reality they are not, than the rights of the former kind. Let us therefore proceed to examine how far all laws ought, and how far the laws of England actually do, take notice of thefe abfolute rights, and provide for their lafting fecurity.

THE abfolute righs of man, confidered as a free agent, endued with difcernment to known good from evil, and with power of choofing thofe meafures which appear to him to be moft defirable, are ufually furned up on one general appellation, and denominated the natural liberty of mankind. This natural liberty confifts properly in a power of acting as one thinks fit, without any reftraint or control, unlefs by the law of nature : being a right inherent in a us by birth, and one of the gifts of God to man at his creation, when he endued him with the faculty of freewill. But every man, when he enters into fociety, gives, up a part of his natural liberty, as the price of fo valuable a purchafe ; and, in confideration of receiving the advantages of mutual commerce, obliges himfelf to conform to thofe laws, which the community has tough proper to eftablifh. And this fpecies of legal obedience and conformity is infinitely more defirable, than that wild and favage liberty which is facrificed to obtain it. For no man, that confiders a moment, would wifh to retain the abfolute and uncontrolled power of doing whatever he pleafes; the confequence of which is, that every other man would alfo have the fame power ; and then there would be no fecurity to individuals in any of the enjoyments of life. Political therefore, or civil, liberty, which is that of a member of fociety, is no other than natural liberty fo far reftrained by human laws (and no farther) as is neceffary and expedient for the general advantage of the publick [c]. Hence we may collect that the law, which reftrains a

.{FS}

[c] Facultas ejus, quod cuique facere libet, nifi quid jure prohibetur. Inft. 1. 3. 1.

.{FE}

Q

man

.P 122

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

man from doing mifchief to his fellow citizens, though it diminifhes the natural, increafes the civil liberty of mankind : but every wanton and caufelefs reftraint of the will of the fubject, whether practiced by a monarch, a nobility, or a popular affembly, is a degree of tyranny. Nay, that even laws themfelves, whether made with or without our confent, if they regulate and conftrain our conduct in matters of mere indifference, without any good end in view, are laws deftructive of liberty : whereas if any public advantage can arife from obferving fuch precepts, the control of our private inclinations, in one or two particular points, will conduce to preferve our general freedom in others of more importance ; by fupporting that ftate, of fociety, which alone can fecure our independence. Thus the ftatute of king Edward IV [d]. which forbad

Compendium_Supplemental Brief
Page 170

the fine gentlemen of thofe times (under the degree of a lord) to wear pikes upon their fhoes or boots of more than two inches in length, was a law that favoured of oppreffion ; becaufe, however ridiculous the fafhion then in ufe might appear, the reftraining it by pecuniary penalties could ferve no purpofe of common utility. But the ftatute of king Charles II [e], which prefcribes a thing feemingly as indifferent ; viz. a drefs for the dead, who are all ordered to be buried in woollen; is a law confitent with public liberty, for it encourages the ftaple trade, on which great meafure depends the univerfal good of the nation. So that laws, wen prudently framed, are by no means fubverfive but rather introductive of liberty ; for (as Mr Locke has well obferved [f]) where there is no law, there is no freedom. But then, on the other hand, that conftitution or frame of government, that fyftem of laws, is alone calculated to maintain civil liberty, which leaves the fubject entire matfer of his own conduct, except in thofe points wherein the public good requires fome direction or reftraint.

THE idea and practice of this political or civil liberty flourifh in their higheft vigour in thefe kingdoms, where it falls little

.{FS}

[d] 3 Edw. IV. c. 5.

[e] 30 Car. II. ft. 1. c. 3.

[f] on Gov. p. 2. § 57.

.{FE}

fhort

.P 123

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

fhort of perfection, and can only be loft or deftroyed by the folly or demerits of it's owner : the legiflature, and courfe the laws of England, being peculiarly adapted to the prefervation of this ineftimable bluffing even in the meaneft fubject. Very different from the modern conftitutions of other ftates, on the continent of Europe, and from the genius of the imperial law ; which in general are calculated to veft an arbitrary and defpotic power of controlling the actions of the fubject in the prince, or in a few grandees. And this fpirit of liberty is fo deeply implanted in our conftitution, and rooted even in our very foil, that a flave or a negro, the moment he lands in England, falls under the protection of the laws, and with regard to all natural rights becomes eo infanti a freeman [g].

THE abfolute rights of every Englifhman (which, taken in a political and extenfive fenfe, are ufually called their liberties) as they are founded on nature and reafon, fo they are coeval with our form of government ; though fubject at times to fluctuate and change : their eftablifhment (excellent as it is) being ftill human. At fome times we have feen them depreffed by overbearing and tyrannical princes; at others fo luxuriant as even to tend to anarchy, a worfe ftate than tyranny itfelf, as any government is better than none at all. But the vigour of our free conftitution has always delivered the nation from thefe embaraffments, and, as foon as the convulfions confequent on the ftruggle have been over, the balance of our rights and liberties has fettled to it's proper level; and their fundamental articles have been from time to time afferted in parliament, as often as they were thought to be in danger.

FIRST, by the great charter of liberties, which was obtained, fword in hand, from king John ; and afterwards, with fome alterations, confirmed in parliament by king Henry the third, his fon. Which charter contained very few new grants ; but, as fir Edward Coke [h] obferves, was for the moft part declaratory of the

.{FS}

[s] Salk. 666.

[h] 2 Inft. proem.

.{FE}

Q 2

principal

.P 124

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

principal grounds of the fundamental laws of England. Afterwards by the ftatute called confirmatio cartarum [i], whereby the great charter is directed to be allowed as the common law ; all judgments contrary to it are declared void ; copies of it are ordered to be fent to all cathedral churches, and read twice a year to the people ; and fentence of excommunication is directed to be as conftantly denounced againft all thofe that by word, deed, or counfel act contrary thereto, or in any degree infringe it. Next by a multitude of fubfequent corroborating ftatutes, (fir Edward Coke, I think, reckons thirty two [k],) from the firft Edward to Henry the fourth. Then, after a long interval, by the petition of right ; which was a parliamentary declaration of the liberties of the people , afferted to by king Charles the firft in the beginning of his reign. Which was clofely followed by the ftill more ample conceffions made by that unhappy prince to his parliament, before the fatal rupture between them ; and by the many falutary laws, particularly the habeas corpus act, paffed under Charles the fecund. To thefe fucceeded the bill of rights, or declaration delivered by the lords and commons to the prince and princefs of Orange 13 February 1688 ; and afterwards enacted in parliament, when they became king and queen : which declaration concludes in thefe remarkable words ; "and they do claim, "demand, and infift upon all and fingular the premifes, as their "undoubted rights and liberties." And the act of parliament itfelf [l] recognizes "all and fingular the rights and liberties afferted "and claimed in the faid declaration to be the true, antient, and "indubitable rights of the people of this kingdom." Laftly, thefe liberties wee again afferted at the commencement of the prefent century, in the act of fettlement [m], whereby the crown is limited to his prefent majeft's illuftrious houfe, and fome new provifions were added at the fame fortunate aera for better fecuring our religion, laws, and liberties ; which the ftatute declares to be "the birthright of the people of England," according to the antient doctrine of the common law [n].

.{FS}

[i] 25 Edw. I.

[k] 2 Inft. proem.

Avalon Project - Blackstone's Commentaries on the Law; Book the First; Chapter the First; Of the Absolute Rights o...

[l] 1 W. and M. ft. 2. c. 2.

[m] 12 & 13 W. III. c. 2.

[n] Plowd. 55.

.{FE}

THUS

.P 125

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

THUS much for the declaration of our rights and liberties. The rights themfelves thus defined by thefe feveral ftatutes , confift in a number of private immunities ; which will appear, from what has been premifed, to be indeed no other, than either that refiduum of natural liberty, which is not required by the laws of fociety to be facrificed to public convenience ; or elfe thofe civil privileges, which fociety hath engaged to provide, in lieu of the natural liberties fo given up by individuals. Thefe therefore were formerly, either by inheritance or purchafe, the rights of all mankind ; but, in moft other countries of the world being now more or lefs debafed and deftroyed, they at prefent may be faid to remain, in a peculiar and emphatical manner, the rights of the people of England. And thefe may be reduced to three principal or primary articles ; the right of perfonal fecurity, the right of perfonal liberty ; and the right of private property : becaufe as there is no other known method of compulfion, or of abridging man's natural free will, but by an infringment or diminution of one or other of thefe important righs, the prefervation of thefe, inviolate, may juftly be faid to include the prefervation of our civil immunities in their largeft and moft extenfive fenfe.

I. THE right of perfonal fecurity confifts in a perfon's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation.

1. LIFE is the immediate gift of God, a right inherent by nature in every individual ; and it begins in contemplation of law as foon as an infant is able to ftir in the mother's womb. For if a woman is quick with child, and by a potion, or otherwife, killeth it in her womb ; or if any one beat her, whereby the child dieth in her body, and fhe is delivered of a dead child ; this, though not murder, was by the antient law homicide or manflaughter [o]. But at prefent it is not looked upon in quite fo

.{FS}

[o] Si aliquis mulierem praegnantem percufferit, vel ei venenum dederit, per quod fecerit abortivam ; fi puerperium jam formatum fuerit, et maxime fi fuerit animatum, facit bomicidium. Bracton. l. 3. c. 21.

.{FE}

atrocious

.P 126

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

atrocious a light, though it remains a very heinous mifdemefnor [p].

AN infant in ventre ftatute mere, or in the mother's womb, is fuppofed in law to be born for many purpofes. It is capable of having a legacy, or a furrender of a copyhold eftate made to it. It may have a guardian affigned to it [q] ; and it is enabled to have an eftate limited to it's ufe, and to take afterwards by fuch limitation, as if it were then actually born [r]. And in this point the civil law agrees with ours [s].

2. A MAN'S limbs, (by which for the prefent we only underftand thofe members which may be ufeful to him in fight, and the lofs of which only amounts to mayhem by the common law) are alfo the gift of the wife creator ; to enable man to protect himfelf from external injuries in a ftate of nature. To thefe therefore he has a natural inherent right ; and they cannot be wantonly deftroyed or difabled without a manifeft breach of civil liberty.

BOTH the life and limbs of a man are of fuch high value, in the eftimation of the law of England, that it pardons even homicide if committed .{FE} defendendo, or in order to preferve them. For whatever is done by a man, to fave either life or member, is looked upon as done upon the higheft neceffity and compulfion. Therefore if a man through fear of death or mayhem is prevailed upon to execute a deed, or do any other legal act ; thefe, though accompanied with all other the requifite folemnities, are totally void in law, if forced upon him by a well-grounded apprehenfion of lofing his life, or even his limbs, in café of his non-compliance [t]. And the fame is alfo a fufficient excufe for the commiffion of many mifdemefnors, as will appear in the fourth book.

.{FS}

[p] 3. Inft. 90.

[q] Stat. 12 Car II c. 24.

[r] Stat. 10 & 11 W. III. c. 16.

[s] 2id in imtelliguntur in rervum natura effe, cum de eorum commode agatur. Ff. 1. 5. 26.

[t] 2 Inft. 483.

.{FE}

The

.P 127

The RIGHTS OF PERSONS.

6/20/22, 3:23 PM — Avalon Project - Blackstone's Commentaries on the Laws of England - Book the First: Chapter the First: Of the Absolute Rights o...

Case 3:19-cv-01663-BEN-JLB Document 58 Filed 12/01/23 PageID.1058 Page 177 of 182

BOOK I.

Ch. 1.

The conftraint a man is under in thefe circumft nces is called in law durefs, from the Latin durities, of which there are two forts ; durefs of imprifonment, where a man actually lofes his liberty, fo which we fhall prefently fpeak ; and durefs per minas, where the hardfhip is only threatened and impending, which is that we are now difcourfing of. Durefs per minas is either for fear of lofs of life, or elfe for fear of mayhem, or lofs of limb. And this fear muft be upon fufficient reafon ; "non," as Bracton exprefies it, "fufpicio cujuflibet vani et meticulofi bominis, fed talis qui poffit "cadere in cirum conftantem ; talis enim debet effe metus, qui in .fe "contineat vitae periculum, aut corporis cruciatum [u]." A fear of battery, or being beaten, though never fo well grounded, is no durefs ; neither is the fear of having one's houfe burnt, or one's goods taken away and deftroyed ; becaufe in thefe cafes, fhould the threat be performed, a man may have fatisfaction by recovering equivalent damages [w]: but no fuitable atonement can be made for the lofs of life, or limb. And the indulgence fhewn to a man under this, the principal, for of durefs, he fear of lofing his life or limbs, agrees alfo with that maxim of the civil law ; ignofcitur ei qui fanguinem fuum qualiter redemptum voluit [x].

THE law not only regards life and member, and protecs every man in the enjoyment of them, but alfo furnifhes him with every thing neceffary for their fupport. For there is no man fo indigent or wretched, but he may demand a fupply fufficient for all the neceffities of life, from the more opulent part of the community, by means of the feveral ftatutes enacted for the relief of the poor, of which in their proper places. A humane provifion ; yet, though dictated by the principles of fociety, difcountenanced by the Roman laws. For the edicts of the emperor Conftantine, commanding the public to maintain the children of thofe who were unable to provide for them, in order to prevent the murder and expofure of infants, an inftitution founded on the fame principle as our

.{FS}

[u] l. 2. c. 5.

[w] 2 inft. 483.

[z] Ff. 48. 21. 1.

.{FE}

founding

.P 128

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

founding hofpitals, though comprized in the Theodofian code [y], were rejected in Juftinian's collection.

THESE rights, of life and member, can only be determined by the death of the perfon ; which is either a civil or natural death. The civil death commences if any man be banifhed the realm [z] by the procefs of the common law, or enters into religion ; that is, goes into a monaftery, and becomes there a monk profeffed : in which cafes he is abfolutely dead in law, and his next heir fhall have his eftate. For, fuch banifhed man is entirely cut off from fociety ; and fuch a monk, upon his profeffion, renounces folemnly all fecular concerns : and befides, as the popifh clergy claimed an exemption from the duties of civil life, and the commands of the temporal magiftrate, the genius of the Englifh law would not fuffer thofe perfons to enjoy the benefits of fociety, who fecluded themfelves from it, and refufed to fubmit to it's regulations [a]. A monk is therefore accounted civiliter mortuus, and when he enters into religion may, like other dying men, make his teftament and executors : or, if he makes none, the ordinary may grant adminiftration to his next of kin, as if he were actually dead inteftate. And fuch executors and adminiftrators fhall have the fame power, and may bring the fame actions for debts due to the religious, and are liable to the fame actions for thofe due from him, as if he were naturally deceafed [b]. Nay, fo far has this principle been carried, that when one was bound in a bond to an abbot and his fucceffors, and afterwards made his executors and profeffed himfelf a monk of the fame abbey, and in procefs of time was himfelf made abbot thereof ; here the law gave him, in the capacity of abbot, an action of debt againft his own executors to recover the money due [c]. In fhort, a monk or religious is fo effectually dead in law, that a leafe made even to a third perfon, during the life (generally) of one who afterwards becomes a monk, determines by fuch his entry into religion : for

.{FS}

[y] l. 11. t. 27.

[z] Co. Litt. 133.

[a] This was alfo a rv'e in the feudal law, l. 2. t. 21. defat effe miles feculi, qui factus eft miles Chrifti ; nec beneficium pertinet ad cum qui non debet gerere officium.

[b] Litt. §. 200.

[c] Co. Litt. 133 b.

.{FE}

which

.P 129

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

which reafon leafes, and other conveyances, for life, are ufually made to have and to hold for the term of one's natural life [d].

THIS natural life being, as was before obferved, the immediate donation of the great creator, cannot legally be difpofed of or deftroyed by any individual, neither by the perfon himfelf nor by any other of his fellow creatures, merely upon their own authority. Yet neverthelefs it may, by the divine permiffion, be frequently forfeited for the breach of thofe laws of fociety, which are enforced by the fanction of capital punifhments ; of the nature, reftrictions, expedience, and legality of which, we may hereafter more conveniently enquire in the concluding book of thefe commentaries. At prefent, I fhall only obferve, that whenever the conftitution of a ftate vefts in any man, or body of men, a power of deftroying at pleafure, without the direction of laws, the lives or members of the fubject, fuch conftitution is in the higheft degree

tyrannical : and that whenever any laws direct fuch deftruction for light and trivial caufes, fuch laws are likewise tyrannical, though in an inferior degree ; becaufe here the fubject is aware of the danger he is expofed to, and may by prudent caution provide againft it. The ftatute law of England does therefore very feldom, and the common law does never, inflict any punifhment extending to life or limb, unlefs upon the higheft neceffity : and the conftitution is an utter ftranger to any arbitrary power of killing or maiming the fubject without the exprefs warrant of law. "Nullus liber homo, fays the great charter [e], ali- " quo modo deftruatur, nifi per legale judicium parium fuorum aut "per legem terræ." Which words, "aliquo modo deftruatur," according to fir Edward Coke [f], include a prohibition not only of killing, and maiming, but alfo of torturing (to which our laws are ftrangers) and of every oppreffion by colour of an illegal authority. And it is enacted by the ftatute 5 Edw. III. c. 9. that no man fhall be forejudged of life or limb, contrary to the great charter and the law of the land : and again, by ftatute 28 Ed. III.

.{FS}

[d] 2 Rep. 48. Co. Litt. 132.

[e] c. 29.

[f] 2 Inft. 48.

.{FE}

R

c. 3.

.P 130

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

c. 3. that no man fhall be put to death, without being brought to anfwer by due procefs of law.

3. BESIDES thofe limbs and members that may be neceffary to man, in order to defend himfelf or annoy his enemy, the reft of his perfon or body is alfo entitled by the fame natural right to fecurity from the corporal infults of menaces, affaults, beating, and wounding ; though fuch infults amount not to deftruction of life or member.

4. THE prefervation of a man's health from fuch practices as may prejudice or annoy it, and

5. THE fecurity of his reputation or good name from the arts of detraction and flander, are rights to which every man is intitled, by reafon and natural juftice ; fince without thefe it is impoffible to have the perfect enjoyment of any other advantage or right. But thefe three laft articles (being of much lefs importance than thofe which have gone before, and thofe which are yet to come ) it will fuffice to have barely mentioned among the rights of perfons ; referring the more minute difcuffion of their feveral branches, to thofe parts of our commentaries which treat of the infringement of thefe rights, under the head of perfonal wrongs.

II. NEXT to perfonal fecurity, the law of England regards, afferts, and preferves the perfonal liberty of individuals. This perfonal liberty confifts in the power of loco-motion, of changing fituation, or removing one's perfon to whatfoever place one's own inclination may direct ; without imprifonment or reftraint, unlefs by due courfe of law. Concerning which we may make the fame obfervations as upon the preceding article ; that it is a right ftrictly natural ; that the laws of England have never abridged it without fufficient caufe ; and , that in this kingdom it cannot ever be abridged at the mere difcretion of the magiftrate, without the explicit permiffion of the laws. Here again the language of the great charter [g] is, that no freeman fhall be taken or imprifoned

.{FS}

[g] c. 29.

.{FE}

but

.P 131

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

but by the lawful judgment of his equals, or by the law of the land. And many fubfequent old ftatutes [h] expreffly direct, that no man fhall be taken or imprifoned or detained without caufe fhewn, to which he may make anfwer according to law. By 16 Car. I. c. 10. if any perfon be reftrained of his liberty by order or decree of any illegal court, or by command of the king's majefty in perfon, or by warrant of the council board, or of any of the privy council ; he fhall, upon demand of his counfel, have a writ of habeas corpus, to bring his body before the court of king's bench or common pleas ; who fhall determine whether the caufe of his commitment be juft, and thereupon do as to juftice fhall appertain. And by 31 Car. II. c. 2. commonly called the babcas corpus act, the methods of obtaining this writ are fo plainly pointed out and enforced, that, fo long as this ftatute remains unimpeached, no fubject of England can be long detained in prifon, except in thofe cafes in which the law requires and juftifies fuch detainer. And, left this act fhould be evaded by demanding unreafonable bail, or fureties for the prifoner's appearance, it is declared by 1 W. & M. ft. 2. c. 2. that excefive bail ought not to be required.

OF great importance to the public is the prefervation of this perfonal liberty : for if once it were left in the power of any, the higheft, magiftrate to imprifon arbitrarily whomever he or his officers thought proper, (as in France it is daily practiced by the crown ) there would foon be an end of all other rights and immunities. Some have thought, that unjuft attacks, even upon life, or property, at the arbitrary will of the magiftrate, are lefs dangerous to the commonwealth, than fuch as are made upon the perfonal liberty of the fubject. To bereave a man of life, or by violence to confifcate his eftate, without accufation or trial, would be fo grofs and notorious an act of defpotifm, as muft at once

.{FS}

[h] 5 Edw. III. c. 9. 25. Edw. III. Ft. 5. c. 4. and 28 Edw. III. 4. 3.

.{FE}

R 2

Compendium_Supplemental Brief
Page 174

6/20/22, 9:28 AM Avalon Project - Blackstone's Commentaries on the Laws of England - Book the First: Chapter the First: Of the Absolute Rights o...

Case 8:19-cv-01663-BEN-JLB Document 56 Filed 12/01/22 PageID.1054 Page 179 of 182

convey

.P 132

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

convey the alarm of tyranny throughout the whole kingdom. But confinement of the perfon, by fecretly hurrying him to gaol, where his fufferings are unknown or forgotten ; is a lefs public, a lefs ftriking, and therefore a more dangerous engine of arbitrary government. And yet fometimes, when the ftate is in real danger, even this may be a neceffary meafure. But the happinefs of our conftitution is, that it is not left to the executive power to determine when the danger of the ftate is fo great, as to render this meafure expedient. For the parliament only, or legiflative power, whenever it fees prper, can authorize the crown, by fufpending the babeas corpus act for a fhort and limited time, to imprifon fufpected perfons without giving any reafon for fo doing. As the fenate of Rome was wont to have recourfe to a dictator, a magiftrate of abfolute authority, when they judged the republic in any imminent danger. The decree of the fenate, which ufually preceded the nomination of this magiftrate, "dent operam confu- "les, nequid refpublica detrimenti capiat," was called the fenatus confultum ultimate neceffitatis. In like manner this experiment ought only to be tried in cafe of extreme emergency ; and in thefe the nation parts with it's liberty for a while, in order to preferve it for ever.

THE confinement of the perfon, in any wife, is an imprifonment. So that the keeping a man againft his will in a private houfe, putting him in the ftocks, arrefting or forcibly detaining him in the ftreet, is an imprifonment [i]. And the law fo much difcourages unlawful confinement, that if a man is under durefs of imprifonment, which we before explained to mean a compulfion by an illegal reftraint of liberty, until he feals a bond or the like ; he may allledge this durefs, and avoid the extorted bond. But if a man be lawfully imprifoned, and either to procure his difcharge, or on any other fair account, feals a bond or a deed, this is not by durefs of imprifonment, and he is not at liberty to avoid it [k]. To make imprifonment lawful, it muft either be, by procefs from the courts of judicature, or by warrant from fome

.{FS}

[i] 2. Inft. 5 9.

[k] 2 Inft. 482.

.{FE}

legal

.P 133

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

legal officer, having authority to commit to prifon ; which warrant muft be in writing, under the hand and feal of the magiftrate, and exprefs the caufes of the commitment, in order to be examined into (if neceffary) upon a babeas corpus. If there be no caufe expreffed, the goaler is not bound to detain the prifoner [l]. For the law judges in this refpect, faith fir Edward Coke, like Feftus the Roman governor ; that it is unreafonable to fend a prifoner, and not to fignify withal the crimes alleged againft him.

A NATURAL and regular confequence of this perfonal liberty, is that every Englifhman may claim a right to abide in his own country fo long as he pleafes ; and not to be driven from it unlefs by the fentence of the law. The king indeed, by his royal prerogative, may iffue out his writ ne exeat regnum, and prohibit any of his fubjects from going into foreign parts without licence [m]. This may be neceffary for the public fervice, and fafeguard of the commonwealth. But no power on earth, except the authority of parliament, can fend any fubject of England out of the land againft his will ; no not even a criminal. For exile, or tranfportation, is a punifhment unknown to the common law ; and, wherever it is now inflicted, it is either by the choice of the criminal himfelf, to efcape a capital punifhment, or elfe by the exprefs direction of fome modern act of parliament. To this purpofe the great charter [n] declares that no freeman fhall be banifhed, unlefs by the judgment of his peers, or by the law of the land. And by the babeas corpus act, 31 Car. II. c. 2. (that fecund magna carta, and ftable bulwark of our liberties) it is enacted, that no fubject of this realm, who is an inhabitant of England, Wales, or Berwick , fhall be fent prifoner into Scotland, Ireland, Jerfey, Guernfey, or places beyond the feas ; (where they cannot have the benefit and protection of the common law ) but that all fuch imprifonments fhall be illegal ; that the perfon, who fhall dare to commit another contrary to this law, fhall be difabled from bearing any office, fhall incur the penalty of a praemunire, and be incapable of receiving the king's pardon :

.{FS}

[l] 2 Inft. 52. 53.

[m] F. N. B. 85.

[n] cap. 29.

.{FE}

and

.P 134

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

and the party fuffering fhall alfo have his private action againft the perfon committing, and all his aiders, advifers and abettors, and fhall recover treble cofts ; befides his damages, which no jury fhall affefs at lefs than five hundred pounds.

THE law in this refpect fo benignly and liberally conftrued for the benefit of the fubject, that, though within the realm the king may command the attendance and fervice, of all his liegemen, yet he cannot fend any man out of the realm, even upon the public fervice : he cannot even conftitute a man lord deputy or lieutenant of Ireland againft his will, nor make him a foreign embaffador [o]. For this might in reality be no more than an honorable exile.

6/20/22, 3:28 PM                    Avalon Project - Blackstone's Commentaries on the Law, Book the First: Chapter the First: Of the Absolute Rights o...

Case 3:19-cv-01663-BEN-JLB   Document 58   Filed 12/01/23   PageID.1055   Page 180 of 182

III. THE third abfolute right, inherent in every Englifhman, is that of property : which confifts in the free ufe, enjoyment, and difpofal of all his acquifitions, without any control or diminution, fave only by the laws of the land. The original of private property is probably founded in nature, as will be more fully explained in the fecund book of the enfuing commentaries : but certainly the modifications under which we at prefent find it, the method of conferving it in the prefent owner, and of tranflating it from man to man, are entirely derived from fociety ; and are fome of thofe civil advantages, in exchange for which every individual has refigned a part of his natural liberty. The laws of England are therefore, in point of honor and juftice, extremely watchful in afcertaining and protecting this right. Upon this principle the great charter ᵖ has declared that no freeman fhall be diffeifed, or divefted, of his freehold, or of his liberties, or free cuftoms, but by the judgment of his peers, or by the law of the land. And by a variety of antient ftatutes �q it is enacted, that no man's lands or goods fhall be feifed into the king's hands, againft the great charter, and the law of the land ; and that no man fhall be difinherited, nor put out of his franchifes or freehold,

.{FS}

ᵒ 2 Inft. 47.

ᵖ c. 29.

q 5 Edw. III. c. 9. 25 Edw. III. ft. 5. c. 4. 28 Edw. III. c. 3.

.{FE}

unlefs

.P 135

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

unlefs he be duly brought to anfwer, and be forejudged by courfe of law ; and if any thing be done to the contrary, it fhall be redreffed, and holden for none.

SO great moreover is the regard of the law for private property, that it will not authorize the leaft violation of it ; no, not even for the general good of the whole community. If a new road, for inftance, were to be made through the grounds of a private perfon, it might perhaps be extenfively beneficial to the public ; but the law permits no man, or fet of men, to do this without confent of the owner of the land. In vain may it be urged, that the good of the individual ought to yield to that of the community ; for it would be dangerous to allow any private man, or even any public tribunal, to be the judge of this common good, and to decide whether it be expedient or no. Befides, the public good is in nothing more effentially interefted, than in the protection of every individual's private rights, as modelled by the municipal law. In this, and fimilar cafes the legiflature alone, can, and indeed frequently does, interpofe, and compel the individual to acquiefce. But how does it interpofe and compel ? Not by abfolutely ftripping the fubject of his property in an arbitrary manner ; but by giving him a full indemnification and equivalent for the injury thereby fuftained. The public is now confidered as an individual, treating with an individual for an exchange. All that the legiflature does is to oblige the owner to alienate his poffeffions for a reafonable price ; and even this is an exertion of power, which the legiflature indulges with caution, and which nothing but the legiflature can perform.

NOR is this the only inftance in which the law of the land has poftponed even public neceffity to the facred and inviolable rights of private property. For no fubject of England can be conftrained to pay any aids or taxes, even for the defence of the realm or the fupport of government, but fuch as are impofed by his own confent, or that of his reprefenatives in parliament. By the ftatute 25 Edw. I. c. 5 and 6, it is provided, that the king

fhall

.P 136

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

fhall not take any aids or tafks, but by the common affent of the realm. And what that common affent is, is more fully explained by 34 Edw. I. ft. 4. cap. 1. which enacts, that no talliage or aid fhall be taken without affent of the arch-bifhops, bifhops, earls, barons, knights, burgeffes, and other freemen of the land ʳ : and again by 14 Edw. III. ft. 2. c. 1. the prelates, earls, barons, and commons, citizens, burgeffes, and merchants fhall not be charged to make any aid, if it be not by the common affent of the great men and commons in parliament. As this fundamental law had been fhamefully evaded under many fucceeding princes, by compulfive loans, and benevolences extorted without a real and voluntary confent, it was made an article in the petition of right 3 Car. I, that no man fhall be compelled to yield any gift, loan, or benevolence, tax, or fuch like charge, without common confent by act of parliament. And, laftly, by the ftatute 1 W. & M. ft. 2. c. 2. it is declared, that levying money for or to the ufe of the crown, by pretence of prerogative, without grant of parliament ; or for longer time, or in other manner, than the fame is or fhall be granted, is illegal.

IN the three preceding articles we have taken a fhort view of the principal abfolute rights which appertain to every Englifhman. But in vain would thefe rights be declared, afcertained, and protected by the dead letter of the laws, if the conftitution had provided no other method to fecure their actual enjoyment. It has therefore eftablifhed certain other auxiliary fubordinate rights of the fubject, which ferve principally as barriers to protect and maintain inviolate the three great and primary rights, of perfonal fecurity, perfonal liberty, and private property. Thefe are,

1. THE conftitution, powers, and privileges of parliament, of which I fhall treat at large in the enfuing chapter.

.{FS}

ʳ See the hiftorical introduction to the great charter, & c. fub anno 1297 ; wherein it is fhewn that this ftatute de talliagio non concedendo, fuppo ed to have been made in 34 Edw. I, is in reality nothing more than a fort of tranflation into Latin of the confirmatio cartarum, 25 Edw. I, which was originally publifhed in the Norman language.

.{FE}

2. THE

.P 137

The RIGHTS OF PERSONS.

BOOK I.

Case 3:19-cv-01663-BEN-JLB Document 56 Filed 12/01/22 PageID.1056 Page 181 of 182

Ch. 1.

2. THE limitation of the king's prerogative, by bounds fo certain and notorious, that it is impoffible he fhould exceed them without the confent of the people. Of this alfo I fhall treat in it's proper place. The former of thefe keeps the lcgiflative power in due health and vigour, fo as to make it improbable that laws fhould be enacted deftructive of general liberty : the latter is a guard upon the executive power, by reftraining it from acting either beyond or in contradiction to the laws, that are framed and eftablifhed by the other.

3. A THIRD fubordinate right of every Englifhman is that of applying to the courts of juftice for redrefs of injuries. Since the law is in England the fupreme arbiter of every man's life, liberty, and property, courts of juftice muft at all times be open to the fubject, and the law be duly adminiftred therein. The emphatical words of magna carta [s], fpoken in the perfon of the king, who in judgment of law (fays fir Edward Coke [t]) is ever prefent and repeating them in all his courts, are thefe ; "nulli "vendemus, nulli negabimus, aut differemus rectum vel juftitiam : "and therefore every fubject," continues the fame learned author, "for injury done to him in bonis, in terries, vel perfona, by "any other fubject, be he ecclefiaftical or temporal without any "exception, may take his remedy by the courfe of the law, and "have juftice and right for the injury done to him, freely with- "out fale, fully without any denial, and fpeedily without delay." It were endlefs to enumerate all the affirmative acts of parliament wherein juftice is directed to be done according to the law of the land : and what that law is, every fubject knows ; or may know if he pleafes : for it depends not upon the arbitrary will of any judge ; but is permanent, fixed, and unchangeable, unlefs by authority of parliament. I fhall however juft mention a few negative ftatutes , whereby abufes, perverfions, or delays of juftice, efpecially by the prerogative, are reftrained. It is ordained by

.{FS}

[s] c. 29.

[t] 2 Inft. 55.

.{FE}

S

magna

.P 138

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

magna carta [u], that no freeman fhall be outlawed, that is, put out of the protection and benefit of the laws, but according to the law of the land. By 2 Edw. III. c. 8. and 11 Ric. II. c. 10. it is enacted, that no commands or letters fhall be fent under the great feal, or the little feal, the fignet, or privy feal, in difturbance of the law ; or to difturb or delay common right : and, though fuch commandments fhould come, the judges fhall not ceafe to do right. And by 1 W. & M. ft. 2 : c. 2. it is declared, that the pretended power of fufpending, or difpenfing with laws, or the execution of laws, by regal authority without confent of parliament, is illegal.

NOT only the fubftantial part, or judicial decifions, of the law, but alfo the formal part, or method of proceeding, cannot be altered but by parliament ; for if once thofe outworks were demolifhed, there would be no inlet to all manner of innovation in the body of the law itfelf. The king, it is true, may erect new courts of juftice ; but then they muft proceed according to the old eftablifhed forms of the common law. For which reafon it is declared in the ftatute 16 Car. I. c. 10. upon the diffolution of the court of ftarchamber, that neither his majefty, nor his privy council, have any jurifdiction, power, or authority by Englifh bill, petition, articles, libel (which were the courfe of proceeding in the ftarchamber, borrowed from the civil law) or by any other arbitrary way whatfoever, to examine, or draw into queftion, determine or difpofe of the lands or goods of any fubjects of this kingdom ; but that the fame ought to be tried and determined in the ordinary courts of juftice, and by courfe of law.

4. IF there fhould happen any uncommon injury, or infringement of the rights beforementioned, which the ordinary courfe of law is too defective to reach, there ftill remains a fourth fubordinate right appertaining to every individual, namely, the right of petitioning the king, or either houfe of parliament, for the

.{FS}

[u] c. 29.

.{FE}

redrefs

.P 139

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

redrefs of grievances. In Ruffia we are told [w] that the czar Peter eftablifhed a law, that no fubject might petition the throne, till he had firft petitioned two different minifters of ftate. In café he obtained juftice from neither, he might then prefent a third petition to the prince ; but upon pain of death, if found to be in the wrong. The confequence of which was, that no one dared to offer fuch third petition ; and grievances feldom falling under the notice of the fovereign, he had little opportunity to redrefs them. The reftrictions, for fome there are, which are laid upon petitioning in England, are of a nature extremely different ; and while they promote the fpirit of peace, they are no check upon that of liberty. Care only muft be taken, left, under the pretence of petitioning, the fubject be guilty of any riot or tumult ; as happened in the opening of the memorable parliament in 1640 : and, to prevent this, it is provided by the ftatute 13 Car. II. ft. 1. c. 5. that no petition to the king, or either houfe of parliament, for any alterations in church or ftate, fhall be figned by above twenty perfons, unlefs the matter thereof be approved by three juftices of the peace or the major part of the grand jury, in the country ; and in London by the lord mayor, aldermen, and common council ; nor fhall any petition be prefented by more than two perfons at a time. But under thefe regulations , it is declared by the ftatute 1 W. & M. ft. 2. c. 2. that the fubject hath a right to petition ; and that all commitments and profecutions for fuch petitioning are illegal.

5. THE fifth and laft auxiliary right of the fubject, that I fhall at prefent mention, is that of having arms for their defence, fuitable to their condition and degree, and fuch as are allowed by law. Which is alfo declared by the fame ftatute 1 W. & M. ft. 2. c. 2. and is indeed a public allowance, under due reftrictions, of the natural right of refiftance and felf-prefervation, when the fanctions of fociety and laws are found infufficient to reftrain the violence of oppreffion.

.{FS}

[w] Montefq. Sp. L. 12. 26.

Compendium_Supplemental Brief
Page 177

6/20/22, 3:35 PM    Avalon Project - Blackstone's Commentaries on the Law : Book the First : Chapter the First : of the Absolute Rights o...

Case 3:19-cv-01663-BEN-JLB   Document 56   Filed 12/01/22   PageID.1057   Page 182 of 182

.{FE}

S 2

IN

.P 140

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

IN thefe feveral articles confift the rights, or, as they are frequently termed, the liberties of Englifhmen : liberties more generally talked of, than thoroughly underftood ; and yet highly neceffary to be perfectly known and confidered by every man of rank or property, left his ignorance of the points whereon it is founded fhould hurry him into faction and licentioufnefs on the one hand, or a pufillanimous indifference and criminal fubmiffion on the other. And we have feen that thefe rights confift, primarily, in the free enjoyment of perfonal fecurity, of perfonal liberty, and of private property. So long as thefe remain inviolate, the fubject is perfectly free ; for every fpecies of compulfive tyranny and oppreffion muft act in oppofition to one or other of thefe rights, having no other object upon which it can poffibly be employed. To preferve thefe from violation, it is neceffary that the conftitution of parliaments be fupported in it's full vigor ; and limits certainly known, be fet to the royal prerogative. And, laftly, to vindicate thefe rights, when actually violated or attacked, the fubjects of England are entitled, in the firft place, to the regular adminiftration and free courfe of juftice in the courts of law ; next to the right of petitioning the king and parliament for redrefs of grievances ; and laftly to the right of having and ufing arms for felf-prefervation and defence. And all thefe rights and liberties it is our birthright to enjoy entire ; unlefs where the laws of our country have laid them under neceffary reftraints. Reftraints in themfelves fo gentle and moderate, 23 will appear upon farther enquiry, that no man of fenfe or probity would wifh to fee them flackened. For all of us have it in our choice to do every thing that a good man would defire to do ; and are reftrained from nothing, but what would be pernicious either to ourfelves or our fellow citizens. So that this review of our fituation may fully juftify the obfervation of a learned French author, who indeed generally both thought and wrote in the fpirit of genuine freedom [x]; and who hath not fcrupled to profefs, even

.{FS}

[z] Montefq. Sp. L. 11. 5.

.{FE}

in

.P 141

The RIGHTS OF PERSONS.

BOOK I.

Ch. 1.

in the very bofom of his native coglifh is the only nation in the world, where political or civil liberty is the direct end of it's conftitution. Recommending therefore to the ftudent in our laws a farther and more accurate feach into this extenfive and important title, I fhall clofe my remarks upon it with the expiring wifh of the famous father Paul to his country,

"ESTO PERPETUA !"

Blackstone Contents

| Avalon Home | Document Collections | Ancient 4000bce - 399 | Medieval 400 - 1399 | 15th Century 1400 - 1499 | 16th Century 1500 - 1599 | 17th Century 1600 - 1699 | 18th Century 1700 - 1799 | 19th Century 1800 - 1899 | 20th Century 1900 - 1999 | 21st Century 2000 - |

© 2008 Lillian Goldman Law Library
127 Wall Street, New Haven, CT 06511.

Avalon Statement of Purpose    Accessibility at Yale    Contact Us    Yale Law Library    University Library    Yale Law School    Search Morris    Search Orbis