1  ROB BONTA
   Attorney General of California
2  BENJAMIN M. GLICKMAN
   Supervising Deputy Attorney General
3  ANTHONY P. O'BRIEN
   Deputy Attorney General
4  JOHN D. ECHEVERRIA
   Deputy Attorney General
5  State Bar No. 268843
    455 Golden Gate Avenue, Suite 11000
6   San Francisco, CA  94102-7004
    Telephone:  (415) 510-3479
7   Fax:  (415) 703-1234
    E-mail:  John.Echeverria@doj.ca.gov
8  *Attorneys for Defendant Rob Bonta, in his
   official capacity as Attorney General of the
9  State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **RUSSELL FOUTS et al.,**<br><br>Plaintiff,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California,**<br><br>Defendant. | Case No. 3:19-cv-01662-BEN-JLB<br><br>**DEFENDANT'S BRIEF IN RESPONSE TO THE COURT'S ORDER ENTERED ON FEBRUARY 7, 2023**<br><br>Courtroom: 5A<br>Judge: Hon. Roger T. Benitez<br>Action Filed: September 1, 2019 |

## INTRODUCTION

California Penal Code section 22210 ("Section 22210") fully comports with the Second Amendment at both stages of the text-and-history standard adopted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Even if Plaintiffs can demonstrate that Section 22210 burdens conduct covered by the "plain text" of the Second Amendment (and they cannot), California's billy club prohibition is consistent with the Nation's historical tradition of weapons regulation.[1] On February 7, 2023, the Court ordered the Attorney General to file a brief identifying "the best historical regulation that is a proper analogue and relevantly similar to a statewide prohibition on possession of a billy club," to be filed with the previously ordered briefing. Dkt. 61. All of the historical laws relied upon by the Attorney General are relevant and demonstrate a robust tradition of weapons regulation—including the regulation of billies—that supports the constitutionality of Section 22210. *See* Def.'s Br. at 6–19.

Among the analogues the Attorney General has identified, New York's 1866 law prohibiting the use, attempted use, concealment, and "furtive[]" possession of "any instrument or weapon of the kind commonly known as" a slungshot, billy, sandclub, metal knuckles, dirk, dagger, sword cane, or air-gun [74][2] is one among the laws that is particularly analogous to a "statewide prohibition on possession of a billy club." Dkt. 61; Decl. of Robert Spitzer ("Spitzer Decl.") (Dkt. 51-3), Ex. C at 50.[3]

---

[1] The Attorney General incorporates by reference his Brief in Response to the Court's Order Entered on December 15, 2022 ("Def.'s Br.") (Dkt. 63), including the arguments that Plaintiffs have not shown that the challenged law burdens conduct covered by the plain text of the Second Amendment. Def.'s Br. at 3–6.

[2] Numbers in brackets refer to the numbers assigned to the laws listed on Defendants' surveys of historical analogues. Dkt. 60-1; Dkt. 160-2.

[3] In identifying this law, the Attorney General does not suggest that the other laws relied upon, or that could have been identified with additional time, are not equally analogous and relevantly similar to Section 22210.

## ARGUMENT

### I. BRUEN REQUIRES A HOLISTIC AND CONTEXTUALIZED ANALYSIS OF THE RELEVANT HISTORY, RATHER THAN A SINGLE "DEAD RINGER"

In assessing the constitutionality of a billy club prohibition, the historical analysis cannot be limited to the assessment of a single past law. The Supreme Court instructed that the government need not identify "a dead ringer" or "a historical *twin*" in the historical record. *Id.* at 2133. The *Bruen* standard is not an "abstract game of spot-the-analogy-across-the-ages." *United States v. Kelly*, No. 3:22-cr-00037, 2022 WL 17336578, at *6 (M.D. Tenn. Nov. 16, 2022). Instead, it requires "an evaluation of the challenged law in light of the broader attitudes and assumptions demonstrated by th[e] historical prohibitions" to determine whether the challenged law is one that *could have existed* consistent with the understanding of the Second or Fourteenth Amendments at the time of ratification. *Id.* at *5 n.7. Even an "imperfect match" can provide useful insight into the broader historical traditions that may justify a modern firearm regulation. *United States v. Rowson*, No. 22 CR. 310 (PAE), 2023 WL 431037, at *24 (S.D.N.Y. Jan. 26, 2023).

*Bruen* made clear that the Second Amendment is not a "regulatory straightjacket," 142 S. Ct. at 2133, confining permissible government regulations to only those laws that had been enacted when the Second and Fourteenth Amendments were ratified. To the contrary, governments are free to adopt a "'variety' of gun regulations," *id.* at 2162 (Kavanaugh, J., concurring) (citation omitted), and "experiment[] with reasonable firearms regulations" to address threats to public safety, *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality opinion). Requiring the government to spot a "near perfect match between a modern-day regulation[] and historical regulations would likely render *Bruen*'s analogical historical reasoning exactly th[e] 'regulatory straight jacket'" that the Second Amendment is not. *United States v. Perez-Garcia*, No. 22-CR-1581-GPC, 2022 WL 17477918, at *5 (S.D. Cal. Dec. 6, 2022) (Curiel, J.). Those

considerations inform how to assess the historical analogues identified by the Attorney General and illuminate why the inquiry cannot be limited to a single historical law.

## II. THE RESTRICTIONS ON BILLY CLUBS DATING BACK TO 1866 ARE RELEVANTLY SIMILAR ANALOGUES TO SECTION 22210.

Section 22210's restrictions on billies are relevantly similar to other restrictions on billies that date back to 1866, the year before the ratification of the Fourteenth Amendment. In 1866, New York enacted a statewide prohibition on anyone "furtively possessing" "any instrument or weapon of the kind commonly known as" a "billy."[4] Spitzer Decl., Ex. C at 50. Section 22210 also prohibits the possession of "any instrument or weapon of the kind commonly known as a billy."[5] The New York law is particularly analogous and relevantly similar to Section 22210. Both laws are generally applicable to all individuals, restrict the same types of impact weapons (billies and sandclubs) among other weapons, and outlaw possession of the weapon in addition to other conduct related to the weapon.[6]

This Court has previously acknowledged the link between Section 22210 and the 1866 New York law, along with other restrictions on billies enacted after that law, in its prior decision upholding Section 22210 under the Second Amendment. *Fouts v. Bonta*, 561 F. Supp. 3d 941, 956–58 (S.D. Cal. 2021), *vacated on other grounds*, 2022 WL 4477732, at *1 (9th Cir. Sept. 22, 2022); *see id*. at 957 (noting

---

[4] The New York law also regulated slungshots, sandclubs, metal knuckles, dirks, daggers (other than the blade of a pocket knife), sword canes, and air-guns. Spitzer Decl., Ex. C at 50.

[5] Section 22210 also regulates leaded canes, blackjacks, sandbags, sandclubs, saps, and slungshots. Cal. Penal Code § 22210.

[6] In addition to possession of the listed weapons, Section 22210 prohibits the manufacture, importation into the state, giving, lending, or keeping or offering of those weapons for sale. The 1866 New York law prohibits the "knowing[ ] and secret[ ] conceal[ment]" of the listed weapons with the "attempt[s] to use or with intent to use against any other person," also with the "willful[ ] and furtive[ ]" possession of those weapons.

that "Defendants cite legislation from the era of the Fourteenth Amendment ratification that concealed carrying of a billy was deemed a crime in New York as early as 1866"). This Court's prior historical analysis remains valid following *Bruen*. Consistent with its prior reasoning, the Court should hold that the 1866 New York law and subsequent billy restrictions in other jurisdictions are "relevantly similar" to Section 22210, *see* Def.'s Supp. Br. at 14–17, and support a historical tradition of regulation. *Bruen*, 142 S. Ct. at 2132–33.

Plaintiff's objections that the 1866 New York law is "[o]utside 2nd Amendment ratification" and "[i]rrelevant," Dkt. 60-3 at 8, are unavailing. The Supreme Court engaged in an extensive analysis of laws enacted during the antebellum period and around the time that the Fourteenth Amendment was ratified in 1868. *See Bruen*, 142 S. Ct. at 2145–53. The fact that the 1866 New York law was enacted shortly before the Fourteenth Amendment anchors Section 22210's analogues in the relevant time period, confirming that restrictions on billies are constitutionally permissible. *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011) (explaining that the scope of the states' police powers "depends on how the right [to keep and bear arms] was understood when the Fourteenth Amendment was ratified").

Other laws predating the advent of billy clubs provide additional historical analogues for Section 22210. The Attorney General's surveys identify several earlier laws that regulated other impact weapons, including bludgeons [16, 20, 22] and clubs [8, 10]. While these laws did not ban billies and criminalized specific intended uses of the listed weapons, *see* Dkt. 60-3 [8, 10, 16, 20, 22], they are still relevantly similar to Section 22210's regulation of billies. Under *Bruen*, the Attorney General does not need to identify a "historical *twin*" or a "dead ringer," but can justify a modern restriction by identifying "relevantly similar" laws enacted when the Second or Fourteenth Amendments were ratified, provided the laws "impose[d] a comparable burden on the right of armed self-defense." *Bruen*, 142 S.

4

Defendant's Brief in Response to the Court's Order Entered on February 7, 2023
(3:19-cv-01662-BEN-JLB)

Ct. at 2132–33. That is particularly true given that the term "billy" first appeared in newspapers in 1842. Decl. of Dennis Baron (Dkt. 51-1) ¶ 9.

Restrictions on the carrying of concealable weapons—including the pre-1840 laws restricting the use of clubs, bludgeons, daggers and Bowie knives [6, 17, 21, 25, 29, 30, 31, 35, 36, 38]—impose a "comparable burden" to the possession restrictions imposed under Section 22210. Both sets of laws limit the ability to use certain weapons not suited to lawful self-defense, while leaving available other weapons for effective self-defense. *See Bruen*, 142 S. Ct. at 2150 (noting that antebellum dangerous weapons laws did not "prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public"). These laws are also comparably justified by public safety concerns. Antebellum laws restricting the carrying of certain concealable weapons, like Bowie knives, pistols, dirks, and sword canes, were enacted in response to an increase in fights, assassinations, and assaults, primarily in the South. *See* Clayton E. Cramer, Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform 7, 62-65 (1999); Decl. of John D. Echeverria (Dkt. 63-1), Ex. 1 (Decl. of Randolph Roth, *Rupp v. Bonta*, No. 8:17-cv-00746-JLS-JDE (C.D. Cal Jan. 6, 2023)) ¶¶ 23–27. These public-safety concerns parallel the concerns with the criminal uses of billies that gave rise to Section 22210 and other billy club restrictions. *See* Decl. of Robert Escobar (Dkt. 51-2) ¶ 35; *see Fouts*, 591 F. Supp. 3d at 959 (noting the "homemade criminal and improper purpose" of the billy (citation omitted)). Accordingly, Section 22210 is relevantly similar to similar restrictions on billies dating back to New York's 1866 law as well as restrictions on other concealable, dangerous weapons.

## CONCLUSION

For these reasons, and those discussed in the Attorney General's other briefs, Section 22210 comports with the Second Amendment.

| | | |
|---|---|---|
| 1 | Dated: February 10, 2023 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | BENJAMIN M. GLICKMAN<br>Supervising Deputy Attorney General |
| 4 | | ANTHONY P. O'BRIEN<br>Deputy Attorney General |
| 5 | | |
| 6 | | *s/ John D. Echeverria* |
| 7 | | |
| 8 | | JOHN D. ECHEVERRIA<br>Deputy Attorney General<br>*Attorneys for Defendant Rob Bonta, in* |
| 9 | | *his official capacity as Attorney*<br>*General of the State of California* |