ALAN ALEXANDER BECK
LAW OFFICE OF ALAN BECK
2692 HARCOURT DRIVE
SAN DIEGO, CA 92123
(619) 905-9105
STATE BAR NO. 276646
ALAN.ALEXANDER.BECK@GMAIL.COM
ATTORNEYS FOR PLAINTIFFS
RUSSELL FOUTS AND
TAN MIGUEL TOLENTINO

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. BOX 428
OLIVE BRANCH, MS 38654
(601) 852-3440
STEPHEN@SDSLAW.US
MS BAR NO. 102784
 *ADMITTED PRO HAC VICE

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL FOUTS and TAN MIGUEL TOLENTINO,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as the Attorney General of the State of California,**<br><br>Defendant. | 19-cv-01662-BEN-JLB<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S SECOND SUPPLEMENTAL BRIEF**<br><br>Judge:   Hon. Roger T. Benitez<br>Courtroom:   5A<br>Action Filed:   September 1, 2019<br>Hearing Date:   N/A |

# TABLE OF CONTENTS

I. Introduction ..................................................................................................1

II. California's Billy Ban Burdens Second Amendment Conduct....................3

III. Defendant's Ban on Billies is Inconsistent with this Nation's History and Tradition.........................................................................................6

    a. The Surveys of Relevant Dangerous Weapons Law.............................9

    b. The Surveyed Weapons Restrictions are Not Relevantly Similar........10

IV. Conclusion.................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Def. Distributed v. Bonta*, 2022 U.S. Dist. LEXIS 195839 (C.D. Cal. Oct. 21, 2022) ............................................................................................................................ 3

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................................... 2, 4, 10

*Fouts v. Bonta*, 561 F. Supp. 3d 941 (S.D. Cal. 2021) ................................................ 2

*Koons v. Reynolds*, 2023 U.S. Dist. LEXIS 3293 (D.N.J. Jan. 9, 2023) ..................... 4

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) .... passim

*People v. Grubb,* 63 Cal. 2d 614 (1965) ..................................................................... 5

*Rupp, et al. v. Bonta*, 8:17-cv-00746-JLS-DE ........................................................... 1

*United States v. Miller*, 307 U.S. 174 (1939) ............................................................ 5

**STATUTES**

California Penal Code § 16590(m) ........................................................................... 10

California Penal Code § 18010(b) ............................................................................ 10

California Penal Code § 22210 ................................................................................. 10

**OTHER AUTHORITIES**

Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 Mich. L. Rev. 204 (Nov. 1983) ..................................................... 5

John Dogget Jr., A Short Narrative of the Horrid Massacre in Boston (1849) .......... 6

Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 Law & Hist. Rev. 139 (Spring 2007) ................................................................................. 6

**RULES**

Local Rule 7.1(h) ........................................................................................................ 1

I. <u>Introduction</u>[1]

California's arguments in its Supplemental Brief are unavailing.[2] California "incorporates by reference [its] Supplemental Brief in Response" and the "declarations submitted therewith." Br. at 1. California may as well have incorporated everything filed in all its litigation defending the plethora of lawsuits. California's briefs are already filed in the record, and for all the reasons that Plaintiffs have already explained, California's ban on billies is unconstitutional. California cites to *Bruen* to say that the Second Amendment does not protect the "right to keep and carry any weapon whatsoever." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2128 (2022). And then, that it "protects only those weapons 'in common use' today for self-defense." *Bruen*, at 2134. Br. at 1-2.[3] But, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. *District of*

---

[1] California attached a "Supplemental Expert Report and Declaration of Randolph Roth," which was filed in *Rupp, et al. v. Bonta*, 8:17-cv-00746-JLS-DE. Nothing in this Court's December 15, 2022 Order requested supplemental expert reports, nor did it allow "expert" reports and declarations that were never filed in this case, from an "expert" that was never designated or declared in this case in the first place. It is improper and this Court should entirely strike Document 63-1 and all references to said "expert" in California's "Brief in Response to the Court's Order."

[2] Plaintiffs note that this response is 1) due today by the Dec. 15 Minute Order and 2) while there is no page limit associated with the "responsive brief," Plaintiffs utilize the local rules which allows for a 10-page reply. *See* Local Rule 7.1(h).

[3] California maintains a "roster" prohibiting the sale of various types of pistols in "common use" and commonly owned all over America, including 4th and 5th generation Glock pistols. *See* https://oag.ca.gov/firearms/certified-handguns/search. Perhaps this is California's concession that its roster is unconstitutional.

*Columbia v. Heller*, 554 U.S. 570, 582 (2008).

California states that "Plaintiffs cannot show that the 'plain text' of the Second Amendment covers their proposed conduct of acquiring and possessing billy clubs." Br. at 2.[4] But that is flat wrong given *Heller*'s teaching that "bearable arms" are "prima facie" protected by the Second Amendment. *See also Bruen*, at 2132. And because billies/clubs are not some new technological invention, analogical reasoning is unnecessary because we can look back to the founding, which would address something that has been in usage since those days, rather than some new technological advancement. *See Bruen*, at 2132 ("When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy ... Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'").

California states that "[t]he Court's prior analysis 'end[ed] at step one' of the prior two-step framework" (citing *Fouts* at 948. Br. at 2. But why did the Court stop there? It stopped there, at "step one," because this Court was bound by prior 9th Circuit precedent that the "104-year old statute qualifies as a 'longstanding' prohibition." *Fouts* at 945. Not anymore. And just because the "[t]he weapon known

---

[4] As this Court previously stated, "[b]ecause the government bears the burden, these arms are presumptively lawful to own." *Fouts v. Bonta*, 561 F. Supp. 3d 941, 947 n.8 (S.D. Cal. 2021).

as a billy has been the subject of regulation in at least twenty states -- beginning in the 1800's and continuing to the present[,]" *Fouts* at 958, does not mean "regulation in at least twenty states" demonstrates an outright ban, instead, the Court said it was simply "regulation." And that "regulation," as briefed in Plaintiffs' briefs and demonstrated in Defendant's spreadsheet, deals with regulations on who can carry or possess them and how the weapon can be carried, not outright bans on possession. The analogues put forth by Defendant show the racist pedigree of various weapons laws, and how they simply do not apply to non-slaves, non-mulattoes, and instead only applied to disfavored minority groups.[5]

II.   California's Billy Ban Burdens Second Amendment Conduct

Defendant cites to a few cases for the proposition that Plaintiffs bear the burden to establish that "the weapon [they want] is in common use for self-defense." Br. at 3. And Defendant cites to *Def. Distributed v. Bonta*, 2022 U.S. Dist. LEXIS 195839, at *10 (C.D. Cal. Oct. 21, 2022) thinking that it helps his case. But it does not. In that case, the Judge Wu looked at what Defense Distributed requested: "what is at issue here is a ban on 'self-manufacture of firearms' and a prohibition on 'the sale of the tools and parts necessary to complete the self-manufacturing process.'" *Def.*

---

[5] The Defendant "notes that there is no motion pending" and wants discovery. *Bruen* was decided on a motion to dismiss, and Justice Breyer's dissent specifically addressed Defendant's point: "[t]he Court decides this case on the basis of the pleadings, without the benefit of discovery or an evidentiary record. … Second, the Court wrongly limits its analysis to focus nearly exclusively on history. It refuses to consider the government interests that justify a challenged gun regulation, regardless of how compelling those interests may be." *Bruen*, at 2164 (Breyer, J., dissenting).

*Distributed* at *11. Judge Wu said those "rights" are not in the "plain text of the Second Amendment." *Id*. But in this case, Plaintiffs want to keep and bear billies, indisputably "arms" and indisputably banned. The "plain text" of the Second Amendment covers the arms in question because the Second Amendment extends to all bearable arms. *Heller* at 582. A fairer read of Judge Wu's opinion is to say that because the plaintiff in that case sought "unarticulated rights [] implicit in enumerated guarantees[,]"a stronger showing needed to be made. *Def. Distributed* at *11.

As Chief Judge Bumb in the District of New Jersey succinctly stated, "[t]he Court must answer two questions: one, does the Second Amendment's plain text cover the challenged provision? And two, does historical evidence support the restriction?" *Koons v. Reynolds*, 2023 U.S. Dist. LEXIS 3293, at *22 (D.N.J. Jan. 9, 2023). The answer to the first question is yes, and the second question, no. We know from *Heller* that people have the right to keep "arms" at home. And we know from *Bruen* that people have the right to carry "arms" in public. What California is attempting to do is to cabin "arms" to mean handguns only (but really only California *approved* handguns) because *Heller* and *Bruen* both dealt with handguns.

In any event, Defendant claims that Plaintiff offered "no evidence suggesting that billies are commonly used for self-defense, such that they would qualify as a protected 'Arm' under the plain text of the Second Amendment." Br. at 4. This is exactly backwards. All instruments that constitute bearable arms are protected, prima facie. *Heller* at 582. But then there is a limitation: "[w]e also recognize another

important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.' [*United States v. Miller*, 307 U.S. 174, 179 (1939)]. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller* at 627.

Then, California cites back to pre-*Bruen* cases upholding its restrictions, claiming that those cases "explain[ed] the reasons for the restrictions" and that the 1965 case *People v. Grubb,* 63 Cal. 2d 614, 620 (1965), "obviously sought to condemn weapons common to the criminal's arsenal." Br. at 6.[6] But California could have made it unlawful for criminals to carry or use billies, like the purported "analogues" it cited for various other weapons.[7] Instead, it is a flat ban even for those

---

[6] As previously established, billy clubs are common arms for law enforcement. And historically law enforcement was a function of the citizenry. As one prominent Second Amendment scholar noted: "In the pre-colonial English tradition there had been no police and no standing army in peacetime. From time immemorial every free Englishman had been both permitted and required to keep such arms as a person of his class could afford both for law enforcement and for military service. With arms readily available in their homes, Englishmen were theoretically prepared at all times to chase down felons in response to the hue and cry, or to assemble together as an impromptu army in case of foreign invasion of their shire." Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 Mich. L. Rev. 204, 214-15 (Nov. 1983) (footnotes and page numbers omitted). The same tradition applied to the American colonies: "As in England, the requirement of keeping arms was as much directed toward prevention of crime and apprehension of criminals as the repelling of foreign enemies. Militiamen (apparently selected by rotation) staffed the night watch which both patrolled the city and watched out over i[t] from stationary positions to raise the hue and cry in case of felony and the alarm in case of foreign attack." *Id.* at 215 n.47.

[7] As briefed, California's reliance on laws disarming African Americans and
(continued…)

who have Second Amendment rights like the Plaintiffs in this case.

### III. Defendant's Ban on Billies is Inconsistent with this Nation's History and Tradition

There is no doubt that the Founding Generation believed clubs were arms. The report on the Boston Massacre, prepared by the colonists and published two weeks after the Massacre took place, includes dozens of eyewitness accounts in the form of sworn testimony with accounts of "clubs" or "sticks" being used as weapons. As tensions rose before March 5, 1770, the day of the massacre, the residents of Boston had taken to going about in groups, armed with clubs, to defend themselves against British soldiers. The British soldiers themselves used clubs extensively. There cannot be the slightest question that they were considered "arms."[8] "While the British troops were in Boston, the citizens, whenever it was necessary to be out in the evening, generally went armed with walking-sticks, clubs..." *Id*. at 17. *See also Id*. at 57 ("And the deponent further saith, that about eight o'clock on Monday evening, he went down King street, and met twelve of the towns people with clubs, who said that they had been attacked by the soldiers."); *Id*. at 67 ("he saw a soldier with a cutlass, flourishing it about in said alley, and a mean-looking fellow with him, with

---

Indians is inapposite because historically those groups did not have Second Amendment rights at al. *See, e.g.*, Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 Law & Hist. Rev. 139, 156 (Spring 2007) ("white Virginians excluded African-Americans, Indians, and indentured servants from the body politic and denied them the most fundamental of rights");

[8] *See* John Dogget Jr., A Short Narrative of the Horrid Massacre in Boston (1849) available at the Library of Congress, https://bit.ly/3SbKktj.

a club in his hand[.]".

Defendant submits that he produced "hundreds of relevant laws and authorities" from jurisdictions that "enacted restrictions on certain enumerated weapons viewed at the time to be particularly dangerous." Br. at 6. Then he claims that "[t]hese laws are relevantly similar to California's billy restrictions." [9] *Id*. Finally, he cites to numbers on a spreadsheet that he claims "expressly regulated billies."

The first [70] is an 1863 City of Leavenworth, Kansas (population of 7,429 people[10]) which prohibited carry of a billy *and* pistols. 1866 New York [74] prohibited using or concealing a billy, but not possession. And it is way after ratification of the 2nd Amendment. 1868 Florida [82] prohibited carrying a billy "if arrested for committing a criminal offense…" 1871 City of St. Louis, Missouri prohibited carrying of "a concealed pistol… [or] billy… without written permission from the Mayor." Hardly a ban on possession. And [95-96, city laws] prohibited carry of a billy, but not possession. Jersey City 1874 [105] carry of concealed pistol/billy; Sioux City, Iowa 1882 [147] banned concealed carry of pistol and billy; West Virginia 1882 [148] banned carry of pistol and billy; County of Calvert,

---

[9] He is wrong, as "California's billy restrictions" is a flat ban on carry and possession, not just on types of carry, or bans on *where* the person can carry a billy. Instead, it is an outright ban.

[10] https://bit.ly/3EmvUkb at page 7 of PDF (page 164 at the top left of the document). The population of the USA during the 1860 census was 31,443,321. *See* https://bit.ly/3KlBmrB.

Maryland 1886 [165] banned carry of pistol and billy; County of Calvert, Maryland 1886 [166] same; Maryland 1886 [167] prohibited carry on election day within 300 feet of polls; City of Independence, Kansas 1887 [170] prohibited using pistol in threatening manner and prohibited concealed carry; Michigan 1887 [171] prohibited concealed carry of pistol and billy; County of Kent, Maryland 1888 [175] prohibited carrying on election days; Florida 1888 [176] prohibited concealed carry if "arrested for committing a criminal offense or disturbance of the peace."; City of Baltimore, Maryland 1888 [178] prohibited carry of pistol/billy if arrested for being drunk or disorderly. And then New York banned using/concealing billies again in 1881 [140], and then finally possession [160] in 1885.

From all of these *alleged* analogues, we are left with the proposition that the only one State, New York, outright prohibited billies during the relevant time period. "We have already explained that we will not stake our interpretation of the Second Amendment upon a law in effect in a single State, or a single city, 'that contradicts the overwhelming weight of other evidence regarding the right to keep and bear arms' in public for self-defense." *Bruen* at 2154. And as can be seen throughout Defendant's alleged analogues, a ban on concealed carry of pistols, handguns, or revolvers is evident throughout, yet *Bruen* specifically held that individuals have a right to public carry and these laws did not change *Bruen*'s holding.

Defendant then string cites several other laws from his second spreadsheet dealing with laws beginning in 1888 until 1923. But instead of specifying which

laws operated as a complete ban on possession of billies, Defendant just cites back to his spreadsheet for "relevantly similar" laws. Br. at 6.  But "relevantly similar to California's billy restrictions" would be an outright ban, rather than prohibition on concealed carry, or seeking permission (like a permitting system) from the Mayor. The vast majority of the "analogues" deal with concealed carry of a billy (and pistols) or carry of a billy (and pistols).  1911 New York [230] dealt with no carry and no possession of a billy, as did 1913 [233] New York.  1917 California [236] also banned possession of a billy.  In 1923, California [240] made it illegal to manufacture or sell a billy.  In 1927 Michigan [246] prohibited manufacture, possession or selling a gun or a billy.  And 1929 Michigan [248] did it again.  1931 New York [249] continued its ban on possession or carrying of a billy.  These are all after the ratification of the 2nd Amendment in 1791 and even the ratification of the 14th Amendment in 1868 and cannot change how the Second Amendment was understood in 1791.  *See Bruen*, at 2137 ("we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791.").

a. The Surveys of Relevant Dangerous Weapons Law

The "surveys" provided by the Defendant are largely unhelpful as they 1) do not comply with the Court's order (because they do not begin with the ratification of the Second Amendment, and 2) includes laws that have nothing to do with the subject matter of billies.  As the Supreme Court stated, "a green truck and a green hat are

relevantly similar if one's metric is 'things that are green.' … They are not relevantly similar if the applicable metric is 'things you can wear.'" *Bruen* at 2132. California has made the metric "weapons" wholesale, instead of billies more narrowly. And of course, just because a billy *is* a weapon, does not mean that the appropriate analogue is "weapon," and because a vast number of Defendant's analogues deal with handguns (pistols/revolvers), we know they are not due any weight or *Bruen* (and *Heller*) would have come out the other way.

b. The Surveyed Weapons Restrictions are Not Relevantly Similar

To be sure, some of the surveyed laws *do* name billies, most dealing with concealed carry restrictions with only a handful dealing with a complete ban on carry and possession as noted *supra*. Somehow, California claims that the "Second Amendment does not protect a right to any particular arm, but instead protects a more general right to armed self-defense." Br. at 16. But this is incorrect. The Second Amendment extends and thus protects, prima facie, "all instruments that constitute bearable arms, even those that were not in existence at the time of the founding" and "that general definition covers modern instruments that facilitate armed self-defense." *Bruen* at 2132 (citation omitted).

IV. Conclusion

This Court should enjoin Penal Code §§ 22210, 16590(m), § 18010(b), and § 22290 as they pertain to billy clubs.

Dated: February 20, 2023

*/s/ Alan Alexander Beck*  */s/ Stephen D. Stamboulieh*
Alan Alexander Beck     Stephen D. Stamboulieh